UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

State of Minnesota,                                    File No.: 08-CV-603 (DWF/AJB)
by Michael Campion, its
Commissioner of Public Safety,

                 Plaintiff,

  v.

CMI of Kentucky, Inc.,                              **ANSWER AND COUNTERCLAIM**
a Kentucky corporation,                          **FOR DECLARATORY JUDGMENT**

               Defendant.

COMES NOW Defendant CMI of Kentucky, Inc. ("CMI"), and as and for its Answer to the Complaint brought by Plaintiff State of Minnesota, by Michael Campion, its Commissioner of Public Safety (the "State"), states and alleges as follows:

**INTRODUCTION**

CMI denies each and every allegation, matter, and thing alleged in the State's Complaint unless hereinafter specifically admitted or otherwise qualified.

1.     Deny. CMI affirmatively asserts and alleges that it has routinely provided to defendants the information contemplated by the contract (*i.e.*, Operator's Manual), and that it has not received any valid court orders requiring CMI to produce any other information. CMI further affirmatively asserts and alleges that there is no documentation or copyrightable material conceived or originated under the contract, and that CMI is the sole owner of the computer source code in issue. CMI further affirmatively asserts and alleges that, although it is not required to do so by the contract, CMI has repeatedly

offered to make its proprietary trade secret source code available pursuant to an appropriate Non-Disclosure Agreement and Protective Order.

2.      CMI lacks sufficient information to form a belief as to the truth of the general allegations in Paragraph 2 of the Complaint.  CMI affirmatively asserts and alleges that because there is no copyrightable work that was conceived or originated under the contract, nothing in the "plain language of the contract" requires CMI to produce its proprietary trade secret source code to the State or defendants in State proceedings.

## PARTIES

3.      Upon information and belief, admit.

4.      Admit that CMI is a Kentucky corporation with its headquarters located in Owensboro, Kentucky.  CMI denies that it discontinued its relationship with National Registered Agents and affirmatively asserts and alleges that the State, in fact, did serve CMI with the Summons and Complaint *in this case* by serving National Registered Agents on March 5, 2008 (even though the Summons is addressed to the Minnesota Secretary of State).  Moreover, CMI affirmatively asserts and alleges that it informed the State, by letter dated March 5, 2008, that National Registered Agents is and has at all times relevant been CMI's agent for service of process in Minnesota.

5.      Paragraph 5 of the Complaint states legal conclusions to which no responsive pleading is required.

6.      Paragraph 6 of the Complaint states legal conclusions to which no responsive pleading is required.

# FACTUAL BACKGROUND

7.      CMI lacks sufficient information to form a belief as to the truth of the factual allegations in Paragraph 7 of the Complaint; to the extent that Paragraph 7 states legal conclusions, no responsive pleading is required.

8.      CMI lacks sufficient information to form a belief as to the truth of the factual allegations in Paragraph 8 of the Complaint; to the extent that Paragraph 8 states legal conclusions, no responsive pleading is required.

9.      CMI admits that, at the State's request and with its knowledge and approval, the Intoxilyzer instrument has been configured to conform with the State's specifications; CMI admits that the Intoxilyzer instrument has been approved, by the administrative rule, by the Minnesota Commissioner of the Department of Public Safety.

10.     CMI lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint.

11.     CMI admits that the State issued a Request for Proposal ("RFP") in or about 1996, affirmatively alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith.  CMI lacks sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 11 of the Complaint.

12.     CMI admits that the language block-quoted in Paragraph 12 of the Complaint is included in the RFP, and affirmatively alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is inconsistent therewith.   To the extent that Paragraph 12 of the Complaint states a legal conclusion, no

responsive pleading is required. To the extent the allegations in Paragraph 12 of the Complaint are inconsistent with, contrary to, or otherwise not addressed by the affirmative allegations herein, CMI denies the same.

13. CMI admits that that the language block-quoted in Paragraph 13 of the Complaint is included in the RFP, and affirmatively alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith. To the extent that Paragraph 13 of the Complaint states a legal conclusion, no responsive pleading is required. To the extent the allegations in Paragraph 13 of the Complaint are inconsistent with, contrary to, or otherwise not addressed by the affirmative allegations herein, CMI denies the same.

14. CMI affirmatively alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith. To the extent that Paragraph 14 of the Complaint states a legal conclusion, no responsive pleading is required. To the extent the allegations in Paragraph 14 of the Complaint are inconsistent with, contrary to, or otherwise not addressed by the affirmative allegations herein, CMI denies the same.

