UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br>           Plaintiff,<br><br>vs.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br>           Defendant,<br><br>and<br><br>Robert Bergstrom, Craig<br>Zenobian, Shane Steffensen, and<br>Christopher Jacobsen,<br>           Applicants. | Civil Case No. 08-603 (DWF/AJB)<br><br><br>**PLAINTIFF'S MEMORANDUM<br>OPPOSING APPLICANTS'<br>MOTION TO INTERVENE** |

### INTRODUCTION

On June 6, 2008, Robert Bergstrom, Craig Zenobian, Shane Steffensen, and Christopher Jacobsen (collectively "Applicants") filed a Motion to Intervene in the above-referenced matter pursuant to Fed. R. Civ. P. 42(a). Specifically, Applicants allege that they are entitled to mandatory intervention based on orders from state district court judges granting them access to the source code for the Intoxilyzer 5000EN, the primary focus of this litigation between Plaintiff (the "State") and CMI of Kentucky, Inc. ("CMI"). Applicants claim that their interests in the source code cannot be adequately

protected by the State and if they are not allowed to intervene in this case, their interests will be impaired or impeded.

As will be discussed more fully below, the State submits that Applicants' Motion is procedurally flawed due to untimeliness and lacking substance based on Applicants' failure to demonstrate how their interests are not adequately represented by the State in this litigation. In addition, substantial evidences shows the request for intervention is based on improper motives. Accordingly, the Court should deny Applicants' Motion to Intervene.

**BACKGROUND**

This litigation is the end result of more than two years of negotiation between the State and CMI regarding access to the "source code" for the computer software used by the Intoxilyzer 5000EN, the breath-testing instrument used by law enforcement agencies throughout Minnesota to investigate and prosecute driving while impaired ("DWI") offenses in civil and criminal cases. By a contract awarded in January 1997, the State bought a fleet of Intoxilyzer 5000EN instruments from CMI. Prior to deploying the Intoxilyzer 5000EN into the field for use by law enforcement agencies across Minnesota, both CMI and the State conducted extensive validation testing and concluded that the instrument provided consistently reliable measurements of a test subject's breath alcohol concentration. The Intoxilyzer 5000EN along with its most current version of computer software (Version 64) has been used in Minnesota since 2005, performing approximately 70,000 to 80,000 breath tests statewide.

The issue of access to the source code first arose in early 2006, when the State began receiving demands for production of the source code for the Intoxilyzer 5000EN from individuals arrested for DWI. Despite objections by the State, several state district court judges have ordered the State to produce the source code in various DWI-related proceedings. Therefore, the State requested that CMI provide a copy of the source code to satisfy litigation demands.

Although the State and CMI engaged in extensive negotiations, the parties have been unable to reach mutually acceptable terms. Therefore, the State filed its Complaint against CMI in this case on March 3, 2008. In the Complaint, the State asserted two separate contract claims, seeking "an order for specific performance directing that CMI provide the State with a copy of the source code . . . ." *See* Complaint ¶¶ 37, 49. In addition, the State asserted a copyright infringement claim, noting that "the State wishes to make the source code reasonably available to Minnesota litigants, but Defendant CMI's unlawful and bad-faith conduct has thus far prevented the State from reproducing and distributing the source code in this manner." *See* Complaint ¶ 42. Notably, the State has asked the Court to order "Defendant CMI to provide Minnesota litigants with copies of the complete source code to the Minnesota model of the Intoxilyzer 5000EN, provided that those litigants have first obtained a court order directing production . . . ." *See* Complaint at 17.

CMI filed its Answer to the Complaint on April 9, 2008, denying the State's allegations and asserting a counterclaim for a declaratory judgment. On May 20, 2008, both parties attended a pretrial conference. On that same date, the Honorable Magistrate

Judge Arthur J. Boylan issued a Pretrial Scheduling Order that required, among other things, all motions to amend or add parties be served before June 1, 2008. In addition, the Pretrial Scheduling Order set a settlement conference on June 27, 2008.

