UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>          Plaintiff,<br><br>vs.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>          Defendant,<br><br>and<br><br>Robert Bergstrom, Craig<br>Zenobian, Shane Steffensen, and<br>Christopher Jacobsen,<br><br>          Applicants. | Civil Case No. 08-603 (DWF/AJB)<br><br><br><br><br><br>**AFFIDAVIT OF<br>EMERALD A. GRATZ<br>IN SUPPORT OF<br>PLAINTIFF'S MEMORANDUM<br>OPPOSING APPLICANTS'<br>MOTION TO INTERVENE** |

STATE OF MINNESOTA )
                             ) ss.
COUNTY OF RAMSEY )

      Emerald A. Gratz, being first duly sworn, deposes and states that:

      1.     I am an Assistant Attorney General for the State of Minnesota and one of the attorneys representing Plaintiff State of Minnesota in the above-captioned matter.

      2.     In this capacity, I am attaching the following Exhibits in support of Plaintiff's Memorandum Opposing Applicants' Motion to Intervene:

      **Exhibit 1**:    Electronic copy of an article entitled "Defense Bar Weighs Impact of Intoxilyzer Suit Brought by State" from the print publication *Minnesota Lawyer*, dated March 17, 2008;

**Exhibit 2:** Electronic copy of an article entitled "Defense Attorney Says State Knew of Uneven Performance" from the print publication *Pioneer Press*, dated June 9, 2008;

**Exhibit 3:** Electronic copy of an article entitled "Brief: Defense Attorney to Intervene in Intoxilyzer Lawsuit" from the print publication *Minnesota Lawyer*, dated June 16, 2008; and

**Exhibit 4:** Copy of an internet posting entitled "Minnesota BCA Aware of Fatal Flaws in Breath Test Machine Software" posted as of July 2, 2008, on Applicants' counsel's website at www.ramsayresults.com.

EMERALD A. GRATZ

Subscribed and sworn to before me
this 9th day of July, 2008.

Notary Public



LYNNE M. ZIMMERMAN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2010

AG: #2269678-v1

# MINNESOTA LAWYER

Legal News

March 17, 2008

## Defense bar weighs impact of Intoxilyzer suit brought by state

by Barbara L. Jones

Some mull seeking to intervene.

The arguments made by the state in its recently announced lawsuit against the maker of the Intoxilyzer 5000 EN had a familiar ring to many local defense attorneys.

Defense lawyers have been arguing for more than a year that they need the device's source code in order to be able to gauge the machine's reliability. Until recently, the state resisted those requests, arguing the source code was irrelevant and, in any case, was not in the state's possession.

But a couple of weeks ago the state did an abrupt about face, filing a federal lawsuit against Kentucky-based CMI, the maker of the breath-test device, for damages and the source code. While the state says it still has faith in the reliability of the test, CMI's refusal to provide the source code "has placed the outcome of numerous impaired driving-related cases in jeopardy, has forced the State to incur substantial expenses, and may force the State to replace its entire existing fleet of evidentiary breath-testing instruments."

Judges in more than 100 Minnesota cases have reportedly found that defendants have the right to examine the code, but CMI has nonetheless refused to provide it, arguing it is proprietary.

While defense lawyers are glad to have the state as their new-found ally in their frustrating and so far fruitless quest to get access to the code, they may not be prepared to let the state make their arguments for them. Defense lawyers are considering intervening in the state's lawsuit so they can make their arguments themselves.

One of the source code cases has already been up to the state Supreme Court.

In State v. Underdahl, a Dakota County District Court judge last July ordered the commissioner of public safety to disclose the code. The commissioner then petitioned the Court of Appeals for a writ of prohibition to prevent enforcement of the order, arguing that the District Court exceeded its jurisdictional authority and ordered production of nondiscoverable information. The commissioner contended, among other things, that the code was not in his possession or control and that it was proprietary information unavailable to the state. The Court of Appeals declined to issue the writ.

The Minnesota Supreme Court affirmed. The commissioner acknowledged that the state owns some portion of the code, and that it wasn't clear that the commissioner was unable to comply with the court order, the court reasoned.

CMI still generally refuses to disclose the source code. Last fall, CMI started offering to produce the code subject to a highly restrictive 10-page protective order, but the proposed order is so restrictive that most judges won't sign it, the state's complaint says.

Results vary from court to court, but many DUI cases have been dismissed or reduced because of the source code battle.

