# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

State of Minnesota,
by Michael Campion, its                    File No. 08-CV-603 (DWF/AJB)
Commissioner of Public Safety,

              Plaintiff,

  v.

CMI of Kentucky, Inc.,
a Kentucky corporation,

              Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO APPLICANTS'
MOTION FOR LEAVE TO INTERVENE**

# TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………………………1

BACKGROUND……………………………………………………………………..1

ARGUMENT…………………………………………………………………………..5

I.    APPLICANTS FAIL TO SATISFY THE ELEMENTS OF RULE 24(a)(2)……………………………………………………..……............6

    A.    Applicants' Motion To Intervene Is Untimely………………………..6

        1.    Reason for the Delay………………………………………8

        2.    Status of the Proceedings…………………………………9

        3.    Prejudice………………………………………………9

    B.    Applicants Have No Cognizable Legal Interest In This Litigation…...10

        1.    Applicants Are Not Third-Party Beneficiaries To The Contract.………………………………………………………..10

        2    Even If Applicants Were Third-Party Beneficiaries, Their Interests Would Be Collateral And Would Not Justify Intervention As Of Right…………………………………...12

        3.    Applicants Seek To Intervene For An Improper Purpose…….13

    C.    Applicants Have Not Shown That The Disposition Of This Action Will Impede Their Ability To Protect Their Interests……………………...14

    D.    Applicants Fail To Make A Strong Showing That The State Cannot Adequately Represent Their Interests…………………………………15

II.    IF APPLICANTS ARE PERMITTED TO PARTICIPATE IN THE LITIGATION, THE SCOPE OF THEIR PARTICIPATION SHOULD BE LIMITED………………………………………………………………..17

CONCLUSION………………………………………………………………20

Defendant CMI of Kentucky, Inc. ("CMI") respectfully submits this Memorandum of Law in Opposition to Applicants Robert J. Bergstrom, Craig A. Zenobian, Shane M. Steffensen and Christopher D. Jacobsen ("Applicants") Motion For Leave To Intervene in this lawsuit.

## INTRODUCTION

Applicants seek leave to intervene in this contract and copyright case between the State of Minnesota (the "State") and its vendor, CMI. In their motion, Applicants say they seek to "enforce their rights." (Mem. L. at 1.) But outside the pleadings, Applicants' counsel has disclosed a far less noble purpose, admitting that by intervening, he seeks to bring the State's breath-testing program to an immediate halt. (*See* Affidavit of William A. McNab ("McNab Aff.") ¶ 4, Ex. 5.) However, attempting to shut down the State's breath-testing program is not among the rights Applicants claim they have been granted under the State's Contract with CMI.

In addition to this improper purpose, the motion is untimely, Applicants lack a cognizable legal interest in the litigation, and Applicants' rights will not be impaired if the case proceeds without them. Moreover, even as alleged, Applicants' purported rights under the Contract are derivative of, and at best, identical to, the State's rights. Accordingly, the State can adequately protect Applicants' purported rights. For each of these reasons, intervention is unwarranted and Applicants' motion should be denied.

# BACKGROUND

In early 1997, the State and CMI entered a contract under which CMI sold breath-alcohol test instruments to the State. (McNab Aff. ¶¶ 2, 3, 4, Exs. 1, 2, 3.) The initial Contract term of five years was extended by subsequent amendments, and the Contract ultimately terminated on January 31, 2008. (*Id.* ¶ 4, Ex. 3.) These instruments are used by law enforcement professionals to test persons charged with various alcohol-related offenses. They are commonly referred to as the "Minnesota version" of the Intoxilyzer 5000EN. The Intoxilyzer 5000EN has been formally approved by the National Highway Transportation Safety Administration and the Minnesota Department of Public Safety. Minn. R. 7502.0420, subp. 3; (Ans. & Countercl. ¶ 64.) By statute, the results of a test administered with an Intoxilyzer 5000EN are presumptively valid. Minn. Stat. § 634.16. However, persons charged with driving while impaired may challenge this presumption. Minn. Stat. § 169A.53, subd. 3(b)(10).

