# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, <br> by Michael Campion, its <br> Commissioner of Public Safety, <br><br>                 Plaintiff, <br><br> v. <br><br> CMI of Kentucky, Inc., <br> a Kentucky corporation, <br><br>                 Defendant. | File No. 08-CV-603 (DWF/AJB) <br><br><br><br><br><br> **[PROPOSED] CONSENT JUDGMENT AND PERMANENT INJUNCTION** |

      **WHEREAS,** this Consent Judgment, including the Permanent Injunction, is intended to resolve the above-captioned litigation between the State of Minnesota, by Michael Campion, its Commissioner of Public Safety ("State"), and CMI of Kentucky, Inc. ("CMI") (collectively "Parties"), regarding ownership of, and access to, the source code ("Source Code") for the Minnesota version of the Intoxilyzer 5000EN, the breath-alcohol testing instrument used to enforce the driving while impaired ("DWI") laws in Minnesota; and

      **WHEREAS,** by a contract awarded in January 1997, the State bought a fleet of Intoxilyzer 5000EN breath-alcohol testing instruments from CMI, which are used to test the breath alcohol concentration of persons who may be charged with violations of Minnesota's driving while impaired laws; and

**WHEREAS,** an individual arrested for DWI in Minnesota faces both civil and criminal consequences. First, a person arrested for DWI is subject to criminal prosecution under the criminal DWI laws, which may include criminal charges, fines, and possible incarceration. Second, a person arrested for DWI who fails or refuses to submit to chemical testing is subject to civil remedial measures under the Implied Consent Law, which includes revoking the driver's license and recording the offense on the driver's record, as well as the impoundment of license plates and vehicle forfeiture where appropriate; and

**WHEREAS,** the issue of access to the Source Code first arose in early 2006, when the MN DPS began receiving motions for production of the Source Code from individuals arrested for DWI and challenging the validity of their breath test results in the state district courts. Although these discovery motions have been denied in the majority of cases, the discovery motions have been granted in some cases and some of those cases have been dismissed based on the MN DPS's inability to produce the Source Code; and

**WHEREAS,** CMI considers the Source Code to be a valuable trade secret and has only rarely granted access to parties outside the company under carefully considered and rigorous restrictions; and

**WHEREAS,** the State filed suit against CMI in this Court on March 3, 2008, claiming that it owns all or some part of the Source Code by virtue of an assignment provision in the Parties' contract, that the State possesses a copyright interest in the Source Code that CMI has infringed, and that the Parties' contract obligates CMI to

provide the Source Code to petitioners in implied consent cases and defendants in criminal DWI cases in certain circumstances; and

**WHEREAS,** CMI filed its Answer to the State's Complaint on April 9, 2008, denying the State's claims and asserting counterclaims for declaratory judgments that it owns the entire Source Code and that the Source Code is a trade secret; and

**WHEREAS**, since the inception of this matter, the Court has strongly encouraged the Parties to negotiate a reasonable settlement; and

**WHEREAS,** the Parties, wishing to avoid the cost, risk, uncertainty, and delay of further protracted and expensive litigation, including likely appeal, have entered into a Settlement Agreement ("Settlement Agreement") that is contingent upon the entry of this Consent Judgment and Permanent Injunction ("Consent Judgment"); and

**WHEREAS**, in furtherance of and in conjunction with the Settlement Agreement, the Parties, have consented to the entry of this Consent Judgment; and

**WHEREAS**, the Court has carefully considered the validity and reasonableness of this Consent Judgment, and based upon its Findings of Fact and Conclusions of Law;

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

## I. JURISDICTION AND VENUE

The State's Complaint sets forth a cause of action under the Copyright Act, 28 U.S.C. §§ 101 *et seq.*, as well as the common law of Minnesota. Accordingly, this Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to the action occurred in this judicial district.

## II. THE SETTLEMENT AGREEMENT

The State and CMI mutually desire to make the Source Code readily and reasonably available to defendants and petitioners subject to Minnesota's DWI and implied consent laws under circumstances and conditions that adequately recognize and protect CMI's interest in its intellectual property. Therefore, to avoid further cost, risk, and uncertainty associated with protracted litigation in this case, including likely appeal, the Parties have entered into a Settlement Agreement. The Settlement Agreement is expressly contingent upon the Court's entry of this Consent Judgment and is fully incorporated herein by reference.

