UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

State of Minnesota,
by Michael Campion, its
Commissioner of Public Safety,

    Plaintiff,

 v.

CMI of Kentucky, Inc.,
a Kentucky corporation,

    Defendant.

File No. 08-CV-603 (DWF/AJB)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO APPLICANTS' OBJECTION TO MAGISTRATE JUDGE BOYLAN'S SEPTEMBER 16, 2008 ORDER**

---

  Defendant CMI of Kentucky, Inc. ("CMI") respectfully submits this Memorandum of Law in Opposition to Applicants' Objection to Magistrate Judge Arthur J. Boylan's September 16, 2008 Order Denying Applicants' Motion For Leave To Intervene.

## **INTRODUCTION**

  Applicants sought leave to intervene in this all but settled dispute between the State of Minnesota (the "State") and its vendor, CMI of Kentucky, Inc. ("CMI"). In his September 16, 2008 Order, Magistrate Judge Boylan rightly denied Applicants' motion, finding that Applicants failed to meet the standard set forth in Rule 24(a) of the Federal Rules of Civil Procedure. (Sept. 16, 2008 Order ("Order") at 1.) Because Magistrate Judge Boylan's Order is neither clearly erroneous nor contrary to law, Applicants' Objection should be overruled.

# **BACKGROUND**[1]

In 1997, the State and CMI entered a contract under which the State purchased Intoxilyzer 5000EN breath alcohol testing instruments from CMI. Some ten years later, defendants charged in Minnesota with DUI and petitioners in related implied consent license revocation cases began seeking production of the instrument's source code in discovery.[2] The State and other prosecuting authorities opposed these efforts. While most district courts ruled that the source is not discoverable, a minority of courts have ordered the State or other prosecuting authorities to produce the source code.

It is undisputed that the State and other prosecuting authorities have never had possession or custody of the source code. The State has also repeatedly asserted to Minnesota district courts, the Minnesota court of appeals, and the Minnesota Supreme Court, that it does not own or control the source code. Nonetheless, some courts queried whether the State might, in fact, own the source code based on an assignment provision in the Request for Proposal ("RFP") under which it purchased the instruments from CMI. Other courts have questioned whether CMI may have a duty under the contract to produce the source code directly to litigants in DWI or implied consent cases.

---

[1] The facts underlying this litigation are more fully set forth in Defendant's Memorandum of Law in Opposition to Motion for Leave to Intervene (Doc. No. 27), which is incorporated herein by reference, and the Joint Motion for Entry of Consent Judgment now pending before this Court (Doc. No 34). The Joint Motion for Entry of Consent Judgment will be heard by this Court on December 12, 2008. Briefs will be filed in accordance with D. Minn. LR 7.1.

[2] The source code is, in essence, the instrument's computer program, written in a "human readable" format.

Notably, CMI was not before the courts that raised these questions. Nor did these courts have any evidence from which to determine whether any of the source code was conceived or originated under the RFP, and if so, whether it was copyrightable. These courts also lacked the complete RFP and were not apprised of the express limitations on the "information" CMI had agreed to provide to Minnesota DUI defendants.[3] Without a necessary party or critical evidence, these courts concluded that the State could possibly obtain custody or control over the source code via the assignment or information provisions and, on that basis, they ordered the State to produce the source code.

The State, in turn, asked CMI to make the source code available to DUI defendants. CMI eventually agreed to do so, in a format and subject to a protective order and non-disclosure agreement that would reasonably protect CMI's vital trade secrets. CMI also sought reimbursement for the cost of producing the source code. However, some of the judges that ordered production noted that CMI was a non-party and refused to enter CMI's proposed protective order or to require that CMI be reimbursed its cost of producing the source code. In those instances, CMI declined to make the source code available. When the State was unable to produce the source code, some district courts excluded the Intoxilyzer 5000EN test results from the evidence in the case. This created a substantial burden on the State and other prosecuting authorities, as it became necessary

---

[3] Not surprisingly, Applicants have also failed to provide a complete copy of the RFP to this Court. (Appls.' Proposed Compl. in Intervention at 5-6.) Applicants conspicuously omit the contractual language limiting the "information" CMI agreed to produce to the Intoxilyzer 5000EN's operator's manual.

to utilize more expensive and time consuming blood or urine testing and to present additional expert testimony at trial.

