UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br>               Plaintiff,<br>vs.<br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br>               Defendant. | Civil Case No. 08-603 (DWF/AJB)<br><br>**AFFIDAVIT OF EMERALD A. GRATZ<br>IN SUPPORT OF ENTRY OF THE<br>CONSENT JUDGMENT AND<br>PERMANENT INJUNCTION** |

COUNTY OF RAMSEY    )
                                     )ss.
STATE OF MINNESOTA   )

Emerald A. Gratz, being first duly sworn, deposes and states that:

1.    I am an Assistant Attorney General in the Public Safety Division of the Minnesota Attorney General's Office. In this capacity, I represent the Commissioner of Public Safety in different types of civil litigation. The Public Safety Division of the Minnesota Attorney General's Office handles all civil implied consent cases at the district court level in 87 counties across the State of Minnesota as well as the state appellate courts. Therefore, the majority of my daily workload involves handling civil implied consent cases.

2.    An individual arrested for driving while impaired ("DWI") in Minnesota faces both civil and criminal consequences. First, a person arrested for DWI is subject to criminal prosecution under the Minnesota criminal DWI laws, which may include

criminal charges, fines, and possible incarceration. Second, a person arrested for DWI who fails or refuses to submit to chemical testing is subject to civil remedial measures under the Minnesota Implied Consent Law, which includes revoking the driver's license and recording the offense on the driver's record, as well as the impoundment of license plates and vehicle forfeiture where appropriate.

3. According to data supplied by the Minnesota Department of Public Safety, more than 30,000 drivers are arrested for DWI every year in Minnesota. In 2007, 255 people were killed in alcohol-related crashes. Although the problems associated with DWI occur nationwide, the problem appears to be worse in Minnesota. While alcohol-related fatalities declined in 28 states in 2003, in Minnesota, alcohol-related fatalities increased 4.3%. Repeat drunk drivers pose a particular problem for law enforcement in Minnesota. In 2003, 41% of drivers arrested for DWI were repeat drunk drivers.

4. Minnesota currently uses the Intoxilyzer 5000EN to conduct breath-alcohol tests on individuals arrested for DWI. The Intoxilyzer 5000EN is manufactured by CMI of Kentucky, Inc. Previous versions of the Intoxilyzer instrument have been used in Minnesota since approximately 1984. Prior to deploying the Intoxilyzer 5000EN into the field for use by law enforcement, the Minnesota Bureau of Criminal Apprehension ("BCA") conducted extensive validation testing on the Intoxilyzer 5000EN, ultimately concluding that the instrument provides consistently valid and reliable measurements of a test subject's breath-alcohol concentration. There are approximately 200 Intoxilyzer 5000EN instruments being used by law enforcement agencies throughout Minnesota.

5.      The use of breath testing is a highly valuable tool for addressing the problems posed by repeat drunk drivers because studies have shown that the sooner an individual arrested for DWI faces consequences, the less likely that person is to re-offend. Unlike a blood or urine test, which must be sent to the BCA for analysis, a failed breath test result may provide law enforcement with the information necessary for holding the driver for court where appropriate. In addition, law enforcement officers can take immediate steps to address public safety concerns with civil measures, such as issuing a notice of license revocation, as well as impounding vehicle license plates or forfeiting a vehicle where appropriate. Of the three forms of testing available, breath testing is the most common form of testing used by law enforcement agencies in Minnesota. In a typical year, approximately four out of every five DWI tests is a breath test.

6.      The issue of access to the source code ("Source Code") for the Intoxilyzer 5000EN first arose in early 2006, when the State began receiving demands for production of the Source Code from individuals arrested for DWI and challenging the validity of their breath test results in both criminal DWI and implied consent cases in state district court. However, the State has never had access to or possessed a copy of the Source Code. District courts throughout Minnesota have ordered production of the Source Code in hundreds of criminal DWI and implied consent cases. Based on these orders, the State asked CMI to produce the Source Code and CMI eventually agreed to do so, but only upon the entry of a protective order in the DWI or implied consent case that was satisfactory to CMI, including the execution of a non-disclosure agreement by the

person(s) receiving access to the Source Code, and reimbursement by the defendant or petitioner to CMI for its costs incurred in binding and mailing the Source Code. If a state district court refused to issue a protective order and require a non-disclosure agreement that were acceptable to CMI, or to order the requesting party to pay CMI's cost of producing the Source Code, CMI declined to make the Source Code available. In cases where the state district court ordered production of the Source Code and it was not produced, some state district courts subsequently dismissed both DWI and implied consent cases.

7. Faced with the potential consequences of having breath test results suppressed based on the Source Code issue, some criminal prosecutors in Minnesota advised their police departments to stop using the Intoxilyzer 5000EN and to instead opt for either blood or urine testing. These decisions have had a significant negative impact on the BCA because fluid tests, which require BCA scientists to test a fluid sample, cost more money to process than breath tests. In addition, the added fluid tests for DWIs are competing for resources with BCA fluid tests for other criminal cases, including DNA testing for murder, assault and rape cases, and controlled substance cases. Furthermore, the issues concerning access to the Source Code have also had an impact on the Minnesota judicial system. While the impact varies from county to county, some areas have seen a sizeable increase in the number of petitions filed challenging implied consent license revocations, increasing the size of court calendars and the number of cases under advisement and taxing already strained judicial resources.

8. Based upon all of the above-mentioned facts, the Source Code issue has disrupted the effective functioning of law enforcement agencies and the state court system regarding the proper enforcement and adjudication of Minnesota's DWI laws, which are critical to the safety of the citizens of Minnesota.

*EMERALD A. GRATZ*

Subscribed and sworn to before me
this 28th day of October, 2008.

_____
Notary Public

AG: #2328850-v1

> Barbara Ann McKinney
> NOTARY PUBLIC - MINNESOTA
> MY COMMISSION
> EXPIRES JAN. 31, 2012

5