UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>    By Michael Campion<br>    Commissioner of Public Safety<br><br>    Plaintiff,<br><br>v.<br><br>CMI of Kentucky Inc.,<br>    a Kentucky Corporation,<br><br>    Defendant,<br><br>and<br><br>Robert J. Bergstrom, Craig A. Zonobian,<br>Shane F. Steffenson, and<br>Christopher D. Jacobsen,<br><br>    Plaintiff–Intervenors. | Civil No.: 08-603 (DWF/AJB)<br><br>AMICUS BRIEF OF THE<br>MINNESOTA COUNTY<br>ATTORNEYS ASSOCIATION<br>IN SUPPORT OF THE<br>SETTLEMENT AGREEMENT |

**COMES NOW** the Minnesota County Attorneys Association (hereinafter referred to as MCAA), pursuant to the Court's order dated November 25, 2008, to participate by *amicus* in support of the proposed settlement agreement.

MCAA is a non-profit corporation comprised of Minnesota's 87 elected county attorneys and their assistant county attorneys. The mission of MCAA is to improve the quality of justice in the state of Minnesota. The many statutory duties of the 87 county attorney offices include criminal prosecution of all offenses, except for misdemeanor offenses that occur within city limits that are prosecuted by a city attorney. Minn. Stat. § 388.051 (2007). This includes cases of Driving While Impaired (DWI). While the Minnesota Attorney Generals Office is responsible for the civil drivers' license

Minnesota, State of v. CMI of Kentucky, Inc.    Doc. 73

Dockets.Justia.com

revocation hearings, the criminal DWI case is always prosecuted by local city and county prosecutors.

In this case, the proposed settlement agreement was referred to our Criminal Law Committee for review and discussion. It was later discussed by the MCAA Board of Directors. As explained below, MCAA supports the proposed settlement agreement to make the source code available, but opposes shifting costs of defense experts to the counties. It is also MCAA's position that the source code is not subject to the discovery rules in a criminal case because it is not necessary or relevant to test the accuracy and reliability of the instrument.

## Source Code Issue

The source code issue began when a Florida court granted a motion for discovery of the source code for the Intoxilyzer 5000. Florida v. Muldowny, 871 So.2d 911 (Fla. 5th DCA 2004). However, the Florida statute was subsequently amended to provide:

> "Full information does not include manuals, schematics, or software of the instrument used to test the person or any other material that is not in the actual possession of the state. Additionally, full disclosure does not include information in the possession of the manufacturer of the test instrument."

Fla. Stat. ch. 316.1932(4)(3) (2007). This legislative change effectively overruled the Muldowny decision and meant that the prosecution did not have to provide discovery of the source code for the Intoxilyzer. This legislative change has been upheld by the Florida courts. Moe v. Florida, 944 So.2d 1096 (Fla. 5th DCA 2007); Florida v. Bjorkland, 924 So.2d 971 (Fla. App. 2 Dist. 2006); Turner v. Florida, 951 So.2d 1036 (Fla. App. 4 Dist. 2007); Pflieger v. Florida, 952 So.2d 1251 (Fla. App. 4 Dist. 2007).

Other states have followed Florida's lead on this issue and recognized that the source code is not subject to the discovery rules, is not in the possession of the

prosecution, and not necessary to test the accuracy and reliability of the intoxilyzer. State v. Kuhl, 741 N.W.2d 701 (Neb. App. 2007); N.Y. v. Cialino, 831 N.Y.S.2d 680 (N.Y. City Crim. Ct. 2007); State v. Burnell, 2007 WL241230 (Conn. Super. 2007); State v. Walters, 2006 WL785393 (Conn. Super. 2006); City of Fargo v. Levine, 747 N.W.2d 130 (N.D. Supreme Court 2008).

