UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>                Plaintiff,<br><br>  v.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>                Defendant,<br><br>  and<br><br>Robert J. Bergstrom, Craig A. Zenobian,<br>Shane M. Steffensen, and Christopher D.<br>Jacobsen,<br><br>                Plaintiff-Intervenors. | File No. 08-CV-603 (DWF/AJB) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN INTERVENTION OF PLAINTIFF-INTERVENOR CHRISTOPHER D. JACOBSEN**

Defendant CMI of Kentucky, Inc. ("CMI" or "Defendant") respectfully submits this Memorandum of Law in Support of Motion to Dismiss the Complaint in Intervention of Plaintiff-Intervenor Christopher D. Jacobsen pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**TABLE OF CONTENTS**

Page No.

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

DISCUSSION .................................................................................................................. 6

    I.     LEGAL STANDARD. ................................................................................. 6

    II.    PLAINTIFF-INTERVENOR JACOBSEN CANNOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. .......................... 7

          A.    The Source Code Is Not "Information" As That Term is Used in the Contract. ................................................................................. 8

          B.    Because Mr. Jacobsen Did Not Obtain an Order From The Court With Jurisdiction Over His Case Until After the Contract Expired, No Right To Any Information Ever Vested In Him. ................................................................................................ 11

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page No.

**Cases:**

*Aslakson v. Home Sav. Ass'n*,
　　416 N.W.2d 786 (Minn. Ct. App. 1987) ............................................................. 12, 13

*Brix v. Gen. Accident & Assurance Corp.*,
　　93 N.W. 542 (1958) ..................................................................................................... 11

*Brookfield Trade Ctr., Inc. v. County of Ramsey*,
　　548 N.W.2d 390 (Minn. 1998) ...................................................................................... 9

*Buchman Plumbing Co., Inc. v. Regents of The Univ. of Minn.*,
　　215 N.W.2d 479 (Minn. 1974) .................................................................................... 11

*Conley v. Gibson*,
　　355 U.S. 41 (1957) ........................................................................................................ 6

*Edgley v. Lappe*,
　　342 F.3d 884 (8th Cir. 2003) ........................................................................................ 9

*Force v. ITT Hartford Life & Annuity Ins. Co.*,
　　4 F. Supp. 2d 843 (D. Minn. 1998) .............................................................................. 6

*Hansen v. Proctor*,
　　74 N.W.2d 281 (Minn. 1955) ..................................................................................... 12

*In re Grand Casinos, Inc. Sec. Litig.*,
　　988 F. Supp. 1273 (D. Minn. 1997) ............................................................................. 6

*Lake Co. v. Molan*,
　　131 N.W.2d 734 (Minn. 1964) ................................................................................... 12

*Lobeck v. State Farm Auto. Ins. Co.*,
　　582 N.W.2d 246 (Minn. 1989) ...................................................................................... 9

*Minn. Office Plaza, LLC v. Target Stores, Inc.*,
　　2007 LEXIS 851 (Minn. Ct. App. Aug. 21, 2007) ..................................................... 12

*Nat'l Union Fire Ins. Co. v. Schwing Am., Inc.*,
    446 N.W.2d 410 (Minn. 1989) ................................................................ 12, 13

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) .............................................................. 6,7

*Schuer v. Rhodes*,
    416 U.S. 232 (1974)
    *abrogated in part by Harlow v. Fitzgerald, 457 U.S.800, 814-15 (1982)* ............... 6

*State of Minnesota v. Christopher D. Jacobsen*,
    File No. 02-CR-07-370, Anoka County, Minnesota ................................................. 7

*Underdahl v. Comm'r of Pub. Safety*,
    735 N.W.2d 707 (Minn. 2007) ................................................................ 3

*Vizenor v. Babbitt*,
    927 F. Supp. 1193 (D. Minn. 1996) .......................................................... 6

**Statutes:**

Minn. Stat. § 169A.53, subd. 3(b)(10) ................................................................ 2

**Other Authorities:**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 6

Minn. R. 7502.0420, subp. 3 ........................................................................ 2

# INTRODUCTION

Mr. Jacobsen and three other Plaintiff-Intervenors claim they are entitled to access to the source code for the Minnesota version of CMI's I-5000EN breath alcohol testing instrument on the basis of CMI's contract (the "Contract") with the State of Minnesota (the "State"). However, Mr. Jacobsen must be dismissed from this action. The Contract never required CMI to produce its source code; and, in any event, it expired long before the rights Mr. Jacobsen now asserts could have ever vested. Thus, even assuming that the allegations in his Complaint in Intervention are true, and granting them every reasonable inference, there is no set of facts upon which Mr. Jacobsen could be entitled to the relief he seeks. He simply does not fall within the ambit of the Contract and, accordingly, he must be dismissed from this action.

