---

| | |
|---|---|
| State of Minnesota, by Michael Campion,<br>its Commissioner of Public Safety, | Court File No. 0:08-cv-00603-DWF-AJB |
| Plaintiff, | |
| v. | **PLAINTIFF-INTERVENOR<br>CHRISTOPHER D. JACOBSEN'S<br>MEMORANDUM IN OPPOSITION<br>TO MOTION TO DISMISS<br>COMPLAINT** |
| CMI of Kentucky, Inc.,<br>A Kentucky Corporation, | |
| Defendant | |
| Robert J. Bergstrom, Craig A. Zenobian,<br>Shane M. Steffensen and Christopher D.<br>Jacobsen, | |
| Plaintiffs-Intervenors | |

---

## **INTRODUCTION**

Plaintiff-Intervenor Christopher D. Jacobsen opposes Defendant CMI's Motion to Dismiss his Complaint in Intervention.

Plaintiff-Intervenor Jacobsen seeks access to the Source Code to the Intoxilyzer 5000EN manufactured by Defendant CMI and used by the State of Minnesota to prosecuted Minnesota motorists.

The plain, express language of the contract entered into between Defendant CMI and the State of Minnesota requires Defendant CMI to produce the Source Code to

1

Plaintiff-Intervenor Jacobsen.

Nonetheless, Defendant CMI brings this motion, errantly claiming the contract between Defendant and the State creates no right in third-party beneficiaries to get the Source Code because Defendant itself unilaterally limited the information to be produced despite Defendant CMI's failure to comply with the RFP's requirements necessary to make such a material change.[1]

Defendant then confuses and misconstrues the different and various deadlines and timing provisions of established by the contract to erroneously claim CMI has no duty to perform after January 31, 2008.

These is no merit to Defendant CMI's claims. Moreover, Defendant CMI's claims merely demonstrate that there are material issues of fact which if found in Plaintiff-Intervenor Jacobsen's favor would entitled Plaintiff-Intervenor Jacobsen to relief. Defendant CMI's motion to dimiss should be denied.

## MATERIAL FACTUAL ALLEGATIONS OF THE PLEADINGS

**1. The Parties.**

    **A. Plaintiff**

Plaintiff is the State of Minnesota which uses Intoxilyzer 5000EN breath alcohol devices to prosecute motorists under the State of Minnesota drinking and driving laws.

---

[1] Defendant also erroneously claims Plaintiff-Intervenors can obtain information under the proposed Consent Judgment. Given the Court's comments at the hearing on the motion to approve the Consent Judgment and Plaintiff-Intervenor's desire not to reargue why Defendant's claim is incorrect, Plaintiff-Intervenor will not address the Consent Judgment matter which is under advisement.

### B. Defendant CMI

Defendant CMI is the manufacturer of the Intoxilyzer 5000EN breath alcohol device which the State of Minnesota uses to prosecute motorists under the State of Minnesota's drinking and driving laws.

### C. Plaintiff-Intervenor Christopher D. Jacobsen

Defendant CMI admits that Plaintiff-Intervenor Jacobsen is an individual being prosecuted by Plaintiff State of Minnesota based on evidence from the Intoxilyzer 5000 breath alcohol instrument owned by the Plaintiff State of Minnesota and which was manufactured by Defendant CMI. [Docket No. 61, p. 2 ¶2].

Defendant CMI admits that Mr. Jacobsen possesses an order requiring the production of the Source Code in Mr. Jacobsen's underlying Minnesota litigation. [Id.] That order was issued by the Anoka County District Court on March 25, 2008. [Id. at p. 5, ¶29].

### 2. The State of Minnesota And Defendant CMI Contracted A Firm Or Reduced Price For Breath Alcohol Instruments, Accessories, And Parts Through January 31, 2008, During Which The State of Minnesota And Its Subdivisions Can Submit Orders To CMI.

In the fall of 1996, the State of Minnesota issued a Request for Proposal ("RFP") seeking bids for a new fleet of evidentiary breath alcohol test instruments. (**Ex. 1**).

