# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

State of Minnesota,                                              Civil No. 08-603 (DWF/AJB)
by Michael Campion, its
Commissioner of Public Safety,

            Plaintiff,

and                                                              **ORDER**

Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen, and Christopher D.
Jacobsen,

           Plaintiff-Intervenors,

v.

CMI of Kentucky, Inc.,

           Defendant.

---

Emerald A. Gratz and Jeffrey F. Lebowski, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Plaintiff.

Charles A. Ramsay, Esq., and Daniel J. Koewler, Esq., Charles A. Ramsay & Associates, PLLC; and John J. Gores, Esq., Gores Law Office, counsel for Plaintiff-Intervenors.

David M. Aafedt, Esq., Jessica Slattery Karich, Esq., and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendant.

Marsh J. Halberg, Esq., Halberg Criminal Defense, counsel for *amicus curiae* Minnesota Society for Criminal Justice.

Joshua P. Graham, Esq., Merchant & Gould PC, counsel for *amicus curiae* Minnesota DWI Taskforce.

William A. Lemons, Esq., Minnesota County Attorneys Association, counsel for *amicus curiae* Minnesota County Attorneys Association.

---

## INTRODUCTION

This matter is before the Court upon the joint motion of the State of Minnesota, by Michael Campion, its Commissioner of Public Safety (the "State") and CMI of Kentucky, Inc. ("CMI") for entry of a consent judgment and a permanent injunction. The requested relief is opposed by Plaintiff-Intervenors Robert J. Bergstrom, Craig A. Zenobian, Shane M. Steffensen, and Christopher D. Jacobsen (the "Plaintiff-Intervenors"). The Court permitted briefing and oral argument by *amici curiae*. The Minnesota Society for Criminal Justice opposes approval, while the Minnesota DWI Taskforce and Minnesota County Attorneys Association support the entry of a consent judgment and permanent injunction. For the reasons set forth below, the Court declines to enter a consent judgment and order a permanent injunction at this time.

## DISCUSSION

The State has asserted breach of contract and copyright claims against CMI relating to the Source Code for the Intoxilyzer 5000EN (the "Intoxilyzer"), a breathtesting device used by the State to measure alcohol consumption. CMI manufactures the Intoxilyzer and sold a number of units to the State pursuant to a contract (the "Contract"). The results of testing performed using the Intoxilyzer are used in criminal prosecutions for drunken driving offenses, as well as in civil driver's license revocation actions. Some criminal defendants and civil revocation petitioners have asserted a right to examine the source code and that a source code inquiry is relevant in

determining whether the Intoxilyzer performs accurately. Some state court judges have agreed and others have not.

Unable to resolve these issues in state court litigation, the State sued CMI to obtain access to the source code for litigants in Minnesota. The State and CMI have entered into a Mutual Release and Settlement Agreement (the "Settlement Agreement), on which their request for a consent judgment and permanent injunction is based. The terms of the Settlement Agreement provide that if this Court declines to approve every aspect of the parties' proposed consent judgment and permanent injunction, the Settlement Agreement will be null and void. (Settlement Agreement ¶ 21.) After careful and deliberate consideration, the Court has determined that it is unable to approve the proposed consent judgment and permanent injunction in its entirety.

A consent judgment embodies an agreement of the parties and is also an agreement that the parties expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees. *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378 (1992). Consent judgments, therefore, have elements of both contracts and judicial decrees. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986). A consent decree must spring from and serve to resolve a dispute within a court's subject-matter jurisdiction, must be within the general scope of the case made by the pleadings, and must further the objectives of the law upon which the complaint was based. *Id.* at 525. In addition to the law which forms the basis of the claim, the parties' consent gives rise to the legal force of

a consent decree, and a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial. *Id.*

In this case, the Court declines to approve several aspects of the proposed consent judgment. First, the Court determines that the record before it is insufficient to permit it to make certain findings of fact contained in the proposed consent judgment. Among these are that the "majority of the Source Code was conceived and originated prior to the execution of the Contract," and that the Contract "does not expressly identify or specify the scope of other 'information'" that CMI must provide to be used in connection with litigation. (Proposed Consent J. at 5.)

The proposed consent judgment also contains numerous statistics regarding drunk driving and alcohol related fatalities, the scope of this problem in Minnesota and the use of breathtesting to address the problem, as well as the efficacy of swift sanctions for drunk driving, about which the Court has insufficient information to specifically find. (*Id.* at 6.) The record is also insufficient for the Court to find that the State's inability to produce the Source Code has strained the Minnesota judicial system or to find that this "has disrupted the effective functioning of law enforcement agencies and the state court system regarding the proper enforcement and adjudication of Minnesota's DWI laws, which are critical to the safety of the citizens of Minnesota." (*Id.* at 7-8.)

The Court also declines to adopt paragraph 8 of the proposed consent judgment's findings in its entirety. This paragraph requests that the Court find as follows:

> The Court finds that providing the Source Code in printed, hardbound book format, with stitched bindings, marked "Do Not Copy" on each page, and in the digital format described in paragraph 3 of the Permanent Injunction will provide reasonable access while also reasonably protecting the Source Code's trade secret status. The Court finds that production or reproduction of the Source Code in any electronic format other than the digital format described in paragraph 3 of the Permanent Injunction presents an undue and unreasonable risk to its trade secret status due to the ease with which electronic and digital data may be copied and transmitted, and the near impossibility of completely deleting or removing electronic or digital data once it has been loaded into a computer system.

