UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

State of Minnesota,                                      File No. 08-CV-603 (DWF/AJB)
by Michael Campion, its
Commissioner of Public Safety,

               Plaintiff,

  v.

CMI of Kentucky, Inc.,
a Kentucky corporation,

               Defendant,

  and

Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen, and Christopher D.
Jacobsen,

               Plaintiff-Intervenors.

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN INTERVENTION OF PLAINTIFF-INTERVENOR CHRISTOPHER D. JACOBSEN**

Defendant CMI of Kentucky, Inc. ("CMI" or "Defendant") respectfully submits this Reply Memorandum of Law in Support of Motion to Dismiss the Complaint in Intervention of Plaintiff-Intervenor Christopher D. Jacobsen ("Plaintiff-Intervenor" or "Mr. Jacobsen") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES..............................................................................iii

INTRODUCTION ..........................................................................................1

DISCUSSION.................................................................................................2

I.      LEGAL STANDARD. ...................................................................2

II.     THE CONTRACT DOES NOT REQUIRE CMI TO PRODUCE
ANY INFORMATION BEYOND THE OPERATOR'S MANUAL. .........2

     A.     Plaintiff-Intervenor Asks the Court to Improperly Consider
Extrinsic Materials in Construing the Contract..................................2

     B.     Because CMI's Proposal Clearly Defines "Information" and
Was Accepted by the State Without Reservation, it Became
an Integral Part of the Contract. ........................................................3

           1.     CMI did not "bury" any aspect of the Proposal. ....................3

           2.     The contents of the Proposal are an integral part of the
Contract. ................................................................................4

           3.     CMI's Proposal did not materially deviate from the
RFP and the State long ago waived any objection to
the Proposal. ..........................................................................6

           4.     Plaintiff-Intervenor's reliance on the RFP's prohibition
on the submission of form contracts is misplaced. ................7

III.    THE CONTRACT EXPIRED BY MUTUAL AGREEMENT ON
JANUARY 31, 2008. ...................................................................9

     A.     The Contract Is Expressly Limited to a Term.................................11

     B.     Nothing in the Contract Extends the Information Clause
Beyond the Defined Contract Period. .............................................12

     C.     The "Activation" Provision is a Condition Precedent, Not a
Durational Term. .............................................................................13

D.     The Information Clause is Not a Warranty, it is a Contract Term. ...................................................................................... 14

E.     Plaintiff-Intervenor is Not Entitled to Maintain a Defective Lawsuit in Order to Conduct Discovery Looking For a Better Claim. ................................................................................ 15

CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

Page No.

**Cases:**

*Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc.*,
    306 F.3d 582 (8th Cir. 2002) ..................................................................................... 4

*Aslakson v. Home Sav. Ass'n*,
    416 N.W.2d 786 (Minn. Ct. App. 1987) ................................................................. 13

*Bell Atl. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................. 15, 16

*Fena v. Wickstrom*,
    348 N.W.2d 389 (Minn. Ct. App. 1984) ................................................................... 3

*Hishon v. King & Spaulding*,
    467 U.S. 69 (1984) ........................................................................................... 2, 15

*Karim v. Wermer*,
    333 N.W.2d 877 (Minn. 1983) ................................................................................. 2

*Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co.*,
    152 N.W. 651 (Minn. 1915) ................................................................................. 7, 8

*Lake Co. v. Molan*,
    131 N.W.2d 734 (Minn. 1964) ............................................................................... 13

*Leslie v. Minneapolis Teachers Ret. Fund Ass'n*,
    16 N.W.2d 313 (Minn. 1944) ................................................................................... 2

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991) .........................................................................................9-10

*Marso v. Mankato Clinic, Ltd.*,
    153 N.W.2d 281 (Minn. 1967) ................................................................................. 2

*Metro Office Parks Co. v. Control Data Corp.*,
    205 N.W.2d 121 (Minn. 1973) ................................................................................. 3

*Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*,
    666 N.W.2d 320 (Minn. 2003) ............................................................................ 11

*Nat'l Union Fire Ins. Co. v. Schwing Am., Inc.*,
    446 N.W.2d 410 (Minn. 1989) ............................................................................ 13

*Porous Media Corp. v. Midland Brake, Inc.*,
    220 F.3d 954 (8th Cir. 2000) ................................................................................ 9

