UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public<br>Safety,<br><br>          Plaintiff,<br><br>vs.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>          Defendant. | Civil Case No. 08-603 (DWF/AJB)<br><br>**AFFIDAVIT OF WILLIAM LEMONS<br>IN SUPPORT OF PLAINTIFF'S MOTION<br>FOR PARTIAL SUMMARY JUDGMENT<br>AND AN ORDER FOR SPECIFIC<br>PERFORMANCE OR PERMANENT<br>INJUNCTION, OR IN THE ALTERNATIVE<br>FOR A PRELIMINARY INJUNCTION** |

COUNTY OF RAMSEY    )
                                     )ss.
STATE OF MINNESOTA    )

William Lemons, being first duly sworn, deposes and states that:

1.    I am the Minnesota Traffic Resource Safety Prosecutor and submit this affidavit in support of Plaintiff's Motion for Partial Summary Judgment and an Order for Specific Performance or Permanent Injunction, or in the alternative for a Preliminary Injunction.

2.    In 2007, the Traffic Safety Resource Prosecutor ("TSRP") position was created in Minnesota with the goal of improving traffic safety by improving criminal prosecution. The position is funded by a federal grant from the U.S. Department of Transportation, National Highway Traffic Safety Administration ("NHTSA") that is administered by the Minnesota Office of Traffic Safety. I have held the TSRP position since January 28, 2008, working for the Minnesota County Attorneys Association

("MCAA"). In this capacity, I train and act as a resource for prosecutors handling charges related to traffic safety. I provide a communication network for traffic safety stakeholders and serve as a liaison for local prosecutors with state and federal agencies. Part of my work as the Minnesota TSRP includes training and assisting prosecutors and law enforcement with the enforcement of Minnesota's driving while impaired ("DWI") laws.

3. In Minnesota, a person arrested for DWI is subject to criminal prosecution under the Minnesota criminal DWI laws, which may include criminal charges, fines, and possible incarceration. A city or county prosecutor associated with the arresting law enforcement agency and jurisdiction is responsible for handling the criminal DWI charges and related court proceedings.

4. Under Minnesota law, three types of biological specimens can be used for DWI chemical testing: blood, breath, or urine. The use of breath testing is a highly valuable tool for DWI enforcement. Unlike a blood or urine test, where the sample must be sent to the BCA for analysis and can currently take several weeks to obtain the test result, breath test results are known immediately and may provide law enforcement with the information necessary for holding the driver for court, impounding license plates, or forfeiting a vehicle. In addition, the immediate breath test result allows efficient and effective enforcement of the DWI laws, including the timely filing of criminal charges.

5. The issue of access to the source code for the Intoxilyzer 5000EN ("Source Code") first arose in early 2006, when the State began receiving demands for production of the Source Code from individuals arrested for DWI and challenging the validity of

their breath test results in criminal DWI cases in state district court. Based on these requests, district courts throughout Minnesota ordered production of the Source Code in numerous criminal DWI cases. In cases where the state district court ordered production of the Source Code and it was not produced, many state district courts subsequently suppressed Intoxilyzer test results and/or dismissed criminal DWI charges. Currently the Source Code issue continues to have a negative impact on the ability of prosecutors to process criminal DWI cases.

6. For more than a year, I have been communicating with DWI prosecutors throughout Minnesota regarding the Source Code issue and have reviewed numerous briefs by prosecutors addressing source code issues. Specifically, I have been receiving information on the impact of the Source Code issue on effective DWI enforcement and aiding prosecutors in dealing with the Source Code issue in individual DWI cases. Based on this information, I believe that CMI's failure to produce the Source Code when ordered by courts has significantly and negatively impacted the effective and efficient enforcement of the criminal DWI laws in three primary ways. First, prosecutors across the state have been forced to handle and manage an increased number of open DWI files at any given time. In handling these files, prosecutors are required to dedicate more time to responding to hundreds of Source Code motions and handling the corresponding court proceedings. This burden creates a strain on the time and resources that prosecutors can commit to enforcing other types of criminal violations. Second, faced with the potential consequences of having breath test results suppressed or DWI cases dismissed based on the Source Code issue, some criminal prosecutors in Minnesota advised their police

departments to stop using the Intoxilyzer 5000EN and instead opt for either blood or urine testing. This decision has caused an increase in the length of waiting time for DWI-related blood or urine samples to be analyzed by the BCA and returned, which has caused delays in the DWI criminal charging process, revocation of drivers licenses, the impounding of license plates, and the forfeiting of vehicles. This is further magnified by recent appellate decisions requiring the BCA scientist to testify in person at the criminal case, which is not necessary when the Intoxilyzer is used and there is not a BCA scientist involved. Finally, the number of DWI criminal hearings has increased, which in turn has required more court time and resources. Prosecutors and state court judges are spending more time reviewing Source Code issues in DWI cases and therefore spending less time handling other matters.

Further your affiant sayeth not.

s/ William A. Lemons
WILLIAM A. LEMONS

Subscribed and sworn to before me
this 15th day of April, 2009.

s/ Michael R. Determan
Notary Public

AG: #2425242-v1