## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

State of Minnesota,                           File No. 08-CV-603 (DWF/AJB)
by Michael Campion, its
Commissioner of Public Safety,

                Plaintiff,

  v.

CMI of Kentucky, Inc.,                        **DEFENDANT'S MEMORANDUM**
a Kentucky corporation,                       **OF LAW IN SUPPORT OF MOTION**
                                              **FOR JUDGMENT ON THE**
                Defendant,          **PLEADINGS, OR, IN THE**
                                              **ALTERNATIVE, FOR PARTIAL**
  And                                         **SUMMARY JUDGMENT**

Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen, and Christopher D.
Jacobsen,

             Plaintiff-Intervenors.

Defendant CMI of Kentucky, Inc. ("CMI") respectfully submits this Memorandum
of Law in Support of Motion for Judgment on the Pleadings, or, in the Alternative, for
Partial Summary Judgment, on Counts II, III and IV of the State of Minnesota's ("State")
Complaint, and the sole count in Plaintiff-Intervenors Robert J. Bergstrom, Craig A.
Zenobian, Shane M. Steffensen, and Christopher D. Jacobsen's ("Intervenors")
Complaint-in-Intervention, and for Summary Judgment on Count II of CMI's
Counterclaim.

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES..............................................................................iii

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 2

THE INSTANT MOTION ............................................................................... 7

LEGAL STANDARD ...................................................................................... 7

DISCUSSION.................................................................................................. 9

I.     THE STATE'S AND INTERVENORS' THIRD-PARY
       BENEFICIARY CLAIMS ARE RIPE FOR SUMMARY
       DISMISSAL BECAUSE THE CONTRACT DOES NOT REQUIRE
       CMI TO PROVIDE ACCESS TO ITS SOURCE CODE AND
       INTERVENORS ARE NOT INTENDED THIRD-PARTY
       BENEFICIARIES UNDER THE CONTRACT. .......................................... 9

       A.     Source Code Is Not "Information" Under The Contract.................. 10

       B.     Intervenors Are Not Intended Third-Party Beneficiaries................. 15

              1.     Intervenors Bergstrom, Zenobian, and Steffensen are
                     not intended third-party beneficiaries because they did
                     not obtain orders from the court with jurisdiction over
                     their criminal cases................................................................ 16

              2.     There was no Contract when Intervenor Jacobsen
                     obtained a court order............................................................ 19

II.    THE STATE'S COMPLAINT FAILS TO PROPERLY STATE A
       CLAIM OF COPYRIGHT INFRINGEMENT OR TO ALLEGE
       FACTS UPON WHICH RELIEF MAY BE GRANTED........................... 20

       A.     The State's Complaint Fails To Allege A Protectable
              Copyright Interest........................................................................ 21

       B.     The State Fails To Allege Infringing Conduct. ............................... 23

- i -

III.     THE STATE'S COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ............................................................. 25

IV.     SUMMARY JUDGMENT IS APPROPRIATE ON CMI'S TRADE SECRET COUNTERCLAIM BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND CMI IS ENTITELD TO JUDGMENT AS A MATTER OF LAW. ....................... 29

     A.     The Source Code Is Not Generally Known Or Readily Ascertainable. ................................................................... 30

     B.     The Source Code Derives Value From Being Not Generally Known Because Others Could Obtain Economic Value From Its Disclosure and Use. .................................................... 31

     C.     CMI Undertakes Reasonable Efforts To Maintain The Secrecy Of The Source Code. ......................................... 32

CONCLUSION ............................................................................ 33

**Cases:**

*614 Co. v. Minneapolis Cmty. Dev. Agency*,
 547 N.W.2d 400 (Minn. Ct. App. 1996) ............................................................ 16, 17

*Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*,
 414 N.W.2d 554 (Minn. Ct. App. 1987) ........................................................... 26, 27

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................. 8

*Aries Info. Sys., Inc. v. Pac. Mgmt. Sys. Corp.*,
 366 N.W.2d 366 (Minn. Ct. App. 1985) ................................................................. 29

*Ascon Props., Inc. v. Mobile Oil Co.*,
 866 F.2d 1149 (9th Cir. 1998) ................................................................................. 22

*Beer Wholesalers, Inc. v. Miller Brewing Co.*,
 426 N.W.2d 438 (Minn. Ct. App. 1988) ........................................................... 26, 27

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................. 7, 22

*Benefit Res., Inc. v. Apprize Tech. Solutions, Inc.*,
 2008 WL 2080977 (D. Minn. May 15, 2008) .................................................... 29-30

*Brix v. Gen. Accident & Assurance Corp.*,
 93 N.W2d 542 (Minn. 1958) .............................................................................. 15, 17

*Brookfield Trade Ctr., Inc. v. County of Ramsey*,
 548 N.W.2d 390 (Minn. 1998) ........................................................................... 11, 14

*Burnette Techno-Metrics v. TSI, Inc.*,
 44 F.3d 641 (8th Cir. 1994) .................................................................................... 27

*C. Blore & D. Richman Inc. v. 20/20 Adver.*,
 674 F. Supp. 671 (D. Minn. 1987) .......................................................................... 25

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................................ 8

*Cmty. For Creative Non-Violence v. Reid,*
    490 U.S. 730 (1989) ...................................................................................................... 22

*Cretex Co., Inc. v. Construction Leaders, Inc.,*
    342 N.W.2d 135 (Minn. 1984) .................................................................................... 16

*Dayton Dev. Co. v. Gilman Fin. Servs.,*
    419 F.3d 852 (8th Cir. 2005) ................................................................................. 16, 18

*Dayton Dev. Co. v. Gilman Fin. Servs., Inc.,*
    299 F. Supp. 2d 933 (D. Minn. 2003) ........................................................................ 16

*Edgely v. Lappe,*
    342 F.3d 884 (8th Cir. 2003) ...................................................................................... 11

*Ford Motor Co. v. B & H Supply, Inc.,*
    646 F. Supp. 975 (D. Minn. 1986) ......................................................................... 20, 21

*Haase v. Stokely-Van Camp, Inc.,*
    99 N.W.2d 898 (Minn. 1959) ...................................................................................... 27

*Hartnagel v. Norman,*
    953 F.2d 394 (8th Cir. 1992) ........................................................................................ 8

*Hickman v. Safeco Ins. Co. of Am.,*
    695 N.W.2d 365 (Minn. 2005) .................................................................................... 18

*In re Hennepin County 1986 Recycling Bond Litig.,*
    540 N.W.2d 494 (Minn. 1995) ............................................................................... 27, 28

*In re Stevenson Assocs., Inc.,*
    777 F.2d 415 (8th Cir. 1985) ...................................................................................... 19

*Jostens, Inc. v. Nat'l Computer Sys., Inc.,*
    318 N.W.2d 691 (Minn. 1982) .................................................................................... 29

*JustMed, Inc. v. Byce,*
    2007 WL 2479887 (D. Idaho Aug. 29, 2007) ............................................................ 30

*Karim v. Werner*,
　333 N.W.2d 877 (Minn. 1983) .............................................................. 11

*Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co.*,
　152 N.W. 651 (Minn. 1915) ................................................................. 14

*Krenik v. County of Le Sueur*,
　47 F.3d 953 (8th Cir. 1995) ................................................................... 8

*LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*,
　44 F.3d 629 (8th Cir. 1994),
　*cert. denied,* 516 U.S. 810 (1995) ................................................... 11, 12

*Lobeck v. State Farm Auto Ins. Co.*,
　582 N.W.2d 246 (Minn. 1989) ............................................................. 11

