## AFFIDAVIT OF GLENN G. HARDIN

State of Minnesota          )
                                  )ss
County of Ramsey          )

Glenn G. Hardin, being first duly sworn, deposes and states that:

1.      I am the Toxicology Supervisor for the Minnesota Bureau of Criminal Apprehension (BCA). As Toxicology Supervisor, I oversee the breath testing, blood alcohol, and toxicology sections of the BCA.

2.      I supervise the maintenance of the BCA's Intoxilyzer 5000EN breath testing instruments, as well as the approximately 200 Intoxilyzer 5000EN breath testing instruments throughout Minnesota that are presently in use by various law enforcement agencies.   I also participate in the validation testing of all breath testing instruments and any software used in those instruments.

3.      The Intoxilyzer 5000EN breath testing instrument employs infrared technology, which is generally accepted by the scientific community as being an accurate means of measuring breath alcohol.   The instrument itself is generally accepted by the scientific community as being an accurate instrument for measuring breath alcohol.   The Intoxilyzer 5000EN is on the National Highway Transportation and Safety Administration's conforming products list, and it is presently approved for use by over 20 states other than Minnesota.

4.      It is my understanding that the source code for the Intoxilyzer 5000EN is written in assembly language and is kept at CMI, Inc. which is based in Owensboro, Kentucky.   After the source code is completed, the source code is then compiled into a language that is readable by the Intoxilyzer 5000EN.   The compiled code is then programmed onto EPROM (Erasable Programmable Read Only Memory) microchips, which are installed into the Intoxilyzer 5000EN.

5.      As part of the State's process in acquiring the Intoxilyzer 5000EN, a Request for Proposal ("RFP") was prepared and accepted by CMI.   It is my understanding that under the

Dockets.Justia.com

terms of the RFP, the State only gains an ownership interest in any copyrightable material that CMI "shall conceive or originate" in order to provide the breath testing instruments for Minnesota. It is also my understanding that the portions of the source code for the Intoxilyzer 5000EN that have to do with measuring breath alcohol were already in existence when CMI signed the RFP, and CMI did not conceive or originate any copyrightable material in regard to how the Intoxilyzer 5000EN measures breath alcohol in order to provide the instruments to Minnesota.

6. The Intoxilyzer 5000EN has been formally approved for use as a breath testing instrument in Minnesota pursuant to Minn. Stat. § 634.16 (2004) and Minn. Stat. § 169A.75(c) (2004), as provided in Minn. Stat. § 14.389 (2004).

7. The current version of software used in the Intoxilyzer 5000EN instrument, Software Master G1408.62 and Slave 75_0240, has also been formally approved for use in Minnesota pursuant to Minn. Stat. § 634.16 (2004) and Minn. Stat. § 169A.75(c) (2004), as provided in Minn. Stat. § 14.389 (2004).

8. As required by Minn. Stat. § 14.389, the Intoxilyzer 5000EN's instrument approval process included a notice of proposed approval and a 30 day comment period. The BCA received no comments on the proposed approval.

9. As part of the Intoxilyzer 5000EN's instrument approval process, the BCA followed an extensive validation process to test the instrument's effectiveness, including tests using simulator solutions having a known alcohol concentration and tests on live subjects. Based on the results of this validation testing process, the BCA concluded that the Intoxilyzer 5000EN with the current version of software performed properly and should be approved for use in the State of Minnesota. *See* Minn. Rule 7502.0420, subp.3 (2005).

10. In my time participating in the instrument validation process for the BCA, I have never known of any other agency or entity, in the public sector or private sector, conducting analytical instrument validation tests to have or need access to the source code for the instrument being tested.

11.    To my knowledge, the only individual or entity in actual possession of the source code for the Intoxilyzer 5000EN is its manufacturer, CMI, Inc.

12.    The source code for the Intoxilyzer 5000EN is not now, nor has it ever been, in the possession or custody of the BCA. CMI, Inc. has never provided the BCA with the source code for the Intoxilyzer 5000EN instrument. The instrument validation process described in Paragraph 9 above was performed without having access to the source code. Access to the source code is irrelevant and unnecessary to the process of determining whether or not the Intoxilyzer 5000EN and its software accurately and reliably measures the alcohol concentration of a person's breath. Ultimately, the BCA does not need access to the source code for the Intoxilyzer 5000EN in order to determine whether the Intoxilyzer 5000EN accurately and reliably measures the alcohol concentration of a person's breath.

13.    The BCA's Intoxilyzer 5000EN instruments are available for use by an outside party at the BCA during normal business hours. An outside party may conduct tests on an Intoxilyzer 5000EN instrument at the BCA by posting a refundable bond equivalent to the cost of an instrument. In the alternative, the BCA will consent to anyone purchasing a "Minnesota model" of the Intoxilyzer 5000EN from CMI should anyone wish to purchase an Intoxilyzer 5000EN directly from CMI, Inc.


FURTHER YOUR AFFIANT SAYETH NOT.

_____
Glenn G. Hardin

Subscribed and sworn to before me
this _16h_ day of _November_, 2007.

_____
NOTARY PUBLIC

ANTHONY J. PETRACCA
Notary Public-Minnesota
My Commission Expires Jan 31, 2010