UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>        Plaintiff,<br>   and<br>Robert J. Bergstrom, Craig A. Zenobian, Shame M. Steffensen, and Christopher D. Jacobsen,<br>        Plaintiff- Intervenors,<br>   vs.<br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>        Defendant. | Civil Case No. 08-603 (DWF/AJB)<br><br>**AFFIDAVIT OF EMERALD GRATZ IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND AN ORDER FOR SPECIFIC PERFORMANCE OR PERMANENT INJUNCTION, OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION** |

COUNTY OF RAMSEY    )
                           )ss.
STATE OF MINNESOTA   )

Emerald Gratz, being first duly sworn, deposes and states that:

1.    I am an Assistant Attorney General in the Public Safety Division of the Minnesota Attorney General's Office and submit this affidavit in support of Plaintiff's Motion for Partial Summary Judgment and an Order for Specific Performance or Permanent Injunction, or in the alternative for a Preliminary Injunction.

2.    In my capacity as an Assistant Attorney General, I represent the Commissioner of Public Safety in litigation matters. My division at the Attorney General's Office handles all civil implied consent cases on behalf of the Commissioner of Public Safety at the district court level in all 87 counties in the State of Minnesota as well as the state appellate courts. Therefore, the majority of my workload involves handling

implied consent cases.  In addition, I am one of the attorneys involved in the above-captioned matter.

3. An individual arrested for driving while impaired ("DWI") in Minnesota faces both civil and criminal consequences.  First, a person arrested for DWI is subject to criminal prosecution under Minnesota's criminal DWI laws, which may include criminal charges, fines, and possible incarceration.  Second, a person arrested for DWI who fails or refuses to submit to DWI chemical testing is subject to civil consequences under the Minnesota Implied Consent Law, which includes revoking the driver's license and recording the offense on the driver's record, as well as the impoundment of license plates and vehicle forfeiture where appropriate.  In situations where an individual arrested for DWI submits to a chemical test and receives an alcohol concentration result of 0.08 or more, an implied consent proceeding always accompanies the criminal DWI charge.

4. Minnesota currently uses the Intoxilyzer 5000EN to conduct DWI breath tests, which is manufactured by CMI of Kentucky, Inc. ("CMI").  In the fall of 1996, the State issued a Request for Proposal ("RFP") seeking bids for a new fleet of breath test instruments.  Attached as Exhibit A is a true and correct copy of the State's RFP.[1]  Prior to submitting its response to the RFP, CMI sent a letter seeking clarification of several terms contained within the RFP.  Attached as Exhibit B is a true and correct copy of a letter from CMI to the State dated October 11, 1996.  CMI submitted its response to the

---

[1] For convenience, the copy of the RFP attached hereto is bate-stamped BCA075-BCA103.  The bate-stamped numbers did not appear on the original version of the RFP.

RFP and represented that the State's needs could be met by its product, the Intoxilyzer 5000. Attached as Exhibit C is a true and correct copy of CMI's response to the RFP.[2] The State elected to accept CMI's response to the RFP. Attached as Exhibit D is a true and correct copy of the State's contract award to CMI.[3]

5. According to CMI's website, the Intoxilyzer 5000 is currently used by more than 20 states in the U.S. Attached as Exhibit E is a true and correct copy of a printout of Intoxilyzer 5000 product information from www.alcoholtest.com.

6. The issue of access to the source code for the Intoxilyzer 5000EN ("Source Code") first arose in early 2006 in implied consent cases in state district court where individuals challenging the validity of their breath test results demanded that the State produce the Source Code. Based on these demands, state district courts throughout Minnesota ordered production of the Source Code in hundreds of implied consent cases. The State sent copies of many of these state court orders to CMI, requesting that it produce the Source Code. Attached collectively as Exhibits F and G are true and correct copies of representative letters sent on behalf of the State to CMI dated October 2007 through March 2008. In addition, some criminal prosecutors sent copies of the state court orders requiring production of the Source Code in criminal DWI cases to CMI. Attached

---

[2] For convenience, the copy of CMI's response to the RFP attached hereto is bate-stamped BCA001-BCA074. The bate-stamped numbers did not appear on CMI's original response to the RFP.

[3] For convenience, the copy of the State's contract award attached hereto is bate-stamped BCA104-BCA130. The bate-stamped numbers did not appear on the original contract award.

collectively as Exhibit H are true and correct copies of some letters sent by criminal prosecutors to CMI.

7. Initially, CMI refused to produce the Source Code under any circumstances. After numerous discussions with the State, CMI indicated that it would produce the Source Code, but only if its proposed protective order and non-disclosure agreement were agreed to by the litigant and judge. Attached as Exhibit I are true and correct copies of the protective orders and non-disclosure agreements proposed by CMI. However, most litigants and state court judges in cases where the Source Code was ordered to be produced found CMI's protective orders and non-disclosure agreements to be unreasonable and refused to agree to their use. Attached collectively as Exhibit F are true and correct copies of some of the orders issued by state court judges rejecting CMI's proposed protective orders and non-disclosure agreements. The State then proposed that the Minnesota Federal District Court's model protective order be utilized. Attached as Exhibit J are true and correct copies of letters sent on behalf of the State to CMI dated September 5, 2007, and September 13, 2007. CMI did not agree to use this model protective order. The State then suggested modifications to the Minnesota Federal Court model protective order. Attached as Exhibit K is a true and correct copy of a letter sent on behalf of the State to CMI dated October 17, 2007. CMI did not agree to use this modified model protective order either. Some defense attorneys made direct written requests to CMI asking for production of the Source Code and included a signed confidentiality agreement and affidavit in the form attached by CMI to its Response to the RFP and a check for $250.00. Attached collectively as Exhibit L are true and correct

copies of some letters sent by defense attorneys to CMI. Ultimately, CMI failed to produce the Source Code except in one isolated instance involving a criminal DWI case in the City of Apple Valley.

8. In cases where the state district court ordered production of the Source Code and it was not produced, some state district courts subsequently rescinded implied consent cases. In 2007, more than 200 implied consent cases were rescinded based solely on non-production of the Source Code. Since that time, hundreds of implied consent cases continue to be rescinded or stayed pending resolution of this litigation.

9. The issues concerning access to the Source Code have clearly impacted the Minnesota judicial system. While the impact varies from county to county, some areas have seen a sizeable increase in the number of petitions filed challenging implied consent license revocations, increasing the size of court calendars and the number of cases under advisement and taxing already strained judicial resources.

10. CMI's failure to produce the Source Code has significantly and negatively impacted the State's ability to properly enforce Minnesota's Implied Consent Law in three primary ways. First, the increased number of challenges to Intoxilyzer test results based on Source Code has severely impacted the time and resources of the attorneys enforcing the Implied Consent Law and the state court judges hearing implied consent cases. Second, the decreased use of the Intoxilyzer for breath tests has caused the length of time between the DWI arrest and the implied consent license revocation to increase, which delays the civil consequence given to the drunk driver and undermines the rehabilitative effect of the implied consent license revocation. Finally and most

importantly, the rescission of implied consent cases based solely on non-production of the Source Code has allowed DWI offenders to threaten public safety by continuing to lawfully drive on Minnesota's roadways and not receive enhanced consequences for additional alcohol-related driving conduct in the future.

Further your affiant sayeth not.

s/ Emerald Gratz<br>
EMERALD GRATZ

Subscribed and sworn to before me
this <u>16th</u> day of <u>April</u>, 2009.

s/ Judith K. Brown
Notary Public

AG: #2421502-v1