# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

State of Minnesota,                          File No. 08-CV-603 (DWF/AJB)
by Michael Campion, its
Commissioner of Public Safety,

              Plaintiff,

  v.

CMI of Kentucky, Inc.,                       **DEFENDANT'S RESPONSE**
a Kentucky corporation,                      **MEMORANDUM OF LAW IN**
                                             **OPPOSITION TO PLAINTIFF'S**
              Defendant,     **MOTION FOR PARTIAL**
                                             **SUMMARY JUDGMENT AND**
  And                                  **ORDER FOR SPECIFIC**
                                             **PERFORMANCE OR PERMANENT**
                                             **INJUNCTION, OR IN THE**
                                             **ALTERNATIVE, FOR A**
                                             **PRELIMINARY INJUNCTION**

Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen, and Christopher D.
Jacobsen,

              Plaintiff-Intervenors.

Defendant CMI of Kentucky, Inc. ("CMI") respectfully submits this Response Memorandum of Law in Opposition to Plaintiff State of Minnesota's (the "State") Motion for Partial Summary Judgment and an Order for Specific Performance or Permanent Injunction, or in the Alternative, for a Preliminary Injunction.

Dockets.Justia.com

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES...........................................................................................iii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

DISCUSSION................................................................................................................ 2

I.     THE STATE IS NOT ENTITLED TO SUMMARY JUDGMENT
       ON ITS BREACH OF CONTRACT CLAIM. ............................................. 3

       A.     The Contract's "Purpose" was to Establish a Five Year
              Requirements Contract. ...................................................................... 5

       B.     "Information" Is Defined By the Contract, in the Proposal,
              Not By Court Orders. ......................................................................... 6

       C.     The State Is Not Entitled to Usurp the Judicial Function. ................. 8

       D.     CMI's Proposal Clearly Defined the Information CMI Would
              Provide. ............................................................................................... 9

II.    IF THE CONTRACT IS AMBIGUOUS, SUMMARY JUDGMENT
       IS INAPPROPRIATE. ................................................................................ 13

       A.     The Extrinsic Evidence Demonstrates That "Information"
              Was Not Intended to Include the Source Code. ............................... 13

       B.     An Ambiguity In a Contract Must Be Construed Against the
              Drafter. ............................................................................................. 17

III.   THE CONTRACT EXPRESSLY LIMITS RECIPIENTS OF
       "INFORMATION" TO DEFENDANTS IN CRIMINAL
       PROCEEDINGS. ........................................................................................ 19

IV.    CMI'S OBLIGATION TO PROVIDE INFORMATION OF ANY
       KIND EXPIRED WITH THE CONTRACT ON JANUARY 31,
       2008. .......................................................................................................... 21

V.     THE STATE CANNOT BE ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE IT FAILED TO PROPERLY STATE THE CLAIM OR TO ALLEGE THE NECESSARY ELEMENTS. ....................................... 24

       A.     Minnesota Does Not Recognize a Common Law Implied Duty of Good Faith and Fair Dealing in Contracts for the Sale of Goods. ........................................................................................... 25

       B.     The State Fails to State a Claim Under the UCC. ............................ 26

       C.     Even if Minnesota Recognized a Common Law Claim of Breach of the Implied Covenant in a Contract for the Sale of Goods, the State's Complaint Would Still Fail to State a Cognizable Claim. ............................................................................. 26

VI.     BECAUSE IT IS NOT ENTITLED TO SUMMARY JUDGMENT AND IT IS NOT LIKELY TO PREVAIL ON THE MERITS, THE STATE IS NOT ENTITLED TO A PRELIMINARY INJUNCTION. ........................................................................................ 28

VII.     THE STATE IS NOT ENTITLED TO A PERMANENT INJUNCTION BECAUSE IT HAS NOT PREVAILED ON THE MERITS. ................................................................................................. 29

CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

Page No.

**Cases:**

*Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*,
414 N.W.2d 554 (Minn. Ct. App. 1987) ............................................... 26

*AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*,
110 N.W.2d 348 (Minn. 1961) ............................................................ 28

*Beer Wholesalers, Inc. v. Miller Brewing Co.*,
426 N.W.2d 438 (Minn. Ct. App. 1988) ........................................ 26,. 27

*Brookfield Trade Ctr., Inc. v. County of Ramsey*,
548 N.W.2d 390 (Minn. 1998) ............................................................ 11

*Burnette Techno-Metrics v. TSI, Inc.*,
44 F.3d 641 (8th Cir. 1994) ................................................................ 26

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .............................................................. 13, 15, 18

*Chergosky v. Crosstown Bell, Inc.*,
463 N.W.2d 522 (Minn. 1990) ........................................................... 6, 8

*Correct Piping v. City of Elkins, West Virginia*,
308 F. Supp. 431 (N.D. W.Va. 1970) ................................................ 6, 17

*Dataphase Sys., Inc. v. C. L. Sys.*,
640 F.2d 109 (8th Cir. 1981) ............................................................. 28

*Employers Mut. Liab. Ins. Co. v. Eagles Lodge of Hallock*,
165 N.W.2d 554 (Minn. 1969) ............................................................ 11

*Frontier Traylor Shea LLC v. Metro. Airports*,
132 F. Supp. 2d 1193 (D. Minn. 2000) ............................................... 29

*Granell v. Veterans of Foreign Wars Milton Barker Post No. 3871*,
357 N.W.2d 431 (Minn. Ct. App. 1984) .............................................. 16

*Haase v. Stokely-Van Camp, Inc.*,
99 N.W.2d 898 (Minn. 1959) ............................................................. 27

*Hickman v. Safeco Ins. Co. of Am.*,
  695 N.W.2d 365 (Minn. 2005) ............................................................ 20

*In re Doctor's Health, Inc.*,
  238 B.R. 594 (Bankr. D. Md. 1999) .................................................... 22

*In re Hennepin County 1986 Recycling Bond Litig.*,
  540 N.W.2d 494 (Minn. 1995) ..................................................... 27, 28

*In re Long*,
  17 B.R. 251 (Bankr. N.D. Ohio 1982) ................................................. 22

*In re Stevenson Assocs., Inc.*,
  777 F.2d 415 (8th Cir. 1985) ............................................................... 20

*Johnson v. Fitzke*,
  48 N.W.2d 37 (Minn. 1951) ................................................................. 21

*Johnson v. Northside Residents Redev. Council*,
  467 N.W.2d 826 (Minn. Ct. App. 1991) ............................................... 9

*Litton Fin. Printing Div. v. NLRB*,
  501 U.S. 190 (1991) ..................................................................... 21, 23

*Maher v. All Nations Ins. Co.*,
  340 N.W.2d 675 (Minn. Ct. App. 1983) ............................................. 20