15. CMI admits that it submitted a response to the RFP in or about October 1996, and affirmatively alleges that CMI's response to the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith. To the extent that Paragraph 15 of the Complaint states a legal conclusion, no responsive pleading is required. To the extent the allegations in Paragraph

15 of the Complaint are inconsistent with, contrary to, or otherwise not addressed by the affirmative allegations herein, CMI denies the same.

16. CMI admits that it submitted a sample cover letter, Confidentiality Agreement, and affidavit, with its response to the RFP and denies the remaining allegations in Paragraph 16 of the Complaint. CMI affirmatively asserts and alleges that CMI's correspondence to the State in response to the RFP expressly limited the "information" to be produced under and pursuant to its sample Confidentiality Agreement to CMI's Operator's Manual.

17. CMI admits that the State accepted CMI's proposal and awarded it the contract in or about January 1997. CMI admits that the State ordered that the instrument be configured to the State's specifications and on information and belief, that, so configured, it has been generally referred to by the State and others as the "Minnesota model." CMI denies that the Intoxilyzer 5000EN is the "Minnesota model," and affirmatively asserts and alleges that the Intoxilyzer 5000EN is not unique to Minnesota; rather, what the State calls the "Minnesota model" is the Intoxilyzer 5000EN configured in accordance with the State's specifications. CMI further affirmatively asserts and alleges that it has sold approximately 267 Intoxilyzer instruments in the State.

18. Deny. CMI affirmatively asserts and alleges that the actions of the instrument are determined, in part, by binary computer code contained in two Erasable Programmable Read-Only Memory ("EPROM") chips installed in each instrument. This binary code is derived from a program written in a "human readable" language that is commonly referred to as the source code.

19.     Paragraph 19 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent that Paragraph 19 contains factual allegations, CMI lacks sufficient knowledge to form a belief as to the truth of such allegations.

20.     Upon information and belief, admit.

21.     CMI lacks sufficient information to form a belief as to the truth of the allegation that the Commissioner began receiving demands for production of the source code in early 2006, admits that it has continuously maintained that its source code is a proprietary trade secret, and that the State has no ownership interest in or contractual right to the source code. CMI denies the remaining allegations in Paragraph 21 of the Complaint.  CMI affirmatively asserts and alleges that its proprietary source code has previously been recognized as a trade secret by the Florida Court of Appeals.  CMI further affirmatively asserts and alleges that in or about September 2007, CMI voluntarily changed its policy regarding the availability and has thereafter offered to produce the source code in response to a valid court order, subject to an appropriate Non-Disclosure Agreement and Protective Order that will protect CMI's valuable proprietary trade secrets.

22.     CMI lacks any information concerning the beliefs of the Minnesota BCA as alleged in the first sentence of Paragraph 22 of the Complaint, admits that source code review is not a generally accepted means of determining whether a scientific measuring instrument is fit for a particular purpose, and affirmatively asserts that source code review

is not an appropriate means to determine whether a particular instrument functions as represented by its manufacturer.

23.     Upon information and belief, CMI admits that the Commissioner of the Minnesota Department of Public Safety has been ordered to produce the source code, but lacks sufficient information to form a belief as to the truth of the allegations concerning the number of cases in which the Commissioner has been ordered to produce the source code. To the extent that the remaining allegations in Paragraph 23 state legal conclusions or the State's interpretation of court orders, CMI asserts that the court orders speak for themselves and that such allegations constitute legal conclusions to which no responsive pleading is required.  CMI affirmatively asserts and alleges that district courts in Minnesota have ordered the State to produce the source code, at least in part, as a result of the State's erroneous claim of ownership of all or some part of the source code.  CMI further affirmatively asserts and alleges that it has not been a party to any action in which a Minnesota district court purportedly "concluded that the source code is either owned by the State or within its 'control' because of the State's contract with CMI," and that no Minnesota district court has, or indeed could, properly reach such a conclusion without CMI's presence as a party and without an analysis of copyrightability, work for hire, and contract interpretation.