On June 6, 2008, Applicants filed a Motion to Intervene in this case pursuant to Fed. R. Civ. P. 42(a). *See* Applicants' Mot. at 1. Specifically, Applicants allege that they are entitled to mandatory intervention based on orders from state district court judges giving them access to the source code for the Intoxilyzer 5000EN. *See* Applicants' Complaint ¶¶ 23-30. Applicants claim that their interests in the source code cannot be adequately protected by the State and if they are not allowed to intervene in this case, their interests will be impaired or destroyed. *See* Applicants' Mot. at 2. In the end, Applicants are asking the Court to order "Plaintiff State of Minnesota, as the rightful owner of the source code to the Intoxilyzer 5000EN, to provide all [Applicants] with a complete copy of the source code to the Minnesota Model of the Intoxilyzer 5000EN . . . . *See* Applicants' Complaint at 12.

## ARGUMENT

**I.   APPLICANTS' MOTION TO INTERVENE IS UNTIMELY.**

Pursuant to Fed. R. Civ. P. 24(a), a request for mandatory intervention must be made "upon timely motion" to the court. Therefore, the requirement of timeliness applies to any intervention motion. *See McClain v. Wagner Elec. Corp.,* 550 F.2d 1115, 1120 (8th Cir. 1977). Although not specifically defined within the text of Rule 24, "the timeliness of intervention is to be judged by two criteria: (1) the length of time during which the proposed intervenor has known about his interest in the suit without acting, and

4

(2) the harm or prejudice that results to the rights of other parties by delay." *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1125 (5th Cir. 1970). Ultimately, a decision on timeliness is left to the court's discretion.

In this case, Applicant's Motion to Intervene is untimely for two specific reasons. First, Applicants failed to file their Motion to Intervene within the express deadline set by the Court in the Pretrial Scheduling Order for this case. After more than two years of negotiation and discussion regarding requests for the Intoxilyzer 5000EN source code in Minnesota, the State filed its Complaint against CMI on March 3, 2008. After CMI filed its Answer on April 9, 2008, the parties submitted a Rule 26(f) report and then attended a Pretrial Conference on May 20, 2008. On that same date, the Court issued a Pretrial Scheduling Order requiring, among other things, all motions to amend or add parties be served before June 1, 2008. Despite extensive knowledge of the source code issue,[1] the initiation of this federal litigation,[2] and the corresponding Pretrial Scheduling Order, Applicants filed their Motion to Intervene on June 6, 2008, five days after the deadline for filing had expired. Therefore, Applicants Motion to Intervene is untimely.

---

[1] Notably, three of the four state district court orders being proffered by Applicants as a legal basis for their interests are dated several months prior to date of filing for the Complaint. Specifically, Applicant Bergstrom's Order is dated October 17, 2007; Applicant Zenobian's Order is dated December 18, 2007; and Applicant Steffensen's Order is also dated December 18, 2007. *See* Applicants' Complaint Exs. D-F.

[2] Applicants' counsel had knowledge of this litigation and contemplated intervention from the outset, as evidence by his statements to a reporter from the local legal publication *Minnesota Lawyer* on March 17, 2008. *See* Gratz Aff. Ex. 1.

5

Second, Applicants' request for intervention is untimely based on the prejudicial delay it creates in this case. Both the State and CMI have already met on several occasions to decide on a proposed discovery schedule and negotiate potential settlement terms for this litigation. In addition, the parties have already appeared before the Court for a Pretrial Conference and a Settlement Conference. Notably, substantial progress has been made in negotiating a possible settlement. The State considers a speedy resolution granting litigants access to the source code to be a top priority. Allowing intervention by Applicants at this point would unduly delay and prejudice any resolution. *See, e.g., Kassover v. Computer Depot, Inc.,* 691 F.Supp. 1205, 1210 (D. Minn. 1987) (intervention motion denied based on prejudice caused by applicant joining lawsuit after substantial discovery had already been completed for dispositive motion and intervention would have caused undue delay). Therefore, such prejudice and potential delay makes Applicants' Motion to Intervene untimely.