Because of the source code issue, many law enforcement agencies have ceased to use the Intoxilyzer, switching to the more expensive blood or urine tests, putting a strain on the Bureau of Criminal Apprehension's budget.

The state's complaint sounds in breach of contract, copyright infringement and breach of the implied covenant of good faith and fair dealing.

"By virtue of Defendant CMI's bad faith refusal to turn over the source code, the State has been subjected to allegations of bad faith not only by litigants but by district court judges throughout Minnesota," the state's complaint says. "As a result, Defendant CMI has created a situation in which the State's breath testing program, once broadly regarded as presumptively reliable, has become viewed as presumptively unreliable by many litigants and judges throughout the State."

A good strategy?

The state's lawsuit leaves defense lawyers with an important question: What happens in DUI cases involving breath-test results while the civil case wends its way through federal court?

The state made clear in a recent case that it doesn't plan to veer from its argument that it cannot turn over the source code because it doesn't have it, said Roseville lawyer Charles Ramsay.

St. Louis Park attorney Jeffrey Ring wondered if judges would still be willing to impose the consequences of refusing to turn over the source code on to the state when the state is doing what it can to get it. If the federal lawsuit convinces judges that the state is blameless, the judges may be reluctant to sanction the state, he said.

"Going to federal court is no small thing. I believe the state is acting in good faith. On the other hand, it is a good strategy," said Ring.

Chaska attorney Richard Swanson said that he has been successful in getting attorney fee awards from the state in source code motions, and thinks the case may be an effort to stave off future awards. "It's a ploy by the Attorney General's Office because if they didn't sue, there'd be a basis to find them in bad faith," Swanson said.

Exhibit 1-1

Swanson said that he plans to move for reconsideration of any order where a judge has found that the state doesn't have possession of the source code. He also plans to proceed with jury trials in cases where the source code has been ordered. (Some court clerks are becoming concerned about the backlog of DUI cases that is building up because of the source code dispute, he added.)

Intervention in contention

Some defense lawyers are considering either intervening in the state's lawsuit as a group or finding a client to intervene.

"We want to make sure [the state] plays fair," Ramsay said. "We want to make sure they're not just trying to delay, although there's no reason to believe that's actually happening."

It's hard to believe the Attorney General's Office is acting solely in the interest of the citizens, he stated. "If that were the case, they would have [sued this out] a long time ago."

There's another advantage to intervening, said Ramsay. "Imagine what we could obtain through discovery."

But other lawyers say they don't have the time or the inclination to get involved in the lawsuit.

"I don't want to be involved in any lawsuit. The state has to produce the source code," Swanson said.

Representatives of the Department of Public Safety and the Attorney General's Office could not be reached for comment.

---

Copyright 2008 Minnesota Lawyer All Rights Reserved
730 South Second Ave., Minneapolis, MN 55402 (612) 333-4244

Exhibit 1-2

Minnesota / Lawyer: DUI technology is faulty
Defense attorney says state knew of uneven performance
By Frederick Melo
fmelo@pioneerpress.com
Article Last Updated: 06/09/2008 11:46:42 PM CDT

Intoxilyzer 5000 — meet a supposed "smoking gun."

A Roseville-based attorney maintains he has proof that more than 250 alcohol breath-test machines used by law enforcement officials in Minnesota are faulty and that the state has been well aware of the problem for months.

A spokeswoman for the Minnesota Bureau of Criminal Apprehension said not so fast — the machines work fine.

Charles A. Ramsay, a DUI defense attorney, on Monday released a copy of what he calls the "smoking gun" e-mail from a BCA toxicologist to Intoxilyzer 5000 manufacturer CMI Inc. of Owensboro, Ky.

The e-mail, dated Sept. 27, 2006, indicates that the Intoxilyzer "on occasion" printed out different blood-alcohol readings than what it displayed on its screen and that the amount of air required to provide a breath sample varied depending upon the version of software running the machine.

CMI updated the Minnesota version of its Intoxilyzer software in summer 2005. It was first awarded the contract in 1997.

"We performed a variety of tests under different conditions using each version and the results were not the same," wrote toxicologist Pat Pulju in the e-mail to other state and CMI officials.

Ramsay said the machine might record a hard puff as a "test refusal," which can carry greater civil and criminal penalties than failing the test entirely.

He said he represents multiple clients who were charged with gross misdemeanors after making honest efforts to blow as hard

as they could into the Intoxilyzer.
"If you blew just as hard under the old software ... you're fine. You would not only give a sufficient sample, but ... you'd pass the test. You'd go home. Nothing happens," he said.