In or about 2006, defendants charged with impaired driving and petitioners challenging implied consent license revocations began requesting the instrument's "source code" in discovery. The source code is, in essence, the computer program that runs the instrument, written in a "human readable" format. (Ans. & Countercl. ¶ 70.) The source code is a trade secret and it is one of CMI's most valuable assets. (*Id.* ¶ 71.) The State opposed these discovery requests, arguing that the source code was not discoverable and not in the State's possession. While many district courts have agreed that the source code is not discoverable, some have ordered the State to produce the

source code or face exclusion of the test results or other discovery sanctions.[1]  (*Id*. ¶¶ 74-75.)

In response, the State requested that CMI make the source code available.  (*Id*. ¶ 79.)  CMI eventually agreed to do so, but it insisted that an appropriately worded protective order be entered in each case and that persons who would obtain access to the source code execute a non-disclosure agreement.  (*Id*. ¶¶ 79-80.)  CMI also required that it be reimbursed the cost of producing the source code.[2]  Some of the state district court judges who ordered the State to produce the source code refused to execute CMI's requested protective order and some refused to enter any protective order whatsoever.  (*Id*. ¶ 94.)  Some judges refused to require that CMI be reimbursed.  Similarly, some defendants and petitioners or their counsel refused to execute the non-disclosure agreement, while others refused to pay for CMI's cost of production.  A significant number of criminal prosecutions and revocation proceedings have been impacted by this dispute.

On March 3, 2008, the State filed its Complaint in this action, alleging, among other things, that CMI breached the Contract by failing to provide the source code to

---

[1]     In two recent decisions, the Minnesota Court of Appeals has reversed state district court discovery orders requiring the State to produce the source code.  *See State v. Underdahl*, Nos. A07-2293,  A07-2428, 2008 Minn. App. LEXIS 291 (Minn. Ct. App. May 20, 2008) and *State v. Olcott*, A06-2340, 2008 Minn. App. LEXIS 374 (Minn. Ct. App. April 15, 2008).  Nonetheless, some district courts continue to order the State to produce the source code.

[2]     Notably, in cases where CMI actually provided the source code or even agreed to do so at a reduced reimbursement rate, the requesting parties *did not* review the source code, but instead, immediately dismissed their implied consent petitions and/or entered plea agreements.

attorneys without the requested protective order, non-disclosure agreement and reimbursement. On June 6, 2008, Applicants brought the instant motion to intervene along with a proposed Complaint against CMI parroting the State's breach of contract claim almost verbatim.

Applicants' motion to intervene must be denied. The motion is untimely and Applicants have failed to give any reason whatsoever, much less a justification, for their delay. Applicants' intervention at this stage of the case will likely undo the progress the parties have made in initial settlement negotiations, and the duplicative nature of their claim will cause undue expense and prejudice to the parties.

Additionally, Applicants lack a legally cognizable interest in this litigation. Applicants cannot show that they were intended third-party beneficiaries of the State and CMI's Contract, and even if they were, their interest would be too indirect, collateral and derivative to justify intervention. Nor can Applicants demonstrate that their interests will be impaired if this case goes forward without their participation as parties. Indeed, since their claim flows from the State's claim, the State is well-positioned to represent Applicants' interests. Despite their high-minded references to constitutional rights and due process, the real motive behind this motion has come to light—Applicants' counsel has declared war on the State's breath-alcohol testing program, and he intends to turn this commercial litigation between the State and CMI into a battle in that war.

For all of these reasons, Applicants' motion to intervene should be denied. Alternatively, if the Court concludes that Applicants should be permitted to participate in

the case, they should do so as *amicus curiae*. Or, if Applicants are permitted to intervene, the scope of their participation should be appropriately limited.