## III. FINDINGS OF FACT

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the stipulations, and evidence presented by the Parties, the Court finds the following:

1. In January 2007, the State and CMI entered into a contract through a Request for Proposal ("RFP") issued by the State, a responsive Proposal submitted by CMI, and a Notification of Contract Award by the State (collectively the "Contract"). Pursuant to the terms of the Contract, CMI sold Intoxilyzer 5000EN breath-alcohol

testing instruments to the Minnesota Department of Public Safety ("MN DPS"). There are approximately 200 Intoxilyzer 5000EN instruments being used by law enforcement agencies throughout Minnesota. The documents attached hereto as <u>Exhibit 1</u> constitute the full and complete initial Contract between the State and CMI for the sale and maintenance of the "Minnesota model" of the Intoxilyzer 5000EN.

    2.      The specific phrase "source code" does not appear within the Contract. An assignment provision assigns only such "copyrightable material which [CMI] shall conceive or originate … and which arises out of the performance of this Contract." (Ex.1.) CMI has presented substantial evidence that the majority of the Source Code was conceived and originated prior to the execution of the Contract. (Affidavit of Toby Hall ("Hall Aff."), attached hereto as <u>Exhibit 2</u>.) The State currently has no evidence to rebut CMI's evidence. Based on the evidence presented, the Court finds that the majority of the Source Code was conceived and originated prior to the execution of the Contract.

    3.      The topic of "access" to the Source Code is also not specifically addressed in the Contract; rather, the Contract merely references CMI's provision of "information" to be used in connection with litigation. (Ex. 1.) The Court finds that the Contract clearly contemplates that such information includes the Operator's Manual for the Intoxilyzer 5000EN but does not expressly identify or specify the scope of other "information," if any, to be provided by CMI.

    4.      The Intoxilyzer 5000EN instruments are used by various law enforcement agencies throughout Minnesota to administer alcohol concentration tests on individuals arrested for DWI. (Affidavit of Emerald Gratz ("Gratz Aff."), attached hereto as <u>Exhibit

5

3.) More than 30,000 drivers are arrested for DWI every year in Minnesota. (Gratz Aff.) Although the problems associated with DWI occur nationwide, the problem appears to be worse in Minnesota: in 2003, alcohol-related fatalities increased in Minnesota by 4.3% while declining in 28 other states. (*Id.*) Repeat drunk drivers pose a particular problem for law enforcement in Minnesota: in 2003, 41% of drivers arrested for DWI in Minnesota were repeat drunk drivers. (*Id.*) The use of breath testing is a highly valuable tool for addressing the problems posed by repeat drunk drivers because studies have shown that the sooner an individual arrested for DWI faces consequences, the less likely that person is to re-offend. (*Id.*) Pursuant to Minnesota statutes and case law, the results of a breath-alcohol test administered using an Intoxilyzer 5000EN are presumptively valid. *See* Minn. Stat. § 169A.03, subd. 11 (2008); Minn. R. 7502.0420 (2008); *Jasper v. Commissioner of Public Safety,* 642 N.W.2d 435 (Minn. 2002).

5. The issue of access to the Source Code first arose in early 2006, when the State began receiving demands for production of the Source Code from individuals arrested for DWI and challenging the validity of their breath test results in both criminal DWI and implied consent cases in state court. (Gratz Aff.) State courts have ordered production of the Source Code in over one hundred criminal DWI and implied consent cases statewide. (*Id.*) However, the State has never possessed a copy of the Source Code. (*Id.*) Based on these orders, the State asked CMI to produce the Source Code and CMI eventually agreed to do so, but only upon the entry of a protective order in the DWI or implied consent case that was satisfactory to CMI, including the execution of a non-disclosure agreement by the person(s) receiving access to the Source Code, and

reimbursement by the defendant or petitioner to CMI for its costs incurred in binding and mailing the Source Code. (*Id.*) If a state court refused to issue a protective order and require a non-disclosure agreement that were acceptable to CMI or to order the requesting party to pay CMI's cost of producing the Source Code, CMI declined to make the Source Code available. (*Id.*) CMI produced the Source Code in one case at a cost to the defendant of $1,675.00 (actual cost to CMI was $2,039.00). (Hall Aff.) In cases where the state district court ordered production of the Source Code and it was not produced, some state district courts subsequently dismissed both DWI and implied consent cases. (Gratz Aff.)

6. Faced with the potential consequences of having breath test results suppressed based on the Source Code issue, some criminal prosecutors in Minnesota advised their police departments to stop using the Intoxilyzer 5000EN and to instead opt for either blood or urine testing. (Gratz Aff.) These decisions have had a significant negative impact on the Minnesota Bureau of Criminal Apprehension ("BCA") because fluid tests, which require BCA scientists to test a fluid sample, cost more money to process than breath tests. (*Id.*) In addition, the added fluid tests for DWIs are competing for resources with BCA fluid tests for other criminal cases, including DNA testing for murder, assault and rape cases, and controlled substance cases. (*Id.*) Furthermore, the State's inability to produce the Source Code has impacted the Minnesota judicial system with the increased filings of motions seeking discovery of the Source Code in criminal DWI and implied consent cases, which has taxed already strained judicial resources. (*Id.*) The Court finds that this has disrupted the effective functioning of law enforcement

agencies and the state court system regarding the proper enforcement and adjudication of Minnesota's DWI laws, which are critical to the safety of the citizens of Minnesota.