Faced with a growing backlog of cases and pressure from the distinct but vocal minority of district courts that had ordered production of the source code, the State ultimately brought the instant lawsuit. The State alleged that CMI infringed the copyright by not producing the source code, that it breached the assignment provision in the contract by not providing the source code to the State, and that CMI had an independent obligation to produce the source code to certain defendants under the "information" provision.

During the course of this litigation, the State and CMI engaged in mediation with Magistrate Judge Boylan. Thanks in large part to the Court's commitment and persistence, the State and CMI have now entered a contingent settlement agreement under which the source code will be made available to Minnesota litigants in a manner that reasonably protects CMI's critical trade secrets. If this Court issues the proposed Consent Judgment and Permanent Injunction, the source code will be made available to qualified Minnesota litigants for inspection and review at no cost.

Shortly before the State and CMI filed the proposed Consent Judgment, Applicants (four individuals previously charged with DUI under Minnesota law) moved for leave to intervene in the case. Both the State and CMI opposed Applicants' motion. The State argued that Applicants' motion was untimely, their interest was adequately represented by an existing party, their interest would not be impaired by a denial of intervention, and their purpose for intervening was improper. (Pl.'s Mem. L. Opp'n Mot.

Intervene at 4-13.)  CMI similarly argued that the motion was untimely, that Applicants' interest was adequately represented, and their rights would not be impaired by the adjudication of this action.  CMI also argued that Applicants lacked a cognizable interest in the case and the purposes for which they sought to intervene were improper.  (Def.'s Mem. L. Opp'n Mot. Intervene at 5-17.)

After full briefing and oral argument, Magistrate Judge Boylan denied Applicants' motion.  The Magistrate Judge found that Applicants' interest was adequately represented by the State because "both were seeking identical relief–access to the source code for CMI's Intoxilyzer 5000EN in this litigation."  (Order at 1-2.)  Magistrate Judge Boylan did not address the State's and CMI's other arguments in opposition to the motion.  He did, however, note that Applicants would be permitted to seek leave of this Court to appear as *amicus curiae* in this action.  (*Id*. at 2.)  The State and CMI have jointly requested that this Court grant certain parties, including Applicants, leave to participate in that capacity.

Applicants now appeal Magistrate Judge Boylan's Order, asserting that it is clearly erroneous and contrary to law.  Applicants contend that in concluding that the State adequately represents their interest in this litigation, the Magistrate Judge misapplied the *parens patriae* doctrine. (Appls.' Obj. at 1-2.)  Applicants' objection should be overruled for at least two reasons.  First, Magistrate Judge Boylan's Order did not rely upon the *parens patriae* doctrine, much less misapply it.  Second, even if the State did not adequately represent Applicants' interest (and it does), Applicants motion failed to satisfy

the other elements of Rule 24(a) and was brought for improper purposes. Thus, it was rightly denied in any event.

**DISCUSSION**

Pursuant to the Rules of this Court, a District Judge "shall set aside any portion of [a] Magistrate Judge's order found to be clearly erroneous or contrary to law." D. Minn. L.R. 72.2(a). Here, Magistrate Judge Boylan's Order is neither clearly erroneous nor contrary to law. The Magistrate Judge correctly held that Applicants' interest in the litigation was adequately protected by the State and, therefore, he properly denied the motion.

A party seeking to intervene as of right must establish that it "(1) has a cognizable interest in the subject matter of the litigation, (2) the interest may be impaired as a result of the litigation, and (3) the interest is not adequately protected by the existing parties." *Med. Liab. Mut. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007); *Curry v. Regents of U. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999). The applicant must satisfy each of these elements before being permitted to intervene. *South Dakota ex. rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). A motion to intervene must also be timely. Fed. R. Civ. P. 24(a). Finally, a motion to intervene must not be brought for an improper purpose. *See Edmondson v. State of Neb.*, 383 F.2d 123, 128 (8th Cir. 1967). Applicants' motion fails on each of these bases.