In Minnesota, the Minnesota Bureau of Criminal Apprehension (BCA) conducted an extensive scientific study of the Intoxilyzer 5000, as required by statute, to certify its accuracy and reliability. Minn. Stat. § 634.16 (2007). The BCA completed this study without the use of the source code using live subjects and simulator solutions with known alcohol levels. The BCA found the Intoxilyzer to be reliable and accurate. Consequently, the Intoxilyzer is presumed accurate and reliable if there is a prima facie showing by the prosecution that the test was conducted by a certified operator using the proper procedures. Kramer v. Commissioner of Public Safety, 706 N.W.2d 231 (Minn. Ct. App. 2005).

Despite this presumption, the Minnesota Supreme Court denied the Commissioner of Public Safety's request for a Writ of Prohibition to prohibit the district court from ordering discovery of the source code. State v. Underdahl, 735 N.W.2d 706 (Minn. 2007). After the Writ of Prohibition was denied, the Court of Appeals reversed the district court's order requiring discovery of the source code and held that the defendant did not make a showing that the source code relates to his guilt or innocence. State v. Underdahl, 749 N.W.2d 117 (Minn. Ct. App. 2008); (review granted Minn.).

As a result of the decisions in Underdahl, the issue remains unresolved and there is inconsistency among jurisdictions on this issue. There have been a number of DWI

3

cases that have been dismissed because of the prosecution's inability to obtain the source code. This has an adverse effect upon public safety and the high level of publicity that this issue has received creates a public perception that there are no consequences for DWI. This perception adversely impacts the deterrent effect of the DWI laws.

The deterrent effect if also adversely affected by the increased use of blood and urine tests. Numerous counties have simply avoided litigating the source code issue by discontinuing use of the Intoxilyzer and using blood and urine tests. This is more costly and time consuming for the state because the blood and urine samples have to be sent to the BCA lab in St. Paul for analysis. A BCA scientist must test the sample and later travel to the prosecuting county to testify in court. This increase in blood and urine testing has resulted in a backlog at the BCA. Consequently, there is a delay in completing the test and the driver's license of the defendant remains valid until the blood or urine test is completed, whereas an Intoxilyzer test is completed on the night of the arrest and the defendant can be served with the notice revoking his driver's license.

Studies show that immediate sanctions have a deterrent effect upon impaired driving. For example, one study showed "the DWI recidivism rate for first time DWI offenders who experienced an immediate license revocation (within 0 to 10 days of their arrest) was 13% over three years.... First time DWI offenders who experienced an administrative license revocation more than 30 days after their arrest had a recidivism rate of 22.4% over three years." Stephen M. Simon, *Law Enforcement Actions and the Rate of DWI and DWI Recidivism,* Minnesota Police and Peace Officers Association Brochure (January 2005). The study found similar results for second and third time offenders. Another study showed that pre-hearing license plate impoundment reduced

the DWI recidivism rate by 50%. Id., citing Alan Rogers, *The Effect of Minnesota's License Plate Impoundment Law on Recidivism of Multiple DWI Violators,* 10 J. Alcohol, Drugs & Driving, Num. 2, 127 (1994).

Furthermore, there were 510 motorists killed on Minnesota's roads in 2007, which represents a 3.2% increase from 2006. *Minnesota Motor Vehicle Crash Facts 2007,* Minnesota Department of Public Safety (2008). Of these, 190 deaths were classified as alcohol related. Id. This is an increase from 166 deaths in 2006. *2006 Minnesota Impaired Driving Facts,* Minnesota Department of Public Safety (2007). This is in contrast with a 3.9% decrease in total fatalities and a 3.7% decrease in alcohol related fatalities nationwide, according to the U.S. Department of Transportation. See, *2007 Traffic Safety Annual Assessment - Alcohol Impaired Driving Fatalities,* http://www-nrd.nhtsa.dot.gov/Pubs/811016.PDF (August 2008). However, there has not been research on whether these numbers are causally related to the source code issue.

In addition, having the test result on the night of the arrest aids the police officer in making a correct and informed arrest decision.