Still, it should be noted that all is not lost for Mr. Jacobsen and other Minnesota litigants in his position. If this Court enters the Proposed Consent Judgment and Permanent Injunction (Docs. 34 & 35), even persons who otherwise have no basis upon which to claim a right to the source code will be given access—and at no cost. Indeed, the obvious futility of Mr. Jacobsen's claim highlights the extent to which, by entering the Conditional Settlement Agreement and moving for entry of the Proposed Consent Judgment and Permanent Injunction, CMI has voluntarily agreed to do far more than it could ever be required to do under any reading of the now expired Contract.

# BACKGROUND[1]

In early 1997, the State and CMI entered into a Contract under which CMI agreed to sell, and the State agree to purchase, CMI's I-5000EN breath alcohol testing instruments. The Contract consisted of a Request for Proposal issued by the State, CMI's Proposal, and the State's Notice of Award. (Affidavit of William A. McNab in Support of Motion to Dismiss Plaintiff-Intervenor Jacobsen ("McNab Aff.") Ex. 1 ¶ 32.)[2] The instruments are used by various law enforcement agencies to test individuals' breath alcohol concentration in connection with the enforcement of various alcohol-related statutes. (State's Complaint ("Compl.") ¶ 1.) Under Minnesota statutes and rules, the results of a test administered with the I-5000EN are presumptively valid and may be admitted in evidence without corresponding expert testimony. Minn. Stat. § 169A.53, subd. 3(b)(10) (2008); Minn. R. 7502.0420, subp. 3 (2004). Between 1997 and 2008, the State purchased and put more than 200 of the instruments into service. (Compl. ¶ 17.) The Contract, which originally ran through December 31, 2001, was subsequently extended and expired of its own terms on January 31, 2008. (McNab Aff. Ex. 2.)

In or about 2006, defendants charged with violations of Minnesota's drunk driving laws and petitioners in license revocation proceedings began seeking access to the

---

[1] For a complete recitation of the underlying facts and circumstances of this action, please see the State of Minnesota's and CMI's Memoranda of Law in Support of Motion for Entry of Consent Judgment and Permanent Injunction.

[2] A complete copy of the Contract, including the State's RFP, CMI's Proposal, and the State's Notice of Award, was filed with the Court as Exhibit 1, Pts. 1-3, to the Joint Motion for Entry of Consent Judgment and Permanent Injunction. (Doc. 35.) Due to the Contract's voluminous nature, only excerpts will submitted herewith as Exhibits to Mr. McNab's affidavit in support of this motion.

I-5000EN's source code in discovery. (Compl. ¶ 21.) The State refused to produce the source code on two primary bases. First, the State asserted that the source code was not relevant. (McNab Aff. Ex. 3 at 2-6; Ex. 4 at 2-7.) Second, the State argued that the source code was not within its possession, custody or control. (*Id*. Ex. 3 at 8-10; Ex. 4 at 9-10.) Indeed, the State affirmed in a sworn affidavit and various court pleadings that it had never owned or possessed the source code. (McNab Aff. Ex. 5 (Affidavit of Glenn Hardin, Toxicology Supervisor for the Minnesota Bureau of Criminal Apprehension) ¶ 12.) Most state district courts denied defendants' motions to compel production of the source code, but a minority of courts began ordering the State to produce the source code or face exclusion of the I-5000EN test results from the evidence in the case. (State Mem. Law Supp. Joint Mot. Entry Consent J. ("State's Br." at 2.) Critically, some courts, including the Minnesota Supreme Court, hypothesized—but never decided—that the State *may have control over the source code* under its contract with CMI. *See Underdahl v. Comm'r of Pub. Safety*, 735 N.W.2d 707, 712-13 (Minn. 2007) ("*Underdahl I*").[3]