The express purpose of the RFP was to establish a "requirements contract" whereby the State of Minnesota and its political subdivisions could order breath alcohol test instruments, accessories, and parts, when and if needed, for a firm price during the

life of the contract.[2] The RFP states:

> **PURPOSE OF RFP**:
>
> This is a request for proposals for a contract of five years duration to supply breath alcohol test instruments, related accessories, parts and services for use in the State of Minnesota by State, local and other law enforcement and corrections agencies and the court system. An evaluation of proposals will allow the state of Minnesota to select a breath alcohol test instrument in part on the basis of the ability of instruments offered by manufacturers to meet a set of performance criteria and to develop from the successful proposal a contract to purchase this equipment and related accessories and services. Instruments and equipment will be purchased under this contract as quickly as possible after execution of the contract. **Such a contract would also establish a price at which additional instruments could be purchased by the State or by local or other governmental jurisdictions (subdivisions) in the state when and if needed over the life of the contract**.

(Emphasis added) (**Ex. 1**, p. 18)

To meet this purpose, the RFP required all pricing to be firm or reduced for the life of the contract:

> 24. **Pricing**: All prices offered **shall remain firm or reduced during the life of the contract**. Price reductions announced by a manufacturer are to be applied at the time of announcement for products that have not been delivered. There shall be no price increase, except for repair parts, for which the discount percentage will remain the same.

(Emphasis added). (**Ex. 1**, p. p.6, No. 24).[3]

---

[2] Such requirements contracts are authorized by the Minnesota Uniform Commercial Code. See Minn. Stat. § 336.3-306. See also *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 962-963 (8th Cir. 2000); *Upsher-Smith Labs., Inc. v. Myland Labs., Inc.*, 944 F.Supp. 1411, 1427 (D. Minn. 1996).

[3] The RFP also required CMI to confirm the percentage of savings the State of Minnesota would realize under the contract than what would be paid without the contract, which CMI stated was 20%. (**Ex. 3**, p. 13 – Contract Savings & Usage Report).

Initially, the period during which prices were to remain firm or reduced was 60 months, or five years from January 2, 1997 through December 31, 2001. (**Ex. 4**, p. 2). The State of Minnesota and CMI subsequently negotiated four amendments to the contract, three of which extended the time periods during which prices would remain firm or reduced. (**Ex. 5**).[4] The fourth amendment extended this period to January 31, 2008.

Other than the "Pricing" provision of the contract, only the General Requirements of the Certificate of Insurance specifically limits CMI's obligations to carry various insurance coverages to the contract term. (**Ex. 1**, pp. 15-16). No other provisions of the contract expressly limited any performance obligations to January 31, 2008.

3.  **CMI Agreed To Deliver Breath Alcohol Instruments, Accessories, And Parts After January 31, 2008**.

CMI expressly agreed to deliver breath alcohol test instruments, accessories, and parts 90 days after CMI's receipt of order from the State of Minnesota and its political subdivisions. The contract states:

> Delivery: Delivery of 20 or more units per month starting March 15, 1997 until the number of units specified in the initial purchase order have been delivered; **thereafter 90 days after receipt of order**.

(Emphasis added). (**Ex. 4** at exh. A and p. 1).

By operation of this language, for orders CMI received between November 3, 2007 and January 31, 2008, CMI agreed to the delivery up to 90 days **after** January 31, 2008.

---

[4] The second amendment increased the firm prices for two accessories and training while extending the period during which the prices would remain firm or reduced.

**4. CMI Expressly Warranted Performance After Delivery Of Blood Alcohol Instruments, Accessories, And Parts.**

**A. CMI Expressly Gave A Two Year Warranty On Parts And Labor.**

Separate and apart from its agreement to keep prices firm through January 31, 2008, CMI gave an express "two year warranty on parts and labor" on all products. (**Ex. 2**, p. 2; **Ex. 3**, p. 24, No. 1 – Special Condition Requirements).