(*Id.* at 8.) (Internal citations omitted.) It is premature for the Court to make such a finding. The Court lacks the factual basis and foundation to do so. The Court declines to adopt paragraph 9 of the proposed consent judgment's findings for the same reason.[1]

Second, the Court determines it cannot approve certain conclusions of law in the proposed consent judgment. The Court declines to adopt paragraph 1 of the conclusions regarding ownership and assignment of the Source Code. The current record lacks sufficient factual foundation for such a conclusion at this stage of the case. The Court also declines to adopt paragraph 2 of the conclusions for the same reason, though it questions whether the conclusion in this paragraph is essential to resolution of the matter. Further, the Court declines to adopt paragraph 3 of the proposed consent judgment's conclusions of law. The Court would be inclined to approve a paragraph regarding the same substance should the parties note that a permanent injunction would be necessary absent an appropriate protective order.

---

[1] The Court would be inclined to adopt the first sentence of paragraph 9 if the parties added at the end the clause "without an appropriate protective order."

5

The Court also declines to adopt paragraphs 4 and 5 of the proposed conclusions of law. The Court lacks sufficient foundation to approve these paragraphs and questions whether these paragraphs are necessary to the settlement, if the purpose of the settlement is to provide the Source Code to Minnesota litigants.

The Court has determined that it also cannot adopt paragraph 6 of the proposed consent judgment's conclusions of law. The Court lacks sufficient facts to make the requested conclusions in this paragraph. In particular, the Court cannot conclude that the parties' proposed mechanism for permitting access to the Source Code serves the public interest and makes the Source Code "readily and reasonably available." (*Id*. at 10.)

Finally, the Court declines to enter a permanent injunction. The parties' settlement was conditioned on the Court's approval of the proposed consent judgment, and the request for a permanent injunction also depends on the Court's approval of the consent judgment. As the Court has declined to adopt many aspects of the proposed consent judgment, the Court will not approve and enter a permanent injunction at this time.

The Court also specifically would decline to approve several aspects of the proposed permanent injunction. First, the State and CMI requested a permanent injunction that would require CMI to permit access to the Source Code at CMI's headquarters in Owensboro, Kentucky, to authorized Minnesota litigants, their counsel and their experts. The permanent injunction provides that the Source Code may not leave CMI's custody. While the State and CMI strenuously argued that the permanent

injunction would burden only CMI and would not be binding on Minnesota courts and litigants, the State also conceded that it is likely that Minnesota courts would use this Court's order as a model. Given that, the Court cannot approve a settlement that would require Minnesota litigants, some undoubtedly eligible for public defender services, to travel to Kentucky to obtain discovery regarding the Source Code. The Court declines to find, at this time, that such access would make the Source Code reasonably and readily available to Minnesota litigants. The Court respectfully suggests that the parties attempt to determine a method by which the Source Code could be made available, subject to appropriate protective orders and conditions on inspection, at the Minnesota Department of Public Safety or the Minnesota Bureau of Criminal Apprehension.

Second, the Court lacks foundation at this time to enter the portion of the requested permanent injunction related to the format in which the Source Code will be provided. Though the facts are not fully developed, it is clear that there is some dispute over whether the proposed format, including a bound hardcopy and a redacted electronic version, provides a sufficient basis for analysis. Neither of these were provided to the Court for its review.

Finally, the permanent injunction contemplates a continuing role for this Court in overseeing access to the Source Code for Minnesota litigants. The contemplated process appears unnecessarily cumbersome and injects the federal court into an area most likely

7

best overseen by state courts. The Court suggests that a better approach might be to establish a protocol that state courts could adopt in such situations.[2]

## CONCLUSION

The Court expressly recognizes that the State and CMI devoted significant time, effort and good will to developing the Settlement Agreement and the proposed consent judgment and permanent injunction. Though the Court's decision not to adopt the proposed consent judgment voids the Settlement Agreement, pursuant to the parties' terms, the Court does not consider it impossible or unlikely for the parties to approach settlement again. The terms of any proposed settlement must be narrowly tailored and supported by sufficient factual foundation, and the Court would be willing to hold an evidentiary hearing to establish such facts if necessary. Any such settlement should also clearly indicate that it is not binding upon Minnesota state courts and not determinative of the issues such courts face in determining the right of litigants to Source Code access or relevance.

Accordingly, **IT IS HEREBY ORDERED** that:

---

[2] The State has indicated that the current status of the dispute about the Intoxilyzer has caused a near-crisis in the state court system. CMI has been subject to disclosure orders and, in some cases, to orders for sanctions. It would seem that all parties have an interest in fully resolving the issues presented, for which this case and federal venue are imperfect vehicles. Of particular concern is the implication that, though this case presents only issues of contract and copyright law, this Court's order might be used for other purposes in state court. Some might suggest that the State, CMI, and the defense bar should establish a representative protocol, to include a designated expert or experts and appropriate protective orders, that would address any constitutional or evidentiary concerns and that state courts could follow in criminal and implied consent cases. Such a protocol might be more appropriately established via a state court proceeding.

1. The Joint Motion to Approve Consent Judgment and Permanent Injunction (Doc. No. 34) is **DENIED.**

Dated: February 9, 2009                        <u>s/Donovan W. Frank</u>
                                                     DONOVAN W. FRANK
                                                     Judge of United States District Court