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) .............................................................................. 2

*Republican Nat'l Life Ins. Co. v. Lorraine Realty Corp.*,
    279 N.W.2d 349 (Minn. 1979) .............................................................................. 4

*Scheirman v. Coulter*,
    30 U.C.C. Rep. Serv. 836 (Okla. 1980) ............................................................... 14

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ............................................................................................... 2

*UFE Inc. v. Methode Elec., Inc.*,
    808 F. Supp. 1407 (D. Minn. 1992) ................................................................... 11

## Statutes:

Minn. Stat. § 336.1-205 .......................................................................................... 12
Minn. Stat. § 336.2-305 .......................................................................................... 12
Minn. Stat. § 336.2-306 ............................................................................................ 9
Minn. Stat. § 336.2-313(1)(a) ................................................................................. 14

## Other Authorities:

James J. White & Robert S. Summers,
    Uniform Commercial Code § 9-13 (5th ed. 2006) ................................................ 14

## INTRODUCTION

Plaintiff-Intervenor, along with three others, brought a single count Complaint against CMI alleging breach of a third-party beneficiary contract. (Compl. in Intervention ¶¶ 15-16, 18-35.) The Plaintiffs-Intervenors contend that CMI is contractually obligated to provide them with a copy of the source code for CMI's Intoxilyzer 5000EN ("I-5000EN") breath-alcohol test instrument. CMI has moved for an order dismissing Mr. Jacobsen from the action for failure to state a claim upon which relief may be granted.

There are two bases for CMI's motion. First, the contract ("Contract") upon which Mr. Jacobsen's claim rests does not require CMI to provide Minnesota defendants with anything more than a copy of the instrument's Operator's Manual. Second, that Contract ceased to exist before any rights ever vested in him. Accordingly, Mr. Jacobsen cannot be entitled to the relief he seeks and his action must be dismissed.

To avoid dismissal on each of these grounds, Plaintiff-Intervenor must persuade the Court to ignore the plain language of the Contract. First, he asks the Court to interpret one part of the Contract—the RFP, but to pay no attention to another part of the Contract—the Proposal. But by its own terms, the Contract includes the Proposal.

Second, Plaintiff-Intervenor urges the Court to ignore the Contract's expressly stated termination date. He argues, contrary to law, logic, and the plain language of the Contract itself, that the termination date did not really terminate the Contract at all (it did). Because the Contract's plain terms demonstrate that 1) "information" does not

include the source code, and 2) the Contract expired before any rights vested in him, Mr. Jacobsen's claim must be dismissed.

## DISCUSSION

## I.    LEGAL STANDARD.

On a motion to dismiss, the Court takes the well-pleaded allegations in the Complaint as true and affords them every reasonable inference. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court also considers materials embraced by, or incorporated in, the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). If it is clear that no relief can be granted on the basis of the facts as alleged, the Court must dismiss the complaint. *Hishon*, 467 U.S. at 73.

## II.    THE CONTRACT DOES NOT REQUIRE CMI TO PRODUCE ANY INFORMATION BEYOND THE OPERATOR'S MANUAL.

### A.    Plaintiff-Intervenor Asks the Court to Improperly Consider Extrinsic Materials in Construing the Contract.

Plaintiff-Intervenor argues that the Fifth and Sixth Amendments to the United States Constitution, Minnesota Statutes section 169A.53, and a declaration from his purported expert somehow define the parties' intent with respect to the information clause. (Pl.-Intervenor's Br. at 9-10.) This is flatly contrary to law.

Unless a contract is ambiguous, the parties' intent must be drawn from within the four corners of the agreement. *See Karim v. Wermer*, 333 N.W.2d 877, 879 (Minn. 1983); *Marso v. Mankato Clinic, Ltd.*, 153 N.W.2d 281, 288 (Minn. 1967); *Leslie v. Minneapolis Teachers Ret. Fund Ass'n*, 16 N.W.2d 313, 315 (Minn. 1944). Even the

question of ambiguity must be determined from the face of the agreement itself, not by reference to extrinsic evidence. *Metro Office Parks Co. v. Control Data Corp.*, 205 N.W.2d 121, 124 (Minn. 1973) (contract is ambiguous only if "judged by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning"); *Fena v. Wickstrom*, 348 N.W.2d 389, 390 (Minn. Ct. App. 1984). Plaintiff-Intervenor's reference to parol evidence invites the Court to commit reversible error.