*Maher v. All Nations Ins. Co.*,
　340 N.W.2d 675 (Minn. Ct. App. 1983) .............................................. 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ............................................................................... 8

*Metro Office Parks Co. v. Control Data Corp.*,
　205 N.W.2d 121 (Minn. 1973) ............................................................. 11

*Minnwest Bank Cent. v. Flagship Props. L.L.C.*,
　689 N.W.2d 295 (Minn. Ct. App. 2004) ......................................... 26, 28

*Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*,
　666 N.W.2d 320 (Minn. 2003) ............................................................. 19

*Northstar Indus., Inc. v. Merrill Lynch & Co.*,
　558 F. Supp. 2d 944 (D. Minn. 2008) ............................................. 28, 29

*Norwest Fin. Leasing, Inc. v. Morgan Whitney, Inc.*,
　787 F. Supp. 895 (D. Minn. 1992) ................................................... 16-17

*Porous Media Corp. v. Pall Corp.*,
　186 F.3d 1077 (8th Cir. 1999) ............................................................... 7

*Ring v. Sears, Roebuck & Co.*,
　250 F. Supp. 2d 1130 (D. Minn. 2003) .................................................. 8

*Russell v. Price*,
    612 F. Supp. 1123 (9th Cir. 1999) ......................................................... 24

*Schiller & Schmidt v. Nordisco Corp.*,
    969 F.2d 410 (7th Cir. 1992) ............................................................... 23

*Servais v. T.J. Mgmt. of Minneapolis, Inc.*,
    973 F. Supp. 885 (D. Minn. 1997) ...................................... 11, 15, 16, 17

*Sony Corp. of Am. v. Univ. City Studios, Inc.*,
    464 U.S. 417, 104 S. Ct. 774 (1984) ................................................... 20

*Sterling Capital Advisors, Inc. v. Herzog*,
    575 N.W.2d 121 (Minn. Ct. App. 1998) .............................................. 26

*Storage Tech. v. Custom Hardware Eng'g & Consulting*,
    421 F.3d 1307 (Fed. Cir. 2005) ...................................................... 24, 25

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
    936 F.2d 692 (2d Cir. 1991) ............................................................... 25

*United States v. Washington Mint, LLC*,
    115 F. Supp. 2d 1089 (D. Minn. 2000) ............................................... 24

*Underdahl v. Comm'r of Pub. Safety*,
    735 N.W.2d 707 (Minn. 2007) ............................................................. 4

*United States v. Any and all Radio Station Transmission Equip.*,
    207 F.3d 458 (8th Cir. 2000) ................................................................ 7

*Wabun-Inini v. Sessions*,
    900 F.2d 1234 (8th Cir. 1990) .............................................................. 8

*Wild v. Rarig*,
    234 N.W.2d 775 (Minn. 1975) ............................................................ 26

*Zobel & Dahl Constr. v. Crotty*,
    356 N.W.2d 42 (Minn. 1984) .............................................................. 27

**<u>Rules</u>:**

Fed. R. Civ. P. 12(c) ..................................................................................... 7
Fed. R. Civ. P. 12(d) ..................................................................................... 7
Fed. R. Civ. P. 56(c) ..................................................................................... 8
Minn. R. 7502.0420, subp. 3 ......................................................................... 3

**<u>Statutes</u>:**

17 U.S.C. § 101 ........................................................................................... 22
17 U.S.C. § 103 ........................................................................................... 24
17 U.S.C. § 106(1) & (3) ............................................................................. 20
17 U.S.C. § 412 ........................................................................................... 25
17 U.S.C. § 502(a) ....................................................................................... 24
Minn. Stat. § 169A.53, subd. 3(b)(10) ........................................................... 3
Minn. Stat. § 171.19 .................................................................................... 17
Minn. Stat. § 325C.01, subd. 5 .............................................................. 29, 30
Minn. Stat. § 336.1-201(b)(20) .................................................................... 26

**<u>Other</u>:**

2 Nimmer, § 8.02(C) .................................................................................... 24
Restatement (Second) of Contracts § 302 ..................................................... 16
Restatement (Second) of Contracts § 302(1)(a) ............................................ 16

# INTRODUCTION

The pleadings and record in the case clearly establish that Counts II, III and IV of the State's Complaint, Count I (the sole count) of Intervenors' Complaint-in-Intervention and Count II of CMI's Counterclaim are ripe for judgment on the pleadings or summary judgment.

CMI is entitled to judgment on the pleadings on the State's and Intervenors' third-party beneficiary claim. First, under the plain language of contract, the "information" CMI agreed to provide to Minnesota litigants does not include the source code. Second, the Intervenors are not entitled to *any* "information" because they are not intended third-party beneficiaries under the contract. The contract calls for the provision of limited information to defendants in criminal cases where the court with jurisdiction has ordered production. Intervenors Bergstrom, Zenobian, and Steffenson did not obtain orders in cases where they were criminal defendants. Intervenor Jacobson, on the other hand, was simply too late. He obtained a court order after the contract had expired. Accordingly, the third-party beneficiary claims fail as a matter of law.

The State's copyright infringement claim is ripe for disposition because the State has failed to allege the necessary elements of the claim. The State has not alleged facts demonstrating it possesses a protectable a copyright interest, or that CMI has copied or otherwise infringed any such copyright interest. Therefore, the State's copyright claim also fails as a matter of law.

The State's breach of the implied covenant of good faith and fair dealing claim is also improperly pleaded. The State fails to allege that CMI prevented or interfered with

the State's performance of its obligations or the occurrence of any conditions precedent under the contract. The allegation that CMI somehow prevented the State's performance of obligations it owed to others, arising outside the contract, fails to state a viable claim under Minnesota law.

Finally, CMI is entitled to summary judgment on its trade secret counterclaim because it has presented sufficient evidence of each element of the claim. The record amply demonstrates that CMI's source code is not available or readily ascertainable, derives significant value from its continued secrecy, and CMI has taken reasonable steps to maintain that secrecy. There is no evidence to the contrary.

For each of these reasons, CMI is entitled to judgment on the pleadings, or, in the alternative, summary judgment, on Counts II, III and IV of the State's Complaint, Count I of the Intervenors' Complaint-in-Intervention, and summary judgment on Count II of CMI's Counterclaim in this case.

## BACKGROUND

In early 1997, the State and CMI entered into a contract (the "Contract") under which CMI agreed to sell, and the State agree to purchase, CMI's Intoxilyzer 5000EN ("I-5000EN") breath-alcohol testing instruments. (Compl. ¶ 17.) The Contract consisted of a Request for Proposal issued by the State, CMI's Proposal, the State's Request for

Clarification, CMI's Response, and the State's Notice of Award.[1]  The instruments are used by various law enforcement agencies in the enforcement of various alcohol-related statutes.  (Compl. ¶ 1.)  Under Minnesota statutes and rules, the results of a test administered with the I-5000EN are presumptively valid and may be admitted in evidence without corresponding expert testimony.  Minn. Stat. § 169A.53, subd. 3(b)(10) (2008); Minn. R. 7502.0420, subp. 3 (2004).  Between 1997 and 2008, the State purchased and put more than 200 of the instruments into service.  (Compl. ¶ 17.)  The Contract, which originally ran through December 31, 2001, was subsequently extended and expired of its own terms on January 31, 2008.  (McNab Aff. Ex. 3.)