*Minnwest Bank Ctr. v. Flagship Props. L.L.C.*,
  689 N.W.2d 295 (Minn. Ct. App. 2004) ....................................... 25, 27

*Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*,
  666 N.W.2d 320 (Minn. 2003) ............................................................ 21

*Nolde Bros. v. LOC No. 358, Bakery & Confectionery Workers Union, AFL-CIO*,
  430 U.S. 243 (1977) ..................................................................... 22, 23

*Northstar Indus., Inc. v. Merrill Lynch & Co.*,
  558 F. Supp. 2d 944 (D. Minn. 2008) ................................................. 27

*Ostendorf v. Arrow Ins. Co.*,
  182 N.W.2d 190 (Minn. 1970) ............................................................ 12

*Palmer v. Tracor, Inc.*,
  856 F.2d 1131 (8th Cir. 1988) ............................................................ 18

*Porous Media Corp. v. Midland Brake, Inc.*,
    220 F.3d 954 (8th Cir. 2000) .................................................................. 21

*Premier Corp. v. Econ. Research Analysts*,
    578 F.2d 551 (4th Cir. 1978) .................................................................. 22

*Rusthoven v. Comm. Standard Ins. Co.*,
    387 N.W.2d 642 (Minn. 1986) ............................................................... 18

*Sanborn Mfg. Co. v. Campbell Haustfeld/Scott Fetzer Co.*,
    997 F.2d 484 (8th Cir. 1993) .................................................................. 28

*Seman v. First State Bank of Eden Prairie*,
    394 N.W.2d 557 (Minn. Ct. App. 1986) ................................................... 7

*State v. Pieschke*,
    295 N.W.2d 580 (Minn. 1980) ............................................................... 13

*Sterling Capital Advisors, Inc. v. Herzog*,
    575 N.W.2d 121 (Minn. Ct. App. 1998) ................................................. 25

*Turner v. Alpha Phi Sorority House*,
    276 N.W.2d 63 (Minn. 1979) ............................................... 7, 8, 13, 17

*Watkins Inc. v. Lewis*,
    346 F.3d 841 (8th Cir. 2003) .................................................................. 28

*White Stone Partners, LP v. Piper Jaffray Co., Inc.*,
    978 F. Supp. 878 (D. Minn. 1997) ............................................................ 9

*Wild v. Rarig*,
    234 N.W.2d 775 (Minn. 1975) ............................................................... 25

*Yaeger v. Delano Granite*,
    84 N.W.2d 363 (Minn. 1957) ................................................................. 22

*Zobel & Dahl Constr. v. Crotty*,
    356 N.W.2d 42 (Minn. 1984) ................................................................. 26

## **Rules:**

Fed. R. Civ. P. 56(f) .................................................................................... 18

**Statutes:**

Minn. Stat. § 336.1-201(b)(20) ........................................................... 26

Minn. Stat. § 336.2-306 (2008) ........................................................... 21

**Other:**

Restatement (Second) of Contracts § 206 (1982) ........................................................... 18

# INTRODUCTION

The dispute in this case centers on the interpretation of an expired requirements contract under which CMI supplied breath-alcohol testing instruments to the State. CMI and the State have each filed dispositive motions with respect to certain of the claims in the case.[1] For either party to prevail, it must demonstrate that it is entitled to a judgment as a matter of law, on the pleadings and the contract, and without resort to extrinsic evidence. CMI's motion addresses Counts II, III, and IV of the State's Complaint, the sole Count in the Plaintiff-Intervenors' Complaint in Intervention (which parallels Count III of the State's Complaint), and Count II of CMI's counterclaim. The State's motion addresses only Counts III and IV of its Complaint.

The State seeks summary judgment on Count III of its Complaint, arguing that the contract, though expired, obligates CMI to provide its proprietary source code to tens of thousands of Minnesota litigants. For the State to be entitled to summary judgment, the contract must unambiguously reflect this obligation. Because it does not, the State's motion fails. The State also moves for summary judgment on Count IV of the Complaint, which alleges that CMI has breached the implied covenant of good faith and fair dealing. This motion also fails, because Count IV fails to state a claim under Minnesota law. Minnesota does not apply the common law implied covenant to sales contracts, and the State fails to allege a breach of the statutory duty of good faith. Further, even if the common law implied covenant could somehow be applied to this

---

[1] *See* CMI Mem. L. Supp. Mot. J. on the Pleadings or in the Alternative, Summ. J. (Doc. No. 133.)

contract, the State fails to allege the necessary elements of the claim. Accordingly, the State cannot be entitled to summary judgment on this claim.

In its motion, CMI has shown that Count II of the State's Complaint, which alleges copyright infringement, is also facially—and legally—defective, and must be dismissed. And CMI is entitled to summary judgment on Count III of the State's Complaint because: i) the unambiguous contract did not include the source code among the information CMI agreed to provide to Minnesota DUI defendants; ii) the contract required CMI to provide information only to defendants in criminal cases, not petitioners in civil proceedings; and iii) the contract expired by its own terms on January 31, 2008. Finally, CMI is entitled to summary judgment on Count II of its Counterclaim (the source code is a trade secret) because it has adduced evidence of every element of the claim and there is no contrary evidence in the record.

## BACKGROUND

The facts are set forth fully in CMI's Memorandum of Law in Support of Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment.

## DISCUSSION

The State asks this Court to determine, without a trial, that: i) twelve years ago, CMI contracted to provide its most sensitive intellectual property to tens of thousands of Minnesota drunk driving litigants and has breached that contract; and ii) that the very same conduct that allegedly constitutes a breach of contract also constitutes a breach of the implied covenant of good faith and fair dealing. The State then asks the Court to order specific performance or issue a permanent injunction—again, without a trial on the

merits. The State is not entitled to summary judgment on either of these claims, or to any relief, injunctive or otherwise.

## I. THE STATE IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM.

The State asks the Court to summarily enter a judgment of breach of contract in the State's favor. Its breach of contract claim is based on "Special Condition 12," which, somewhat inartfully, required proposals submitted in response to the State's Request For Proposal ("RFP") to include:

> Provision for information to attorneys supplied directly from manufacturer including statement of all non-disclosure/non-reproduction agreements required to obtain information, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence. This part of the contract to be activated with an order from the court with jurisdiction of the case and include a reduced fee schedule for defendants found by the court to be entitled to a publically funded defense.