24.     CMI lacks sufficient information to form a belief as to the truth of the allegations concerning when the BCA first requested the source code or first began receiving orders for production of the source code. To the extent that the allegations in Paragraph 24 contain legal conclusions, no responsive pleading is required.   CMI

affirmatively asserts and alleges that CMI is the sole owner of the source code and that the source code is a proprietary trade secret. CMI denies that it has refused to produce the source code under any circumstances. CMI admits that the State has requested a copy of the source code and that CMI has not produced the source code in response to such requests, but affirmatively asserts and alleges that CMI has offered to produce the source code subject to an appropriate Non-Disclosure Agreement and Protective Order that will protect CMI's valuable proprietary trade secrets.

25. CMI lacks sufficient information to form a belief as to the truth of the allegations concerning when or for how long the Commissioner has received orders for production. CMI admits that the State has requested a copy of the source code and that CMI has not produced the source code in response to such requests. CMI admits that since in or about September 2007, it has offered to produce the source code subject to an appropriate Non-Disclosure Agreement and judicially executed Protective Order.

26. CMI admits that the Non-Disclosure Agreement and Protective Order it requires to protect its valuable proprietary trade secret source code is longer and more comprehensive than the Confidentiality Agreement submitted with the RFP, which was limited to the provision of a copy of CMI's Operator's Manual. CMI affirmatively asserts and alleges that the Non-Disclosure Agreement and Protective Order CMI requires to protect its valuable proprietary trade secret source code is adequate and reasonable for that purpose. CMI further affirmatively asserts and alleges that it would suffer irreparable harm should its source code be publicly disclosed.

27.     CMI lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint.  CMI affirmatively asserts and alleges that a number of Minnesota defendants have executed CMI's proposed Non-Disclosure Agreement for the source code and a number of Minnesota district courts have executed CMI's proposed Protective Order.  CMI further affirmatively asserts and alleges that other confidentiality agreements and/or protective orders proposed by Assistant Attorneys General and various Minnesota district courts would not reasonably and adequately protect CMI's valuable proprietary trade secrets.

28.     Deny.  CMI affirmatively asserts and alleges that it has never failed or refused to honor the Confidentiality Agreement submitted with its response to the RFP when a criminal defendant sought a copy of CMI's Operator's Manual.  CMI admits that the State has proposed alternative protective orders but denies that the proposed alternative protective orders would reasonably or adequately protect CMI's valuable proprietary trade secret source code.  CMI admits that it does not agree to use the Confidentiality Agreement submitted with its response to the RFP for production of its proprietary, trade secret source code and affirmatively asserts and alleges that the Confidentiality Agreement submitted with CMI's response to the RFP was expressly limited to use by defendants in criminal proceedings seeking a copy of CMI's Operator's Manual.

29.     CMI denies that it has raised arbitrary and unreasonable financial barriers to access to its source code, admits that it has required that it be reimbursed its cost of production, admits that it has detailed its cost of production in a letter to the State, admits

that the Kentucky Court of Appeals issued a non-final opinion in a matter captioned *House v. Commonwealth of Kentucky*, 2008 WL 162212 (Ky. Ct. App. Jan. 18, 2008), and affirmatively asserts that the opinion speaks for itself. CMI further asserts that the opinion is subject to review, and as a non-final opinion, it cannot be cited under Kentucky law. To the extent that the allegations in Paragraph 29 contain legal conclusions, no responsive pleading is required.

30. CMI lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint.

## COUNT I: BREACH OF CONTRACT

31. CMI realleges each and every allegation, statement and thing set forth in the paragraphs above.

32. CMI admits that the RFP contains an assignment provision concerning copyrightable material originating or arising under the contract, affirmatively asserts and alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith. To the extent that the Paragraph 32 contains a legal conclusion, no responsive pleading is required. CMI further affirmatively asserts and alleges that no copyrightable material originated or arose under the contract.

33. Deny. CMI affirmatively asserts and alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith. To the extent that the Paragraph 33 contains a legal conclusion, no responsive pleading is required. CMI further affirmatively asserts and alleges that the

works for hire provision of the contract is expressly limited to circumstances where applicable, no such circumstances exist or have been alleged to exist here, and no copyrightable material originated or arose under the contract.

34.     Deny.  CMI affirmatively asserts and alleges that the so-called "Minnesota model" of the instrument consists of the Intoxilyzer 5000EN configured to the State's specifications.  CMI further affirmatively asserts and alleges that the configuration of the Intoxilyzer 5000EN to the State's specifications consisted of applying preexisting configuration options and did not cause or result in the creation or origination of any copyrightable material arising under the contract.