Based on Applicants' failure to file their Motion to Intervene within the express deadline set by the Court in the Pretrial Scheduling Order and the significant commitment made by the parties in pursuing efficient litigation or resolution in this case, the request for intervention is untimely. Accordingly, the Court should deny Applicants' Motion.

## II. APPLICANTS DO NOT QUALIFY FOR MANDATORY INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(A).

Even if the Court determines that Applicants' Motion is timely, it should still be denied on the merits. Absent statutory authority granting the right to intervene, an applicant for mandatory intervention pursuant to Fed. R. Civ. P. 24(a)(2) must satisfy all

three of the following criteria: (1) the applicant must have an interest in the subject matter of the litigation; (2) the applicant's interest will be impaired or destroyed absent intervention; and (3) the existing parties to the action inadequately represent the applicant's interest. *See United States v. Union Elec. Co.,* 64 F.3d 1152, 1161 (8th Cir. 1995). For the sake of this argument, the State concedes that Applicants have direct and legally protectable interests in the litigation based on the state district court orders granting them access to the source code for the Intoxilyzer 5000EN. *See* Applicants' Complaint Exs. D-F. However, the State submits that Applicants cannot satisfy the other two criteria to establish mandatory intervention under Rule 24. First, Applicants' interests in gaining access to the source code are identical to the relief already sought by the State in this litigation. Second, Applicants' interests will not be impaired or destroyed if intervention is denied. Accordingly, the Court should deny Applicants' request for mandatory intervention pursuant to Rule 24(a).

> **A.  Applicants' Interests In Gaining Access To The Source Code Are Identical To The Relief Already Sought By The State In This Case.**

When requesting mandatory intervention, the applicant bears the burden of showing that the existing parties inadequately represent his or her interests in the action. *See Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 (1972). Although the burden is minimal, the applicant must make an affirmative showing of inadequacy. *See South Dakota ex rel. Barnett v. United States Dept. of Interior,* 317 F.3d 783, 786 (8th Cir. 2003) (Indian tribe failed to prove that it was inadequately represented by United States when tribe did not set out any specific interests that United States would

7

not protect or could be protected only through intervention). The interests of a private citizen applicant can be adequately advanced by a governmental party. *See Little Rock Sch. Dist. v. North Little Rock Sch. Dist.*, 378 F.3d 774, 780-81 (8th Cir. 2004) (applicants did not meet minimal burden when their positions on the merits had been advanced by the governmental party). In fact, the doctrine of *parens patriae* gives a governmental entity acting in its representative capacity the rebuttable presumption of adequacy. *See Curry v. Regents of Univ. of Minn.,* 167 F.3d 420, 423 (8th Cir. 1999). This presumption recognizes that acting in a representative capacity through litigation is a basic government function and individual citizens should not always be allowed to intervene to assert individual points of view. *See id.*

In this case, the relief sought by Applicants is identical to the relief sought by the State. Specifically, the State has asserted two separate contract claims, seeking "an order for specific performance directing that CMI provide the State with a copy of the source code . . . ." *See* Complaint ¶¶ 37, 49. In addition, the State has also asserted a copyright infringement claim, noting that it "wishes to make the source code reasonably available to Minnesota litigants, but Defendant CMI's unlawful and bad-faith conduct has thus far prevented the State from reproducing and distributing the source code in this manner." *See* Complaint ¶ 42. Notably, the relief sought by the State in the Complaint asks the Court to order "Defendant CMI to provide Minnesota litigants with copies of the complete source code to the Minnesota model of the Intoxilyzer 5000EN, provided that those litigants have first obtained a court order directing production . . . ." *See* Complaint at 17. Based on the identical nature of this relief to that sought by Applicants, the State's

8

representation of Applicants' interests is adequate. *See City of Stilwell v. Ozarks Rural Electric Coop. Corp.,* 79 F.3d 1038, 1042 (10th Cir. 1996) (intervention denied because objective of applicants identical to existing parties although motivation for lawsuit was different). Accordingly, the presumption of adequacy bestowed on the State when acting on behalf of Applicants is appropriate in this case.