On Friday, Ramsay filed a motion to intervene in a federal lawsuit between Minnesota Public Safety Commissioner Michael Campion and CMI. The lawsuit seeks to force the manufacturer to release a copy of the computer software to the state. Campion is represented by the Minnesota attorney general's office.

State officials had limited immediate reaction Monday. "The BCA has a high level of confidence in the reliability of the Intoxilyzer," said Christine Krueger, a spokeswoman for the Minnesota Department of Public Safety.

Ramsay's is just the latest salvo in a statewide push by DUI attorneys to examine and invalidate CMI's software program.

Last month, the Minnesota Court of Appeals delivered a soft blow to two alleged drunken drivers who challenged their breath-test evidence by asking to inspect the patented computer code.

**Exhibit 2-1**

The decision overturns part, but not all, of the so-called "source code defense."

A May 20 appeals decision found that the attorneys for the two Dakota County drivers did not make an adequate argument for why examining the Intoxilyzer software would help determine if the instruments are defective.

The appellants were Dale Lee Underdahl, of Northfield, and Timothy Arlen Brunner, of Farmington. The men were charged in Dakota County, in separate incidents, with driving with alcohol concentrations of more than .08 percent.

The appeals decision noted that while the defense has broad powers to compile evidence during the "discovery process," previous decisions have found that lawyers cannot go on an undefined "fishing expedition."

Across Minnesota, judges have reinstated dozens of revoked driver's licenses and thrown out criminal charges against drunken-driving defendants as a result of the state's failure to produce the source code, said Underdahl's attorney, Jeffrey Sheridan.

Nothing in the latest court opinion prevents DUI attorneys from seeking the source code in the future, but the bar to justify such a request has been set higher, Sheridan said.

Judges in more than 100 cases, including the Minnesota Supreme Court, have attempted to force the state to turn over the computer program for inspection.

"We do plan to seek further review of this decision from the Supreme Court," Sheridan said. "It's completely contrary to what the Supreme Court has already said. ... We'll keep slugging it out."

State officials have said that although they contracted CMI for a Minnesota model of the machine, the state does not have access to the instrument's patented source code and is unable to disclose it.

Frederick Melo can be reached at 651-228-2172.

Return to Top

The Pioneer Press is happy to host community conversations about news and life in the Twin Cities. As hosts, we expect guests will show respect for each other. That means we don't threaten or defame each other, and we keep conversations free of personal attacks. Witty is great. Abusive is not. If you think a post violates these standards, don't escalate the situation. Instead, flag the comment to alert us. We'll take action if necessary.

It's not hard. This should be a place where people want to read and contribute – a place for spirited exchanges of opinion. So those who persist with racist, defamatory or abusive postings risk losing the privilege to post at all.

Exhibit 2-2

# MINNESOTA LAWYER

Legal News

June 16, 2008

## Brief: Defense attorney to intervene in Intoxilyzer lawsuit

St. Paul criminal defense attorney Chuck Ramsay announced last week that he has filed a motion to intervene in the Minnesota Department of Public Safety's federal lawsuit against the manufacturer of the Intoxilyzer 5000.

In March 2008, the Minnesota Attorney General filed a federal suit against Kentucky-based CMI, Inc., on behalf of the Commissioner of Public Safety. The suit alleges that CMI breached the contract for the sale and maintenance of a fleet of evidentiary breath test instruments to be used by the state to investigate and prosecute drunk driving cases.

According to the lawsuit, CMI agreed to release the machine's software when ordered by the courts. CMI also allegedly agreed that any intellectual property material originating and arising out of the contract would become the sole property of the state. The state contends that CMI breached both of those obligations.

In a press release, Ramsay says he believes the state filed suit only because of judges' complaints regarding the attorney general's lackluster response to aggressive litigation by criminal defense attorneys demanding access to the software.

Ramsay contends that as early as 2006, the BCA knew its 200-plus Intoxilyzers were broken, and last week he released what he calls the "smoking gun" e-mail from a BCA toxicologist to CMI.

The e-mail, dated Sept. 27, 2006, indicates that Minnesota's Intoxilyzer 5000 displays a driver's alcohol results on its LED readout, yet sporadically records a higher result on the final test record. The state discovered this and other fatal defects after hastily installing the current Intoxilyzer software in 2005, Ramsay contends.

Ramsay is intervening on behalf of four of his clients in the federal lawsuit the state filed against CMI. He seeks to have the state shut down its breath-testing program immediately.

The Minnesota Society for Criminal Justice is sponsoring Ramsay's efforts.