## ARGUMENT

Applicants' motion fails on every level. As an initial matter, the motion is untimely and that alone is dispositive. Beyond that, Applicants lack the necessary cognizable legal interest in this litigation. To the extent that Applicants claim to have an interest in the litigation, the State is positioned to more than adequately represent that alleged interest. Going a step further, whatever interest Applicants may claim to have, they fail to show that it will be impaired if this case proceeds, as it should, without them. And, at base, all of that is academic, because the true purpose for the intervention—to destroy the State's breath-alcohol testing program—is improper in the context of this lawsuit. Thus, Applicants' motion should be denied on each and every one of these bases.

## I. APPLICANTS FAIL TO SATISFY THE ELEMENTS OF RULE 24(a)(2).

Applicants have not shown that intervention is appropriate in this case. First, all motions to intervene must be *timely*. Fed. R. Civ. P. 24(a). Second, a party seeking intervention as of right must establish that it "(1) has a cognizable interest in the subject matter of the litigation, (2) the interest may be impaired as a result of the litigation, and (3) the interest is not adequately protected by the existing parties." *Med. Liab. Mut. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007); *Curry v. Regents of U. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999). An applicant must satisfy each of these elements before being permitted to intervene as of right. *South Dakota ex. rel. Barnett v. U.S.*

*Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Here, Applicants fail to satisfy *any* of them, and their motion must be denied.

### A.    Applicants' Motion To Intervene Is Untimely.

As a threshold matter, an application for intervention must be timely filed. Fed. R. Civ. P. 24(a). In this case, the State filed its Complaint on March 3, 2008. Applicants' counsel has known about, and commented publicly on, the lawsuit, since at least March 17, 2008. (McNab Aff. ¶ 5, Ex. 4.) The Court's Scheduling Order requires that motions to add parties be *heard* by June 1, 2008. (Doc. No. 12 at 2, emphasis added.) Yet Applicants inexplicably waited until June 6, 2008 to even *file* their motion. It should be denied for that reason alone.

The question of timeliness is left to the Court's sound discretion. *U.S. v. Assoc. Milk Producers, Inc.*, 534 F.2d 113, 115 (8th Cir. 1976). It is determined from the totality of the circumstances. *Honeywell, Inc. v. Sperry Rand Corp.*, 54 F.R.D. 593, 595 (D. Minn. 1971). Courts typically consider the reason for the delay, the status of the proceedings, and the resulting prejudice to the other parties. *Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (denying motion for intervention filed twelve days after commencement of action).

Many courts, including the Court of Appeals for the Eighth Circuit, have looked to court-imposed deadlines for motions to add parties when determining whether a motion to intervene has been timely filed. *See, e.g., Furey v. Executive Risk Indem., Inc.*, No. 01-03-P-C, 2001 U.S. Dist. LEXIS 8946 (D. Me. June 26, 2001) (recommending that court deny motion to intervene when movant was aware deadline for adding parties had

passed); *c.f. U. S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 413 n.9 (W.D. Pa. 2006) (finding motion to intervene timely because it was filed before deadline to add new parties); *Glaeske v. Shaw*, 661 N.W.2d 420, 425 (Wis. Ct. App. 2003) (affirming district court's denial of motion to intervene filed after expiration of court's deadline for joining additional parties); *c.f. Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993) (holding that motion to intervene was timely after concluding that deadline for motions to add parties was, in that case, limited to parties).

Here, Applicants offer no justification for the delay, intervention is inappropriate given the status of the case, and it would seriously prejudice both the State and CMI if intervention is allowed. Accordingly, the motion should be denied.

### 1. *Reason for the Delay.*

Courts typically gauge timeliness from the point at which the applicants knew or should have known about their stake in the action. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). On March 17, 2008, Applicants' counsel publicly acknowledged that he was considering intervening on behalf of one or more clients. (McNab Aff. ¶ 5, Ex. 4.) At the same time, he questioned the State's motives, noting that it could have brought the case "a long time ago." (*Id.*) However, he failed to note that if his clients and others were, in fact, intended third-party beneficiaries, they too could have brought their claims "a long time ago," by independent suit, or by timely intervention. He also failed to explain why they did not do so.