7. The Court finds that the Source Code is not generally known or readily ascertainable. (Hall Aff.) The Court also finds that CMI has made reasonable efforts to maintain the Source Code's secrecy, and that the Source Code derives independent economic value from its continued secrecy. (*Id.*)

8. The Court finds that providing the Source Code in printed, hardbound book format, with stitched bindings, marked "Do Not Copy" on each page, and in the digital format described in paragraph 3 of the Permanent Injunction will provide reasonable access while also reasonably protecting the Source Code's trade secret status. (Hall Aff.) The Court finds that production or reproduction of the Source Code in any electronic format other than the digital format described in paragraph 3 of the Permanent Injunction presents an undue and unreasonable risk to its trade secret status due to the ease with which electronic and digital data may be copied and transmitted, and the near impossibility of completely deleting or removing electronic or digital data once it has been loaded into a computer system. (*Id.*)

9. The Court finds that the Source Code contains various security features and menu passcodes, the disclosure of which would seriously compromise the security of the State's networked system of Intoxilyzer 5000EN breath-alcohol test instruments. (Hall Aff.) The Court therefore finds that the provision of the Source Code with critical security features and menu passcodes redacted will provide reasonable access while also

reasonably protecting the State's networked system of Intoxilyzer 5000EN breath-alcohol test instruments.

## IV. CONCLUSIONS OF LAW

Applying the law to its findings, the Court now concludes:

1. After careful review of the Contract and the evidence currently before the Court, the Court concludes that the State does not own all of the Source Code under the Contract's assignment provision because the majority of the Source Code was conceived and originated prior to the execution of the Contract, and, therefore, was not assigned to the State.

2. The Court concludes that it need not resolve the question of whether the Source Code is "information" that the Contract requires CMI to produce to petitioners in implied consent cases and defendants in criminal DWI cases because the terms under which the Source Code will be made available pursuant to the Settlement Agreement are materially no different, and in some respects are more favorable, than if the State had prevailed on this claim.

3. Based on its finding that the State's inability to provide access to the Source Code has caused a disruption to the enforcement and adjudication of Minnesota's DWI laws, the Court concludes that the State has suffered and will continue to suffer substantial and irreparable harm. Based upon its finding that the disclosure of the Intoxilyzer 5000EN network security features and menu passcodes would compromise the security of the State's networked system of Intoxilyzer 5000EN breath-alcohol test instruments, the Court concludes that disclosure of those security features and menu

passcodes would also cause the State to suffer irreparable harm. For each of these reasons, the Court concludes that entry of a Permanent Injunction is necessary and appropriate. The Court also concludes that the likely harm to the State in the absence of this Permanent Injunction outweighs any burden upon CMI resulting from the issuance of the Permanent Injunction.

4. Based upon its findings that the Source Code is not generally known or readily ascertainable, that CMI has made reasonable efforts to maintain the Source Code's secrecy, and that the Source Code derives independent economic value from its continued secrecy, the Court concludes that the Source Code is a trade secret as defined under the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01, subd. 5 (2008).

5. Because the Source Code is a trade secret and its public disclosure would cause CMI to suffer substantial and irreparable harm, the Court concludes that entry of the Permanent Injunction is also necessary and appropriate to reasonably protect the Source Code. The Court concludes that the likely harm to CMI in the absence of this Permanent Injunction outweighs any burden upon the State resulting from the Court's issuance of the Permanent Injunction.

6. Finally, the Court concludes that the entry of this Consent Judgment, and the Permanent Injunction set forth below, serves the public's interest by providing a mechanism under which the Source Code can be made readily and reasonably available at no cost to petitioners in implied consent cases and defendants in criminal DWI cases, subject to a reasonable protective order and non-disclosure agreement in a form commonly used in litigation, to prevent undue risk to the security of the State's

networked system of Intoxilyzer 5000EN breath-alcohol test instruments or to the Source Code's trade secret status.

## V. **PERMANENT INJUNCTION**

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 65 of the Federal Rules of Civil Procedure, the Court orders that CMI shall make the Source Code available to Authorized Minnesota litigants (as defined in Paragraph 4, below), their counsel, or their experts for inspection and review, subject to the following terms and conditions:

1. Pursuant to the Settlement Agreement and the Consent Judgment, not later than ten (10) days after the execution of this Consent Judgment, CMI shall make the Source Code available to Authorized Minnesota litigants, their counsel, or their experts, for inspection and review, at CMI's corporate headquarters in Owensboro, Kentucky. CMI shall not charge Authorized Minnesota litigants, their counsel, or their experts any fee for such access to the Source Code for inspection and review.