**I.     APPLICANTS' INTERESTS ARE ADEQUATELY REPRESENTED**

Under Rule 24(a)(2), a would-be intervenor must demonstrate that no existing party adequately represent its interests. *Standard Heating & Air Conditioning, Co.*, 137

F.3d at 572. As Magistrate Judge Boylan correctly points out, an existing party's representation is presumptively adequate "when the prospective intervenor's interest is identical to that of an existing party." (Order at 2, quoting *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 410 (8th Cir. 1995).) As is clear in the Order, Magistrate Judge Boylan found such an identity of interest within the State's Complaint and the Applicants' proposed Complaint in Intervention. (Order at 1-2.) Specifically, the Magistrate Judge concluded that the Applicants and the State seek identical relief—access to the source code for Minnesota DUI defendants and implied consent petitioners. (*Id.*)

In their Objection, Applicants assert that Magistrate Judge Boylan "misapplied the *parens patriae* doctrine to hold that the State of Minnesota adequately represents Applicants' [sic] in this case without any analysis or discussing Applicants' evidence rebutting this presumption." (Appls.' Obj. at 2.) Applicants' objection is way off the mark—the reason Magistrate Judge Boylan did not analyze or discuss the *parens patriae* doctrine is that he did not rely upon the doctrine in his Order (although doing so would not have constituted reversible error). Rather, Magistrate Judge Boylan relied upon intervention jurisprudence that is well-settled in the Eighth Circuit and elsewhere. *See Arrow*, 55 F.3d 409-10 (citing with approval decisions of other circuits finding a presumption of adequate representation where interests are identical); *and see Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999) (denying intervention where interests were "identical"); *Conseco v. Wells Fargo Financial Leasing, Inc.*, 204 F. Supp. 2d 1186, 1190-91 (S.D. Iowa 2002) (same). Thus, Applicants' *parens patriae* argument is inapposite and unavailing.

Applicants' other complaint—that "the State has repeatedly stated it does not own the Source Code"—is a red herring that does not change the analysis. (Appls.' Obj. at 2.) The Applicants' purported interest has nothing to do with the State's unsupportable claim of ownership.[4] As Magistrate Judge Boylan correctly noted, the question of whether the State owns the source code is irrelevant to Applicants. (Order at 2.) Indeed, if granted leave to intervene, Applicants would still lack standing to litigate the ownership issue. Rather, the Applicants' and the State's unity of interest arises from their shared goal of obtaining access to the source code for Minnesota litigants. (*Id.*) Despite their protestations, Applicants simply cannot avoid the obvious—the State brought this lawsuit in an attempt to obtain access to the source code for persons in Applicants' circumstances. (Compl. at 17.) If this Court grants the Joint Motion for Entry of Consent Judgment, the State will have achieved exactly that, and if Minnesota district court judges rule in the future that the source code is discoverable, DUI defendants and implied consent petitioners will be able to access, inspect, review, and analyze the source code.

## II. APPLICANTS' MOTION FAILS ON NUMEROUS OTHER GROUNDS

In addition to Magistrate Judge Boylan's correct determination that Applicants' interests are sufficiently represented, there are several other reasons why intervention was inappropriate.[5] Perhaps most significantly, Applicants have failed to show that their

---

[4] In addition to its lack of substantive merit (the State concedes that it has no evidence to rebut CMI's evidence that the source code predates, and, therefore, did not arise under the contract), Applicants' purported interest has absolutely nothing to do with the issue of State ownership.

[5] Each of these reasons is set forth fully in CMI's Memorandum of Law in Opposition to Applicants' Motion for Leave to Intervene (Doc. No. 27).

interests will be impaired as a result of this litigation. Fed. R. Civ. P. 24(a). Their proposed Complaint in Intervention includes but a single count alleging breach of a purported third party beneficiary contract. (Appls.' Proposed Compl. in Intervention at 5.) CMI contends that Applicants possess no such interest, but either way, Applicants have failed to show that the resolution of the instant case would impair such rights (if they even existed). Fed. R. Civ. P. 24(a).