**Proposed Settlement Agreement**

In the interests of justice and public safety, MCAA is supportive of the proposed settlement agreement to make the source code available to criminal defense attorneys and their experts to examine and analyze. The Intoxilyzer 5000 is accurate and reliable and there has not been any evidence presented that suggests that it is not. While the source code is neither necessary nor relevant to verify the accuracy and reliability of the Intoxilyzer, making the source code available will allow prosecutors and defense

attorneys to stop litigating the procedural discovery rules and address the substantive issues pertaining to guilt or innocence.

MCAA does have some concerns about whether the proposed settlement agreement will accomplish this. The first concern is that the agreement makes the source code available at CMI headquarters in Kentucky. MCAA is concerned that some district court judges will find this insufficient to resolve the discovery issue. However, the agreement appears to meet the requirements of the discovery rules in criminal cases. Rule 9.01 subd. 2(3) of the Minnesota Rules of Criminal Procedure requires the prosecution upon order of the court to "permit the inspection, reproduction or testing" and the agreement does that. The fact that it permits inspection and testing in Kentucky is potentially less convenient for defense counsel than making it available in Minnesota. However, the inconvenience is relatively small in an age where air travel is readily available. Furthermore, the cost of air travel is minimal compared to the expense of obtaining an expert witness to analyze the source code, which would cost tens of thousands of dollars. Finally, a number of defense experts that the defense bar has utilized on this issue are from outside the state of Minnesota to begin with.

The second concern is related to the first. Under Minn. Stat. § 611.21, defendants who are indigent and represented by the state public defenders office can file an ex parte motion requesting the district court to order the county to pay the cost of the defense expert. This essentially shifts the cost of the defense expert from the state public defender to the local county attorney. MCAA opposes shifting the cost to the county of the defendant's source code expert and paying transportation costs to travel to Kentucky. While Minn. Stat. § 611.21 was never contemplated in the proposed settlement

attorneys to stop litigating the procedural discovery rules and address the substantive issues pertaining to guilt or innocence.

MCAA does have some concerns about whether the proposed settlement agreement will accomplish this. The first concern is that the agreement makes the source code available at CMI headquarters in Kentucky. MCAA is concerned that some district court judges will find this insufficient to resolve the discovery issue. However, the agreement appears to meet the requirements of the discovery rules in criminal cases. Rule 9.01 subd. 2(3) of the Minnesota Rules of Criminal Procedure requires the prosecution upon order of the court to "permit the inspection, reproduction or testing" and the agreement does that. The fact that it permits inspection and testing in Kentucky is potentially less convenient for defense counsel than making it available in Minnesota. However, the inconvenience is relatively small in an age where air travel is readily available. Furthermore, the cost of air travel is minimal compared to the expense of obtaining an expert witness to analyze the source code, which would cost tens of thousands of dollars. Finally, a number of defense experts that the defense bar has utilized on this issue are from outside the state of Minnesota to begin with.

The second concern is related to the first. Under Minn. Stat. § 611.21, defendants who are indigent and represented by the state public defenders office can file an ex parte motion requesting the district court to order the county to pay the cost of the defense expert. This essentially shifts the cost of the defense expert from the state public defender to the local county attorney. MCAA opposes shifting the cost to the county of the defendant's source code expert and paying transportation costs to travel to Kentucky. While Minn. Stat. § 611.21 was never contemplated in the proposed settlement

agreement, the agreement would not preclude the district court from denying ex parte motion on the grounds that the source code is not "necessary to an adequate defense in the case", as required by statute.

## CONCLUSION

For the reasons stated, MCAA supports the proposed settlement agreement.

RESPECTFULLY SUBMITTED,

Dated: 12/31/2008

William A. Lemons (#0295425)
Traffic Safety Resource Prosecutor
Minnesota County Attorneys Association
100 Empire Drive, Suite 200
St. Paul, MN 55103
(651)641-1600