In light of *Underdahl I*, and in an attempt to conform to state district court orders compelling production of the source code, the State asked CMI to make the source code available for production. (Affidavit of Emerald A. Gratz in Supp. Joint Mot. Entry Consent J. ("Gratz Aff.") ¶ 6.) Seeking to maintain the source code's trade secret status, CMI initially demurred. However, CMI soon recognized the need to resolve this so-called "source code issue," and agreed to make the source code available subject to a

---

[3] Like the Plaintiff-Intervenors in this case, the Minnesota Supreme Court cited the RFP but failed to recognize that the Contract consists of the RFP, CMI's Proposal, and the State's Notification of Award. *Underdahl*, 735 N.W.2d at 713.

protective order and non-disclosure agreement that would adequately protect its trade secret source code. (*Id*.) Because electronic "data" can easily be copied and transmitted around the globe, CMI agreed to produce the source code in written, hardbound format. (Affidavit of Toby Hall in Supp. Joint Mot. Entry Consent J. ("Hall Aff.") ¶¶ 10, 22-24.) And because the source code includes vital passcodes and similar information directly affecting the security of the State's testing program, CMI insisted that this security information be redacted from the written, hardbound version of the source code. (*Id*. ¶¶ 26-31.) Therefore, in addition to the aforementioned protective order and non-disclosure agreement, CMI also required that Minnesota litigants seeking to obtain the source code pay CMI's cost of producing the written, hardbound source code. (Gratz Aff. ¶ 6.)

Unfortunately, many of the courts that ordered production declined to enter an adequate protective order; others refused to require Minnesota litigants to pay CMI's costs of production. Some courts crafted their own protective orders, while others refused to issue any sort of protective order. Even when the courts cooperated, some Minnesota litigants refused to execute the non-disclosure agreement, while others refused to reimburse CMI. (CMI Mem. Law Supp. Mot. Entry Consent J. ("CMI Br.") at 5.) Given the number of separate jurisdictions and individual state district court judges, the only thing that was consistent about the various source code rulings was an utter lack of consistency. Faced with this inconsistency and its own legal obligation to protect or lose the source code's trade secret status, CMI had little choice but to retain control over the source code.

Facing a plethora of inconsistent orders and the potential exclusion of I-5000EN evidence in a significant number of cases, the State brought the instant litigation, attempting to either obtain the source code itself or to force CMI to make it available directly to certain Minnesota litigants. (Compl. ¶ 2.) The State's principal claims are that the State took title to the source code via an assignment provision in the Contract, and that certain Minnesota litigants are intended third-party beneficiaries who are entitled to the source code under the Contract. (*Id*. ¶¶ 12-13.)

Several months after the State brought this suit, Mr. Jacobsen and three other individuals moved for leave to intervene as plaintiff-intervenors in the case. (Compl. In Intervention at 12.) They brought a single breach of contract claim mirroring the State's third-party beneficiary claim, alleging that they ware entitled to a copy of the source code under the Contract between the State and CMI. (*Id*. ¶¶ 15-32, 35.) Both the State and CMI opposed the motion for leave to intervene. While that motion was under advisement with Magistrate Judge Boylan, the State and CMI reached a settlement agreement that was conditioned upon this Court's entry of the Proposed Consent Judgment and Permanent Injunction. (Docs. 34 & 35.) The State and CMI brought a joint motion for an order entering the Proposed Consent Judgment and Permanent Injunction. Magistrate Judge Boylan thereafter denied the motion for leave to intervene.[4] (Doc. 37.) This Court subsequently reversed that order and granted Petitioners' motion to intervene. (Doc. 58.) CMI timely filed and served its Answer to the Complaint in Intervention denying the

---

[4] The State's and CMI's Joint Motion for Entry of Consent Judgment and Permanent Injunction is scheduled for hearing before this Court on January 14, 2009.

other three Plaintiff-Intervenors' claims and simultaneously brought this motion to dismiss Mr. Jacobsen from the action for failure to state a claim upon which relief may be granted.

## DISCUSSION

I. **LEGAL STANDARD.**

Dismissal is required where, as here, after assuming the allegations in the Complaint to be true and granting every reasonably inference in the plaintiff's favor, the court concludes that there is no set of facts alleged under which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated in part on unrelated grounds*, 457 U.S. 800, 814-15 (1982); *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1197 (D. Minn. 1996).