**B. CMI Expressly Warranted To Provide Any Information Ordered By A Court Where Its Delivered Intoxilyzer Devices Were Part Of The Evidence.**

Separate and apart from its agreement to keep prices firm through January 31, 2008, CMI expressly warranted it would provide to the attorneys of those charged with a crime where the results from a breath alcohol test instrument delivered under the contract is part of the evidence (even one delivered after January 31, 2008) **any information ordered by a court with jurisdiction over the case**. The RFP required CMI to warrant:

> The provision of information to attorneys supplied directly from the manufacturer including statement of all non-disclosure/non-reproduction agreements required to **obtain information**, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence. This part of the contract to be **activated with an order from the court with jurisdiction of the case** and include a reduced fee schedule for defendants found by the court to be entitled to a publicly funded defense.

(Emphasis added). (**Ex. 1**, p. 22, No. 12). There is no language indicating that this promise expires on January 31, 2008.

By writing dated October 25, 1996, Defendant CMI accepted the State of Minnesota's RFP **without qualification** and understood that the terms and conditions of

6

the Request for Proposal shall become a contract between CMI and the State of Minnesota. (**Ex. 2**, p. 8). Defendant CMI, stated:

> CMI hereby **accepts the terms and conditions** as stated in the state of **Minnesota's Request for Proposal for Evidentiary Breath Alcohol Test Instruments without qualification**. **CMI understands the terms and conditions as stated in the RFP shall become a contract between CMI and the State of Minnesota** should CMI be the successful vendor in the award of Contract.

(Emphasis added). (Id.).

**5. CMI Impliedly Warranted Performance After Delivery Of Blood Alcohol Instruments, Accessories, And Parts.**

The RFP imposes upon CMI the obligations of the Uniform Commercial Code as adopted by the State of Minnesota. The RFP states:

> 31. **Governing Law**: This agreement shall be construed in accordance with, and its performance governed by the laws of the State of Minnesota, judicial venue to be in Ramsey County, Minnesota, except to the extent that the provisions of this Agreement are clearly inconsistent therewith, **this agreement shall be governed by the Uniform Commercial Code (UCC) as adopted by the State of Minnesota**. To the extent this agreement entails delivery of or performance of services, such services shall be deemed "goods" within the meaning of the UCC except when to so deem such services as "goods" is unreasonable.

(Emphasis added). (**Ex. 1**, p. 7, No. 32). The Minnesota UCC implies warranties of "merchantability" and "fitness for particular purpose" which extend to the third party beneficiary Plaintiff-Intervenors. Minn. Stat. § 336.2-314, Minn. Stat. § 336.2-315, and Minn. Stat. § 336.2-318. The implied warranties also are not limited to January 31, 2008.

7

# ARGUMENT

## I. STANDARD FOR MOTION TO DISMISS AFTER SERVICE OF ANSWER.

After an Answer has been served, a motion to dismiss for failure to state a claim upon which relief can be granted is determined by the standard for judgment on the pleadings. <u>Westcott v. City of Oklahoma</u>, 901 F.2d 1486, 1488 (8th Cir. 1990). A motion for judgment on the pleadings is appropriate:

> [O]nly where the moving party has **clearly established** that no material issue of fact remains and the moving party is entitled to judgment as a matter of law.

<u>Waldron v. Boeing Co.</u>, 388 F.3d 591, 593 (8th Cir. 2004); <u>Potthoff v. Morin</u>, 245 F.3d 710, 715 (8th Cir. 2001); <u>Porous Media Corp. v. Pall Corp</u>., 186 F.3d 1077, 1079 (8th Cir. 1999); <u>Lion Oil Co., Inc. v. Tosco Corp</u>., 90 F.3d 268, 270 (8th Cir. 1996); <u>Westcott</u> 901 F.2d at 1488.

A motion to dismiss will be affirmed only if "it appears beyond doubt that the plaintiff <u>can prove no set of facts</u> which would entitle him to relief." <u>Morton v. Becker</u>, 793 F.2d 185, 187 (8th Cir. 1996).