**B. Because CMI's Proposal Clearly Defines "Information" and Was Accepted by the State Without Reservation, it Became an Integral Part of the Contract.**

**1. CMI did not "bury" any aspect of the Proposal.**

Plaintiff-Intervenor complains that CMI's requirements for the production of certain information to DUI defendants was "buried in its proposal to the RFP." (Pl.-Intervenor's Br. at 10.) To the contrary, it was placed exactly where the RFP required. The RFP required that each part of CMI's Proposal, including its response regarding the information clause, be placed in the Proposal in a particular order and sequence. The RFP stated:

**PROPOSAL PREPARATION**

**NOTE: VENDOR RESPONSES ARE TO BE PREPARED AND PRESENTED IN THE SAME SEQUENTIAL ORDER AS QUESTIONS AND REQUESTS FOR COMMENT ARE PRESENTED BY THIS DOCUMENT. PROPOSALS DEVIATING FROM THE PROPOSAL FORMAT AND ORGANIZATION MAY BE REMOVED FROM FURTHER CONSIDERATION.**

(Affidavit of David Aafedt ("Aafedt Aff.") Ex. 1.)[1]  CMI's Proposal did not "bury" anything; rather, it addressed the information clause in the sequential order in which it was in the RFP.  (*Id.* Ex. 2.)  Along with its response, CMI provided sample documents that clearly showed the State what information CMI was willing to provide, and how CMI intended to provide it.  (*Id.* Ex. 3.)  CMI's definition, requirements, and process with respect to the information clause were openly, clearly, and properly placed in the Proposal.

## 2. *The contents of the Proposal are an integral part of the Contract.*

Plaintiff-Intervenor would have the Court read the language of CMI's Proposal out of the Contract.  But a contract is to be construed in its entirety, in a manner that gives meaning and effect to all of its material terms.  *Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc.*, 306 F.3d 582, 586 (8th Cir. 2002); *Republican Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979).  Plaintiff-Intervenor admits as much, saying, "effect must be given to all [the Contract's] provisions."  (Pl.-Intervenor's Br. at 10-11.)  Here, the Contract can, and must, be read in a way that gives effect to both the RFP, which requests the provision for "information," and the Proposal, which simply defines an otherwise undefined term.

Additionally, the Contract itself requires that the terms in the Proposal be given full effect.  The RFP states that "[t]he contents of this RFP ***and the response of the***

---

[1]     Due to the voluminous nature of the Contract, only excerpts are provided herewith.  A complete copy of the Contract (the RFP, Proposal, and Notification of Contract Award), has been filed with the Court as Exhibit 1, Pts. 1-3, to the Joint Motion for Entry of Consent Judgment and Permanent Injunction.  (Doc. 35.)

*successful vendor* will become contractual obligations, along with the final contract."
(Aafedt Aff. Ex. 4, emphasis added.) It also states that once accepted by the State, a
proposal will become a binding contract. (*Id*. Ex. 5.) Likewise, the Notification of
Contract Award states:

> The following documents, in order of preference, are incorporated herein
> by reference and constitute the entire contract between [CMI] and the State:
> (1) this Notification of Contract Award, together with Exhibit A and any
> attachments or subsequent purchase orders, amendments or similar
> documents; (2) the request for proposal; and (3) your proposal and your
> "Response to our letter requesting clarification." In the event of a conflict
> in language among any of these documents, the terms and conditions set
> forth and/or referenced in this Notification and ***any later executed***
> ***documents shall prevail over conflicting terms and conditions contained***
> ***in the earlier documents, in their original form or as amended.***

(*Id*. Ex. 6, emphasis added.)

Three important points follow from this Contract language. First, CMI's Proposal,
including its definition of "information," is fully incorporated into the Contract.[2] Second,
in addition to the right to reject or waive any deviations from the terms of the RFP
(discussed below), the process also contemplated the State requesting clarification about
uncertainties in proposals. (*Id*.) Had the State had any uncertainty about CMI's
Proposal, it would have been noted in such a request. The State never requested
clarification. Third, as the later executed document, CMI's Proposal is given precedence.