In or about 2006, defendants charged with violations of Minnesota's drunk driving laws and petitioners in license revocation proceedings began seeking access to the I-5000EN's source code in discovery.  (Compl. ¶ 21.)  Source code is the "raw" software for the instrument written in "human readable" format.  (*Id.* ¶ 18.)  The State declined to produce the source code, arguing that it was not discoverable for two primary reasons.  First, the State asserted that the source code was not relevant or reasonably calculated to lead to the discovery of admissible evidence.  (McNab Aff. Ex. 4 at 2-6; Ex. 5 at 2-7.)  Second, the State argued that the source code was not within its possession, custody or

---

[1]      A near-complete copy of the Contract, including the State's RFP, CMI's Proposal, and the State's Notice of Award, was filed with the Court as Exhibit 1, Pts. 1-3, to the Joint Motion for Entry of Consent Judgment and Permanent Injunction.  (Doc. 35.) Subsequent discovery in the case has disclosed two additional documents that formed part of the Contract.  They included the State's letter requesting clarification and CMI's Response, submitted herewith as Exhibits 1 and 2 to the Affidavit of William A. McNab ("McNab Aff.").  Due to the contract's voluminous nature, appropriate excerpts will be submitted as Exhibits to the McNab Affidavit in Support of Motion for Judgment on the Pleadings or in the Alternative, Partial Summary Judgment.

control, and therefore was not discoverable from the State. (*Id*. Ex. 4 at 8-10; Ex. 5 at 9-10.) Indeed, the State affirmed in at least two sworn affidavits and various court pleadings that it did not own or possess the source code. (*Id*., Ex. 4 at 10 and Ex. 5 at 10 ("the source code belongs to CMI"); August 22, 2006 Affidavit of Glenn Hardin, Toxicology Supervisor for the Minnesota Bureau of Criminal Apprehension ¶ 5; November 16, 2007 Affidavit of Glenn Hardin ¶¶ 5, 11-12) ("The source code for the Intoxilyzer 5000EN is not now, nor has it ever been, in the possession or custody of the BCA").

Most state district courts denied motions to compel production of the source code, but a number of courts began ordering the State to produce the source code or face possible exclusion of the I-5000EN test results from the evidence in that case. (Compl. ¶ 23.) Critically, some courts, including the Minnesota Supreme Court, hypothesized— but never decided—that the State *may* have control over the source code under its Contract with CMI. *See Underdahl v. Comm'r of Pub. Safety*, 735 N.W.2d 707, 712-13 (Minn. 2007). The Court cited the RFP but failed to recognize that, in addition to the RFP, the Contract consists of CMI's Proposal and Response, and the State's Notification of Contract Award, or to consider those portions of the Contract. *Underdahl*, 735 N.W.2d at 713.

In light of *Underdahl*, and in an attempt to conform to state district court orders compelling production of the source code, the State asked CMI to make the source code available for production. (Compl. ¶ 24.) Seeking to protect the source code's trade secret status, CMI initially demurred. (*Id*.) CMI soon recognized the need to resolve the so-

called "source code issue," so it agreed to make the source code available subject to a protective order and non-disclosure agreement that would adequately protect its valuable trade secrets. (*Id.* ¶ 25.) Because electronic "data" can easily be copied and transmitted around the globe, CMI agreed to produce the source code in written, hardbound format. (*Id.* ¶ 29; Affidavit of Toby Hall Supp. Joint Mot. Entry Consent J. ("Hall Aff.") ¶¶ 10, 22-24.) And because the source code includes vital pass codes and other information directly affecting the security of the State's testing program, CMI insisted that this security information be redacted from the written, hardbound version of the source code. (Hall Aff. ¶¶ 26-31.) Due to the significant cost of preparing the source code for printed, hardbound production, CMI also required that Minnesota litigants seeking to obtain the source code pay for the cost of printing and binding. (Compl. ¶ 29.)

Unfortunately, state courts' responses to the proposed protective order and nondisclosure agreement were remarkably varied. Many of the courts that ordered production declined to enter an adequate protective order, while others refused to require Minnesota litigants to pay CMI's costs of production. Some courts crafted their own protective orders, while some refused to issue any protective order at all. Even when the courts entered appropriate orders, some Minnesota litigants refused to execute the non-disclosure agreement, while others refused to pay CMI's cost of production. Given that there are eighty-seven district courts and approximately 300 district court judges in Minnesota, the only thing that was consistent about the source code rulings was the utter lack of consistency. Faced with a legal obligation to protect the source code or lose its trade secret status, CMI had little choice but to retain control over the source code.

Itself subject to inconsistent orders and the possible exclusion of I-5000EN evidence in some cases, the State brought this action against CMI, seeking to either obtain the source code itself or to force CMI to provide it directly to certain Minnesota litigants. (Compl. ¶ 2.)

Several months after the State brought this suit, four individuals moved for leave to intervene as plaintiff-intervenors in the case. (Compl. in Intervention ¶ 12.) Intervenors brought a single claim, mirroring the State's third-party beneficiary claim and alleging that they are entitled to obtain the source code under the State's Contract with CMI. (*Id*. ¶¶ 15-32, 35.)

While the Intervenors' motion was under advisement before Magistrate Judge Boylan, the State and CMI entered into a settlement agreement that was conditioned upon this Court's entry of a proposed consent judgment and permanent injunction. (Docs. 34 & 35.) The State and CMI moved jointly for entry of the proposed consent judgment. (Doc. 34.) While the Joint Motion for Entry of Consent Judgment was pending, this Court granted Intervenors' motion to intervene, concluding that the State could not adequately represent the Intervenors' interests when it separately sought to prosecute them in related state court proceedings. (Nov. 6, 2008 Order Granting Intervention at 3-4.) The Court subsequently denied the State's and CMI's Joint Motion for Entry of Consent Judgment and Permanent Injunction. (Doc. 95.) CMI has moved to dismiss the Intervenor Jacobsen's claims. (Doc. 62.) That motion has been briefed and argued, and is currently under advisement.

## THE INSTANT MOTION

CMI now moves for entry of judgment on several claims that are ripe for legal determination. Counts II and IV of the State's Complaint fail to state legally cognizable claims. Count III of the State's Complaint and Count I of the Intervenors' Complaint in Intervention are ripe for adjudication because they require only the Court's interpretation of an unambiguous contract—a purely legal determination. Finally, CMI is entitled to summary judgment on Count II of its Counterclaim because it has presented sufficient evidence of each element of the claim and there is no record evidence to the contrary. Accordingly, there are no genuine issues of material fact in dispute.

## LEGAL STANDARD

A party may move for a judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, the complaint is construed in favor of the non-moving party and well-pleaded facts are taken as true. *See United States v. Any and all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Judgment shall be entered where it is clear from the pleadings that there are no issues of material fact to be resolved and the moving party is entitled to judgment as a matter of law. *See Any and all Radio Station Transmission Equip.*, 207 F.3d at 462. If, on a motion for judgment on the pleadings, matters outside the pleadings are considered by the court, "the motion must be treated as one for summary judgment[.]" Fed. R. Civ. P. 12(d). However, matters incorporated in or integral to the Complaint may be considered without converting the motion to one for

summary judgment.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Summary judgment is proper when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is only genuine if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Therefore, the nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).  Moreover, where a plaintiff cannot support each essential element of a claim, summary judgment must be granted because a complete failure of proof regarding an essential element renders all other facts immaterial.  *See Celotex*, 477 U.S. at 322-23.  Summary judgment is "an integral part of the Federal Rules as a whole, which are 'designed to secure the just, speedy and inexpensive determination of every action.'"  *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp.*, 477 U.S. 317 at 327).