(Affidavit of William A. McNab ("McNab Aff.") Ex. 1 ¶ 12.)[2] In its Proposal, CMI responded to this Special Condition by noting that it had a standard procedure for the providing information to litigants. CMI's Proposal included a copy of a letter explaining CMI's standard procedure, which was limited to providing a copy of the Operation Manual for the instrument. CMI also included copies of the Confidentiality Agreement and Affidavit it would require litigants receiving the Operation Manual to execute. (*Id*. Ex. 2.) As required by the RFP, CMI's proposal also included the fee CMI would charge

---

[2] Due to the voluminous nature of the contract, appropriate excerpts are submitted as exhibits to the McNab Affidavit.

litigants for access to the Operations Manual, including a reduced fee for indigent defendants. (*Id*. Ex. 3.)

Notwithstanding CMI's clear statement of its standard procedure for providing information to litigants—which the State carefully reviewed and accepted, and which became part of the contract—the State now contends that Special Condition 12 "unambiguously" requires CMI to give its proprietary source code to Minnesota litigants. Yet at the same time, the State argues that the contract may be ambiguous on this point, but if so, the Court should still construe it in the State's favor—apparently without considering any evidence of the parties' intent. Of course, construction of an ambiguous contract by way of summary judgment would be contrary to well-settled law.

The State also argues that Special Condition 12 applies to both defendants in criminal cases, and petitioners in civil proceedings. It also argues that CMI's obligation to provide information survives the expiration of the contract, apparently going on indefinitely. To make these arguments, the State reads non-existent provisions into the contract while simultaneously asking the Court to flat out ignore provisions that are in the contract. For example, the State asks the Court to ignore CMI's Proposal and procedure for providing its Operation Manual to defendants, though they are indisputably part of the contract. On the other hand, the State somehow reads civil petitioners into the contract, even though Special Condition 12 very clearly addresses only "individuals charged with crimes" and "defendants." (McNab Aff. Ex. 1 ¶ 12.) The State then turns around and asks the Court to read the parties' agreed-upon expiration clause out of the contract. This

selective application of only limited portions of the contract cannot provide the basis for summary judgment.

### A. The Contract's "Purpose" was to Establish a Five Year Requirements Contract.

In its first argument, the State contends that the parties' intended meaning of the word "information" can be divined from the purpose of the contract, which the State asserts was "to ensure the admissibility, and defend the reliability, of breath testing results in the enforcement of the State's DWI and implied consent laws." (State's Br. at 11.) That assertion, in turn, is based on nothing more than the fact that the RFP is captioned "Evidentiary Breath Alcohol Test Instruments." Thus, the State's attenuated argument is that because the RFP is captioned "Evidentiary Breath Alcohol Test Instruments," the purpose of the *contract* was to ensure the admissibility and reliability of evidence and, therefore, the parties intended "information" to mean source code. The State has self-servingly substituted its view of the purpose of the *Special Condition* for the purpose of the overall *contract*, and the result is a non-sequitur.

As the RFP clearly states, the purpose of the contract was to establish a five year agreement for the supply of breath alcohol test instruments, related accessories, parts, and services to the State. (McNab Aff. Ex. 4.) The State may well believe that Special Condition 12's purpose was to ensure the admissibility of evidence; however, that does not mean that the term "information" was unlimited or undefined. By its own terms, the contract included the RFP, CMI's Proposal, the State's Request for Clarification, CMI's Response, and the Notification of Contract Award (hereafter collectively, the

"Contract").  (*Id*. Exs. 5 & 6.)  CMI's Proposal and its Response to the State's Request for Clarification both indicated that CMI had an established procedure for the provision of information to attorneys and that it would provide only its Operation Manual.  The State ignores, and would have this Court ignore, CMI's Proposal and Response to Request for Clarification, but they are part of the Contract.  In addition to the Contract itself, the decisions cited in the State's brief require that the Contract be read and construed as a whole, so as to harmonize and give effect to all of its provisions.  *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990); *Correct Piping v. City of Elkins, West Virginia*, 308 F. Supp. 431, 433 (N.D. W.Va. 1970).

Here, the State would have this Court read CMI's Proposal, its Response to the State's Request for Clarification, and its established procedure for providing its Operation Manual to defendants, completely out of the Contract, based on nothing more than its claim that the Contract's purpose was to ensure the admissibility of evidence.  The State's interpretation fails on two levels.  First, it contradicts the express purpose of the Contract, which was to establish a five year supply agreement.  Second, it fails to read the Contract as a whole, ignoring the integration of CMI's Proposal and Response to Request for Clarification into the overall Contract.  Thus, the State's appeal to the purported "purpose" of the Contract does not provide a basis for summary judgment.

**B.     "Information" Is Defined By the Contract, in the Proposal, Not By Court Orders.**

The State next argues that "information" was not defined by the Contract, but rather, was to be defined by orders entered by Minnesota state court judges. (State's Br.

at 12.) This argument fails for two related reasons. First, that is simply not what the Contract says. The RFP does not deign to define "information," but neither does it say that "information" would be determined by future state court orders. What it does say, is that CMI's obligation to produce any information would be "activated" (not "defined") by "an order of the court with jurisdiction in the case." (McNab Aff. Ex. 1 ¶ 12.) Again, looking at the very cases cited in the State's brief, terms in a contract must be given their plain and ordinary meaning. *See Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 67 (Minn. 1979). Webster defines "activate," in pertinent part, as follows: 1. to make active; cause to engage in activity. *Webster's New World Dictionary of Am. English* (3d Coll. Ed. 1991).

By its plain and ordinary meaning, the "activation" was nothing more than a condition precedent to CMI's obligation to produce information, not a *definition* of the information. If, and only if, a state district court with jurisdiction over the case issued an order for production, CMI's duty to provide information was triggered. There is no other reasonable interpretation of the term "activated" in Special Condition 12. Again, according to the cases the State has cited in its brief, a condition precedent is an event, not certain to occur, which must occur before performance becomes due. *See Seman v. First State Bank of Eden Prairie*, 394 N.W.2d 557, 560 (Minn. Ct. App. 1986).

Nothing in Special Condition 12 or Minnesota law even remotely suggests that "information" was to be defined by state district court orders. Indeed, if the parties had intended to allow the state courts to define "information," it would have made no sense

for CMI to offer its standard procedure of providing its Operation Manual, or for the State to have twice reviewed and accepted that language in CMI's Proposal.

Because the State has failed to show that unambiguous terms of the Contract require CMI to provide the source code to Minnesota litigants and that CMI has failed to do so, the State's motion for summary judgment on Count III of its Complaint must be denied.

### C. The State Is Not Entitled to Usurp the Judicial Function.

The State next argues that it, not this Court, is the sole interpreter of the Contract's meaning because the RFP included the statement that "the State is solely responsible for rendering decisions in matters of interpretation on all terms and conditions." (State's Br. at 13.) However, the State's self-serving interpretation of this clause would, in effect, render the entire contract illusory, since the State could essentially rewrite the Contract by simply "interpreting away" its obligations, and interpreting into the contract obligations that CMI never agreed to undertake.