35.     Deny.  CMI affirmatively asserts and alleges that the contract speaks for itself and must be read and interpreted as a whole.  To the extent that the allegations in Paragraph 35 constitute a legal conclusion, no response is required.

36.     Deny.

37.     Deny.

## COUNT II: COPYRIGHT INFRINGEMENT

38.     CMI realleges each and every allegation, statement and thing set forth in the paragraphs above.

39.     CMI admits that the RFP contains an assignment provision concerning copyrightable material originating or arising under the RFP, and further affirmatively asserts and alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith.  To the extent that the Paragraph 39 contains a legal conclusion, no responsive pleading is

required. CMI further affirmatively asserts and alleges that no copyrightable material originated or arose under the contract.

40.    CMI admits that the RFP contains a works for hire provision, and further affirmatively asserts and alleges that the RFP speaks for itself and must be read and interpreted as a whole, and denies any allegation that is contrary to or inconsistent therewith.  To the extent that the Paragraph 40 contains a legal conclusion, no responsive pleading is required. CMI further affirmatively asserts and alleges that no copyrightable material and no work for hire, as that term is defined under the U.S. Copyright Act, originated or arose under the contract.

41.    Deny.  CMI affirmatively asserts and alleges that the so-called "Minnesota model" of the instrument consists of the Intoxilyzer 5000EN configured to the State's specifications.  CMI further affirmatively asserts and alleges that the configuration of the Intoxilyzer 5000EN to the State's specifications consisted of applying preexisting configuration options and did not cause or result in the creation or origination of any copyrightable material arising under the contract.

42.    Deny.

43.    Deny.

## COUNT III: BREACH OF CONTRACT

44.    CMI realleges each and every allegation, statement and thing set forth in the paragraphs above.

45.    Deny.  CMI affirmatively asserts and alleges that it offered to provide limited information to attorneys representing persons charged with crimes.  CMI further

affirmatively asserts and alleges that it expressly limited this information to a copy of its Operator's Manual, as stated in correspondence submitted with CMI's response to the RFP, and as has been its practice throughout the history of its relationship with the State, and its practice throughout the U.S. CMI further affirmatively asserts and alleges that it did not, and would not, agree to provide its proprietary trade secret source code to Minnesota litigants without appropriate protection in the form of a Non-Disclosure Agreement and Protective Order drafted specifically for that purpose.

46.     Upon information and belief, admit that the Commissioner has received orders from some district courts directing the State to produce the source code, and affirmatively assert and allege that many other district courts have denied defendants' motions to compel and refused to order the State to produce the source code.

47.     Deny. CMI affirmatively asserts and alleges that it has not received a valid order from any Minnesota district court ordering CMI to produce the source code; CMI further affirmatively asserts and alleges that it has nonetheless repeatedly offered to produce the source code subject to an appropriate Non-Disclosure Agreement and Protective Order to protect its valuable proprietary trade secrets.

48.     Deny. CMI affirmatively asserts and alleges that it has not received a valid order from any Minnesota district court ordering CMI to produce the source code; CMI further affirmatively asserts and alleges that it has nonetheless repeatedly offered to produce the source code subject to an appropriate Non-Disclosure Agreement and Protective Order to protect its valuable proprietary trade secrets.

49.     Deny.

## COUNT IV: BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

50.    CMI realleges each and every allegation, statement and thing set forth in the paragraphs above.

51.    Deny.

52.    Deny.

53.    Deny.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses in the above-referenced matter, CMI hereby states and alleges as follows:

54.    The Complaint fails to state a claim upon which relief can be granted.

55.    The Complaint is barred by the terms of the contract between the parties.

56.    The Complaint is barred by CMI's complete performance under the contract.

57.    The State is not entitled to any remedy because CMI is the sole owner of the source code.

58.    The Complaint may be barred by the doctrines of waiver, estoppel, or laches.

59.    The Complaint may be barred by the applicable statutes of limitations.

60.    CMI has complied with all terms of the contract to which it is obligated to perform.

61.     CMI is not presently able to determine all of the affirmative defenses which it is entitled to assert, and may later determine that there are additional affirmative defenses which are applicable in this case, including but not limited to those defenses enumerated or contemplated by Rule 8(c) of the Federal Rules of Civil Procedure. CMI reserves the right to supplement this Answer and to add any additional affirmative defenses to the State's Complaint.