Despite this, Applicants argue that because the State is "adverse to Applicants in criminal and civil Implied Consent proceedings," the State cannot provide them with adequate representation in this lawsuit. *See* Applicants' Mot. at 2. Specifically, Applicants point out that the positions taken by the State in state district court proceedings when the issue of source code is raised are contrary to the Applicants' position, which somehow negates any finding of adequacy. *See* Applicants' Mot. at 2-3. However, a disagreement in litigation strategy or the particulars of the relief sought does not rebut the presumption of adequate representation. *See Jenkins v. Missouri,* 78 F.3d 1270, 1275-76 (8th Cir. 1996) (minority students and parents could not intervene to argue that proper or better desegregation remedy was renovation of traditional schools rather than construction of new, magnet schools). Indeed, the State routinely objects to production of the source code in state district court cases in order to protect its litigation record and advance the goals of DWI prosecution both criminally and civilly. However, the proffered goal and relief sought in this litigation against CMI are markedly different. "[T]he State wishes to make the source code reasonably available to Minnesota litigants, but Defendant CMI's unlawful and bad-faith conduct has thus far prevented the State from reproducing and distributing the source code in this manner." *See* Complaint ¶ 42.

9

Therefore, the State's interest is not necessarily adverse to Applicants' interests in this case.

Based on the presumption of adequacy given to the State acting in its representative capacity in this case, as well as the fact that the State and Applicants seek identical relief, it is clear that the State can adequately represent Applicants' interests in this case. Accordingly, Applicants have not met their burden of showing inadequate representation in order to acquire mandatory intervention under Rule 24.

### B. Applicants' Interests Would Not Be Impaired Or Impeded By A Denial Of Intervention.

When requesting mandatory intervention, an applicant must also demonstrate that without intervention, disposition of the lawsuit may impair or impede the applicant's ability to protect his or her interest. *See United States v. Union Elec. Co.,* 64 F.3d 1152, 1158 (8th Cir. 1995). In this case, the only assertion by Applicants to show any possible impairment by a denial of intervention is their alleged standing as third-party beneficiaries to the contract between the State and CMI. *See* Applicants' Mot. at 2. Specifically, Applicants claim they "are so situated that disposition of this action without intervention will, or may as a practical matter, impair or destroy Applicants' ability to protect that interest." *See* Applicants' Mot. at 2. In addition to the arguments in the foregoing section, the State submits that Applicants' claim is conceptually flawed and procedurally awkward. Notably, Applicants failed to make any affirmative assertion to any alleged third-party beneficiary rights to the contract between the State and CMI in their underlying state district court cases. Not only did Applicants fail to take any

affirmative action to claim contractual rights to the source code in their state district court cases, such as requesting the issuance of a subpoena for CMI to acquire jurisdiction over the source code, but Applicants failed to even raise the claim or argument in their state court cases.[3] Accordingly, Applicants have arguably waived any alleged third-party beneficiary rights to intervene or otherwise be involved in this litigation.

Based on the fact that the relief sought by Applicants is identical to that already requested by the State, and Applicants' interests will not be impaired or destroyed if intervention is denied, it is clear that Applicants cannot meet their burden of showing that mandatory intervention pursuant to Rule 24(a) is warranted in this case. Accordingly, the Court should deny Applicants' Motion.