Copyright 2008 Minnesota Lawyer All Rights Reserved
730 South Second Ave., Minneapolis, MN 55402 (612) 333-4244

Exhibit 3

# RAMSAY RESULTS

Charles A. Ramsay & Associates, PLLC

CALL FOR RESULTS. 612-326-5602
Call Toll Free 866-929-4367

# SOURCE CODE LAWSUIT V BREATH TEST MAKER

## MINNESOTA BCA AWARE OF FATAL FLAWS IN BREATH TEST MACHINE SOFTWARE

Attorney General Obstructs Lab's Effort to Correct Defective Software.
Private Attorney to Intercede in Federal Law Suit against Manufacturer on behalf of Drivers.
click here to see related documents

As early as mid-2006 the Minnesota Bureau of Criminal Apprehension (BCA) knew its 200+ breath test machines malfunction. Minnesota's Intoxilyzer 5000 displays a driver's alcohol result on its LED readout; yet sporadically records a test result higher than displayed. The state discovered this and other fatal defects after hastily installing the current Intoxilyzer software in 2005.

The BCA, the state agency responsible for oversight of Minnesota's breath testing program, complained to the manufacturer of several "oddities" occurring only in the new software. Attorney Charles A. Ramsay exposed a September 2006 email documenting several critical machine malfunctions.

The test also erroneously rejects drivers' attempts to provide a breath sample by elevating the minimum volume requirements to a nearly impossible amount. As a result the driver is charged with the much more severe crime of Test Refusal, which carries a punishment far more severe than driving over the legal limit of .08.

The state continues to permit the bug-riddled software to operate its more than 200 breath test machines. More than 35,000 drivers were given breath tests according to the BCA's 2006 annual report.

**Minnesota Attorney General Stifles Software Fix**
Until now the fatal flaws were kept secret among the BCA, CMI and the Office of the Minnesota Attorney General (AG). Typically the BCA would have immediately corrected the software. However, the fatal software defects were discovered after several defense attorneys had begun aggressively seeking access to the software from the courts. Fearing an escalation in the so-called "source code challenge," the attorney general's office advised the BCA to wait until the challenge had lost momentum, according to a BCA employee.

The AG fought defense attorneys in court, siding with CMI which - despite court orders from numerous other states, including its own state appellate court - has refused to permit open independent expert analysis of the software. As the source code battle dragged on, a growing number of trial judges were dismissing drunk driving cases at an alarming rate.

In response to judges' complaints, the state filed suit against CMI in federal court in March, 2008. The law suit has reduced the number of dismissals and changed the momentum in the source code battle.

**"Smoking Gun" Discovered**
Criminal Defense Attorney Charles Ramsay announced today that he discovered proof of the Intoxilyzer's broken software. A 1996 email from the BCA to CMI exposed what he calls a "smoking gun" which evidences the need for independent review of

**Exhibit 4-1**

the Intoxilyzer's software.

According to the email, BCA tests conducted using different versions of the Intoxilyzer software yielded inconsistent results.

"The acceptance of samples blown into the instrument is dependent on which version of software the instrument is running. ... We performed a variety of tests under different conditions using each version and the results were not the same."

Not only do test results differ depending on the version of the software, but also may differ on the same test.

"[O]n occasion the volume and alcohol that were last seen on the display are not the same as when printed out" writes the BCA to CMI.

The BCA employee sent the email to five CMI representatives and four other BCA employees.

"These black boxes not only deprive citizens of their right to drive, but it puts innocent people in jail. The Minnesota Attorney General, our state's chief prosecutor, chose to protect the interests of a secretive, foreign company rather than fight for the constitutional rights of Minnesota citizens. Most alarming, is that the AG encouraged the cover-up of a fatally flawed breath machine that the public, police and court believe to be 100% accurate. "

Ramsay filed a motion to intervene in the federal lawsuit the AG filed against CMI, a Kentucky corporation. "Its clear the AG will not protect the rights of Minnesotans in that law suit. I'm intervening to ensure justice prevails. Otherwise, the AG will use this case for appearances only, to our detriment."

Charles Ramsay is criminal defense attorney in Roseville, Minnesota. He is current before the Minnesota Supreme Court arguing to the constitutionality of Minnesota's "Implied Consent" law.

© 2008 by Charles A. Ramsay & Associates, PLLC. All rights reserved. Disclaimer | Site Map
FirmSite® designed and hosted by Thomson-FindLaw.

**Exhibit 4-2**