Applicants acknowledge that the Court must consider the reason for their delay in seeking intervention, (Mem. L. at 8), but utterly fail to provide one. Because Applicants have not provided a reason for their delay, the motion should be denied as untimely. *See Assoc. Milk Producers, Inc.*, 534 F.2d at 115 (denying motion to intervene after considering prospective intervenor's opportunity to bring timely motion and purported excuses for failing to do so).

### 2. *Status of the Proceedings.*

As the docket reflects, the parties have engaged in early settlement efforts. Intervention at this stage would likely derail that process, imposing substantial additional costs on the parties. *See, e.g., City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987) ("[I]ntervention at this time would render worthless all of the parties' painstaking negotiations because the negotiations would have to begin again."); *U.S. v. City of Chicago*, 908 F.2d 197, 199 (7th Cir. 1990) ("Litigation will have no end if every time parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air."). Applicants could have timely intervened without jeopardizing the parties' settlement efforts but inexplicably chose not to do so. They offer no justification for their "Johnny-come-lately" motion. They should not be permitted, without reason or excuse, to undo the parties' progress to date.

### 3. *Prejudice.*

Permitting Applicants to intervene will prejudice the existing parties. In their proposed Complaint, Applicants assert a single breach of contract claim that is identical to the State's claim. Since their claim is entirely duplicative, it will needlessly delay the

proceedings, increasing costs to the parties.  *See Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 142, 64 S. Ct. 905, 908 (1944) (noting that allowing intervention in cases of interest to the public "may result in accumulating proofs and arguments without assisting the court.").

In sum, Applicants' motion to intervene is untimely and Applicants have not provided any reason, much less a justification, for the delay.  Further, their intervention at this stage of the case will disrupt the parties' settlement efforts, and the needless duplication of claims and proofs will prejudice the parties by adding cost and inefficiency without assisting the process.  For these reasons, Applicants' motion should be denied.

### B.  Applicants Have No Cognizable Legal Interest In This Litigation.

In addition to being untimely, Applicants' motion fails to establish a cognizable interest in the subject matter of the litigation.  *See Med. Liab. Mut.*, 485 F.3d at 1008.  An interest is cognizable under Rule 24(a)(2) only if it is "direct, substantial and legally protectable."  *Id.* (citation omitted).  An interest "contingent upon the occurrence of a sequence of events before it becomes colorable" is not sufficient to satisfy Rule 24(a)(2).  *Id.*

Applicants claim to have a cognizable legal interest in the litigation as purported third-party beneficiaries to the Contract.  (Mem. L. at 3.)  To the contrary, Applicants are not third-party beneficiaries, and even if they were, their interest in the litigation would be entirely collateral.  In any case, Applicants' interest—if any—is not sufficiently direct to be legally cognizable.

### 1. *Applicants Are Not Third-Party Beneficiaries to the Contract.*

Minnesota follows Section 302 of the Restatement (Second) of Contracts when determining whether a person is an intended third-party beneficiary of a contract. The Restatement sets forth the "intent to benefit" test and the "duty owed" test. *Dayton Dev. v. Gilman Fin. Servs*, 419 F.3d 852, 855-56 (8th Cir. 2005) (*citing Cretex Cos., Inc. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 138 (Minn. 1984)). Here, Applicants cannot meet either test, as they fail to demonstrate that the unambiguous terms of the Contract express an intent to benefit Applicants or discharge a duty owed to Applicants.

The "duty owed" test requires that "the promisor's performance under the contract must discharge a duty otherwise owed the third party by the promisee." *Id*. "The intent to benefit test," conversely, requires that the contract "express some intent by the parties to benefit the third party through contractual performance." *Id*. at 856 (*citing Norwest Fin. Leasing, Inc. v. Morgan Whitney, Inc*., 787 F. Supp. 895, 898 (D. Minn. 1992)). A contract "will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 720 (8th Cir. 2004); *see also Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 53 (1st Cir. 1979) (holding that incidental beneficiary did not have "interest" in litigation and could not intervene); *In re Midway Airlines, Inc.*, 154 B.R. 248, 253 (N.D. Ill. 1993) (denying intervention absent showing that contracting parties specifically intended to make the applicant a third-party beneficiary).