2. CMI shall make the Source Code available to Authorized Minnesota litigants, their counsel, or experts, during regular and reasonable business hours, excluding weekends, holidays, and any days when CMI is not open for regular business purposes. Under no circumstances shall the Source Code leave the custody of CMI.

3. CMI shall make the Source Code available to Authorized Minnesota litigants, their counsel, or their experts in two formats: (1) a printed, hardbound book form, and

(2) a digital format located on a secured computer at CMI's facility.[1] The Source Code shall be full and complete in all respects except that Source Code language controlling the instrument's network security features and menu passcodes shall be redacted. Access to the redacted portion of the Source Code may be sought by Authorized Minnesota litigants as set forth in Paragraph 6, below. Both the printed and digital forms of the Source Code, and the entire contents thereof, shall remain at all times at CMI's facility in Kentucky and the exclusive property of CMI.

4. A petitioner in an implied consent case, the Commissioner of Public Safety, a defendant in a criminal DWI case, or the State, county, or local prosecuting authority, shall be an Authorized Minnesota litigant if all three of the following requirements are fulfilled: i) production of the Source Code has been ordered by the state district court judge presiding over the implied consent or criminal DWI case; ii) the state district court judge has issued a Protective Order in the criminal DWI or implied consent case that designates the Source Code and any information relating to the Source Code as confidential, protects such confidential information from disclosure to persons or entities outside the litigation, and requires that the confidential information be destroyed within thirty (30) days of the final termination of the litigation (including appeals); and iii) the person(s) receiving

---

[1] Specifically, access to the digital format shall be provided as follows: digital access to all of the human readable source files for all of the processors that are required to create the executable image(s) for the Intoxilyzer 5000EN. The term source code includes all assembly files and C code files that are required to build these executable images. The term "digital access" implies the capability to do digital text searches. The computer system that these files are to be viewed from will have searching capabilities.

access to the Source Code has executed a Non-Disclosure Agreement in the form attached hereto as <u>Exhibit 5</u>. The provision of access to the Source Code for purposes of inspection and review shall not confer any other right, title, license, or interest in the Source Code to any person or entity.

5. CMI shall not be required to provide access to the Source Code to any person who is, or has been, employed by (as an employee, agent, or consultant) or otherwise affiliated with, any manufacturer of breath alcohol testing equipment within the preceding twenty-four (24) months.

6. Access to the redacted Source Code security features may be sought by a Motion to this Court brought by any Authorized Minnesota litigant, provided that the Motion must be accompanied by a sworn affidavit from an expert witness attesting that he or she has: i) fully examined a copy of the Source Code held by CMI; ii) concluded that it is reasonably likely that a problem exists with the instrument's ability to accurately and reliably measure the defendant's or petitioner's breath alcohol concentration; and iii) the instrument's ability to accurately and reliably measure a test subject's breath alcohol concentration cannot be ascertained without an inspection and review of the redacted network security features and menu passcode information. This sworn affidavit must describe the alleged problem with specificity and describe in detail why access to the redacted network security features and passcode information is necessary. Any such Motion must adhere to the requirements of Local Rule 7.1(b) ("Dispositive Motions") and notice of the Motion must be served upon CMI and the MN DPS in accordance

with Rule 5 of the Federal Rules of Civil Procedure. The movant shall bear the burden of proof on any such Motion by a preponderance of the evidence. If the Motion is granted, the moving party, the Commissioner of Public Safety, or the State, county, or local prosecuting authority, along with his, her, or its counsel and expert shall be granted access to inspect and review the redacted portion of the Source Code at CMI's headquarters in Owensboro, Kentucky. CMI shall not charge Authorized Minnesota litigants, their counsel, or their experts any fee for such access to the redacted portions of the Source Code for inspection and review.

7. This Injunction is Permanent in nature. It shall continue in full force and effect until it has been vacated by this Court or other court of competent jurisdiction, or until such time as the State has completely discontinued use of the Minnesota version of the Intoxilyzer 5000EN instrument for evidentiary purposes and the time for appeal of any conviction or revocation involving such evidence has run.

# VI.  CONTINUING JURISDICTION

This Court shall maintain continuing jurisdiction over this Consent Judgment and Permanent Injunction.  This Consent Judgment and Permanent Injunction are governed by federal law and may be modified only in accordance with the Federal Rules of Civil Procedure and applicable law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: _____, 2008

                                      The Honorable Donovan W. Frank
                                      United States District Court Judge

4029884v1
AG: #2306765-v1