Additionally, similar motions have been deemed untimely, where, as here, the original parties had already invested substantial time an effort in settlement negotiations. *See, e.g., City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987) ("[I]ntervention at this time would render worthless all of the parties' painstaking negotiations because the negotiations would have to begin again."); *U.S. v. City of Chicago*, 908 F.2d 197, 199 (7th Cir. 1990) ("Litigation will have no end if every time parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air."). The State's and CMI's hard-negotiated settlement agreement is currently before this Court. It represents hundreds of hours of negotiation and drafting. As Applicants' Objection reveals, their goal is, indeed, to sabotage the settlement agreement and to "keep the ball in the air" as long as possible.[6] (Appls.' Obj. at 2-3.)

---

[6] Applicants' patently misrepresent the proposed Consent Judgment, claiming that it actually impedes their access to the source code. (Appls.' Obj. at 3.) This suggests that their true goal is to simply maintain the status quo. As long as there is no uniform mechanism under which DUI defendants and implied consent petitioners in Minnesota can obtain access to the source code, some Minnesota district courts will continue to exclude Intoxilyzer 5000EN test results from trial.

## III. APPLICANTS MAY BE PERMITTED TO PARTICIPATE AS *AMICUS CURIAE*

As an alternative to intervention, an applicant may be permitted to participate as an *amicus curiae*. *See White v. Nat'l Football League*, 822 F. Supp. 1389, 1432 (D. Minn. 1993). Where intervention would merely result in the reassertion of a claim already raised by an existing party, the applicant can "most expeditiously serve [their] purpose[] by filing a brief *amicus curiae*." *Ford Motor Co. v. Bisanz Bros., Inc.*, 249 F.2d 22, 28 n.1 (8th Cir. 1957); *Rivarde by Rivarde v. State of Mo.*, 930 F.2d 641, 645 n.3 (8th Cir. 1991). Indeed, the denial of a motion to intervene has been held to be harmless error where the applicant was permitted to participate in an *amicus* role. *Arkansas Elec. Energy Consumers*, 772 F.2d at 404. Thus, if this Court grants the State's and CMI's request that *amicus* participation be permitted, Magistrate Judge Boylan's Order denying intervention cannot, as a matter of law, constitute reversible error. *Id.*; *see also Assoc. Milk Producers, Inc.*, 534 F.2d at 115; *Leech Lake Area Citizens Comm. v. Leech Lake Band of Chippewa Indians*, 486 F.2d 888, 889 (8th Cir. 1973); *Beens v. Erdahl*, 336 F. Supp. 715, 719 (D. Minn. 1972).

This approach commends itself particularly well to this case because Applicants' counsel has publicly disclosed improper purposes for intervening in this case. He has admitted that he "[h]e seeks to have the state shut down its breath-testing program immediately." He has also admitted publicly that he seeks to obtain improper access to non-public information. These are not the purposes Applicants describe in their proposed Complaint or their Memorandum in Support of Motion for Leave to Intervene. Nor are

they legitimate reasons to participate in this lawsuit. Permitting Applicants to participate instead in an *amicus* role will allow them to protect their legitimate interest (if any), while at the same time protecting the State, CMI, and the Court, from Applicants' improper motives. *See Edmondson*, 383 F.2d at 128.

## CONCLUSION

Magistrate Judge Boylan's Order is neither clearly erroneous nor contrary to law. The Magistrate Judge followed well-settled Eighth Circuit precedent in denying Applicants' motion. Applicants' purported interest is identical to the State's and, therefore, Applicants' interest is adequately represented. Applicants' motion also fell short on numerous other bases, any of which would constitute a sufficient basis for denying intervention. Principal among them are Applicants' failure to show that their interest would be impaired by this action, and the fact that intervention at this stage would put to waste the substantial time, effort, and resources the parties have invested in settlement. Accordingly, the Applicants' Objection should be overruled. Finally, because Applicants' purposes for intervening are, at best, questionable, permitting them to participate in an *amicus* role will ensure the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

Respectfully submitted,

| | |
|---|---|
| Dated: October 14, 2008 | WINTHROP & WEINSTINE, P.A. |

By: <u>s/William A. McNab</u>
    David M. Aafedt, MN #27561X
    William A. McNab, MN #320924

Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402-4629
Tel: (612) 604-6400
Fax: (612) 604-6800
daafedt@winthrop.com
wmcnab@winthrop.com

*Attorneys for Defendant CMI of Kentucky, Inc.*

4083822v1