On a motion to dismiss, the court typically will not look beyond the pleadings; however, the court may consider documents that are incorporated or integral to the complaint without converting the motion to one for summary judgment. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 849 n.4 (D. Minn. 1998). This is particularly the case where the document in question is of unquestioned authenticity. *See In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1273, 1279 (D. Minn. 1997).

Here, Plaintiff-Intervenor Jacobsen's Complaint in Intervention purports to attach portions of the Contract as Exhibits A-C. (Compl. in Intervention ¶¶ 16, 18-19.) It also purports to attach Minnesota State District Court Judge Donald J. Venne's March 25, 2008 Order on Defendant's Motion for Additional Discovery in the matter *State of*

*Minnesota v. Christopher D. Jacobsen*, File No. 02-CR-07-370, Anoka County, Minnesota. (*Id.* ¶ 29; McNab Aff. Ex. 7.) The Complaint in Intervention clearly incorporates and relies entirely upon each of these documents. Accordingly, this Court may consider them in analyzing the sufficiency of the pleading. *Porous Media Corp.*, 186 F.3d at 1079.

## II. PLAINTIFF-INTERVENOR JACOBSEN CANNOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Mr. Jacobsen's claim sounds entirely in contract.[5] (Compl. in Intervention ¶¶ 1, 15-20, 29-32, 35.) Indeed, the sole count in the Complaint in Intervention is styled as, and pleads, "breach of third party beneficiary contract." (*Id.* at 5.) He and the other Plaintiff-Intervenors erroneously contend that CMI agreed to provide the source code to defendants in cases in which evidence from the I-5000EN instrument would be introduced. (*Id.* ¶¶ 1, 16, 19-32, 35.) The Contract language upon which all four Plaintiff-Intervenors rely specifically required that CMI's Proposal include a:

> Provision for information to attorneys supplied directly from manufacturer including statement of all non-disclosure/non-reproduction agreements required to obtain information, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence. This part of the contract to be activated with an order from the court with jurisdiction of the case and include a reduced fee schedule for defendants found by the court to be entitled to a publicly funded defense.

---

[5] Curiously, Paragraph 17 of the Complaint in Intervention refers to the assignment provision in the Contract. However, the Complaint in Intervention does not allege that the source code is copyrightable, that it was conceived or originated under the Contract, or that the source code was, in fact, assigned to the State. Nor does the Complaint in Intervention allege any facts or cite any law supporting the proposition that Mr. Jacobsen has standing to pursue such a claim—particularly where, as here, the State has brought that very claim in its own behalf. Thus, Mr. Jacobsen's claim is limited to the Contract.

- 7 -

(McNab Aff. Ex. 6 ¶ 12.)

Mr. Jacobsen's claim fails for two fundamental reasons.[6]  First, the source code is not "information" within the meaning of the Contract.  Second, even if the source code was the kind of "information" that was contemplated within the Contract, no right of access to information ever vested in Mr. Jacobsen because the Contract expired before he satisfied the express condition precedent—that he receive an order from the court with jurisdiction over his case.  The Contract expired on January 31, 2008.  (McNab Aff. Ex. 2.)  Mr. Jacobsen did not obtain an order from the district court until March 25, 2008, almost two months later.  (McNab Aff. Ex. 7.)  In other words, by the time Mr. Jacobsen obtained an order, there was no Contract and, therefore, no obligation that CMI provide any information to him.  For each of these reasons, his claim must be dismissed.

The Contract's expiration is a critical fact not only in Mr. Jacobsen's case, but in the broader scope of the so-called "source code issue" as well.  Because the Contract ceased to exist on January 31, 2008, it cannot serve as a basis for any claims arising after that date, and for that same reason, it cannot serve as the cornerstone of any long-term solution to the "source code issue."

### A. The Source Code Is Not "Information" As That Term is Used in the Contract.

Contrary to the Plaintiff-Intervenors' contentions, the source code is not the kind of information contemplated within the Contract.  Thus, even if Mr. Jacobsen otherwise

---

[6] For purposes of this motion and argument only, CMI assumes, but does not concede, that the contract language at issue expresses the parties' intent to establish a third-party beneficiary obligation.

had a vested right to receive some sort of information under the Contract (and he does not), he still would not be entitled to receive the source code. The Contract terms clearly and unambiguously reflect that the only information CMI agreed to provide was a copy of the instrument's Operator's Manual.