All facts pled by the non-moving party are accepted as true and all reasonable inferences from the facts are drawn in favor of the non-moving party, in this case Plaintiff-Intervenor Jacobsen. Id.; <u>Potthoff</u>, 245 F.3d at 715; <u>Porous Media Corp.</u>, 186 F.3d at 1079; <u>Lion Oil Co., Inc.</u>, 90 F.3d at 279; <u>Westcott</u> 901 F.2d at 1488.

A Court may consider materials that are part of the public record, those embraced by the pleadings, and exhibits attached to the pleadings. *Porous Media Corp.*, 186 F.3d at 1079.

Considering the well pleaded facts, matters contained in the record, the Contract documents between the State of Minnesota and Defendant CMI, and drawing all inferences in favor of Plaintiff-Intervenor Jacobsen, there are material fact issues which would entitle Plaintiff-Intervenor Jacobsen to relief. This warrants the denial of Defendant CMI's motion.

## II. THE SOURCE CODE IS INFORMATION CMI AGREED TO PRODUCE WHEN A COURT ORDERS ITS PRODUCTION IN MINNESOTA LITIGATION.

The express language of the RFP requires CMI to provide any information a Court orders be produced in any case where the intoxilyzer unit manufactured by CMI is part of the evidence. (**Ex. 1**, p. 22, No. 12).

The plain meaning of the RFP's broad, unqualified, unrestricted term "information" which a Court may order be produced includes the Source Code to the intoxilyzer units which are used to prosecute Minnesota motorists.

Pursuant to the 5th Amendment, 6th Amendment, and Minn. Stat. § 169A.53, Subd. 3(b)(10), an accused has the right to confront and challenge the validity of the intoxilyzer's conclusions. The Source Code will afford accused motorists the ability confront the machine and demonstrate the invalidity of its results. [Docket No. 55 - Declaration of Thomas Workman]. Accordingly, this provision of the RFP intended

9

CMI's production of any information, including the Source Code, which a Minnesota Court ordered for as long as the State of Minnesota uses the machines manufactured by Defendant CMI.

Accordingly, the State of Minnesota did not intend the contract with CMI to supplant what a Court may order be produced.[5] Similarly, it was never intended that CMI could use the contract to supplant what a Court may order be produced. Rather, the contract correctly requires CMI to produce whatever "information" a Court may order be produced, which includes the Source Code to the intoxilyzer units manufactured by Defendant CMI.

Nonetheless, Defendant CMI makes the curious claim that its submission of its "**standard** cover letter," buried in its proposal to the RFP, somehow materially limited the RFP's broad term of "information" to nothing more than an operation manual. CMI's claim here, while without merit, does nothing more than raise an issue of fact for the finder of fact, to warrant the denial of Defendant CMI's motion to dismiss. <u>N & D Fashions, Inc. v. DHJ Indus., Inc.</u>, 548 F.2d 722, 726 (8th Cir. 1977).

Nonetheless, Defendant CMI incessantly urges this Court to conclude that its "standard cover letter" constitutes a material limitation on the broad RFP term "information." In doing so, CMI would have this Court ignore other express terms and

---

[5] Plaintiff State of Minnesota in its Complaint indicates it brought this action because the Source Code is "information" that must be produced. Pursuant to the RFP's General Proposal Terms And Contract Conditions/Instructions No. 32, "The State is solely responsible for rendering decisions in matters of interpretation on all terms and conditions" of the RFP. (**Ex. 1**, p. 7, No. 32).

conditions of the RFP. However, other contract provisions cannot be ignored. Contracts must be construed as a whole and effect must be given to all of its provisions. *Advantage Consulting Group, Ltd. v. ADT Sec. Systems, Inc.*, 306 F.3d 582, 586 (8th Cir. 2002); *Schleiff v. Bennitt*, 175 F.2d 890, 893 (8th Cir. 1949); *Telex Corp. v. Data Prods. Corp.*, 271 Minn. 288, 292, 135 N.W.2d 681, 685 (1965); *Lawton v. Joesting*, 96 Minn. 163, 167, 104 N.W. 830, 832 (1905); *Oster v. Medtronic, Inc.*, 428 N.W.2d 116, 119 (Minn. App. 1988).