---

[2] Per the RFP, CMI's Proposal included the fee for the provision of information, a
reduced fee for publicly defended defendants, CMI's standard cover letter to attorneys
who have requested information, its standard confidentiality agreement, and an affidavit
of compliance. (Aafedt Aff., Exs. 2 and 3). Notably, CMI's standard letter to attorneys
requesting information said expressly that ***"[t]he Operation Manual for the Intoxilyzer®***
***5000 is the only manual that would be available to you."*** (*Id.*, Ex. 3) (emphasis added).

(*Id*.)  Accordingly, CMI clearly defined the information it would provide to defendants, and by the express terms of the agreement, that definition became part of the Contract.

> ### *3.*     *CMI's Proposal did not materially deviate from the RFP and the State long ago waived any objection to the Proposal.*

When it issued the RFP, the State repeatedly reserved the right to ***reject*** any proposal ***or to waive*** any infirmity in a proposal.  For example, the RFP states, "[t]he State reserves the right to ***accept or reject*** any or all proposals or parts of proposals ***and to waive*** informalities therein."  (*Id*. Ex. 7, emphasis added.)  It also says, "[p]roposals which do not comply with the provisions in the request for proposal ***may*** be considered non-responsive and ***may*** be rejected."  (*Id*. Ex. 8, emphasis added.)  The State specifically reserved the right to "[r]eject any and all proposals received in response to the RFP," and to "[w]aive or modify any informalities, irregularities, or inconsistencies in proposals received."  (*Id*. Ex. 9.)  As noted above, the RFP allowed the State to "remove[] from consideration" any proposals that deviate from the RFP's terms.  (*Id*. Ex. 1.)  The RFP also allows the State to reject any proposal that materially deviates from the RFP.  (*Id*. Ex. 4.)  It defines a material deviation as "an exception to the proposal specification which … gives the State something significantly different from that which the State requested."  (*Id*.)  Again, the RFP cautions that any proposal materially deviating from the RFP may be rejected.  (*Id*.)  But the State ***did not*** reject CMI's Proposal or remove it from consideration; instead, it reviewed the Proposal, accepted it, and awarded Contract to CMI.

There are only two inferences that can be drawn from the State's decision to accept CMI's Proposal: either the State did not deem CMI's definition of "information" to be a material deviation, or it chose, as was its right, to waive that deviation. (*Id.* Exs. 1, 4, 7-9.) Either way, the State cannot now, some twelve years later, change its mind and change CMI's Proposal. *See, e.g., Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co.*, 152 N.W. 651, 651-52 (Minn. 1915). There, the Minnesota Supreme Court held that:

> to justify the conclusion that a right given either by contract or the law has been waived, an intention to waive the right must be made to appear either expressly or by fair implication, yet the law does not require that any particular facts be shown in order that a waiver may be found. Any conduct on the part of the person entitled to insist upon the right which is inconsistent with an intention to claim it may amount to a waiver as a matter of law; the intent to waive being a matter of legal inference from the disclosed inconsistent conduct.

*Id.* Again, either the State concluded that the Proposal satisfied all requirements or it chose to waive any inconsistency or deviation. The State's conduct in awarding the Contract on the basis of the Proposal as submitted and accepting performance on those terms for twelve years is completely inconsistent with an insistence on some other or different right. *See id.* The State cannot go back now and rewrite the Contract, and Plaintiff-Intervenor, a purported third-party beneficiary whose rights never vested, cannot do so either.

### 4. *Plaintiff-Intervenor's reliance on the RFP's prohibition on the submission of form contracts is misplaced.*

Apparently contending that CMI's Proposal materially deviated from the RFP, Plaintiff-Intervenor points out that the RFP says "[s]ubmission by the vendor of its

***standard form contract*** shall not be viewed as an exception unless the vendor specifically states in the proposal that provisions in the form contract are intended to supersede the State's terms and conditions." (Pl.-Intervenor's Br. at 11, emphasis added.) Citing the Uniform Commercial Code "UCC"), Plaintiff-Intervenor contends that deviations must be express if they would "result in hardship if incorporated without express awareness by the other party." (*Id*. at 12, quoting Minn. Stat. § 336.2-207(2).) However, the record is clear—CMI did not present a ***standard form contract*** in response to the RFP, it submitted a thirty-plus page ***Proposal***—one that adhered to the RFP's form and sequence requirements in every respect. (*See* Pt. B(i), *infra*.) Moreover, there was nothing hidden in the Proposal that would have resulted in surprise or hardship. CMI's definition of information was clear and express. Plaintiff-Intervenor disingenuously refers to CMI's statement to persons seeking information a "standard cover letter" (Pl.-Intervenor's Br. at 10, 13), hoping that the Court will conflate that term with "standard form contract." The two are not the same, and CMI did not submit a standard from contract, it submitted a conforming Proposal.