<u>**DISCUSSION**</u>

**I.      THE STATE'S AND INTERVENORS' THIRD-PARTY BENEFICIARY CLAIMS ARE RIPE FOR SUMMARY DISMISSAL BECAUSE THE CONTRACT DOES NOT REQUIRE CMI TO PROVIDE ACCESS TO ITS SOURCE CODE AND INTERVENORS ARE NOT INTENDED THIRD-PARTY BENEFICIARIES UNDER THE CONTRACT.**

Count III of the State's Complaint and the sole claim in the Complaint-in-Intervention allege that CMI is obligated to make information, including the source code, directly available to certain "Minnesota litigants" as third-party beneficiaries of the Contract. (Compl. ¶¶ 44-49; Compl. in Intervention ¶¶ 15-35.) These claim claims arise entirely from a single paragraph in the State's RFP (quoted in full, below), which required that proposals submitted in response to the RFP include a mechanism for the provision of "information" to defendants in criminal proceedings in certain specified circumstances.[2] (McNab Aff. Ex. 6 ¶ 12.)

These third-party beneficiary claims are ripe for summary adjudication because they present a purely legal question—the interpretation of an unambiguous contract. CMI is entitled judgment in its favor because source code was not the kind of

_____

[2]      Nothing in that clause entitles the State to obtain the source code, or even hints at such a possibility. By its own admission, the State brought Count III for the benefit of persons such as Intervenors. (State Mem. L. Opp'n Intervention at 3, 8-9.) Not surprisingly then, the State's and the Intervenors' claims are virtually identical. (Compl. ¶¶ 44-49; Compl. in Intervention ¶¶ 15-35.) However, this Court previously determined that the State cannot adequately represent the Intervenors' interests with respect to their third-party beneficiary claims because it has separately sought to prosecute them. (Order Granting Intervention at 3-4.) The same is necessarily true of every putative third-party beneficiary under the Contract—each is, by definition, a person "charged [by the State] with crimes" involving Intoxilyzer 5000EN evidence. (McNab Aff. Ex. 6 ¶ 12.) Therefore, the State cannot adequately bring this claim on behalf of any potential third-party beneficiary, and Count III of the State's Complaint should be dismissed for that reason alone.

"information" CMI agreed to provide. CMI is also entitled to judgment in its favor because the Intervenors are not among the classes of persons who were intended to benefit from the Contract. The Contract required CMI to provide information only to defendants in criminal cases, after the court with jurisdiction issued an order for production. Intervenors Bergstrom, Zenobian, and Steffensen, obtained orders in *civil* license revocation proceedings, not in criminal proceedings. And, as previously briefed and argued, Intervenor Jacobsen is not a beneficiary of the Contract because it expired well before he obtained an order from the court with jurisdiction over his case. Because source code is not "information" under the contract and Intervenors are not intended third-party beneficiaries, CMI is entitled to a judgment as a matter of law.

### A.    Source Code Is Not "Information" Under The Contract.

The State and Intervenors allege that "CMI expressly agreed to provide *Minnesota litigants* with access to information pertaining to the Intoxilyzer 5000EN upon receipt of a court order directing production of that information." (Compl. ¶ 45, emphasis added; *and see* Compl. in Intervention ¶ 16.) These claims are based entirely upon the following requirement in the State's RFP:

> Provision for information to attorneys supplied directly from manufacturer including statement of all non-disclosure/non-reproduction agreements required to obtain information, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence. This part of the contract to be activated with an order from the court with jurisdiction of the case and include a reduced fee schedule for defendants found by the court to be entitled to a publicly funded defense.

(McNab Aff. Ex. 6 ¶ 12, the "Information Clause.") While the State and Intervenors rely entirely upon this single paragraph, it is clear from the Contract *as a whole* that "information" does not include the source code. Indeed, CMI agreed to provide only a copy of the Operation Manual for the Intoxilyzer 5000EN to criminal defendants who obtained an order from the state district court. Although the term "information" is not defined in the RFP, it is defined in CMI's Proposal. (*Compare* McNab Aff Ex. 6 ¶ 12 *with* McNab Aff. Ex. 2 at 287 and Ex. 9.)

Under Minnesota law, contract construction is a question of law for the court. *See Edgely v. Lappe*, 342 F.3d 884, 888 (8th Cir. 2003); *Lobeck v. State Farm Auto Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1989). The contract is to be read as a whole, in a manner that gives reasonable meaning and effect to every term. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 548 N.W.2d 390, 394 (Minn. 1998). The parties' intent must be drawn from within the four corners of the agreement unless the contract is ambiguous on its face. *See Karim v. Werner*, 333 N.W.2d 877, 879 (Minn. 1983). The presence of an ambiguity is itself a question of law, which must also be determined from the agreement itself without resort to extrinsic evidence. *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 635-36 (8th Cir. 1994), *cert. denied,* 516 U.S. 810 (1995); *Metro Office Parks Co. v. Control Data Corp.*, 205 N.W.2d 121, 124 (Minn. 1973). In determining whether a contract is ambiguous, the court must read and construe the agreement as a whole. *Servais v. T.J. Mgmt. of Minneapolis, Inc.*, 973 F. Supp. 885, 892 (D. Minn. 1997). Summary judgment is appropriate when a contract is

unambiguous because no genuine issues as to any material fact remain. *LaSociete Generale Immobiliere*, 44 F.3d at 636.

The Contract consists of the RFP, CMI's Proposal, the State's Request for Clarification, CMI's Response, and the State's Notification of Contract Award. The Contract plainly states that the RFP, the Proposal, and the Notification of Contract Award together form the final Contract. (McNab Aff. Ex. 15.) The Notification of Contract Award states that those documents, along with CMI's Response to the State's letter requesting clarification, constitute the entire Contract. (McNab Aff. Ex. 7.)

The "Information Clause" in the RFP required that CMI's Proposal include three components: 1) a provision for making "information" available to defense counsel; 2) any non-disclosure agreement CMI would require prior to providing the "information"; and 3) CMI's fee schedule. (McNab Aff. Ex. 6 ¶ 12.) CMI's Proposal complied with each of these requirements. CMI's Proposal included a letter under which information would be provided to defense counsel (McNab Aff. Ex. 9), a non-disclosure agreement to be executed by persons receiving the information (McNab Aff. Ex. 10), and a fee schedule (McNab Aff. Ex. 11). Significantly, in the letter under which information was to be provided to defense counsel, CMI expressly indicated that it would provide only "the Operation Manual for the Intoxilyzer." (McNab Aff. Ex. 9.) CMI further stated:

> So you understand our guidelines as to obtaining such a manual, please find enclosed the necessary documents to be signed by you and returned to our office prior to any release of the material. Please return the signed original Confidentiality Agreement and a check in the amount of $250 made payable to CMI, Inc., to my attention. We will send a signed copy of the Confidentiality Agreement back to your office for your records *along with the Operations Manual*.

(*Id.*, emphasis added.) This letter was included in CMI's Proposal to the State, as the RFP required. After receiving and reviewing CMI's Proposal, the State ultimately awarded the Contract to CMI.

Before it awarded the Contract, however, the State asked CMI for clarification because the letter CMI initially submitted with the Proposal contained typographical errors. (McNab Aff. Exs. 1 and 9.) Thus, it is clear that in reviewing CMI's Proposal, the State carefully reviewed the letter in which CMI defined the "information" it was agreeing to produce. In response to the State's request for clarification, CMI provided a corrected version of the letter. (McNab Aff. Ex. 2 at 287.) Notably, the revised letter contained the same description of the information CMI was willing to provide (i.e., the Operation Manual only). (*Compare* McNab Aff. Ex. 2 at 287 *with* Ex. 9.)