Again, the cases the State cites hold that the construction of a contract is a question of law for the Court—not a question of one party's whim. *See Turner*, 276 N.W.2d at 66. Further, this term, like all others, must be harmonized with the rest of the contract. *See Chergosky*, 463 N.W.2d at 525. While the State now asserts that this "interpretation clause" applies to disputes arising after the Contract was formed, the clause can only sensibly be read to mean that if questions arose during the pre-contract RFP and proposal process, the State had the final word as to the meaning of the RFP. This interpretation is consistent with the numerous other provisions in the contract that,

for example, allowed the State to reject proposals outright or, alternatively, to waive material deviations in proposals. Indeed, the RFP repeatedly reserved the State's right to reject any proposal, or to waive any deviation within a proposal. (McNab Aff. Exs. 7-9.) This interpretation also avoids the absurd result that follows from the State's argument.

Alternatively, while it appears that no Minnesota court has specifically addressed the issue of a single party's sole discretion to *interpret* a contract, Minnesota law on "sole discretion" clauses generally is well established. Where a contract affords one party sole discretion with respect to a particular matter, the court considers "on a case-by-case basis" whether the contract would be illusory without an implied obligation of good faith. *White Stone Partners, LP v. Piper Jaffray Co., Inc.*, 978 F. Supp. 878, 883 (D. Minn. 1997) (reviewing Minnesota law). And under the UCC, which applies here, good faith means *subjective* good faith. *See id.* at 884. The State's subjective state of mind presents a question of fact and, therefore, is not appropriate for summary judgment. *See e.g. Johnson v. Northside Residents Redev. Council*, 467 N.W.2d 826, 829 (Minn. Ct. App. 1991.)

### D. CMI's Proposal Clearly Defined the Information CMI Would Provide.

The State next offers a list of "reasons" why, in its mind, CMI's Proposal, Response to Request for Clarification, and its standard procedure for providing information to defendants somehow do not exist or should be ignored. (State's Br. 14-16.) Each is addressed in turn.

First, Plaintiff argues that CMI's standard procedure may have allowed defendants to obtain manuals, pamphlets, and "documents." (State's Br. at 14.) In its Proposal,

however, CMI clearly described its standard procedure for release of information in the form of its Operation Manual.  Moreover, even if the Contract required CMI to produce manuals, pamphlets or documents other than the Operation Manual, at no time between October 1996 and September 2007 did CMI's source code exist in a manual, pamphlet or document form.  (Affidavit of Toby Hall ("Hall Aff.") ¶ 2.)

Second, the State claims that the RFP allowed CMI to modify the RFP only by taking "specific exception."  (State's Br. at 14.)  However, CMI did not seek to modify the RFP, but rather, it defined what the RFP failed to define—the information CMI was willing to make available.  Moreover, the Contract itself reflects that the State was well aware of CMI's definition.  The State sought and received clarification of CMI's standard procedure because the first version submitted in CMI's Proposal contained typographical errors.  (McNab Aff. Exs. 11 & 12.)[3]  As noted above, the Contact includes numerous provisions allowing the State to reject proposals that do not conform to the State's expectations.  (*Id*. Exs. 7-9.)  The Contract also allowed the State to seek and obtain clarification about any aspect of a proposal.  (*See id.* Ex. 11.)  Here, the State did exactly that, and after CMI submitted its Response to Request for Clarification, the State awarded the Contract to CMI.  It cannot now, under either the provision it claims allows it to solely interpret the Contract, or the provision it claims required CMI to take exception, go back and rewrite the contract.

---

[3] Only the relevant portions of CMI's Response to the State's Request for Clarification is attached.  A complete copy of the Response was filed as Exhibit 2 to the Affidavit of William A. McNab in Support of Defendant's Motion for Judgment on the Pleadings, or in the Alternative, Partial Summary Judgment (Doc. 139).

Third, the State argues that CMI's transmittal letter indicated CMI's acceptance of the RFP without qualification. (State's Br. at 14.) However, CMI's Proposal was not at odds or incompatible with the State's RFP. Taken to its logical conclusion, the State's theory leads to the absurd result that CMI was obligated to produce unlimited information, irrespective of relevance or sensitivity. Contract terms must not be construed so as to lead to an absurd result. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 548 N.W.2d 390, 394 (Minn. 1998) (*citing Employers Mut. Liab. Ins. Co. v. Eagles Lodge of Hallock*, 165 N.W.2d 554, 556 (Minn. 1969)).

Fourth, the State claims that because it obtained ten copies of the Operation Manual under the Contract, requiring CMI to "produce a document the State already had would be meaningless." (State's Br. at 14-15.) However, Special Condition 12 did not require CMI to produce anything to the State, it required CMI to provide its Operation Manual to defendants in DUI cases. It is irrelevant (but by no means surprising) that the State obtained its own copies of the Operation Manual for the instrument it purchased under the Contract. Moreover, CMI's Proposal, the State's Request for Clarification, and CMI's Response to the State's Request for Clarification demonstrate that the State was aware of and accepted CMI's standard procedure for providing information—in the form of its Operation Manual—to defendants. Whether the State deemed CMI's standard procedure an exception, a material deviation, or completely consistent with the RFP is of no consequence. The State reserved the right to reject any proposal, or to waive any deviation in a proposal. The State knowingly accepted CMI's Proposal. It cannot now go back and rewrite the Contract.

Fifth, the State asserts that, like the RFP, the Notification of Contract Award referred only to the generic term "information," not to the Operations Manual. (State's Br. at 15.) This argument goes nowhere, because it assumes, rather than proves, its own predicate. The State simply takes as a given that "information" includes source code, and then argues that the presence of the word "information" in the Notification of Contract Award is evidence that "information" includes source code. That is simply bad logic. The State further argues that CMI agreed to provide the State with additional copies of the Operations Manual for $25 each. The fact that CMI agreed to charge its customer less than it would charge one-time purchasers, in circumstances where it would also have to track Confidentiality Agreements and Affidavits, is evidence of nothing.

Sixth, the State argues that the Notification of Contract Award and RFP "take precedence" over CMI's Proposal. (State's Br. at 15.) This argument again assumes, rather than proves, that "information" includes the source code. Apart from that, the argument might have merit if the Notification of Contract Award, the RFP and CMI's Proposal were irreconcilable, but they are not. CMI's Proposal simply defines the term "information," while the Notification of Contract Award and the RFP do not.