## CMI'S COUNTERCLAIMS FOR DECLARATORY JUDGMENT

### The Parties

62.     Nominal Plaintiff Michael Campion is the Commissioner of the Minnesota Department of Public Safety. The Plaintiff in Interest is the State of Minnesota (the "State").

63.     Defendant CMI of Kentucky, Inc. ("CMI") is a Kentucky corporation with its principal place of business in Owensboro, Kentucky.

64.     CMI is a recognized leader in the manufacture, sale, and support of breath alcohol testing products to law enforcement professionals and other users around the world. Its Intoxilyzer brand of breath alcohol testing instruments utilizes infrared spectrometry to detect and analyze the presence of alcohol in a subject's system. CMI's Intoxilyzer instrument, including the source code, has been approved by the National Highway Transportation Safety Administration. CMI sells its breath alcohol testing equipment throughout the U.S. and around the world.

## The Contract

65.     In or about late 1996, CMI responded to a Request for Proposal ("RFP") issued by the State seeking bids for the sale of breath alcohol testing equipment to the State and various counties and/or municipalities.

66.     In or about early 1997, the State awarded the contract to CMI, and since that time it has maintained over 200 CMI instruments that are configured to the State's specifications.   CMI's already existing Intoxilyzer 5000EN model was configured to meet the State's needs and specifications.   The model 5000EN, which, when configured to the State's specifications, may have been referred to anecdotally by the State and others as the "Minnesota model" has been referred anecdotally by CMI and others as the "Minnesota instrument."

67.     The configuration of the model 5000EN to conform to the State's specifications did not require or result in the creation or origination of any copyrightable material arising under the contract.   In its response to the RFP, CMI informed the State that the options requested by the State already existed in the instrument or were in the final stages of design independent of the RFP.

68.     Pursuant to statute and case law, the results of a test administered by a "Minnesota instrument" Intoxilyzer 5000EN instrument are presumptively reliable, and the instrument has been approved by the Commissioner, by administrative rule, after appropriate validation testing.   Nonetheless, on information and belief, individuals facing criminal charges or civil action in Minnesota in a case in which Intoxilyzer 5000EN test results provide evidence for the State are given access to a broad range of information

about the instrument, including the test record, usage and maintenance records of the actual instrument in question, the results of prior validation studies, and physical access to the instrument itself.

69.     Pursuant to the contract, CMI also agreed to make its Owner's Manual available to criminal defendants, subject to a very brief, one-half page Confidentiality Agreement. CMI has historically limited its disclosure of information to defendants to its Owner's Manual and used the same Confidentiality Agreement for that purpose throughout the U.S.

## The Source Code

70.     The source code is, in layperson's terms, a computer program that has been written in a "human readable" language. The same source code operates in all of the "Minnesota instruments." In printed form, the source code consists of approximately 50,000 lines of written code comprising over 1,000 pages of print. It has been estimated that it would take a qualified professional several months or more to review and analyze the complete source code.

71.     The source code is complex technical information that is highly valuable to CMI. It represents the culmination of dozens of years' of engineering effort and a substantial commitment of assets and resources. CMI regards the source code as one of its most valuable assets.

72.     Accordingly, CMI carefully guards its proprietary source code. As noted, it has historically not been made available outside the company. Even within CMI, access to the source code is carefully restricted to only those individuals who require access to

the source code in the performance of their duties. Not even the president of CMI has direct access to the source code. Moreover, access is further protected on a user and password basis. All CMI employees who may obtain access to the source code are required to execute a confidentiality agreement. At least one state's court of appeals has acknowledged that the source code is a trade secret.

## The Motions to Compel Production of the Source Code

73. In or about 2006, certain Minnesota defendants facing criminal prosecution or civil suits that involved Intoxilyzer test evidence began seeking access to the instrument's underlying source code through discovery in litigation. The State has typically opposed such motions to compel, arguing that the State does not have custody of or possess the source code, and that it is not properly discoverable under the Minnesota Civil and Criminal Rules of Procedure. In some cases, the State has erroneously asserted that it owns all or some part of the source code.

74. The majority of district courts in Minnesota have deemed the source code to be not discoverable and denied motions seeking an order compelling the State to produce the source code; however, a distinct minority of district courts have held that the source code is discoverable and ordered the State to produce it. Some of those courts have invited defendants to move for sanctions, including the exclusion of the Intoxilyzer evidence, if the State fails to produce the source code.