### III. APPLICANTS' MOTION TO INTERVENE IS BASED ON IMPROPER MOTIVES AND WILL THEREFORE UNDULY PREJUDICE ADJUDICATION OF THE RIGHTS OF THE ORIGINAL PARTIES IN THIS CASE.[4]

Finally, in exercising its discretion when considering a request for intervention, a court must consider whether the intervention will unduly delay or prejudice adjudication of the rights of the original parties. *See* Fed. R. Civ. P. 24(b)(3) (2006). Specifically, "courts must be on guard against the improper use of the intervention process." *Kozak v.*

---

[3] Moreover, Applicants arguably have additional avenues in their state court cases to pursue any claims now alleged in this litigation.

[4] According to their Motion, Applicants only seek mandatory intervention pursuant to Rule 24(a). *See* Applicants' Mot. at 1. Therefore, any subsequent request for permissive intervention under Rule 24(b) should be denied because it has not been raised with specificity. However, even if the Court considers whether permissive intervention is appropriate in this case, the State asserts all arguments contained within the foregoing sections of this memorandum as well as the following assertion highlighting the undue prejudice created by Applicants' position.

*Wells,* 278 F.2d 104, 113 (8th Cir. 1960). "The procedural rules [relating to intervention] are not to be taken advantage of where there is collusion or where the motion for leave to intervene is a sham or is a mere device to acquire federal jurisdiction or to avoid state jurisdiction." *Id.* When such "improper motives" in seeking intervention appear, the trial court should be wary to grant the request. *Edmondson v. Nebraska,* 383 F.2d 123, 128 (8th Cir. 1967).

In this case, intervention is not appropriate based on the improper motives for intervention. During the past few months, Applicants' counsel has continually made statements to local media and press organizations regarding potential intervention in this litigation, statements which expose the underlying improper motivations for filing Applicants' Motion. For example, when speaking with a reporter from the local legal publication *Minnesota Lawyer* in March 2008, Applicants' counsel Charles Ramsay stated "[i]magine what we could obtain through discovery" in talking about the advantages of intervening in this case. *See* Gratz Aff. Ex. 1. Furthermore, in a follow-up article published by the same publication, Applicants' counsel Mr. Ramsay is described as seeking "to have the State shut down its breath-testing program immediately." *See* Gratz Aff. Ex. 3. Finally, in an internet posting on his law firm's website, Applicants' counsel Mr. Ramsay accused the State and its counsel of encouraging "the cover-up of a fatally flawed breath machine" and declared intervention necessary to stop the State's counsel from using "this case for appearances only." *See* Gratz Aff. Ex. 4. Clearly, these statements made to local media and press publications by Applicants' counsel show that Applicants' Motion to Intervene is designed to abuse the discovery

process and otherwise obstruct this litigation with the goal of shutting down the State's breath-testing program instead of the stated goal of gaining access to the source code for the Intoxilyzer 5000EN. Allowing intervention by Applicants would therefore unduly prejudice and delay adjudication of the issues in this case. Accordingly, the Court should exercise its discretion and deny Applicants' Motion.

## CONCLUSION

In addition to the untimely nature of Applicants' request for intervention, they are not entitled to mandatory intervention under Fed. R. Civ. P. 24(a) because the relief already sought by the State adequately represents Applicants' interests in obtaining the source code for the Intoxilyzer 5000EN, and they have failed to show that such interests would be impaired or impeded without intervention. Therefore, the State respectfully requests that the Court deny Applicants' Motion to Intervene pursuant to Fed. R. Civ. P. 24. As an alternative to intervention, the State would not object to Applicants participating as amicus curiae in this litigation.

Dated: July 9, 2008.

LORI SWANSON
Attorney General
State of Minnesota


s/ Emerald A. Gratz
EMERALD A. GRATZ
Assistant Attorney General
Atty. Reg. No. 0345829

MARTIN A. CARLSON
Assistant Attorney General
Atty. Reg. No. 0299650

PETER D. MAGNUSON
Assistant Attorney General
Atty. Reg. No. 0209260

445 Minnesota Street, Suite 1800
St. Paul, MN 55101
Telephone: (651) 297-2040

ATTORNEYS FOR
PLAINTIFF STATE OF MINNESOTA

AG: #2268619-v1

14