Here, the contractual reference to non-parties upon which Applicants rely is the RFP's requirement that vendors' proposals describe the costs of and limitations on the provision of information to attorneys representing individuals charged with crimes. (McNab Aff. ¶ 2, Ex. 1.)  Under either test, this reference is insufficient to show the parties' intent to make Applicants third-party beneficiaries.  Under the duty owed test, it is clear that at the time of contracting, the State did not owe a specific duty to any particular individuals and CMI did not agree to undertake such a duty.  *See Dayton Dev.*, 419 F.3d at 856.  Similarly, the RFP's simple requirement that proposals describe the costs of and limits on information provided to others does not satisfy the intent to benefit test.  The Contract merely required CMI to describe these constraints in its proposal to the State, for the State's benefit.  *See id.*  The Contract suggests, at most, that persons in Applicants' circumstances may be incidental beneficiaries.  *See Moosehead Sanitary Dist.*, 610 F.2d at 53.

Moreover, this view of Applicants' status vis-à-vis the Contract is consistent with their own conduct.  If they and others in their circumstances were truly intended third-party beneficiaries, they could have brought their claim independently, rather than waiting for the State to sue CMI.  *See U.S. v. South Bend Commun. Sch. Corp*., 710 F.2d 394, 396 (7th Cir. 1983).  Instead, they have chosen to ride on the coat tails of the State's lawsuit, while at the same time questioning the State's motives in bringing this suit.

Because Applicants are not intended third-party beneficiaries of the Contract between the State and CMI, they do not have a cognizable legal interest in the lawsuit and their motion to intervene must be denied.

## 2. Even if Applicants Were Third-Party Beneficiaries, Their Interests Would be Collateral and Would Not Justify Intervention as of Right.

Applicants have also failed to demonstrate that any third-party beneficiary interest they might otherwise have under the Contract is "direct" as opposed to "tangential or collateral." *See U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995). Applicants' proposed Complaint and the State's Complaint identically claim that CMI has breached its Contract with the State by failing to provide Applicants with access to the source code. (Proposed Compl. ¶¶ 16, 17; State's Compl. ¶¶ 48, 36.) Applicants do not bring any claims apart from those already asserted by the State. They point to no unique facts or evidence available to Applicants but unavailable to the State. Applicants' purported interests in the litigation are utterly indistinguishable from the State's claimed interests, and their participation as parties in this case is unnecessary.

## 3. Applicants Seek to Intervene for an Improper Purpose.

Further, Applicants appear to be seeking intervention for an improper purpose. "When improper motive in seeking intervention appears, the trial court should be wary to grant the request." *Edmondson v. State of Neb.*, 383 F.2d 123, 128 (8th Cir. 1967) (denying motion where "intervention has the earmarks of a sham") (citing *Kozak v. Wells*, 278 F.2d 104, 107, 113 (8th Cir. 1960) (noting that "[t]he rules [ ] are not to be distorted for the convenience of the parties" (citations omitted))); *Monroe Pavilion Health Care, Inc. v. Miller*, Nos. 83 C2621, 83 C2544, 1983 U.S. Dist. LEXIS 12578 at *1 (N.D. Ill. 1983) (denying intervention where "the [applicant] is seeking intervention for an improper motive").