Under Minnesota law, the construction of an unambiguous contract is a question of law for the court. *See Edgley v. Lappe*, 342 F.3d 884, 888 (8th Cir. 2003); *Lobeck v. State Farm Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1989). The Contract must be read and interpreted as a whole, in a manner that gives reasonable meaning and effect to every term. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 548 N.W.2d 390, 394 (Minn. 1998). Additionally, here the RFP itself expressly states that the Contract consists of the RFP, the Proposal and the Notice of Award, all read together. (McNab Aff. Ex. 1 ¶ 32.) While the term "information" is not defined in the State's RFP, it is defined within CMI's Proposal, which is itself part of the Contract.

In presenting its Proposal in accordance with the RFP's requirements, including those quoted at length above, CMI's Proposal expressly stated that:

> CMI has a standard procedure for release of information for legal purposes to attorneys. The reduction in fee for a publicly funded defense can be found in the pricing section [of CMI's Proposal].

(McNab Aff. Ex. 8 ¶ 12.)

As required under the RFP, CMI's Proposal included CMI's proposed fee for the provision of information and a reduced fee for publicly defended defendants. (*Id*. Ex. 9.) The Proposal also included CMI's standard cover letter to attorneys who have requested information, its standard confidentiality agreement and affidavit of compliance. *(Id.*

Ex. 10.) Notably, CMI's standard letter to attorneys requesting information said expressly that ***"[t]he Operation Manual for the Intoxilyzer® 5000 is the only manual that would be available to you."*** (*Id*.) The State never objected in any manner to CMI's definition of the information it was willing to provide to attorneys under the Contract, and it awarded the Contract to CMI. (*Id*. Ex. 11.) And notably, the State had expressly reserved the right to reject any Proposal that materially deviated from the RFP's terms and conditions.[7] (*Id*. Ex. 1 ¶ 25.) Yet after receiving this written notice of CMI's definition of the information it was willing to make available, the State did not reject CMI's Proposal, or even question CMI's definition. It simply awarded the Contract to CMI.

Because the source code is not "information" within the meaning of the Contract, Mr. Jacobsen's contract claim fails *ab initio*, and must be dismissed.

---

[7] The RFP specifically provides the following warning to vendors:

> VENDORS ARE CAUTIONED THAT BY TAKING ANY EXCEPTION THEY MAY BE MATERIALLY DEVIATING FROM THE PROPOSAL SPECIFICATION. IF A VENDOR MATERIALLY DEVIATES FROM A PROPOSAL SPECIFICATION, ITS PROPOSAL MAY BE REJECTED.
>
> A material deviation is an exception to the proposal specification which:
> 1. Gives the vendor taking the exception a competitive advantage over other vendors, or
>
> 2. Gives the State something significantly different from that which the State requested.

(McNab Aff. Ex. 1 ¶ 25.)

### B. Because Mr. Jacobsen Did Not Obtain an Order From The Court With Jurisdiction Over His Case Until After the Contract Expired, No Right To Any Information Ever Vested In Him.

Even setting aside that information did not include the source code, Mr. Jacobsen's Complaint in Intervention would still fail to state a claim entitling him to relief. The Contract includes an express condition precedent to CMI's duty to provide information. It says CMI's duty is "to be activated with an order from the court with jurisdiction of the case…." (McNab Aff. Ex. 6 ¶ 12.) The Contract expired on January 31, 2008, but Mr. Jacobsen did not obtain an order from the court with jurisdiction over his DUI case until March 25, 2008. (*Id*. Exs. 2 & 7.) By then, there was no longer a Contract between the State and CMI or a condition precedent for Mr. Jacobsen to satisfy, and, therefore, there was no corresponding duty for CMI to produce information to his counsel.

Under Minnesota law, a third-party beneficiary right may arise when contracting parties clearly express an intent to confer a benefit on others within the contract itself. *Buchman Plumbing Co., Inc. v. Regents of The Univ. of Minn.*, 215 N.W.2d 479, 483 (Minn. 1974). The terms of a third-party beneficiary contract are to be derived solely from the express terms of the underlying contract. *See id.*; *Brix v. Gen. Accident & Assurance Corp.*, 93 N.W. 542, 544 (1958). Traditional common law principles of contract govern the law of third-party beneficiary contracts and a third-party beneficiary is subject to the same defenses as the parties to the contract. *See Hansen v. Proctor*, 74 N.W.2d 281, 284 (Minn. 1955).