The RFP's express terms and conditions required CMI to **alert** the State of any intention by CMI to materially deviate from the RFP's terms and conditions by 1) **taking specific exception** and 2) specifically stating CMI's "standard form" would supersede the RFP terms. The RFP states:

> 25. **MATERIAL DEVIATION**: A **vendor shall be presumed to be in agreement with these terms and conditions unless the vendor takes specific exception** to one or more conditions. Submission by the vendor of its standard form contract **shall not** be viewed as **an exception unless** the vendor **specifically states in the proposal** that **provisions in the form contract are intended to supersede the State's terms and conditions**.
>
> VENDORS ARE CAUTIONED THAT BY TAKING ANY EXCEPTION THEY MAY BE MATERIALLY DEVIATING FORM THE PROPOSAL SPECIFICATION. IF A VENDOR MATERIALLY DEVIATES FROM A PROPOSAL SPECIFICATION, ITS PROPOSAL MAY BE REJECTED.
>
> **A material deviation is an exception** to the proposal which:
> 1. Gives the vendor taking the exception a competitive advantage over other vendors, or
> 2. **Gives the State something significantly different from that which the State requested**.

11

(Emphasis added). (**Ex. 1**, p. 6, No. 25).

These requirements track with Minn. Stat. § 336.2-207(2), which under the RFP's terms and conditions govern this contract. (**Ex. 1**, p. 7, No. 32). An agreement is materially altered if an addition would "result in surprise or hardship if incorporated without express awareness by the other party." *Id.* (quoting U.C.C. § 2-207 cmt. 4). *N & D Fashions, Inc.*, 548 F.2d 722.

Thus, the RFP required CMI to state its exceptions <u>in CMI's transmittal letter</u> to the State of Minnesota. The RFP states:

> 32. **ACCEPTANCE OF PROPOSAL OF CONTENT:** The contents of this RFP and the response of the successful vendor will become contractual obligations, along with the final contract. The vendor's proposal **must include in the transmittal letter**, a statement of acceptance of all terms and conditions, **unless otherwise taken exception to**, as stated within this RFP. Any proposal which fails to comply with this requirement may be disqualified as non-responsive. The State is solely responsible for rendering decisions in matters of interpretation on all terms and conditions.

(Emphasis added). (**Ex. 1**, p. 7, No. 32).

Nowhere in its October 25, 1996 eight page transmittal letter to the State of Minnesota does CMI take exception to any of the State's terms and conditions in the RFP, let alone that broad term "information." (**Ex. 2**). Rather, CMI unequivocally stated "CMI hereby accepts the terms and conditions as stated in the state of Minnesota's Request for Proposal for Evidentiary Breath Alcohol Test Instruments without qualification." (**Ex. 2**, p. 8).

Nowhere in CMI's proposal documents attached to its transmittal letter does CMI

12

state it took exception to any of the State's terms and conditions of the RFP. (**Ex. 3**).

Similarly, CMI's transmittal letter does not specifically state CMI's "standard cover letter" is intended to supersede the RFP's broad term "information." Because CMI did not comply with these RFP requirements, CMI could not materially limit the boad definition of "information" to just an operation manual. See e.g. <u>TRWL Financial Establishment v. Select Intern.,Inc.</u>, 527 N.W.2d 573 (Minn.App.,1995.)

If CMI thought the term "information" as used in the RFP was ambiguous or otherwise was deficient, CMI was obligated to notify Contract Administrator and request modification or clarification of this term before CMI unqualifiedly accepted the RFP. The RFP states:

> 35. **REQUEST FOR DOCUMENTS**: If a vendor discovers any significant **ambiguity**, error, conflict, discrepancy, omission, or **other deficiency** in the RFP, the vendor shall immediately notify the Contract Administrator, as specified in the introduction, of such error and request modification or clarification of the document.