Plaintiff-Intervenor also misinterprets and misapplies the RFP's requirement that proposals be accompanied by a transmittal and acceptance letter, arguing that CMI failed somehow in this regard. (Pl.-Intervenor's Br. at 12) But this provision says that "[a]ny proposal which fails to comply with this requirement may be disqualified as non-responsive." (Aafedt Aff. Ex. 4.) CMI gave the State written notice of its definition of "information" and the State did not disqualify CMI's Proposal. Instead, it awarded CMI the Contract. The State then accepted the benefits of Contract on these terms for over

twelve years. It long ago waived any right to complain about its decade-old decision. *See Knox-Burchard Mercantile Co.*, 152 N.W. at 651-52.

Because the Proposal is an integral part of the Contract and it expressly defines "information" as a copy of the Operator's Manual, and because the State accepted the Proposal as submitted and without reservation, Plaintiff-Intervenor cannot be entitled to the relief he seeks. Accordingly, dismissal is appropriate.

## III. <u>THE CONTRACT EXPIRED BY MUTUAL AGREEMENT ON JANUARY 31, 2008</u>.

Even if "information" did include the source code, and it does not, Plaintiff-Intervenor faces another insuperable obstacle—the Contract expired before any rights to any information ever vested in him. Ignoring the Contract's clearly expressed termination date, he argues that CMI made an open-ended, possibly never-ending, commitment to provide its source code to defendants in Minnesota DUI cases. This argument flies in the face of common sense and the Contract itself.

The Contract was a standard requirements contract. Minn. Stat. § 336.2-306 (2008); *see generally Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 960 (8th Cir. 2000) (describing requirements contracts under Minnesota law). It established the price and other terms at which the State could purchase quantities of instruments it required, and a time period during which its terms would remain in effect. The initial Notification of Contract Award establishes the "Contract Period" "from January 2, 1997 through December 31, 2001." (Aafedt Aff. Ex. 6.) Subsequent amendments extended the term to January 31, 2008. On that date, the Contract expired. In light of this express

termination provision in the Contract, an obligation would extend beyond that expiration date only if the Contract expressly stated that it would survive the expiration. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-206 (1991). There, in an analogous circumstance, the United States Supreme Court reviewed a collective bargaining contract to determine whether events arising after the termination of the agreement would, nonetheless, be subject to the agreement's arbitration clause. *See Litton*, 501 U.S. at 205. The Court held that a grievance would be arbitrable if it arose before the agreement expired, or it involved the infringement of a right that vested before the agreement expired, or if "under normal principles of contract construction, the disputed contractual right survives expiration of the remainder of the agreement." *Id*. at 205-206.

Here, there are only two obligations that could have even possibly extended beyond the Contract termination date. First, CMI agreed to deliver instruments within ninety days of receipt of an order. Had CMI received an order for an instrument prior to January 31, 2008, it would have been obligated to deliver that instrument at the Contract price and in accordance with the Contract terms within ninety days of the order—even if that meant delivery after January 31, 2008. That is because the State's right to delivery within ninety days vested upon receipt of the order, which occurred while the Contract was still in effect. *See Litton*, 501 U.S. at 205-206. Second, CMI provided an express two year warranty on parts and labor. (Aafedt Aff. Ex 10.) Thus, if the State purchased an instrument within the two years preceding the termination date, CMI's warranty obligations for that instrument would also extend beyond the Contract termination date, because the State's warranty right vested before the Contract expired. *See Litton*, 501

U.S. at 205-206.  However, there are no other terms in the agreement that, "under normal principles of contract construction," survive the expiration of the contract.  *Id*.