Though it could have, the State did not reject CMI's Proposal or challenge its definition of "information." According to the RFP, the State could reject any proposal that materially deviated from the terms of the RFP. (McNab Aff. Ex. 8) A material deviation was "an exception to the proposal specification which . . . [gave] the State something significantly different from that which the State requested." (*Id.*) Indeed, the RFP repeatedly reserved to the State the right to reject any proposal, ***or to waive*** any deviation in a proposal. (McNab Aff. Exs. 8, 12-14.) The State carefully reviewed

CMI's Proposal, including the letter describing the only "information" CMI would provide, and it awarded CMI the Contract.[3] (McNab Aff. Ex. 2 at 287.)

While the State and Intervenors might want to claim that CMI's definition of "information" was a "material deviation," it is clearly too late to do so now. The existence of a waiver may be found by express language or by clear implication. *Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co.*, 152 N.W. 651, 651-52 (Minn. 1915.) ("Any conduct on the part of the person entitled to insist upon the right which is inconsistent with an intention to claim it may amount to a waiver as a matter of law."). Here, the State carefully reviewed the letter in which CMI defined the information it was willing to provide, sought and obtained clarification, accepted CMI's Proposal, took delivery of over 200 instruments, and received the benefit of CMI's performance under the Contract for a dozen years. It cannot now go back and reject CMI's Proposal.

The Contract itself clearly states that CMI's Proposal and its Response to the State's request for clarification are part of the Contract. (McNab Aff. Ex. 7.) That includes CMI's definition of the "information" it would agree to provide to defendants. Contracts are to be read, as much as possible, to harmonize and give effect to every term. *Brookfield Trade Ctr., Inc.*, 548 N.W.2d at 394. Here, the Court can easily do so. The RFP does not define the word "information," but the Proposal does. Applying CMI's

---

[3]    There is a glaring inconsistency between the State's long standing position in the Minnesota state courts that the source code is not relevant or discoverable, and its claim here that, in forming the Contract, it intended for CMI to produce it. (McNab Aff. Exs. 4 and 5.) Indeed, the claims are irreconcilable. Since the State believes the source code is not discoverable, it could not have intended that CMI would produce it when the parties entered the Contract.

definition, which the State clearly considered and accepted, does not render the Information Clause meaningless; indeed, there is no tension between RFP and CMI's Proposal.

The State and Intervenors would have this Court read CMI's Proposal out of the Contract, but that would be improper. Reading the Contract as a whole and giving effect to each of its parts, it is clear that source code is not "information" that CMI agreed to provide to counsel for defendants. As a matter of law, the State and Intervenors are not entitled to the source code and they cannot prevail on their third-party beneficiary claims. Judgment in favor of CMI is appropriate on Count III of the State's Complaint and the sole count in the Complaint-in-Intervention.

### B. Intervenors Are Not Intended Third-Party Beneficiaries.

The Intervenors' claims must fail for another reason: irrespective of the definition of "information," the Contract does not contemplate conferring a benefit upon persons in their circumstances. They simply are not third-party beneficiaries of this Contract.

A person becomes an intended third-party beneficiary of a contract between others only where the contracting parties' intent to confer a benefit upon that person is clear on the face of the contract. *See Servais*, 973 F. Supp. at 897 (holding that the starting point for this analysis is "the contract itself"). Indeed, "any third party bringing this type of action on [a] contract must be limited ***strictly*** to the terms and promises made in the contract involved. His rights depend upon, and are measured by, the terms of the contract." *Brix v. Gen. Accident & Assurance Corp.*, 93 N.W2d 542, 544 (Minn. 1958) (emphasis added). "Generally, when there is no reference to the third party in the

contract, there is no intent to benefit the third party." *614 Co. v. Minneapolis Cmty. Dev. Agency*, 547 N.W.2d 400, 410 (Minn. Ct. App. 1996).

Minnesota has adopted the Restatement (Second) of Contracts § 302 (1979) approach for determining whether a person outside the contract is an intended beneficiary. *See Cretex Co., Inc. v. Construction Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn. 1984). The Restatement advances both the "intent to benefit test" and the "duty owed test." *See Dayton Dev. Co. v. Gilman Fin. Servs.*, 419 F.3d 852, 856 (8th Cir. 2005). Under either test, the determination must be based upon the underlying contract. *See Servais*, 973 F. Supp. at 897. The "intent to benefit" test requires that "the contract express some intent by the parties to benefit the third party through contractual performance." *Cretex Co.*, 342 N.W.2d at 140. The "duty owed" test requires that "the performance of the promisee will satisfy an obligation of the promise to pay money to the beneficiary." Restatement (Second) of Contracts § 302(1)(a). In other words, "the promisor's performance under the contract must discharge a duty otherwise owed by the promisee." *Cretex Co.*, 342 N.W.2d at 138. Notably, however, "the obligation to be discharged must arise from the agreement itself, and not from a separate contract." *Dayton Dev. Co. v. Gilman Fin. Servs., Inc.*, 299 F. Supp. 2d 933, 938 (D. Minn. 2003). Here, it is plain from the Contract that Intervenors cannot satisfy either test.

>    1.    ***Intervenors Bergstrom, Zenobian, and Steffensen are not intended third-party beneficiaries because they did not obtain orders from the court with jurisdiction over their criminal cases.***

Under the "intent to benefit" test, the contract must "express some intent by the parties to benefit the third party." *Norwest Fin. Leasing, Inc. v. Morgan Whitney, Inc.*,

787 F. Supp. 895, 898 (D. Minn. 1992). Here, there is no such expression. There is not a single reference to petitioners in civil license revocation proceedings anywhere in the Contract. Instead, the Information Clause requires CMI to make "provision for 'information' . . . to attorneys representing individuals **charged with crimes** in which a test with the proposed instrument is part of the evidence." (McNab Aff. Ex. 6 ¶ 12, emphasis added.) CMI's obligation to provide "information" to defense counsel does not arise until there is "an order from the court with jurisdiction of the case." (*Id.*) In other words, whatever "information" CMI has to provide is available only to **defendants in criminal proceedings** who obtain an order for production in their case. The fact that the Information Clause is limited to defendants in criminal cases is confirmed by the further requirement that CMI provide a "reduced fee schedule for **defendants** found by the court to be entitled to a publicly funded defense." (*Id.*, emphasis added.)

Intervenors Bergstrom, Zenobian, and Steffenson did not obtain orders from courts with jurisdiction over criminal cases. Rather, they obtained orders in implied consent license revocation proceedings. (McNab Aff. Exs. 16-18.) Implied consent license revocation proceedings are civil, not criminal, proceedings. Minn. Stat. § 171.19. As noted above, the determination of whether an individual is an intended beneficiary is to be based upon a strict reading of the contract, and where, as here, there is no reference to the putative third party and no other indication that the parties meant to afford him or her a benefit, there is **no intent to benefit**. *Servais*, 973 F. Supp. at 897; *Brix*, 93 N.W2d at 544; *614 Co.*, 547 N.W.2d at 410.

Intervenors likewise fail to satisfy the "duty owed test." First, under the Restatement, the promisee's duty must be the "payment of money." Restatement (Second) of Contracts § 302(1)(a). Second, while the State may owe petitioners in civil implied consent license revocation proceedings certain duties, those duties do not arise out of the Contract. *See Dayton Dev. Co.*, 419 F.3d at 857. As the Court of Appeals for the Eighth Circuit held, "[i]t is axiomatic that the duty a third-party beneficiary is attempting to enforce must be a duty contracted for in the contract itself." *Id*. Here, the State's obligation to provide information to civil litigants does not arise out of the Contract, and nothing in the Contract suggests that CMI agreed to undertake any such duty on the State's behalf.