Seventh, the State returns to its first argument, asserting that CMI implicitly agreed to produce other "pamphlets" and "documents." (State's Br. at 15-16.) The State does now acknowledge that the source code is not a "manual." (*Id*. at 16.) But as noted above, prior to at least as late as September 2007, the source code never existed in document form. (Hall Aff. ¶ 2.) Words in a contract are given their ordinary meaning unless some other intent is manifested in the agreement. *See Ostendorf v. Arrow Ins. Co.*,

182 N.W.2d 190, 192 (Minn. 1970). Clearly, at the time the Contract was executed, CMI did not consider the source code to be a manual, a pamphlet, or a document. (Hall Aff. ¶ 3.)

Finally, the State argues that CMI's position is somehow inconsistent with its statement that its instruments had previously withstood court challenges, and that CMI would support the State's program. This make-weight argument is hardly worthy of response, except to note that CMI ably supported the State's program for over twenty years. Notably, before this Contract came into being, CMI had supplied the State with an earlier version of the instrument for a decade. (Compl. ¶ 8.) The State then selected CMI as its exclusive vendor again in 1997. (*Id.* ¶ 17.) The State thereafter extended that Contract *three times*, for an additional *seven years*. (McNab Aff. Ex. 13.) In light of those facts, the suggestion that CMI has not been a good partner to the State rings hollow.

## II.   IF THE CONTRACT IS AMBIGUOUS, SUMMARY JUDGMENT IS INAPPROPRIATE.

### A.   The Extrinsic Evidence Demonstrates That "Information" Was Not Intended to Include the Source Code.

Apparently hedging its bets, the State next argues that even if the Court concludes the Contract is ambiguous, it should nonetheless construe it in the State's favor. (State's Br. at 17.) However, if the Contract is ambiguous, the parties' intent becomes a question of fact and a legal determination would be inappropriate. *See Turner*, 276 N.W.2d at 66. That inquiry requires a weighing of the evidence and determinations of credibility, which are fact-finding functions. *See State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). Thus, unless there is a complete absence of evidence of one party's proffered

interpretation, summary judgment would be improper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).

CMI believes that the Contract is unambiguous and that "information" does not include source code. Accordingly, it has not previously referred to extrinsic evidence of the parties' intent. However, should it become necessary to look beyond the four corners of the Contract, there is evidence indicating that the State understood that "information" did not include the source code.

For example, the State's own contemporaneous documents, produced in discovery in the case, indicate its understanding of CMI's Proposal. The State has produced an October 24, 1997 letter from Gloria O'Connell Sonnen, the State's Acquisition Management Specialist, to Greg Miller, Director of Sales for CMI's competitor, National Draeger, Inc. (McNab Aff. Ex. 14.) Like CMI, National Draeger submitted a proposal in response to the State's RFP. Responding to a request from Mr. Miller, Ms. O'Connell Sonnen sent him the evaluation sheets for the proposals the State received in response to its RFP. The evaluation sheet presents a side-by-side comparison of National Draeger's and CMI's instruments' performance in the proposal evaluation process. (*Id.*) With respect to each proposal's response to the Special Conditions listed in the RFP, the State's evaluation sheet indicated whether and how the proposal complied with the Special Condition. (*Id.* at 003247-52.) With respect to CMI's Proposal for Special Condition 12, the evaluation stated:

> **Comply**
> $250 for use of a **manual**
> A reduced fee of 10% was indicated for a
> Public funded defense

(*Id*. at 003247, emphasis added.)

This official State document summarizing the State's RFP scoring and evaluation process shows that the State clearly understood that in response to Special Condition 12, CMI would allow "use of a manual." And, importantly, the State had determined that CMI's Proposal *complied* with the requirements of the RFP. Therefore, if the Court determines that the Contract is ambiguous, this document alone raises a sufficient question of fact to preclude summary judgment. Indeed, it may provide a sufficient basis to grant summary judgment in CMI's favor.[4] But it is not the only extrinsic evidence of the State's expectations and understanding at the time the Contract was formed.

The State has also produced handwritten notes that appear to reflect a meeting between State employees Eldon Ukestad, Bob Mooney, Al Becika, and possibly Gloria O'Connell Sonnen, at which the RFP, proposal, and evaluation process for the breath alcohol test instruments was discussed. (McNab Aff. Ex. 15.) The notes are undated, but appear to have been drafted sometime in early to mid-1996. Because discovery is ongoing, CMI has not yet determined who authored the notes.

The notes mention CMI and National Patent, another manufacturer of breath alcohol test instruments. (*Id*.) They appear to discuss various requirements for the proposed acquisition. For example, they mention "On DOT list – (Conforming Products

---

[4] If the State fails to adduce any evidence of a contrary intent, summary judgment in CMI's favor may be appropriate. *See Celotex*, 477 U.S. at 322-25.

- 15 -

List – NITSA)." [sic]. (*Id*. at 003619.) The notes also discuss Minnesota DUI statutes, and the requirement that breath alcohol be measured on the basis of "infrared absorption." (*Id*.) They also discuss requirements for training, warranties, and extended warranties. (*Id*. at 003620.)

Significantly, the notes also state: "Inst. manuals – (attys. request / Lowered fee for indigent defendant.)." (*Id*. at 003621.) Thus, the contemporaneous notes of a meeting at which the State's key personnel discussed the State's requirements for the Contract show that the State intended to obtain nothing more than "manuals" for attorneys requesting information. (*Id*.) Again, if the Contract is ambiguous, this extrinsic evidence of the State's intent regarding "information" raises a genuine issue of material fact, precluding summary judgment in favor of the State.

Moreover, CMI's president, Toby Hall, has provided an affidavit stating that it was CMI's standard procedure to provide only the Operator Manual in response to requests for information.[5] (Hall Aff. ¶ 4.) CMI shared that with the State and it was CMI's understanding that the State accepted CMI's standard procedure. (*Id*. ¶ 5.) If the Court concludes that the Contract is ambiguous with respect to the meaning of "information," the State cannot be entitled summary judgment on its breach of contract claim because, at a minimum, there will be genuine issues of material fact in dispute.

Finally, for the past several years, the State has argued in hundreds, or perhaps thousands, of cases that the source code is not relevant or material. (McNab Aff. Exs. 16

---

[5] A motion for summary judgment may be overcome by a sworn affidavit that creates a genuine issue of material fact for trial. *See Granell v. Veterans of Foreign Wars Milton Barker Post No. 3871*, 357 N.W.2d 431, 432 (Minn. Ct. App. 1984).

& 17.)  If, in 2007, 2008, and 2009, the State believes that the source code is irrelevant, it cannot reasonably argue that in 1996 and 1997, it intended that CMI would make it available to defendants in Minnesota DUI cases.  For each of these reasons, summary judgment in favor of the State is unwarranted.