75. Those courts that have ordered the State to produce the source code have not properly analyzed the issues of copyrightability and ownership. Moreover, because CMI has not been a party to those actions, its interests in the contract and in its valuable

intellectual property have not been adequately represented before those courts. Accordingly, the issue of contract interpretation has also not been adequately litigated.

76.     Nor have those courts acknowledged or addressed the substantial risk of harm to the State's testing program that would follow from dissemination of the source code without appropriate controls.   The source code contains pass codes and communication protocols for instrument operation.   These pass codes limit access to menu functions used by authorized technicians to calibrate, test, and configure the instruments.  Making the source code publicly available would jeopardize the security of the State's program, as anyone with knowledge of the source code would have the ability to recalibrate, reconfigure, or disable one or more of the State's Intoxilyzer instruments, either directly or remotely.

77.     Because the State does not have possession or custody of, or control over, the source code, and does not own any part of the source code, it has not produced the source code to any criminal or civil defendants.

78.     Despite the inconsistency in district court decisions regarding the discoverability of the source code and the many favorable decisions holding the source code to be non-discoverable, the State has challenged few, if any, of the adverse discovery orders.

**The Instant Dispute**

79.     In or about 2007, the State began requesting that CMI voluntarily produce the source code.  Because the source code is highly valuable proprietary and trade secret

intellectual property, CMI initially declined to produce it to the State or individual defendants in Minnesota or anywhere else in the world.

80.    In an attempt to balance its need to protect its highly valuable proprietary trade secrets with its desire to serve the needs of its customers, CMI revised its policy in or about September 2007.    Since then, CMI has voluntarily offered to make its proprietary trade secret source code available subject to appropriate protection in the form of a Non-Disclosure Agreement and Protective Order.    CMI's long term viability depends on protecting its proprietary trade secret source code.    If it were to become publicly available, it could be easily "pirated" or copied by unscrupulous competitors, actual or potential, particularly in emerging foreign markets.    If that were to happen, CMI would suffer incalculable and irreparable harm.

81.    For more than ten years, from the onset of the contract in January 1997 until just recently, the State never asserted any ownership interest in the source code. Now, in response to motions seeking to compel the State to produce the source code, the State has taken the factually and legally erroneous position that it owns all or some part of the source code.

82.    The RFP, which, together with CMI's response, generally form the basis of the contract between the State and CMI, states that:

All right, title, and interest in all ***copyrightable*** material which [CMI] shall ***conceive or originate***, either individually or jointly with others, and ***which arises out of the performance of this Contract***, will be the property of the State and are by this Contract assigned to the State along with ownership of any and all copyrights in the copyrightable material.  (Emphasis added.)

83. To be copyrightable, a computer program or other work must be reduced to a tangible medium and be sufficiently original in conception.

84. The configuration of the Intoxilyzer 5000EN to the State's specifications under the contract did not result in the conception or creation of any original work. Thus, the configuration of the instrument for use in Minnesota did not create any "copyrightable material" arising out of the contract.

85. Because the configuration is not a copyrightable work, it also does not constitute a "work for hire" under either the U.S. Copyright Act or the contract. Moreover, to constitute a work for hire, the source code would have to have been created by an employee in the scope of his or her employment, or alternatively, as a contribution to a collective work, a motion picture or other audiovisual work, a translation, supplementary work, compilation, instructional text, test, test answer material, or an atlas. None of those applies in this case.

86. For each of these reasons, the State has no ownership interest in any part of CMI's proprietary trade secret source code, either by way of assignment or as a "work for hire."

87. CMI has not been a party in any of the actions in which a Minnesota district court ordered the State to produce the source code, and its ownership rights and interests have never been represented in such cases; moreover, the issues of contract interpretation, copyrightability, and work for hire have never been litigated and CMI has never had an opportunity to defend its interests in such cases.

88.     The RFP also contains a clause which calls for CMI to provide certain information to attorneys representing individuals charged with crimes in Minnesota.  This clause is triggered only by an order from the court with jurisdiction over the case.  Notably, the term "information" is not defined.

89.     CMI has never received a valid court order from a Minnesota court of competent jurisdiction ordering CMI to produce the source code.

90.     Moreover, in its proposal to the RFP, and particularly in response to this clause, CMI directly addressed this requirement by providing the State with a sample cover letter to attorneys requesting information, a brief Confidentiality Agreement, and an affidavit to be executed by the requesting attorney.  These documents expressly indicated that the information CMI would provide to individual defendants was limited to CMI's Operator's Manual.  This is and has been CMI's standard practice on a worldwide basis, and it has used these forms for that purpose since before the State awarded the contract to CMI.