Here, Applicants seek to intervene for at least two improper purposes. First, their attorney has admitted that he seeks to gain improper access to information otherwise not available to him and his clients. In the March 17, 2008 issue of Minnesota Lawyer, he stated "[i]magine what we could obtain through discovery." (McNab Aff. ¶ 5, Ex. 4.) Then, on June 16, 2008, he told that same publication that in moving to intervene, "[h]e seeks to have the state shut down its breath-testing program immediately." (McNab Aff. ¶ 6, Ex. 5.) Using this litigation to obtain access to information to which Applicants and their counsel are not otherwise entitled is an improper motive. Similarly, forcing the State to discontinue its breath-alcohol testing program is not even arguably among the purported third-party beneficiary rights Applicants claim to possess under the Contract. Attempting to intervene for that purpose is equally improper. These improper motives should make the Court extremely "wary" of this motion. *Edmondson*, 383 F.2d at 128.

### C.    Applicants Have Not Shown That The Disposition Of This Action Will Impede Their Ability To Protect Their Interests.

Rule 24 requires that disposition of the action may "as a practical matter" impair Applicants' interests. Fed. R. Civ. P. 24(a)(2). Applicants claim, without support or explanation, that if this Court rules against the State, it will "convince other Minnesota judges that Applicants [] lack any rights under the contract." (Mem. L. at 6.) They do not, however, assert that the outcome of this case will be preclusive as to any claims they may have or causes of action they may bring in the future. In other words, Applicants are suggesting that even though they could bring their claims in future litigation, they would

not receive a fair hearing. This assertion is unfounded, speculative, and offensive, and it does not satisfy Applicants' burden under Rule 24(a).

In an analogous case, the Court of Appeals for the Fifth Circuit rejected this same assertion, holding that speculation that later courts might give inappropriate deference to the disposition of the present action does not constitute practical impairment under Rule 24(a). *U.S. v. Jackson*, 519 F.2d 1147, 1152 (5th Cir. 1975). There, as here, the applicants argued that while the outcome of the present case would not be legally binding on later courts, it might be given undue deference by those courts in the adjudication of later claims. *Id*. The Court of Appeals correctly refused to assume that courts hearing future claims would fail to apply the law to the facts of the cases before them. *Id*. Applicants would have this Court make the very assumption that the Court of Appeals for the Fifth Circuit rejected. The Court should decline to do so. Applicants' bleak assumption cannot be the basis for a finding of practical impairment. *Id*. Accordingly, Applicants have failed show that the disposition of this lawsuit without their participation as parties will impede their ability to protect their interests.

### D. Applicants Fail To Make The Necessary Strong Showing That The State Cannot Adequately Represent Their Interests.

Under Rule 24(a)(2), Applicants must also make a strong showing that the existing parties do not adequately represent their interests. *Standard Heating & Air Conditioning, Co.*, 137 F.3d at 572. Although Applicants suggest this is only a "minimal burden," the Court of Appeals for the Eighth Circuit has determined that "applicant[s] for intervention bear[] a heavier burden on this factor when a party already in the suit has an obligation to

represent the interests of the party seeking to intervene." *South Dakota ex. rel. Barnett*, 317 F.3d at 785. When, as here, the government is a party, its "sovereign interests" raise the presumption of adequate representation and prevent intervention unless Applicants "demonstrate that they have an interest [that] cannot be subsumed within the general interest of the citizenry." *Standard Heating & Air Conditioning, Co.*, 137 F.3d at 572; *Barnett*, 317 F.3d at 786; *see McLean v. Arkansas*, 663 F.2d 47, 48 (8th Cir. 1981) (affirming district court's judgment that state attorney general would adequately represent interests of individuals seeking to intervene and would defend the suit with adequate vigor and diligence). Here, if the interest that Applicants claim they possess exists at all, it exists for the benefit of every person in the State. Accordingly, the State, both as the contracting party and as representative of the citizens, is presumptively in the best position to assert the claim. The State is presumed to be capable of representing whatever interests arise under a contract that it formed with CMI. *See id.*; *McLean*, 663 F.2d at 48.