A third-party beneficiary's rights generally vest when he has accepted the agreement or relied upon it to his detriment. *See Minn. Office Plaza, LLC v. Target Stores, Inc.*, 2007 LEXIS 851, at \*19 (Minn. Ct. App. Aug. 21, 2007) (unpublished). Mr. Jacobsen fails to plead that he has satisfied either of these requirements, and indeed, it is difficult to imagine how he could do so. But more importantly, as in any contract, where an intended third-party beneficiary's rights are contingent upon the satisfaction or occurrence of a condition precedent, the promisor's duty of performance does not arise until the condition has been satisfied.[8] *Nat'l Union Fire Ins. Co. v. Schwing Am., Inc.*, 446 N.W.2d 410, 412 (Minn. 1989). Indeed, "[w]hen a contract contains a condition precedent, a party to the contract does not acquire any rights under the contract unless the condition occurs." *Id*. If the underlying contract expires before the condition precedent occurs, the duty of performance is never triggered; it is as if it never existed. *See, e.g., Aslakson v. Home Sav. Ass'n*, 416 N.W.2d 786, 789 (Minn. Ct. App. 1987) ("If the event required by the condition does not occur, there can be no breach of contract, since the contract is unenforceable."); *see also Minn. Office Plaza*, 2007 LEXIS 851, at \*20 (holding that contract for an easement expired before third-party beneficiary's rights vested). The later occurrence or satisfaction of the condition precedent does not resurrect the expired contract or create a duty of performance in the erstwhile promisor.

---

[8] A condition precedent "is one which is to be performed before the agreement becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." *Lake Co. v. Molan*, 131 N.W.2d 734, 740 (Minn. 1964).

Here, the Contract is clear. CMI had no duty to provide any information to anyone, including Mr. Jacobsen, unless and until he or she became a defendant in an action involving evidence from the I-5000EN *and* he or she obtained an order from the court with jurisdiction in his or her case. (McNab Aff. Ex. 6.) It is undisputed that the Contract expired *before* Mr. Jacobsen received an order for production from Judge Venne. (*Id.* Exs. 2 & 7) As noted above, the satisfaction or occurrence of a condition precedent after the underlying contract has ceased to exist is, in effect, a nullity, because the condition precedent itself expired with the contract. *Schwing Am., Inc.*, 446 N.W.2d at 412; *Aslakson*, 416 N.W.2d at 789. In other words, by the time Judge Venne issued his order, there was no contract and no corresponding condition precedent to be satisfied. Accordingly, the issuance of Judge Venne's order could not, and did not, trigger an obligation on CMI's part.

Because the Contract expired before the condition precedent was satisfied, there is no circumstance or set of facts consistent with the allegations in Mr. Jacobsen's Complaint in Intervention that would entitle him to any relief whatsoever. Accordingly, his claim must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

Mr. Jacobsen cannot obtain access to the source code by way of his contract-based claim. To the extent that CMI may have agreed to provide information to certain Minnesota litigants under specific circumstances, that information did not include the source code. Moreover, for Mr. Jacobsen and hundreds of thousands of future DUI

defendants like him, a contract-based approach is simply too late because the Contract is no more.

Nonetheless, as CMI has repeatedly reminded Mr. Jacobsen and the other Plaintiff-Intervenors, there is another avenue to the source code. The State and CMI have crafted a Proposed Consent Judgment and Permanent Injunction that, if entered by this Court, will make the source code available to Mr. Jacobsen and others whose cases and orders for production are too late. Indeed, for every Minnesota DUI defendant who did not receive an order for production of the source code from the district court before January 31, 2008, the Proposed Consent Judgment is likely the only viable means of access to the source code. Thus, it presents the only sensible solution to the "source code issue." In any case, the now-expired Contract surely does not provide the way.

Respectfully Submitted,

Dated: January 6, 2009				WINTHROP & WEINSTINE, P.A.

						 s/William A. McNab
						David M. Aafedt, MN #27561X
						William A. McNab, MN #312071

						WINTHROP & WEINSTINE, P.A.
						225 South Sixth Street, Ste. 3500
						Minneapolis, Minnesota 55402-4629
						Tel: (612) 604-6400
						Fax: (612) 604-6800
						daafedt@winthrop.com
						wmcnab@winthrop.com

						ATTORNEYS FOR DEFENDANT
						CMI OF KENTUCKY, INC.

4232774v2