(Emphasis added). (**Ex. 1**, p. 8, No. 35). CMI obtained no modification or clarification **from the Contract Administrator** for the term "information."

CMI's "standard cover letter" is nothing more than an example of CMI's **procedure** for the release of information as stated in its proposal. It constitutes no material changed in the broad term "information."

CMI's own pricing under the contract with the State of Minnesota demonstrates CMI understood the RFP's term "information" included the Source Code and not just an operation manual. In response to Special Conditions Requirement No. 16, CMI agreed to

provide the State with "Ten copies of both the operating manual and service manual" at no additional cost. (**Ex. 3**, p. 22, No. 16).[6] CMI's pricing sheet lists the cost of additional copies of the operation manual and service manual at only $25.00 per manual. (**Ex. 3**, p. 327 No. 17 – Pricing sheet; **Ex. 4**, p. 3, No. 16). Conversely, the cost of court ordered information to private attorneys is ten times that amount, or $250.00. (**Ex. 3**, p. 26, No. 11 – Pricing sheet; **Ex. 4**, p. 2, No. 10 – Pricing sheet). CMI fully understood the term "information" consisted of more than just a $25.00 operation manual and included the Source Code.

The Confidentiality Agreement attached to the "standard cover letter" upon which CMI relies also makes clear that CMI understood it would have to produce any information as ordered by a Court, not just an "Operation Manual." The Confidentiality Agreement drafted by CMI includes in its list of information that would be subject to confidentiality "other documents containing information on the Intoxilyzer 5000," not just the operation manual. The CMI Confidentiality Agreement states in pertinent part:

> Permittee agrees not to disclose any **pamphlets, manuals, or any other documents containing information on the Intoxilyzer 5000** to anyone other than….

(Emphasis Added) [Docket No. 35-4, p. 32].

The Source Code is "information" within the meaning of the contract between the State of Minnesota and Defendant CMI. This requires denial of Defendant's motion to

---

[6] While CMI admits to the State of Minnesota that there is both an operation manual and a service manual, CMI's "standard cover letter" marked as Exhibit E to CMI's proposal incorrectly suggests the operation manual is the only manual available.

dismiss. At best, Defendant CMI's claim of a material deviation from the RFP term "information" presents a fact issue, which under Fed. R. Civ. P. 12(b)(6)(c) also warrants the denial of Defendant CMI's motion.

III. **UNDER THE PLAIN LANGUAGE OF THE CONTRACT, DEFENDANT CMI'S OBLIGATION TO PROVIDE COURT ORDERED SOURCE CODE INFORMATION CONTINUES BEYOND JANUARY 31, 2008**.

Defendant CMI attempts to mislead this Court into dismissing Plaintiff-Intervenor Jacobsen's Complaint by confusing the different and various deadlines and timing provisions for the performance of various duties by the parties that were expressly set up by the contract. Defendant should not be rewarded for such tactics.

For the State and its subdivisions to avail themselves of the guaranteed "pricing" of the contract, the express language of the contract set a January 31, 2008 deadline for CMI's receipt of orders. (**Ex. 1**, p. 6, No. 24; **Ex. 2**, p. 6, No. 24; **Ex. 5**).

Once an order was received by CMI, the contract expressly defined a different deadline for CMI obligation to deliver what was ordered. The contract requires CMI to deliver the ordered equipment, parts and accessories within 90 days of receipt of the order. (**Ex. 4**, at exh. A and p. 1). So, for orders received in the three months leading up to the January 31, 2008 deadline for CMI's price guarantee, CMI promised delivery up to 90 days after January 31, 2008.

The contract also defined yet another the time for Defendant CMI to produce "information" to attorney's of those accused with crimes because of the delivered intoxilyzer machines manufactured by Defendant CMI. The contract expressly defines

15

the time to produce this "information" when a Court orders its production. The CMI has a reasonable time to produce the information.