### A.     <u>The Contract Is Expressly Limited to a Term</u>.

Like any standard requirements contract, the Contract here has a limited duration. The RFP clearly indicates "CONTRACT PERIOD: Date of contract execution to <u>60</u> months."  (Aafedt Aff. Ex. 2.)  It also expressly states that "[t]his is a request for proposals for a contract of five years duration."  (*Id*. Ex. 1.)  CMI's Proposal, in turn, expressly incorporated the Contract period set forth in the RFP.  (*Id*. Ex. 11.)  Finally, the Notification of Contract Award established the specific dates of the sixty-month contract period, "from January 2, 1997 through December 31, 2001."  (*Id*. Ex. 6.)

The first amendment to the Contract addressed Y2K issues and did not extend the Contract period.  (*Id*. Ex. 12.)  The second amendment extended the Contract period to December 31, 2003.  (*Id*. Ex. 13.)  The third amendment extended the term to January 31, 2006, and the fourth and final amendment extended the Contract period to January 31, 2008.  (*Id*. Exs. 14 & 15.)  Requirements contracts such as the Contract in this case necessarily contain a durational term.  *See UFE Inc. v. Methode Elec., Inc.*, 808 F. Supp. 1407, 1413 (D. Minn. 1992).  And where, as here, the durational term is express and unambiguous, there is no need for further interpretation.  *See Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003) ("Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning.")

## B.    Nothing in the Contract Extends the Information Clause Beyond the Defined Contract Period.

Plaintiff-Intervenor asserts that the contract "expressly defines the time to produce this 'information' when a Court orders its production.  The[n] [sic] CMI has a reasonable time to produce the information."  (Pl.-Intervenor's Br. at 15-16.)  CMI agrees that, *while the Contract was in effect*, an order from the court with jurisdiction was a triggering event for the provision of information.  But Plaintiff-Intervenor confuses this triggering event with an expression of the Contract's *duration*, which it is not.  The information clause does not address, much less alter, the express durational term of the Contract.  The relevant language in the RFP simply required the Proposal to include a:

> Provision for information to attorneys supplied directly from manufacturer including statement of all non-disclosure/non-reproduction agreements required to obtain information, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence.  *This part of the contract to be activated with an order from the court with jurisdiction of the case* and include a reduced fee schedule for defendants found by the court to be entitled to a publicly funded defense.

(Aafedt Aff. Ex. 16, emphasis added.)  Contrary to Plaintiff-Intervenor's unsupported assertion, nothing here or anywhere else in the Contract extends CMI's duty under the information clause beyond the Contract's termination date.

The information clause, by its own terms, is "part of the contract."  (*Id*.)  The Contract, in turn, is governed by an expressly agreed upon termination date.  (*Id*. Ex. 15.)  This is not a circumstance where, for example, a price term is missing and a "reasonable term" can be imputed, or a seasonable act is required but no specific time for performance is provided.  Minn. Stat. §§ 336.1-205 and 336.2-305 (2008).  Rather, the

Contract has a clearly articulated termination date, and nothing in the Contract extends the duty to provide information beyond the Contract termination date where the right to that information did not vest before the Contract expired. The Contract expired on January 31, 2008. The clause was never "activated" in Mr. Jacobsen's case because he did not obtain an order from Judge Venne until March 2008. By then, there was no Contract and no information clause to "activate." Thus, unlike the hypothetical order for an instrument received by CMI prior to the Contract termination date, which would have given the State a vested right to delivery even after the termination date, no right vested in Mr. Jacobsen before the Contract expired.

### C. The "Activation" Provision is a Condition Precedent, Not a Durational Term.

As set forth more fully in CMI's Memorandum of Law in Support of Motion to Dismiss, the requirement that "[t]his portion of the contract to be activated with an order from the court" is a condition precedent to CMI's obligation to provide information. *See Lake Co. v. Molan*, 131 N.W.2d 734, 740 (Minn. 1964) Unless and until the condition precedent has occurred, no rights vest under the Contract. *See id; and see Nat'l Union Fire Ins. Co. v. Schwing Am., Inc.*, 446 N.W.2d 410, 412 (Minn. 1989). Because the Contract expired before the condition precedent was satisfied, no rights vested and no duty of performance ever arose. *See Aslakson v. Home Sav. Ass'n*, 416 N.W.2d 786, 789 (Minn. Ct. App. 1987). Mr. Jacobsen did not obtain an order from the court with jurisdiction over his DUI case until March 25, 2008. By then, there was no Contract

between the State and CMI, there was no condition precedent to be satisfied, and there was no corresponding duty for CMI to produce information.