Nor should the State or Intervenors be heard to argue that, despite what it said in the RFP, the State *meant* both defendants in criminal cases *and* petitioners in implied consent cases. The State alone drafted the RFP. Its intent must be determined from its objective manifestations, not its *post hoc* assertions of subjective intent. *Hickman v. Safeco Ins. Co. of Am.*, 695 N.W.2d 365, 370 (Minn. 2005). The RFP makes no mention of petitioners, civil cases, or implied consent proceedings, but it explicitly addresses "individuals charged with crimes" and "defendants." (McNab Aff. Ex. 6 ¶ 12.)

Additionally, under the well-settled maxim of construction "the expression of specific things in a contract implies the exclusion of all not expressed," the State's inclusion of "individuals charged with crimes" and "defendants found by the court to be entitled to a publicly funded defense," coupled with its omission of "petitioners," "civil cases," or "implied consent proceedings" demonstrates that implied consent petitioners

are not persons meant to be benefited by the contract. *Maher v. All Nations Ins. Co.*, 340 N.W.2d 675, 680 (Minn. Ct. App. 1983). The State did not ask and CMI did not agree to confer a benefit on civil litigants, and "parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms." *In re Stevenson Assocs., Inc.*, 777 F.2d 415, 421 (8th Cir. 1985).

### 2. There was no Contract when Intervenor Jacobsen obtained a court order.

As set forth more fully in CMI's Memorandum of Law in Support of Motion to Dismiss the Complaint-in-Intervention of Intervenor Jacobsen,[4] there is no set of facts alleged in the Complaint-in-Intervention which, if proven, would entitle him to relief. In addition to the fact that "information" does not include source code, the Contract expired by its express terms before Mr. Jacobsen could have become an intended beneficiary. (McNab Aff. Ex. 3.) Express terms such as the expiration date in the Contract require no further interpretation. *See Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003) ("unambiguous words . . . are to be given their plain and ordinary meaning").

Intervenor Jacobsen did not obtain an order from the court with jurisdiction over his case until March 25, 2008. The Contract expired on January 31, 2008. (McNab Aff. Ex. 3.) In other words, by the time he received an order, there was no contract. Because CMI's agreement to provide information would not become operative unless and until

---

[4]  This motion is presently under advisement. CMI incorporates those arguments and authorities herein.

this condition precedent was satisfied, no right to information ever vested in Mr. Jacobsen. For these reasons, his claim must be dismissed.

## II. THE STATE'S COMPLAINT FAILS TO PROPERLY STATE A CLAIM OF COPYRIGHT INFRINGEMENT OR TO ALLEGE FACTS UPON WHICH RELIEF MAY BE GRANTED.

The State alleges that CMI infringed its copyright by "denying the State free access to the source code." (Compl. ¶ 42.) The State claims that by declining to give it the source code, CMI has prevented the State from "exercising its right to control reproduction of the source code and to control distribution." (*Id*.) The Complaint fails to state a legally cognizable copyright infringement claim for two reasons. First, it fails to allege that the State possesses a protectable copyright interest. Second, it fails to allege any infringing conduct. Indeed, Count II is nothing more than a carefully disguised reiteration of the breach of contract claim in Count I of the Complaint.

The Copyright Act expressly grants a copyright holder the right to reproduce, prepare derivatives, distribute, perform, display, or transmit the copyrighted work. 17 U.S.C. § 106(1) & (3). Accordingly, the elements of a valid copyright infringement claim include: 1) ownership of a valid copyright, and 2) unauthorized copying or public distribution of the copyrighted work. *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 986 (D. Minn. 1986) (*citing Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417, 433, 104 S. Ct. 774, 784 (1984)). The Complaint fails to satisfy either element.

**A.** **The State's Complaint Fails To Allege A Protectable Copyright Interest.**

The Complaint alleges that CMI assigned the State "*any* copyrightable material conceived and originated and which arose under the contract" (Compl. ¶ 39, emphasis added), but fails to allege that any copyrightable material *did* arise under the Contract.  It then alleges that "*any such* copyrightable work would be considered a 'work for hire' as defined in the U.S. Copyright Act," (*id*. ¶ 43, emphasis added), again without having alleged that any copyrightable work *actually did arise* under the Contract.  At most, the State alleges that the preexisting source code was somehow "*customized* to meet the specific needs of the State of Minnesota."  (*Id*. ¶ 41, emphasis added.)  Nowhere in the Complaint does the State allege that:   i) any copyrightable material was, in fact, conceived and originated and arose under the Contract, and was assigned to the State; ii) that any such material was, in fact, a "work for hire" under the Copyright Act; or iii) that the State has any basis to claim ownership of a right to "free access to the source code."  (*Id*. ¶ 42.)  The absence of these fundamental allegations is fatal to the State's Complaint.

Ownership of a valid copyright is an essential element of a copyright infringement claim.  *Ford Motor Co.*, 646 F. Supp. at 986.  Here, while the Complaint alleges the existence of an assignment clause in the Contract, it does not allege its prerequisites were satisfied.  In other words, the Complaint fails to allege that the State has an ownership interest in any copyrighted material, or any facts from which such ownership can reasonably be inferred.  The assignment provision in the contract is clear enough:  CMI

agreed to assign to the State only any copyrightable material that was conceived and originated and arose under the contract.  (McNab Aff. Ex. 8 ¶ 29.)  However, nowhere in its Complaint does the State allege that any copyrightable material **was** conceived and originated and arose under the contract.  Without alleging that it possesses a protectable interest in copyrighted material, the State's claim must fail.  "A complaint . . . must contain either direct or inferential allegations respecting all the material elements." *Ascon Props., Inc. v. Mobile Oil Co.*, 866 F.2d 1149, 1155 (9th Cir. 1998) (*quoted with approval in Twombly*, 550 U.S. 544, 562 (2007)).

The claim that CMI agreed "such copyrightable material would be considered a 'work for hire'" does not remedy this defect.  (Compl. ¶ 40.)  First, it again fails to allege that any such copyrightable material existed.  Second, the Contract (which is incorporated into the State's Complaint) states that, "[*w*]*here applicable*, works of authorship created by Contractor for the State in performance of the Contract shall be considered 'works for hire' as defined in the U.S. Copyright Act."  (McNab Aff. Ex. 8 ¶ 29; emphasis added.) But the "work for hire" doctrine *is not applicable here,* so this clause is of no effect.

The Copyright Act defines "work made for hire" as:

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas . . .

17 U.S.C. § 101.  Contractors such as CMI are not "employees" for purposes of this section.  *See Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 750 (1989).

Further, the source code does not fall within any of the nine enumerated works in subdivision (2) of the Act. Therefore, it cannot constitute a work for hire. *Schiller & Schmidt v. Nordisco Corp.*, 969 F.2d 410, 412 (7th Cir. 1992).

The State's vague allegation that the source code was somehow "customized" to meet the State's needs is equally insufficient because the Complaint does not allege that any "customized" source code is copyrightable material. The State may argue that as a result of this alleged "customization," it owns a derivative copyright in the source code. The argument would be that in "customizing" the Intoxilyzer 5000EN, CMI "must have created some copyrightable source code that arose under the Contract," and that "customized" source code would have been assigned to the State. However, that argument would necessarily fail, for two reasons. First, the Complaint simply fails to make that allegation. Second, as discussed more fully below, even if that claim could somehow be "read into" the Complaint, CMI's refusal to allow the State to reproduce the source code would not constitute infringing conduct under the Copyright Act.

In sum, the Complaint simply fails to allege that any copyrightable material *was* conceived and originated and arose under the Contract or that the State has a protectable copyright interest. Without factual allegations supporting this fundamental element, the claim fails as a matter of law. *See Bell Atl. Corp.*, 544 U.S. at 555-56.