**B.      An Ambiguity In a Contract Must Be Construed Against the Drafter.**

The State argues that ambiguities in contracts with government agencies should be construed in the government's favor.  (State's Br. at 17, *citing Correct Piping*, 308 F. Supp. at 433.)  What the State omits, however, is that *Correct Piping* also stands for another proposition—one that is time honored in Minnesota as well as West Virginia— and that is that ambiguities in contracts are to be construed against the drafter.  *See id*. at 433; *see also Turner*, 276 N.W.2d at 66.  Importantly, when these two principles met head on in *Correct Piping*, the latter principle prevailed and the ambiguous clause was construed *against* the government entity that drafted it.  *See id.* at  434-36.

In that case, the plaintiff had contracted with the defendant City of Elkins to furnish labor, materials and other services for a city project.  *Id*. at 432.  The plaintiff sought to recover amounts due under the contract.  *Id*.  In circumstances similar to those present here, the court discussed the competing principles of construing ambiguous contracts in favor government entities, but at the same time, against the drafting party, and said:

> It may be reasoned [ ] that the two principles of contract law oppose each other . . . that defendant prepared the contract and the contract, where construction may be required, is to be construed against the defendant, the party preparing the contract, but that the defendant city is a governmental

body which, under another principle, is entitled to a liberal construction of the contract in its favor.

*Id*. at 434. The court ultimately construed the contract *against* the defendant City. *See id*. at 436.

The same analysis applies here. If this contract is ambiguous, it is because Special Condition 12, which was drafted entirely by the State, says:

> Provision for information to attorneys supplied directly from manufacturer including statement of all non-disclosure/non-reproduction agreements required to obtain information, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence. This part of the contract to be activated with an order from the court with jurisdiction of the case and include a reduced fee schedule for defendants found by the court to be entitled to a publically funded defense.

(McNab Aff. Ex. 1.) This paragraph is hardly a model of clarity. The State, with all of its resources and all of its experience in drafting RFP's, should not now benefit from this poorly drafted provision. *See Rusthoven v. Comm. Standard Ins. Co.*, 387 N.W.2d 642, 645 (Minn. 1986) (citing Restatement (Second) of Contracts § 206 (1982) ("Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests [and] have reason to know of uncertainties of meaning . . . [i]n cases of doubt, therefore . . . there is substantial reason for preferring the meaning of the other party.")).

Moreover, if the Contract is ambiguous, summary judgment on the State's claims may be premature where, as here, it is evident that discovery is ongoing. A district court may deny a motion for summary judgment to permit additional discovery if it appears that the party opposing the motion cannot present facts essential to its opposition. *See*

Fed. R. Civ. P. 56(f). Thus, summary judgment is only proper if the nonmovant has had adequate time for discovery. *Celotex*, 477 U.S. 317, 322 (1986); *see Palmer v. Tracor, Inc.*, 856 F.2d 1131, 1132 (8th Cir. 1988) (finding summary judgment premature where parties did not have adequate time to conduct discovery). Attached to the McNab Affidavit are two exhibits demonstrating the parties' subjective understanding and intent with respect to the "information" available under Special Condition 12. Because discovery on these issues is ongoing, summary judgment may be premature.

For these reasons, if the Court finds the Contract to be ambiguous, it should not—indeed must not—construe the Contract in favor of the State, as the State urges, without taking further evidence. The law counsels against it, and if the extrinsic evidence is considered, there is at a minimum, a genuine issue of fact for trial.

## III. THE CONTRACT EXPRESSLY LIMITS RECIPIENTS OF "INFORMATION" TO DEFENDANTS IN CRIMINAL PROCEEDINGS.

The Contract requires CMI to make "provision for 'information' . . . to attorneys representing individuals *charged with crimes* in which a test with the proposed instrument is part of the evidence." (McNab Aff. Ex. 1, emphasis added.) CMI's obligation to provide "information" to defense counsel does not arise until there is "an order from the court with jurisdiction of the case." (*Id*.) In other words, whatever "information" CMI has to provide is available only to *defendants in criminal proceedings* who obtain an order for production in their criminal case. This is further confirmed by the requirement that CMI provide a "reduced fee schedule for *defendants* found by the court to be entitled to a publicly funded *defense*." (*Id*., emphasis added.)

The State argues that, despite what it said in the RFP, the State *meant* both defendants in criminal cases *and* petitioners in implied consent cases, although it does not say why.  (State's Br. at 18.)  The State alone drafted the RFP.  The State is the Respondent in every implied consent petition, handling thousands of petitions each year.  As the principle participant in those proceedings, and the drafter of the RFP, it was incumbent upon the State to state that "information" was to be made available to civil litigants, as well as criminal defendants.  But it did not do so.  Its intent must be determined from its objective manifestations, not its *post hoc* assertions of subjective intent.  *See Hickman v. Safeco Ins. Co. of Am.*, 695 N.W.2d 365, 370 (Minn. 2005).  The RFP makes no mention of petitioners, civil cases, or implied consent proceedings, but it explicitly addresses "individuals charged with crimes" and "defendants."  (McNab Aff. Ex. 1.)

Because "the expression of specific things in a contract implies the exclusion of all not expressed," the State's inclusion of "individuals *charged with crimes*" and "*defendants* found by the court to be entitled to a publicly funded defense," and its omission of "petitioners," "civil cases," or "implied consent proceedings" demonstrates that implied consent petitioners were not persons meant to be benefited by the Contract. *Maher v. All Nations Ins. Co.*, 340 N.W.2d 675, 680 (Minn. Ct. App. 1983).  The State did not ask for, and CMI did not agree to confer, any benefit upon civil litigants.  "Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms."  *In re Stevenson Assocs., Inc*., 777 F.2d 415, 421 (8th Cir. 1985).

The State's assertion that the Contract contemplated the provision of "information" to civil litigants finds no support anywhere in the Contract and it cannot constitute a basis for summary judgment.

## IV. CMI'S OBLIGATION TO PROVIDE INFORMATION OF ANY KIND EXPIRED WITH THE CONTRACT ON JANUARY 31, 2008.

The State claims that, irrespective of the Contract's expiration, CMI's obligation to provide "information" continues indefinitely. To the contrary, the only obligations that extend beyond the expiration date are those the parties expressly agreed would survive. The Contract was a standard requirements contract. Minn. Stat. § 336.2-306 (2008); *see generally Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 960 (8th Cir. 2000) (describing requirements contracts under Minnesota law). It established the price and other terms at which the State could purchase quantities of instruments it required, and a time period during which its terms would remain in effect. The initial Notification of Contract Award established the "Contract Period" "from January 2, 1997 through December 31, 2001." (McNab Aff. Ex. 6.) Subsequent amendments extended the term to January 31, 2008. On that date, the Contract expired.