91.     When the State awarded the contract and for ten years thereafter—until this action arose—the State never objected to CMI's express limitation of the information to be provided to its Operator's Manual.  In fact, CMI has offered to produce its Operator's Manual in response to each such request.  The State never objected to CMI's provision of only its Operator's Manual to individual defendants, and until now, never asserted that this clause in the RFP required CMI to turn over its proprietary, trade secret intellectual property to individual defendants.

**CMI's Attempts to Work With the State and Individual Defendants**

92.     Though the source code belongs solely to CMI and is CMI's highly valuable proprietary trade secret intellectual property, CMI has sought in good faith to work with the State and with individual defendants to resolve the underlying problem.

93.     CMI has offered to produce the source code to the State or to individual defendants pursuant to a suitable Non-Disclosure Agreement and Protective Order that will protect CMI's valuable property interests while allowing defendants access to the source code.  The State has accepted and executed CMI's proposed Non-Disclosure Agreement and Protective Order in three cases, but now purports to reject the Non-Disclosure Agreement and Protective Order.

94.     Some state district courts have also refused to execute CMI's proposed Protective Order.  Some courts have refused to acknowledge CMI's interests because it is not a party to the matter before the court; other courts have drafted *ad hoc* protective orders that would not adequately protect CMI's interests.

**COUNT I -- Declaratory Judgment of Ownership**

95.     CMI restates the allegations in paragraphs 62 through 94 as if set forth fully herein.

96.     The State has asserted an ownership interest in some or all of CMI's proprietary source code.

97.     Pursuant to the parties' contract, the State is only assigned and vested with an ownership interest in "copyrightable material" conceived or originated under, and arising out of, the contract.

98.     In configuring the Intoxilyzer 5000EN to the State's specifications under the contract, CMI did not create any copyrightable source code material.  Thus, the State has no ownership interest in any copyrightable material and the configuration of the instrument is not a work for hire under the U.S. Copyright Act.  Therefore, no ownership interest in any source code has vested in the State.

99.     A current, ripe, and justiciable dispute and controversy exists between and among the parties and is fully susceptible to judicial resolution.

100.    It is just and appropriate that this Court declare and adjudge that CMI is the sole owner of its proprietary source code.

**COUNT II – Declaratory Judgment That the Source Code is a Trade Secret**

101.    CMI restates the allegations in paragraphs 62 through 100 as if set forth fully herein.

102.    CMI's proprietary source code consists of valuable commercial information in the form of a computer program.

103.    CMI's proprietary source code derives both actual and potential independent economic value from the fact that it is not generally known to, and not generally ascertainable by proper means by, others who could obtain economic value from its disclosure or use.

104.    CMI has continuously exercised reasonable efforts to protect and maintain the secrecy of its proprietary source code.  CMI would suffer irreparable harm if its proprietary source code became publicly available.

105.    A current, ripe, and justiciable dispute and controversy exists between and among the parties and is fully susceptible to judicial resolution.

106.    It is just and appropriate that this Court declare and adjudge that CMI's proprietary source code is a trade secret as that term is defined in the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01, et seq.

## PRAYER FOR RELIEF

WHEREFORE, CMI respectfully prays that the Court enter judgment in its favor and against the State as follows:

1.    Declaring and adjudging that CMI is the sole owner of the source code and that State has no ownership interest in the source code;

2.    Declaring and adjudging that CMI's source code constitutes a trade secret in accordance with the Minnesota Uniform Trade Secrets Act;

3.    Dismissing the State's Complaint in its entirety, with prejudice, on the merits, and at its cost; and

4.    Granting CMI all other just and appropriate relief to which the Court deems it to be entitled.

Dated:  April 9, 2008                    WINTHROP & WEINSTINE, P.A.

                                         By:   s/William A. McNab
                                              David M. Aafedt, MN #27561X
                                              William A. McNab, MN #320924

                                              Suite 3500
                                              225 South Sixth Street
                                              Minneapolis, Minnesota 55402-4629
                                              Tel:  (612) 604-6400
                                              Fax: (612) 604-6800
                                              daafedt@winthrop.com
                                              wmcnab@winthrop.com

                                              *Attorneys for Defendant CMI of Kentucky, Inc.*

3719518v1

- 25 -