Additionally, an existing party's representation is presumed to be adequate "when the prospective intervenor's interest is identical to that of an existing party." *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 410 (8th Cir. 1995). Here, the benefit Applicants claim is entirely derivative of and collateral to the State's contract claim. If the State prevails on its claim, Applicants would receive the exact benefit they purport to seek through intervention.

An applicant must make a "strong showing" to rebut these presumptions. *Curry*, 167 F.3d at 423. This showing is notably lacking where, as here, the applicants could

have filed their own lawsuit but instead waited and sought to intervene, and their claim is entirely duplicative and derivative of an existing party's claim. By way of example, in *South Bend Commun. Sch. Corp.*, the applicants for intervention sought a hearing, complaining that their interests were not adequately represented by the Department of Justice. 710 F.2d at 396. The court noted that the applicants would have been entitled to a hearing if they had brought their own suit rather than merely "piggyback[ing] on the Department [which] they could do only within the limits of Rule 24(a)(2)." *Id.* The court denied the applicants' request for a hearing as well as their motion to intervene. *Id.*

Here, Applicants argue that the State cannot adequately represent their interests because it is prosecuting them in separate state court actions. Applicants' reasoning defies logic: on one hand, Applicants assert that the State brought this action only because some Minnesota district court judges have excluded Intoxilyzer evidence. On the other hand, they suggest that the State may be pursuing this lawsuit half-heartedly. Applicants fail to acknowledge that if the State vigorously pursues this action and prevails, Applicants will gain access to the source code, but if the State does not pursue its claims vigorously,[3] judges will continue to exclude Intoxilyzer evidence—presumably

---

[3] Applicants' assertion that the State would prefer to lose the instant lawsuit because it would amount to a "win" in state court prosecutions, (Mem. L at 7), is wrong-headed and contrary to both the ethical rules and the express purpose of the State Attorney General's Office. *See* Minn. R. Prof. Conduct 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."); Minn. R. Prof. Conduct Preamble ("As advocate, a lawyer [must] zealously assert[] the client's position under the rules of the adversary system."); *id.* ("A lawyer should demonstrate respect for the legal system . . . it is also a lawyer's duty to uphold legal process."); *id.*; *see also Inaugural Remarks of Attorney General Lori Swanson*, at http://www.ag.state.mn.us/office/speech.asp ("[The Attorney General's Office] will strive

to the benefit of persons such as themselves. Applicants' argument thus rings hollow. Further, Applicants' assertion that the State cannot represent their interests because it is "adverse" to them in other actions misses the mark. With respect to the claim at issue in this case, the State's and Applicants' purported interests are not only aligned, they are identical.

In sum, Applicants do not assert a cognizable legal interest distinct from that already asserted by the State. Nor do Applicants show that the State cannot adequately represent their interests. For these reasons as well, Applicants' motion must be denied.

---

for excellence in our work and provide the best possible legal services to those we represent . . . at all times endeavor to pursue justice in our work . . . [and] put the public interest above all else.").

Despite their offensive insinuations, Applicants have not criticized the actual manner in which the State has pursued this lawsuit; indeed, Applicants appear to have relied heavily on the State's work product in crafting their proposed Complaint.

## II. IF APPLICANTS ARE PERMITTED TO PARTICIPATE IN THE LITIGATION, THE SCOPE OF THEIR PARTICIPATION SHOULD BE LIMITED.

Applicants' motion does not necessarily present the Court with an "either/or" decision. The Court also has discretion to allow Applicants to participate as an *amicus curiae*, or to allow intervention on a limited basis. *See White v. Nat'l Football League*, 822 F. Supp. 1389, 1432 (D. Minn. 1993). Here, because Applicants' intervention as parties would merely result in the reassertion of the same claim already raised by the State, they can "most expeditiously serve [their] purpose[] by filing a brief *amicus curiae*." *Ford Motor Co. v. Bisanz Bros., Inc.*, 249 F.2d 22, 28 n.1 (8th Cir. 1957).