Unlike the "Pricing" and "Insurance" provisions of the contract which expressly incorporate the January 31, 2008 deadline, the express language of the contract's provisions pertaining to CMI's delivery obligations and and CMI's "information" production obligations no where contain or reference a January 31, 2008 deadline for CMI's performance. That is because the parties to the contract expressly contemplated CMI's performance of these duties after the January 31, 2008 deadline through which pricing was firm.

Defendant CMI's promise to provide court ordered "information" when the machine it manufactured is part of the evidence is a "promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty…." of Defendant CMI's future production of "information" upon the happening of a court order. Minn. Stat. § 336.2-313.

This express warranty extends to Plaintiff-Intervenor Jacobsen given both the express language of the contract and Minn. Stat. § 336.2-318. CMI's express warranty to produce court ordered "information" must be performed within a reasonable time. Minn. Stat. § 336.2-309.

Were the Court to adopt CMI's position and establish January 31, 2008 as the deadline for the performance of all of CMI's duties, it would lead to absurd results contrary to the express language of the contract. CMI's position would result in CMI

having no obligation to deliver on any orders it received during the 89 days leading up to and including January 31, 2008, contrary to the express contract language establishing a different timeline which requires delivery within 90 days of receipt of order.

Similarly, CMI's position would nullify CMI's obligation to produce court ordered "information" for intoxilyzer machines, accessories, and parts ordered during the last three months of CMI's price guarantee, or which were being used during the two year warranty period after January 31, 2008.

Contracts are not construed to nullify contractual provisions. Rather contracts are construed so as to give meaning to and effect to all contract provisions. *Advantage Consulting Group, Ltd. v. ADT Sec. Systems, Inc.*, 306 F.3d 582, 586 (8th Cir. 2002); *Lawton v. Joesting*, 96 Minn. 163, 167, 104 N.W. 830, 832 (1905); *Oster v. Medtronic, Inc.*, 428 N.W.2d 116, 119 (Minn. App. 1988). There is no merit to Defendant CMI's claim that all of its performance obligations expired on January 31, 2008, to require the denial of CMI's motion.

Even if Defendant CMI's performance obligations expired on January 31, 2008 as claimed by Defendant CMI, which they did not, discovery will likely establish that the State of Minnesota and CMI have by their conduct subsequent to January 31, 2008 impliedly extended the contract. *Fischer v. Pinske*, 243 N.W.2d 733, 735 (Minn. 1976); *Bolander v. Bolander*, 703 N.W.2d 529 (Minn. App. 2005); *House v. Baxter*, 371 N.W.2d 26, 29 (Minn. App. 1985).

The existence and terms of such an implied contact are a question of fact.

*AFSCME Council 6 v. Sundquist*, 338 N.W.2d 560, 567 (Minn. 1983); *Eide v. State Farm Mut. Auto. Ins. Co.*, 492 N.W.2d 549, 555 (Minn. App. 1992).

Because the existence and terms of an impliedly extended third-party beneficiary contract create material issues of fact, which facts can be established through discovery, Defendant CMI's motion to dismiss should be denied. *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004); *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir. 2001); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Lion Oil Co., Inc. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996); *Westcott* 901 F.2d at 1488; *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1996).

## **CONCLUSION**

For the foregoing reasons, Plaintiff-Intervenor Jacobsen respectfully requests Defendant CMI's motion to dismiss be denied.

                                    GORES LAW OFFICE

Dated: February 6, 2009           /s/ John J. Gores
                                         John J. Gores     ID No. 228928
                                         7091 Highway 65 NE, Suite 201
                                         Fridley, Minnesota 55432
                                         763-571-4777

Dated: February 6, 2009           /s/ Daniel J. Koewler
                                         Daniel J. Koewler    ID No. 388460
                                         2780 Snelling Avenue North, #330
                                         Roseville, Minnesota 55113
                                         651-604-0000

                                         *Attorneys for Plaintiffs-Intervenors*