**D.      The Information Clause is Not a Warranty, it is a Contract Term.**

Plaintiff-Intervenor creatively asserts that the information clause constitutes an express warranty.  (Pl.-Intervenor's Br. at 16 (citing Minn. Stat. § 336.2-313)).  From this flawed premise, he argues that the "warranty" (i.e., the promise to provide information) "must be performed in a reasonable time."  (Pl.-Intervenor's Br. at 16, citing Minn. Stat. § 336.2-309.)   Neither of these UCC sections has any application to the information clause, and neither changes the fact that the Contract expired on January 31, 2008. Plaintiff-Intervenor's creative but flawed argument is a complete *non sequitur*.

Under the UCC, a warranty is a promise that ***relates to the goods themselves***, and it must be one to which ***the goods can conform***.  Minn. Stat. § 336.2-313(1)(a).  As a matter of law, the information clause is not a warranty because it is not promise to which the goods might or might not conform. *See* JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 9-13 (5th ed. 2006) (categorizing warranty disputes and explaining that all involve the central conformance claim that "the goods did not do what the defendant said they would do"); *see also Scheirman v. Coulter*, 30 U.C.C. Rep. Serv. 836, 838 (Okla. 1980) ("Express warranties relate to the conformity of goods and consider their quality, character or condition. . . . In order for an express warranty to exist, there must be an absolute assertion understood by the parties pertaining to the merchandise sold.").  The clause relates to ***information***, not to the goods themselves.  It says nothing about the I-5000EN instruments, or their quality or condition.  Thus, the

information clause is not a warranty. Further, and irrespective of Plaintiff-Intervenor's erroneous warranty argument, the information clause contained a condition precedent that did not come to pass before the Contract expired. Mr. Jacobsen has never had any vested rights under the Contract.

**E. Plaintiff-Intervenor is Not Entitled to Maintain a Defective Lawsuit in Order to Conduct Discovery Looking For a Better Claim.**

Finally conceding, as he must, that the Contract expired more than a year ago, Plaintiff-Intervenor asserts, without basis, that "discovery will likely establish that the State of Minnesota and CMI have by their conduct subsequent to January 31, 2008 impliedly extended the contract." (Pl.-Intervenor's Br. at 17-18.) This argument fails *ab initio*, because it is not alleged in the Complaint in Intervention. The suggestion that discovery could provide new facts or theories does not rehabilitate the patently deficient Complaint in Intervention currently before the Court or overcome the motion to dismiss.

On a motion to dismiss, the Court considers the facts alleged and documents incorporated in the complaint, not the unsupported speculation of counsel in argument. *See Hishon*, 467 U.S. at 73; *and see Bell Atl. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level" and, indeed, "without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atl.*, 127 S. Ct. at 1965 and n.3.

Plaintiff-Intervenor's argument puts the cart before the horse. He wants to use unpleaded facts to keep a facially defective lawsuit alive while he looks for facts with which to fix the lawsuit. Even the generally liberal pleading requirements of Rule 8 require more than that. "While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim,' Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl.*, 127 S. Ct. at 1965 n.3 (internal citations omitted, emphasis in original). Because Plaintiff-Intervenor cannot point to any facts pleaded in the Complaint in Intervention entitling him to any relief, he cannot avoid dismissal for failure to state a claim.

## CONCLUSION

Because the information contemplated in the Contract does not include the source code to CMI's I-5000EN instrument, and because the Contract expired before any rights to any information vested in Mr. Jacobsen, there is no set of facts alleged in the Complaint in Intervention upon which relief could be granted. Accordingly, his claims must be dismissed.

Respectfully Submitted,

Dated: February 16, 2009

WINTHROP & WEINSTINE, P.A.

 s/    David M. Aafedt
David M. Aafedt, MN #27561X
William A. McNab, MN #312071

WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Ste. 3500
Minneapolis, Minnesota 55402-4629
Tel: (612) 604-6400
Fax: (612) 604-6800
daafedt@winthrop.com
wmcnab@winthrop.com

ATTORNEYS FOR DEFENDANT
CMI OF KENTUCKY, INC.

4309594v2