### B. The State Fails To Allege Infringing Conduct.

As noted above, the State does not allege that CMI improperly reproduced, distributed, performed, displayed, or transmitted a copyrighted work that belongs to the State. The State merely alleges that CMI refused to give it the source code. (Compl.

¶¶ 36, 42.)  Rather than alleging infringing conduct, such as unauthorized copying or distribution, the State alleges nothing more than the breach of a purported duty to provide it with the source code.  (*Id*.)  And as the Complaint itself makes clear, that duty, if it existed at all, arose out of the Contract.  In other words, the State is attempting to transform its breach of contract claim (Count I) into a copyright infringement claim.

Copyright infringement consists of the violation of one or more of the copyright holder's exclusive rights through the unauthorized use, reproduction, distribution, performance, or transmission of the copyrighted work.  17 U.S.C. § 502(a).  As Professor Nimmer explains, "infringement occurs whenever an unauthorized *copy . . . is made*, even if it is *used* solely for the private purposes of the reproducer."  2 Nimmer, § 8.02(C), pp. 8-26 (emphasis added).  Infringement allegations "must be grounded in a right protected by the Copyright Act, such as unlawful reproduction or distribution."  *Storage Tech. v. Custom Hardware Eng'g & Consulting*, 421 F.3d 1307, 1315 (Fed. Cir. 2005).

Here, the State couches this claim in the language of copyright infringement by alleging that the *result* of CMI's unwillingness to give it the source code (i.e., its alleged breach of contract) is to "deny the State free access to the source code."[5]  (Compl. ¶ 42.)

---

[5]     As mentioned above, even if the State were to argue that it obtained a derivative copyright, it would not be entitled to "free access to the source code."  Under the Copyright Act, a copyright in a derivative work "extends only to the material contributed by the author of such work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103.  Thus, "a party holding the rights to a preexisting work may restrict the use of a derivative work for which it does not hold the rights."  *Russell v. Price*, 612 F. Supp. 1123, 1128 (9th Cir. 1999) (cited in *U.S. v. Washington Mint, LLC*, 115 F. Supp. 2d 1089, 1099 (D. Minn. 2000)).  Accordingly, CMI's alleged restriction on the State's "free access" or ability to distribute the source code to Minnesota litigants still would not constitute infringing conduct.

But breach of contract is not infringement, denial of access is not infringement, and even "preventing the State from exercising its right to control reproduction of the source code and to control distribution of the source code" is not infringement. It is, at most, the collateral effect of an alleged breach of contract.

Courts must be on guard to ensure that a complaint does not conflate a copyright claim with some other cause of action, such as breach of contract. *See Storage Tech.*, 421 F.3d at 1315. There, the court discussed the potential confusion between rights owned in a copyrighted work, and rights held pursuant to a contract. *See id.* The court explained that infringement is the unauthorized copying or distribution of the work, not the breach of a contractual agreement between the parties. *See id.*; *see also U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) (holding that a licensee may breach contractual obligations under the license but cannot be liable for infringement). The Copyright Act and case law interpreting it provide no support for a claim of infringement based on a failure to comply with a *contractual obligation* to provide access to a purportedly copyrighted work. Any cause of action following from the facts alleged here would arise under the law of contract, not the copyright statutes.[6]

## III. THE STATE'S COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

In Count IV of its Complaint, the State alleges that CMI breached the implied covenant of good faith and fair dealing "[b]y refusing to provide the State with a copy of

---

[6]     It should be noted that because the State does not claim to have registered its purported copyright interest, in no case can it recover damages or attorneys' fees under the Copyright Act. 17 U.S.C. § 412; *C. Blore & D. Richman Inc. v. 20/20 Adver.*, 674 F. Supp. 671, 683 n.1 (D. Minn. 1987).

the source code, and by raising arbitrary and unreasonable barriers to production for Minnesota litigants," and by creating "a situation in which the State's breath testing program, once broadly regarding as presumptively reliable, has become viewed as presumptively unreliable." (Compl. ¶ 52.) As a matter of law, these allegations, even if true, do not constitute a breach of the implied covenant.

As an initial matter, the Minnesota Supreme Court has never applied the implied covenant of good faith and fair dealing to a contract for the sale of goods. *See Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975) (noting that some while states apply the covenant to all contracts, the Minnesota UCC provides an alternative, statutory good faith requirement); *and see Minnwest Bank Cent. v. Flagship Props. L.L.C.*, 689 N.W.2d 295, 303 n.5 (Minn. Ct. App. 2004) ("The implied covenant of good faith and fair dealing does not apply to sales contracts."); *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) ("Minnesota law does, however, impose an implied covenant of good faith and fair dealing into every non-sales contract."); *Beer Wholesalers, Inc. v. Miller Brewing Co.*, 426 N.W.2d 438, 441 (Minn. Ct. App. 1988) (noting that implied covenant is not applied to sales contracts); *Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*, 414 N.W.2d 554, 557-58 (Minn. Ct. App. 1987) (holding that implied covenant exists only in non-sales contracts). The Contract at issue here is a contract for the sale of goods. (McNab Aff. Ex. 8 ¶ 31.)

Under the Minnesota Uniform Commercial Code ("UCC"), contracts for the sale of goods do include an obligation of good faith. Minn. Stat. § 336.1-201(b)(20). However, the UCC defines good faith as "honesty in fact and the observance of

reasonable commercial standards of fair dealing." (*Id.*) The Complaint does not allege dishonesty or any deviation from reasonable commercial standards of fair dealing. For this reason alone, Count IV of the State's Complaint fails to state a claim upon which relief may be granted.

Moreover, even if this Court were to find that the Minnesota Supreme Court would extend the cause of action to this case, the Complaint would still fail to state a cognizable claim. "The implied covenant requires only 'that one party not make it impossible for the other party to perform the contract.'" *Burnette Techno-Metrics v. TSI, Inc.*, 44 F.3d 641, 643 (8th Cir. 1994) (*quoting Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*, 414 N.W.2d 554, 557 (Minn. Ct. App. 1987)). "Stated differently, every contract contains an implied condition that each party will not unjustifiably hinder the other from performing." *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984); *see also Haase v. Stokely-Van Camp, Inc.*, 99 N.W.2d 898, 902 (Minn. 1959) ("Where one of the contracting parties makes it impossible for the other to perform, he should not be permitted to take advantage of his own action in so doing"); *and see Beer Wholesalers, Inc. v. Miller Brewing Co.*, 426 N.W.2d 438, 441 (Minn. Ct. App. 1988) (claim dismissed where plaintiff failed to allege defendant had rendered plaintiff's performance impossible). The implied covenant also precludes a party from taking advantage of the failure of a condition precedent when the party itself has frustrated performance of that condition. *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Thus, a breach of the implied covenant occurs when a party hinders or renders impossible another party's performance or the

occurrence of a condition precedent. *Minnwest Bank Cent. v. Flagship Props. L.L.C.*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004). The implied covenant "does not extend to actions beyond the scope of the underlying contract." *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d at 503. Nor does Minnesota recognize a cause of action for breach of the covenant apart from the contract at issue. *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 558 F. Supp. 2d 944, 949 (D. Minn. 2008).