Express terms, such as the expiration date in the Contract, require no further interpretation. *See Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003) ("unambiguous words . . . are to be given their plain and ordinary meaning"). In light of this express termination provision in the Contract, an obligation would extend beyond that expiration date only if the Contract expressly stated that it would survive the expiration. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190,

205-206 (1991).  Where a contract requires the occurrence of a condition precedent, no rights associated with that condition vest until that condition in fact occurs.  *See Johnson v. Fitzke*, 48 N.W.2d 37, 39 (Minn. 1951).

In arguing that the obligation to provide "information" extends beyond the Contract expiration date, the State relies on several inapposite cases, which on closer review, support CMI's position.  In the cases cited by the State, unlike here, the contract rights in question were due and owing because necessary conditions precedent had occurred and those rights had vested *before* the contracts expired.  *See Yaeger v. Delano Granite*, 84 N.W.2d 363, 366 (Minn. 1957) ("When a right has arisen upon a contract . . . and nothing remains to be done by the party asserting it, it becomes vested."); *In re Doctor's Health, Inc.*, 238 B.R. 594, 606-07 (Bankr. D. Md. 1999) (obligation to pay did not expire when contract terminated because the obligation ran to persons whose rights had vested before the contract terminated); *Premier Corp. v. Econ. Research Analysts*, 578 F.2d 551, 554 (4th Cir. 1978) (contract expiration did not discharge an obligation because right to performance vested *before* contract expired); *In re Long*, 17 B.R. 251, 253 (Bankr. N.D. Ohio 1982) (same).

The only exception, *Nolde Bros. v. LOC No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 247 (1977), is distinguishable.  There, a labor union terminated a collective bargaining contract and the employer closed its plant.  The employer then refused to arbitrate the union's demands for severance pay, arguing that workers' right to severance pay and to the arbitral forum both terminated with the collective bargaining agreement.  *Id*.  The United States Supreme Court held that the

severance issue was subject to resolution under the contract's arbitration terms even though it arose after the contract was terminated. *Id*. at 254.

Significantly, the contract at issue in *Nolde Bros.* involved a collective bargaining agreement. There is a longstanding federal policy in favor of arbitration of labor contracts, and the Court and the parties acknowledged the special expertise arbitrators bring to the construction and interpretation of labor contracts. *See id*. at 254,. In requiring arbitration even after the contract terminated, the Court noted that the underlying severance-pay claim arose under the contract. *Id*. at 254.

Here, there are only two obligations that could have even possibly extended beyond the Contract termination date. First, CMI agreed to deliver instruments within ninety days of receipt of an order. Had CMI received an order for an instrument prior to January 31, 2008, it would have been obligated to deliver that instrument at the Contract price and in accordance with the Contract terms within ninety days of the order—even if that meant delivery after January 31, 2008. That is because the State's right to delivery within ninety days would vest upon CMI's receipt of the order, since it occurred while the Contract was still in effect. *See Litton*, 501 U.S. at 205-206. Second, CMI provided an express two year warranty on parts and labor. (McNab Aff. Ex 18.) Thus, if the State purchased an instrument within the two years preceding the termination date, CMI's warranty obligations for that instrument would also extend beyond the Contract termination date, because the State's warranty right vested before the Contract expired. *See Litton*, 501 U.S. at 205-206. However, there are no other terms in the agreement that,

"under normal principles of contract construction," survive the expiration of the contract. *Id.*

CMI's agreement to provide information (of whatever kind) would not become operative unless and until the condition precedent of a court order occurred. If a DUI defendant received an order after the Contract expired on January 31, 2008, CMI's duty to provide information would not become operative because no right to information ever vested while the Contract was executory. Thus, even under the cases the State cites, a criminal defendant's right to "information" would vest only upon the issuance of a court order dated on or before January 31, 2008. After that date, there was no Contract, no condition precedent to occur, and no inchoate right that could possibly vest.

For each of the above-stated reasons, the State's Motion for Summary Judgment on Count III of its Complaint alleging CMI's breach of contract must fail.

## V.  THE STATE CANNOT BE ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE IT FAILED TO PROPERLY STATE THE CLAIM OR TO ALLEGE THE NECESSARY ELEMENTS.

The State also moves for summary judgment on Count IV of the Complaint, which alleges that CMI has breached the common law implied covenant of good faith and fair dealing. (State's Br. at 24.) Specifically, the State alleges that CMI breached the implied covenant of good faith and fair dealing "[b]y refusing to provide the State with a copy of the source code, and by raising arbitrary and unreasonable barriers to production for Minnesota litigants," and by creating "a situation in which the State's breath testing

program, once broadly regarded as presumptively reliable, has become viewed as presumptively unreliable."  (Compl. ¶ 52.)

Summary judgment is inappropriate on the State's claim for breach of the implied covenant of good faith and fair dealing because the State fails to state a cognizable claim.  The State has improperly attempted to apply the common law covenant to a contract for the sale of goods, which is not permitted in Minnesota.  Minnesota has codified a statutory duty of good faith in sales contracts under the Uniform Commercial Code ("UCC").  Further, even if the State had brought its claim under the UCC's good faith standard (and it has not), it fails to allege the necessary element of dishonesty or a departure from reasonable commercial standards of fair dealing.  Finally, even if the common law cause of action for breach of the implied covenant did apply to sales contracts, the State failed to allege that CMI prevented the State's performance of an obligation imposed on the State by the contract.

### A. Minnesota Does Not Recognize a Common Law Implied Duty of Good Faith and Fair Dealing in Contracts for the Sale of Goods.

Because the UCC imposes a statutory good faith requirement, Minnesota courts have routinely held that claims under the common law implied covenant are unsuitable for contracts for the sale of goods.  *See Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975) (noting that some while states apply the covenant to all contracts, the Minnesota UCC provides an alternative, statutory good faith requirement); *and see Minnwest Bank Ctr. v. Flagship Props. L.L.C.*, 689 N.W.2d 295, 303 n.5 (Minn. Ct. App. 2004) ("The implied covenant of good faith and fair dealing does not apply to sales contracts."); *Sterling*

*Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) ("Minnesota law does, however, impose an implied covenant of good faith and fair dealing into every non-sales contract."); *Beer Wholesalers, Inc. v. Miller Brewing Co.*, 426 N.W.2d 438, 441 (Minn. Ct. App. 1988) (noting that implied covenant is not applied to sales contracts); *Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*, 414 N.W.2d 554, 557-58 (Minn. Ct. App. 1987) (holding that implied covenant exists only in non-sales contracts). Accordingly, the State has failed to state a claim and is not entitled to summary judgment.