In *Ford Motor Co.*, the Court of Appeals for the Eighth Circuit affirmed this Court's denial of a motion to intervene, stating that allowing intervention:

> w[ould] merely result in reassertion by the applicant of the same defenses already made by the defendant and would add nothing warranting the granting of intervention . . . Applicant emphasizes the importance of the issues already raised by the original parties. Under these circumstances applicant can most expeditiously serve its purposes by filing a brief *amicus curiae*.

*Id.*; *see also Rivarde by Rivarde v. State of Mo.*, 930 F.2d 641, 645 n.3 (8th Cir. 1991) (commenting that *amicus curiae* brief in support of State presented arguments identical those asserted by the named appellees).[4]

---

[4]     *See also Arkansas Elec. Energy Consumers*, 772 F.2d at 404 (holding that denial of intervention was harmless error where parties were allowed to file amicus briefs, and noting that "[a]lthough there are distinctions between parties and *amici*, the practical differences in this case were not significant. Appellants had ample opportunity to challenge the district court's conclusions") (internal citations omitted)); *Assoc. Milk Producers, Inc.*, 534 F.2d at 115 (affirming denial of motion for leave to intervene as untimely after appearance as *amicus curie*); *Leech Lake Area Citizens Comm. v. Leech*

As discussed above, Applicants' claimed interests are indistinguishable from the State's. Both Complaints allege, in nearly identical fashion, that CMI breached the Contract with the State by failing to give individuals access to the source code. (Proposed Compl. ¶¶ 16, 17; State's Compl. ¶¶ 48, 36.) Given the identity of their respective claims, Applicants can most efficiently participate, if at all, as *amicus curiae*.

Alternatively, if the Court is inclined to permit intervention, it may restrict the scope of the intervention to a particular limited purpose. *See, e.g., White*, 822 F. Supp. at 1432 (allowing intervention "solely to preserve [intervenors'] rights to appeal" but further requiring that "none of the movants shall be named plaintiffs . . . none of the complaints in intervention shall be filed and the named parties need not answer or otherwise respond to any of the complaints in intervention"); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. Civ. 97-2784, 2000 U.S. Dist. LEXIS 13611 at *1 (D. Minn. Sept. 8, 2000) (granting motion to intervene solely for limited purpose of preserving appeal), *rev'd on other grounds, Snell v. Allianz Life Ins. Co. of N. Am.*, 327 F.3d 665 (8th Cir. 2003).

Where, as here, the parties have expended substantial time and resources in settlement negotiations and the applicant's motives are questionable, full intervention would plainly prejudice the existing parties' interests. *See Snell*, 2000 U.S. Dist. LEXIS 13611 at *9. In these circumstances, limiting the scope of intervention may prevent

---

*Lake Band of Chippewa Indians*, 486 F.2d 888, 889 (8th Cir. 1973) (acknowledging that court below had denied motion to intervene but granted leave to file brief *amicus curiae*); *Beens v. Erdahl*, 336 F. Supp. 715, 719 (D. Minn. 1972) (denying some parties leave to intervene but granting right to participate as *amicus curiae* and participate in hearings).

improper use of court proceedings.  *Id*.  Here, if Applicants are permitted to intervene at all, their role should be appropriately limited in the interests of fairness to the existing parties and the just and efficient resolution of the matters before the Court.  Fed. R. Civ. P. 1.

## CONCLUSION

For each of these reasons, Defendant CMI of Kentucky, Inc. respectfully urges the Court to deny Applicants' Motion For Leave to Intervene.   Applicants' role in this case, if any, should be limited to *amicus* participation.

Respectfully submitted,

Dated:  July 9, 2008

WINTHROP & WEINSTINE, P.A.

By:   s/William A. McNab
     David M. Aafedt, MN #27561X
     William A. McNab, MN #320924
     Jessica S. Karich, MN #387156

Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402-4629
Tel:  (612) 604-6400
Fax:  (612) 604-6800
daafedt@winthrop.com
wmcnab@winthrop.com

*Attorneys for Defendant CMI of Kentucky, Inc.*

3866647v3