The State does not, and cannot, allege that CMI hindered or interfered with the State's performance of any obligation imposed on the State by the Contract. Indeed, the Contract imposed very few obligations upon the State. First, the State was obligated acquire its "actual requirements" of breath-testing instruments exclusively from CMI during the life of the Contract. (McNab Aff. Ex. 12 ¶ 1.) Second, the State was required to pay CMI in accordance with the Contract's terms. (McNab Aff. Ex. 19.) The State does not allege that CMI interfered with the State's ability to purchase its full requirements for breath-testing instruments from CMI, or its ability to pay CMI. The State argues that by not providing it with the with the source code, CMI has prevented the State from making the source code available to Minnesota litigants. (Compl. ¶ 52.) The State also claims it has been deprived of what was once a presumptively reliable breath-testing program. (*Id.*) Even if true, these claims cannot support the cause of action because neither the State's obligation (if any) to provide the source code to others, nor the presumption of reliability, arose out of the parties' Contract. *See In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d at 503.

Even if the implied covenant applied here (and it does not), CMI could not have breached it by hindering the State's performance of duties arising outside the Contract. *See Northstar Indus., Inc.*, 558 F. Supp. 2d at 949; *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d at 503. Because the obligations that form the basis of the State's claim did not arise under the Contract, the Complaint fails to state a claim and judgment on the pleadings is appropriate on Count IV of the State's Complaint.

## IV. SUMMARY JUDGMENT IS APPROPRIATE ON CMI'S TRADE SECRET COUNTERCLAIM BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND CMI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

In Count II of its Counterclaim, CMI alleges that the source code is a trade secret under the Minnesota Uniform Trade Secret Act ("MUTSA"). (Countercl. ¶¶ 101-106.) CMI has presented sufficient evidence of each element of the counterclaim and there is no contrary evidence in the record. Accordingly, summary judgment is appropriate.

Under the Act, trade secrets consist of:

information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Minn. Stat. § 325C.01, subd. 5.

Consistent with this uniform statute, computer programs (including source code) have long been afforded trade secret status. *See, e.g., Jostens, Inc. v. Nat'l Computer*

*Sys., Inc.*, 318 N.W.2d 691, 698 (Minn. 1982); *Aries Info. Sys., Inc. v. Pac. Mgmt. Sys. Corp.*, 366 N.W.2d 366, 368 (Minn. Ct. App. 1985); *see also Benefit Res., Inc. v. Apprize Tech. Solutions, Inc.*, 2008 WL 2080977, at *7 (D. Minn. May 15, 2008) (finding reasonable likelihood that source code was a trade secret); *JustMed, Inc. v. Byce*, 2007 WL 2479887, at *10 (D. Idaho Aug. 29, 2007) (holding that "source code clearly falls within the definition of a trade secret").

Here, the source code constitutes, alternatively, a *compilation* of instructions, a computer *program*, a *method* of operating the Intoxilyzer 5000EN, or a *process* by which instructions are given to the instrument's hardware. Minn. Stat. § 325C.01, subd. 5. Accordingly, if the source code is not generally known or readily ascertainable, derives independent value from its secrecy, and CMI has made reasonable efforts to maintain that secrecy, it is a trade secret.

## A.    The Source Code Is Not Generally Known Or Readily Ascertainable.

Trade secrets are valuable commercial information that is not "generally known . . . and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Minn. Stat. § 325C.01, subd. 5. As the controversy underlying this litigation amply reflects, the substance of CMI's source code is not generally known or readily ascertainable.

The source code is not generally known. CMI has not shared the source code with its customers, competitors, or the general public. (Hall Aff. ¶¶ 7, 10.) Moreover, the source code does not reside in source code form within the Intoxilyzer 5000EN instruments sold to CMI's customers. Rather, some portions of the source code are

written in "Z80 assembly" language and other portions are written in "C" programming language. (Affidavit of Mario D. Santana ¶ 9.) After it is written in these programming languages, the source code must be "assembled" or "compiled" and "linked." (Hall Aff. ¶ 6.) This converts the source code into file formats that are then loaded into two erasable programmable read-only memory chips ("EPROMs"), which are computer chips that are installed in the instrument. (*Id.*) Notably, the files that are assembled or compiled, linked, and installed in the EPROMs, cannot be "reverse engineered." (Hall Aff. ¶ 8.) Thus, the source code is not readily ascertainable.

**B. The Source Code Derives Value From Being Not Generally Known Because Others Could Obtain Economic Value From Its Disclosure and Use.**

CMI made a substantial investment of resources in designing the Intoxilyzer 5000EN, including creating the software for the instrument. (*Id.*) The device itself, meaning its hardware, is readily accessible. Thus, the instrument itself could be "reverse engineered" or copied with relative ease. (*Id.*) However, without the source code, an imitator would still have to create software in order to operate the knock-off device. Having a copy of the source code would save the imitator thousands of hours of software engineering time, and quite likely, equating to hundreds of thousands of dollars of investment. (*Id.*) The source code also represents engineering concepts that could be valuable to current competitors because they could enhance the performance of competing breath-alcohol testing instruments. Thus, the source code derives economic value from continued secrecy because it would be highly valuable to either current or future competitors.

### C. CMI Undertakes Reasonable Efforts To Maintain The Secrecy Of The Source Code.

Given the above, it is not surprising that CMI has gone to great lengths to protect the source code. First, only a very limited number of CMI personnel with "need-to-know" have access to the source code. (Hall Aff. ¶ 11.) Each of these individuals is required to execute non-disclosure and confidentiality agreements before gaining access to the source code. (*Id.*) Second, the source code is maintained under "lock and key" controls. (Hall Aff. ¶ 12.) Moreover, that secured area is within CMI's facility, which is itself secured with key-card and photo ID controlled access. (*Id.*) Third, in those limited circumstances where CMI has agreed to make the source code available, it has conditioned access on very strict non-disclosure agreements and court-entered protective orders. (Hall Aff. ¶ 10.) To further protect the source code, CMI has never made it available in electronic form, due to the ease with which electronic data can be duplicated and transmitted. (*Id.*) As a final testament to CMI's commitment to protecting the source code, it continues to resist access without sufficient controls, both here and elsewhere. (Hall Aff. ¶ 13.) CMI has taken reasonable measures to protect its trade secret source code.

Computer source code falls well within the coverage of MUTSA. CMI has presented substantial evidence that its source code is not available or readily ascertainable, that it derives significant value from its continued secrecy, and that CMI has taken reasonable steps to maintain that secrecy. There is no contrary evidence

tending to show that the source code is not a trade secret. Accordingly, CMI is entitled to summary judgment on Count II of its Counterclaim.

## <u>CONCLUSION</u>

Because the pleadings and the record in this case clearly establish that these claims involve questions of law for the court and there is no set of facts alleged which, if proven, would entitle the State or Intervenors to relief, CMI respectfully requests that the Court grant CMI's Motion for Judgment on the Pleadings, or, in the Alternative, Summary Judgment on Counts II, III and IV of the State's Complaint and the sole count in the Complaint-in-Intervention as a matter of law. Likewise, CMI requests that the Court grant CMI's Motion for Summary Judgment on Count II of its Counterclaim because there is no record evidence creating a genuine issue of material fact and judgment is appropriate as a matter of law.

Respectfully Submitted,

Dated: April 17, 2009                    WINTHROP & WEINSTINE, P.A.

                                          s/William A. McNab
                                         David M. Aafedt, MN #27561X
                                         William A. McNab, MN #320924
                                         Jessica S. Karich, MN #387156

                                         WINTHROP & WEINSTINE, P.A.
                                         225 South Sixth Street, Ste. 3500
                                         Minneapolis, Minnesota 55402-4629
                                         Tel: (612) 604-6400
                                         Fax: (612) 604-6800
                                         daafedt@winthrop.com
                                         wmcnab@winthrop.com
                                         jkarich@winthrop.com
                                         ATTORNEYS FOR DEFENDANT
                                         CMI OF KENTUCKY, INC.

4369600v3