### B. The State Fails to State a Claim Under the UCC.

The UCC defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Minn. Stat. § 336.1-201(b)(20). The State's Complaint is devoid of any allegations of dishonesty or allegations of a deviation from reasonable commercial standards of fair dealing. Thus, the State has failed to state a claim of breach of the statutory duty of good faith under the UCC.

### C. Even if Minnesota Recognized a Common Law Claim of Breach of the Implied Covenant in a Contract for the Sale of Goods, the State's Complaint Would Still Fail to State a Cognizable Claim.

Even if this Court determined that the Minnesota Supreme Court would extend the common law covenant to this sales contract, the Complaint would still fail to state a cognizable claim because "[t]he implied covenant requires only 'that one party not make it impossible for the other party to perform the contract.'" *Burnette Techno-Metrics v. TSI, Inc.*, 44 F.3d 641, 643 (8th Cir. 1994) (*quoting Am. Warehousing & Distrib., Inc.*, 414 N.W.2d 554, 557 (Minn. Ct. App. 1987)). "Stated differently, every contract

contains an implied condition that each party will not unjustifiably hinder the other from performing." *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984); *see also Haase v. Stokely-Van Camp, Inc.*, 99 N.W.2d 898, 902 (Minn. 1959) ("Where one of the contracting parties makes it impossible for the other to perform, he should not be permitted to take advantage of his own action in so doing."); *and see Beer Wholesalers, Inc.*, 426 N.W.2d at 441 (dismissing claim where plaintiff failed to allege defendant had rendered plaintiff's performance impossible).

Thus, a breach of the implied covenant occurs when a party hinders or renders impossible another party's performance, or prevents the occurrence of a condition precedent under the contract. *Minnwest Bank Ctr.*, 689 N.W.2d at 303. In this way, the implied covenant precludes a party from taking advantage of the failure of a condition precedent when the party itself has frustrated performance of that condition. *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Minnesota does not recognize a cause of action for breach of the implied covenant apart from the contract at issue. *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 558 F. Supp. 2d 944, 949 (D. Minn. 2008). In other words, the implied covenant "does not extend to actions beyond the scope of the underlying contract." *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d at 503.

Here, the State argues that, by not providing it with the with the source code, CMI has prevented the State from making the source code available to Minnesota litigants. (Compl. ¶ 52.) The State also claims it has been deprived of what was once a presumptively reliable breath-testing program. (*Id.*) Even if true, these claims do not

allege a cause of action for breach of the implied covenant.  They do not allege that CMI prevented the occurrence of a necessary condition precedent, or interfered with the State's performance of its obligations under the contract.  Neither the State's obligation to provide the source code to others, nor the alleged presumption of reliability, was a duty that arose out of the parties' Contract.  *See In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d at 503.

Because Count IV of the State's Complaint fails to state a cognizable claim, the State is not entitled to summary judgment.

## VI.  BECAUSE IT IS NOT ENTITLED TO SUMMARY JUDGMENT AND IT IS NOT LIKELY TO PREVAIL ON THE MERITS, THE STATE IS NOT ENTITLED TO A PRELIMINARY INJUNCTION.

The State argues that the Court should issue a preliminary injunction requiring CMI to produce the source code.  (State's Br. at 30-31.)  "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant."  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 110 N.W.2d 348, 351 (Minn. 1961) ("Injunctive relief should be awarded only in clear cases, reasonably free from doubt.").  The primary purpose of a preliminary injunction is to maintain the *status quo* pending a final hearing on the merits.  *Sanborn Mfg. Co. v. Campbell Haustfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993).  In determining whether to issue a preliminary injunction, the court considers "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties

litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C. L. Sys.,* 640 F.2d 109, 113 (8th Cir. 1981).

As an initial matter, the source code constitutes confidential, proprietary and trade secret information—once it is produced these valuable rights may be permanently lost. In any case, forcing CMI to turn over its trade secret source code on a preliminary ruling will *alter*, not maintain, the *status quo*, and CMI will suffer substantial harm. Moreover, for the reasons set forth above, the State has utterly failed to show a likelihood of success on its claims. Thus, the State's request for extraordinary preliminary relief should be denied.

The State's request that the Court advance trial on the merits and consolidate it with a hearing on its motion for a preliminary injunction is premature, at best. If the Court concludes that the Contract is unambiguous, and the source code is not included within the definition of "information," then, as a matter of law, a preliminary injunction is inappropriate. If the Court concludes that the Contract is ambiguous, however, because CMI has demonstrated that there is new, undeveloped evidence tending to show that the term "information" was not understood to include the source code, CMI is entitled to explore this evidence through depositions and other discovery. The State's request to advance trial on the merits is inappropriately premature when discovery is still ongoing.

## VII. THE STATE IS NOT ENTITLED TO A PERMANENT INJUNCTION BECAUSE IT HAS NOT PREVAILED ON THE MERITS.

The standard for a permanent injunction is the same for a preliminary injunction except that the movant *must* show actual success on the merits. *Frontier Traylor Shea*

*LLC v. Metro. Airports*, 132 F. Supp. 2d 1193, 1195 (D. Minn. 2000). Exhibiting a "likelihood of success on the merits" is not enough. *Id.* Here the State's request for a permanent injunction fails because the State has not prevailed on the merits of its claims and a permanent injunction is not an appropriate remedy.

## CONCLUSION

CMI respectfully urges the Court to deny the State's Motion for Partial Summary Judgment and Order for Specific Performance or Permanent Injunction, or in the Alternative, for a Preliminary Injunction. Summary judgment on Count III of the State's Complaint for breach of contract fails because the unambiguous terms of the Contract do not require CMI to provide its proprietary source code to tens of thousands of Minnesota litigants. Alternatively, if the Court finds that Special Condition 12 of the Contract is ambiguous, the extrinsic evidence weighs in CMI's favor and summary judgment if favor of the State would be improper. The State's motion for summary judgment on Count IV of its Complaint for breach of the implied covenant of good faith and fair dealing also fails because the Complaint fails to state a claim under Minnesota law.

For the these reasons, the State's Motion for Partial Summary Judgment and an Order for Specific Performance or Permanent Injunction, or in the Alternative, for a Preliminary Injunction should be denied in its entirety.

Respectfully Submitted,

Dated: May 15, 2009                      WINTHROP & WEINSTINE, P.A.


  s/William A. McNab
_____

David M. Aafedt, MN #27561X
William A. McNab, MN #320924
Jessica S. Karich, MN #387156

WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Ste. 3500
Minneapolis, Minnesota 55402-4629
Tel: (612) 604-6400
Fax: (612) 604-6800
daafedt@winthrop.com
wmcnab@winthrop.com
jkarich@winthrop.com
ATTORNEYS FOR DEFENDANT
CMI OF KENTUCKY, INC.

4476490v2