UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>   Plaintiff,<br><br> and<br><br>Robert J. Bergstrom, Craig A.<br>Zenobian, Shame M. Steffensen,<br>and Christopher D. Jacobsen,<br><br>   Plaintiff- Intervenors,<br><br> vs.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>   Defendant. | Civil Case No. 08-603 (DWF/AJB)<br><br><br>**STATE OF MINNESOTA'S<br>MEMORANDUM OF LAW IN<br>OPPOSITION TO DEFENDANT'S<br>MOTION FOR JUDGMENT ON THE<br>PLEADINGS, OR, IN THE<br>ALTERNATIVE, FOR PARTIAL<br>SUMMARY JUDGMENT** |

**INTRODUCTION**

CMI's Motion for Judgment on the Pleadings, or, in the Alternative, for Partial Summary Judgment, should be denied because (1) Special Condition 12 requires CMI to provide the Source Code to litigants' attorneys when ordered by a state court; (2) CMI breached the implied covenant of good faith and fair dealing; (3) the State has properly pled a claim for copyright infringement; and (4) CMI's claim that the Source Code is a trade secret does not present the Court with a justiciable controversy, and even if it does, the trade secret issue is not appropriate for summary judgment.

**ARGUMENT**

I. **STANDARDS OF REVIEW**

    A. **Motion For Judgment On The Pleadings.**

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Ashley County, Ark. v. Pfizer Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not plead specific facts and "the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, __, 127 S. Ct. 2197, 2199 (2007) (internal quotations omitted) (omission in original). "In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* Consistent with a court's obligation to construe complaints liberally under Rule 8(a)(2), a complaint does not need to identify a legal theory and even identification of an incorrect legal theory is not fatal. *Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993).

    B. **Motion For Summary Judgment.**

Summary judgment may be granted when there are no issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).

## II.    SPECIAL CONDITION 12 REQUIRES CMI TO PRODUCE THE SOURCE CODE WHEN PRODUCTION IS ORDERED BY A COURT.

The State refers the Court to its Memorandum of Law In Support of its Motion for Partial Summary Judgment and An Order For Specific Performance Or Permanent Injunction, Or In the Alternative for A Preliminary Injunction, dated April 17, 2009 ("State's Memorandum of April 17, 2009"), which explains why CMI is obligated to produce the Source Code pursuant to Special Condition 12. Among other things, the State's Memorandum of April 17, 2009 discusses the many reasons why the term "information" in Special Condition 12 is not limited to CMI's operator's manual. *Id.* at 13-16.

### A.    CMI's Reference To Exhibit E Of Its Response To The RFP Is Misleading.

Although CMI fails to address various pertinent issues relevant to a proper interpretation of Special Condition 12, it makes some misleading statements regarding a form letter that is part of Exhibit E attached to its Response to the RFP. Gratz Aff., Ex. A; McNab Aff. Ex. 9. CMI states in its Memorandum: "Significantly, in the letter under which information was to be provided to defense counsel, CMI expressly indicated that it would provide only 'the Operation Manual for the Intoxilyzer.' (McNab Aff. Ex. 9)." CMI Memorandum at 9. However, the referenced document actually states, in pertinent part, as follows: "The Operation Manual for the Intoxilyzer 5000 is the only *manual* that would be available to you." Gratz Aff. ¶ 4, Ex. C at BCA069; McNab Aff. Ex. 9 (emphasis added). Thus, contrary to CMI's assertion, the literal language of the

letter does not preclude production of the Source Code. State's Memorandum of April 17, 2009 at 15-16.

CMI also states in its Memorandum with respect to the form letter that "the State asked CMI for clarification because the letter CMI initially submitted with the Proposal contained typographical errors. (McNab Aff. Exs. 1 & 9.)" CMI Memorandum at 13. The State, however, did not reference typographical errors in the letter. Rather, the State only requested the correction of typographical errors in the "Confidentiality Agreement/Affidavit" attached to the letter. McNab Aff. Ex. 1. In its response to the State's request, CMI stated:

- *Mistakes in Confidentiality Agreement/Affidavit*

  CMI apologizes for the mistakes found in confidentiality agreement and agrees to correct the mistakes promptly.

McNab Aff. Ex. 2 at 4. Of course, the language of the confidentiality agreement and affidavit broadly refer to the production of documents and is not limited to the Operation Manual. State's Memorandum of April 17, 2009 at 14.

**B.    The State's Position In Implied Consent Proceedings Is Consistent With Its Interpretation Of the Contract.**

CMI contends that the State's legal position in implied consent cases, *i.e.*, that a state court should not order production of the Source Code because it is irrelevant, is inconsistent with the State's position in this case. CMI's Memorandum at 14 note 3. This argument also has no merit.

While some state court judges have agreed that production of the Source Code is not relevant, many others have rejected the State's position and ordered production of the

Source Code.[1]  State's Memorandum of April 17, 2009 at 7.  In fact, as indicated in the State's Memorandum of April 17, 2009, hundreds of implied consent cases have been stayed, and continue to be stayed, pending resolution of this case.  *Id.* at 9; *see also* Second Affidavit of Emerald Gratz ("Gratz Aff. II"), Exs. A and B (copies of representative recent orders where court ordered production and then stayed cases).  In ordering the State to produce the Source Code, one court recently commented:

> A private corporation should not be able to call the shots as to whether a Petitioner's due process rights are upheld. . . . If the courts cower in the face of CMI's stonewalling, CMI will never have an incentive to comply with its contractual obligations, the State will have no reason to review its relationship with CMI and implied consent petitioners' due process rights will continue to be compromised.

Gratz Aff. II, Ex. C at 4 n.1.

In addition, some state court judges continue to rescind implied consent cases based on the State's inability to produce the Source Code, despite this pending litigation.  Gratz Aff. II, Ex. D (copies of representative recent orders where court ordered production and then rescinded cases).  These rescissions are grounded in the frustration of state court judges about the lack of immediate access to the Source Code and the inability to hold CMI accountable.  For example, in ordering rescission in a recent implied consent case where the Source Code was not produced pursuant to court order, the district court

---

[1] Various attorneys for litigants in DWI and implied consent cases also served subpoenas issued by Minnesota state courts on CMI in Kentucky.  The subpoenas required production of the Source Code.  CMI refused to comply with the subpoenas by claiming, in part, that a Minnesota state court does not have jurisdiction over it.  Gratz Aff. II ¶ 9, Ex. L.  (copies of representative subpoenas served on CMI and related documents.)

judge noted: "[w]hile sanctions here effectively penalize the wrong entity, the Commissioner [of Public Safety] is the only party available to be sanctioned - CMI is not a party to this case." Gratz Aff. II, Ex. E at 3. In another recent case, the district court judge rescinded the implied consent revocation and observed that "CMI should not be permitted to hold the Minnesota Judicial System hostage in such a way." Gratz Aff. II, Ex. F at 7.

The Source Code issue also continues to be a significant problem for prosecutors in criminal DWI cases. Most recently, on April 30, 2009, the Minnesota Supreme Court released its opinion in *State v. Underdahl,* __ N.W.2d __, 2009 WL 1150093 (Minn. Apr. 30, 2009) ("*Underdahl II*"). The *Underdahl II* case held that it is not an abuse of discretion for a state court judge to order production of the Source Code in a criminal DWI case where the defendant presented a sufficient record showing why he or she needs access to the Source Code to challenge an Intoxilyzer 5000EN test result. *Id.* at *8. In addition, the Minnesota Supreme Court determined that "[t]he RFP language cited by the district courts supports their conclusions that the State had possession of the source code." *Id.* at *8-9. On May 5, 2009, the State filed a Petition for Rehearing based on the current inability of the State to obtain access to the Source Code pursuant to Special Condition 12 and the pendency of this case before the Court. Gratz Aff. II, Ex. G.

Notwithstanding the State's position regarding the relevance of the Source Code, state court judges have ordered, and continue to order, its production in both implied consent and criminal DWI cases. The failure of CMI to produce the Source Code has caused hundreds of cases to be dismissed or rescinded. State's Memorandum of April 17,

2009 at 8-9 and *supra* at 4-6. If CMI continues to fail to produce the Source Code, stayed cases are at significant risk to suffer a similar fate with the resulting significant adverse consequences to public safety and the public interest. State's Memorandum of April 17, 2009 at 27-30.

Application of Special Condition 12 is not dependent on whether the State believes certain information is relevant. Rather, CMI's obligation to produce information is triggered by the court order requiring production. Gratz Aff. ¶ 4, Ex. A at BCA096, ¶ 12. The State's position regarding the relevance of the information is therefore of no significance to whether CMI must produce the court-ordered information under Special Condition 12.

### C.    The State Has Not Waived Any Rights.

CMI also erroneously asserts that the State has somehow "waived" its right to enforce Special Condition 12, except for the Operation Manual. CMI Memorandum at 14. As discussed in the State's Memorandum of April 17, 2009, for various reasons, including CMI's failure to make a specific objection and its express acceptance of all terms and conditions of the RFP "without qualification," Gratz Aff. ¶ 4, Ex. C at BCA009, Special Condition 12 is effective as written. State's Memorandum of April 17, 2009 at 13-16. Indeed, Special Condition 12 is part of the contract as a matter of law.

Moreover, claims such as waiver can be applied against the government only in the most egregious circumstances. For example, estoppel against the State is disfavored and "must be used sparingly." *See Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 293-94 (Minn. 1980). It is only available if the government engaged in "wrongful conduct."

*Id.* at 293. There is no basis to conclude that the State acted wrongfully in this case. Even assuming wrongful conduct, a court will then examine the equities of the circumstances and weigh the public interest that would be frustrated by estoppel. *Id.* at 291, 293. One of the reasons that estoppel against the government is rarely allowed is the concern that the government, and therefore the public, will be bound by unauthorized acts of government officers and employees. *See In re McGuire*, 756 N.W.2d 517, 519-20 (Minn. Ct. App. 2008). This same policy consideration applies to CMI's specious claim that an employee of the State somehow waived the critically important contractual right to have CMI produce information when ordered by a court.

**D.** **Special Condition 12 Applies In Implied Consent, As Well As DWI Proceedings.**

As discussed in the State's Memorandum of April 17, 2009 at 18-19, Special Condition 12 was clearly intended to apply in implied consent proceedings. CMI's argument to the contrary results in a nonsensical interpretation of the agreement.

The express purpose of the contract is to provide the subject products and services "for use in the *State of Minnesota* by *State*, local and other law enforcement and corrections agencies and the *court system*." Gratz Aff. ¶ 4, Ex. A at BCA092 (emphasis added). This purpose clearly involves all drunk driving cases, including implied consent proceedings that are prosecuted by the "State" and adjudicated by the "court system." Consistent with this purpose and the interrelationship between DWI and implied consent cases, the literal language of Special Condition 12 allows information to be ordered by courts and used in implied consent proceedings. See State's Memorandum of April 17,

2009 at 18-19. A contrary conclusion creates an unprincipled and absurd distinction between DWI and implied consent cases that harms the public interest.

### E. CMI's Contractual Obligation To Comply With Special Condition 12 Is Continuing.

CMI's summary assertion regarding the "contract period" does not address the legal principles applicable to its continuing obligation to comply with Special Condition 12. CMI Memorandum at 19. As discussed in the State's Memorandum of April 17, 2009 at 19-24, CMI's obligation to comply with Special Condition 12 continues beyond the contract period.

CMI is obligated to comply with Special Condition 12. CMI's motion should therefore be denied.

### III. THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING APPLIES TO THE STATE/CMI CONTRACT AND CMI BREACHED THE COVENANT BY REFUSING TO PRODUCE THE SOURCE CODE

The implied covenant of good faith and fair dealing applies to all contracts in Minnesota. This broad covenant applies when a party is not faithful to the agreed common purpose of the contract. CMI breached the covenant by unreasonably refusing to provide the Source Code in response to court order.

### A. The Implied Covenant of Good Faith and Fair Dealing Applies to All Contracts in Minnesota.

CMI argues that the implied covenant of good faith and fair dealing does not apply to contracts for the sale of goods. CMI Memorandum at 25-26. CMI's argument is not supported by the governing law.

The Minnesota Supreme Court has stated that "[u]nder Minnesota law, *every contract* includes an implied covenant of good faith and fair dealing." *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) ("*Hennepin County*") (emphasis added); *see also In re Wren*, 699 N.W.2d 758, 765 n.10 (Minn. 2005) (quoting *Hennepin County*); *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984) (stating "every contract contains an implied condition that each party will not unjustifiably hinder the other from performing"); *Restatement (Second) of Contracts* § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). As discussed in the State's Memorandum of April 17, 2009 at 24-25, the covenant of good faith and fair dealing in the UCC also applies to this contract.

CMI relies on dicta from Minnesota Court of Appeals opinions decided after *Hennepin County* as well as decisions that predate *Hennepin County*. See CMI Memorandum at 26. The court of appeals cases decided after *Hennepin County* ignore the express statement in *Hennepin County* that the implied covenant applies to *every* contract. These cases also provide no rationale as to why the implied covenant should not apply to contracts for the sale of goods.

**B.      The Implied Covenant Of Good Faith And Fair Dealing Applies Broadly.**

CMI next argues that the covenant of good faith and fair dealing only applies if one party unjustifiably hinders the other party from performing under the contract thereby

making performance impossible. CMI Memorandum at 27-28. Again, the applicable authorities do not support this assertion.

"[C]ourts employ the good faith performance doctrine to effectuate the intentions of parties, or to protect their reasonable expectations." Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 371 (1980). The implied covenant of good faith and fair dealing applies when one party exercises discretion, thereby controlling the other party's benefit. *Id*. at 369. Consistent with this broad notion of good faith and fair dealing, the Minnesota Federal District Court has held that Minnesota law does not limit the scope of the implied convent to allegations that one party made performance impossible. *White Stone Partners, LP v. Piper Jaffray Cos.*, 978 F. Supp. 878, 881 n.2 (D. Minn. 1997). Instead, "[a]ccording to the Restatement, good faith performance of a contract includes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id*. at 881. The duty of good faith and fair dealing therefore embraces "an implied obligation that neither party shall do anything to injure or destroy the right of the other party to receive the benefits of the agreement." 23 Samuel Williston et. al, *A Treatise on the Law of Contracts* § 63.22 (West 2002) (citing *Logan v. Bennington College Corp.*, 72 F.3d 1017 (2d Cir. 1995)).

Minnesota state and federal courts have looked to section 205 of the Restatement (Second) of Contracts in interpreting the covenant of good faith and fair dealing in Minnesota. *See White Stone Partners* 978 F. Supp. at 880-881; *Hennepin County*, 540 N.W.2d at 502; *Seman v. First State Bank of Eden Prairie*, 394 N.W.2d 557, 560 (Minn.

Ct. App. 1986); *Enviro-Fab, Inc. v. Blandin Paper Co.*, 349 N.W.2d 842, 848 (Minn. Ct. App. 1984). The Restatement provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Restatement (Second) of Contracts* § 205. The comments to the Restatement note that "[a] complete catalogue of types of bad faith is impossible." *Id.* cmt. d. The comments provide the following examples of bad faith: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.*; *see also Prairie Island Indian Cmty. v. Minnesota Dept. of Public Safety*, 658 N.W.2d 876, 889 (Minn. Ct. App. 2003) (A party acts in bad faith when the "party's refusal to fulfill some duty or contractual obligation [is] based on an ulterior motive, not an honest mistake regarding one's rights or duties." (quoting *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App.1998)).

As discussed in the State's Memorandum of April 17, 2009 at 24-26, CMI breached the implied covenant of good faith and fair dealing by not being faithful to the agreed common purpose of providing admissible evidence for use in court proceedings and failing to act consistently with the justified expectations of the State. Indeed, CMI's refusal to provide the Source Code is based on something other than an honest mistake regarding CMI's rights or duties under the contract. *See Prairie Island Indian Cmty.*, 658 N.W.2d at 889.

CMI's breach of the implied covenant of good faith and fair dealing is also exemplified by the unreasonable terms it has demanded for protective orders in cases in

which courts have ordered production of the Source Code. For example, one protective order required that a signatory wishing to access the Source Code must first disclose the identity of his or her expert to CMI and give CMI an opportunity to object to the expert. Gratz Aff. ¶ 7 Ex. I part 2 at 6 of 9. The protective order further requires the expert to submit "[a]ny and all summaries, critiques or evaluation of Litigation Material including the Source Code" to CMI "for review and comment" before "submission to the Court of any other use thereof." *Id.* The non-disclosure agreement attached to this protective order requires that a signatory of the agreement "submit to the jurisdiction" of the Federal and State courts in Kentucky "for the purpose of enforcing the terms" of the non-disclosure agreement. *Id.* at 2 of 3, ¶ 5. A signatory also must give CMI "the right, in addition to its other rights and remedies, to seek and obtain injunctive relief and damages for any violation of either the protective Order or [the Non-Disclosure] Agreement." *Id.* ¶ 6. Further, the signatory must indemnify CMI for costs and attorneys fees in the event CMI brings an action (apparently regardless of whether CMI prevails) for any violation of the agreement. *Id.* ¶ 7. Finally, the agreement is to be interpreted under Kentucky law. *Id.* at 3 of 3, ¶ 11.

The unreasonable protective orders proposed by CMI, Gratz Aff. ¶ 7, Ex. I, further demonstrate that CMI has failed to act in accordance with the State's justified expectations under the contract as required by Special Condition 12. CMI's refusal to abide by subpoenas issued by Minnesota state courts for production of the Source Code, see note 1, *supra*, also manifests CMI's failure to act in accordance with the purpose of the contract.

CMI has breached the covenant of good faith and fair dealing, including the UCC's requirement that it observe reasonable commercial standards of fair dealing. *See* Minn. Stat. § 336-1-201(20) (2008). The Court should therefore deny CMI's motion regarding Count IV of the State's Complaint.

## IV. THE STATE HAS PROPERLY PLEAD A COPYRIGHT INFRINGEMENT CLAIM IN COUNT II OF ITS COMPLAINT.

CMI argues that Count II of the State's Complaint does not allege a copyrightable interest in the portion of the Source Code created for the State or any infringing conduct. As discussed below, Count II satisfies these elements and states a claim on which relief may be granted.[2]

### A. The State Has Properly Plead Ownership Of A Copyrightable Interest In The Portion Of The Source Code Created For The State.

CMI argues that the State's copyright claim must be dismissed because "[t]he Complaint fails to allege that the State possesses a protectable copyright interest." CMI Mem. at 20. This argument ignores the standards for notice pleading. See *supra* at 2. The State's claim of copyright infringement necessarily alleges that the State owns a protectable copyright interest in the Source Code because CMI otherwise could not have "infringed the State's copyright." Compl. ¶ 42. To the extent CMI is arguing that the Complaint does not describe the specific material in which the State has a copyrightable interest, notice pleading does not require the State to do so. Such an argument also fails

---

[2] Both "Counts I and II of [the] Complaint assert claims arising under the U.S. Copyright Act." Compl. ¶ 5. CMI does not seek dismissal of Count I.

to address an essential point -- CMI has sole possession of the Source Code it created for the State.

The Complaint states that the State has never had possession of the Source Code. Complaint ¶¶ 20, 23. The Complaint further states that CMI has sole possession of the Source Code and has refused to provide it to the State. *Id.* ¶¶ 1, 2, 5, 24, 25. Accordingly, although discovery is pending,[3] the State has not yet been able to determine the portion of the Source Code created for the State.

A copyright protects "original works of authorship filed in any tangible medium or expression . . . from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a). Any portion of the Source Code created for the

---

[3] The State has served discovery requests asking CMI to describe the Minnesota portion of the Source Code, see Gratz Aff. II Ex. H at 10 #8, but CMI has failed to provide any meaningful identification or description of the portion of the Source Code created for Minnesota. *Id.* at 10-11 #8. In October 2008, CMI's president acknowledged in an affidavit that modifications were made to the Source Code to configure the instruments to the State's specifications. Hall Aff. ¶¶ 17-18, Docket No. 136. However, as part of discovery in this case, in a letter dated April 10, 2009, CMI stated that "it cannot state whether . . . any source code was conceived and originated under the contract." Gratz. Aff. Ex. I at 2-3. On April 23, 2009, CMI stated that it was "undertaking a line by line review" of changes to the Source Code created for Minnesota. Gratz. Aff. II Ex. J at 1. On May 7, 2009, the State served discovery requests on CMI requesting the actual portions of the Source Code created for the State. Gratz Aff. II Ex. K. In discovery responses served on May 13, 2009, CMI admits that a portion of the Source Code was created for the State, but still fails to either produce or describe that portion of the Source Code. Gratz Aff. II Exs. M and N.

State that is copyrightable would be classified as a derivative work under the copyright law.[4]

> A derivative work is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101.  A derivative work[5] may be copyrighted if it is sufficiently original and non-infringing.  17 U.S.C. § 103.  A copyright in a derivative work does not extend to any preexisting material used in the work.  *Id.*

Modifications to the source code of a computer program may qualify as a derivative work.  *See, e.g., Montgomery v. Noga*, 168 F.3d 1282, 1290-91 (11th Cir. 1999) *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110-12 (9th Cir. 1998); *Dun & Bradstreet Software Servs. Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 212 (3d Cir.

---

[4] The copyright act extends to computer programs.  17 U.S.C. § 102(a); *Montgomery v. Noga,* 168 F.3d 1282, 1288 (11th Cir. 1999).  The elements of a copyright claim are typically described as ownership and unauthorized copying.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1990).

[5] CMI argues that the State is precluded from asserting that the Source Code is copyrightable as a derivative work because the State's Complaint does not expressly use the term "derivative work."  CMI Memorandum at 23.  Notice pleading, however, merely requires the State to allege facts sufficient to put CMI on notice of a copyright claim.  It does not require the State to allege the specific legal theory under which it believes it may be entitled to a copyright.  *See Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993) (holding in a copyright case that pleading the wrong legal theory was not fatal and that "defendants were put on notice that compilation was at issue and shall have abundant opportunity to pursue the matter in detail through the discovery process"); Fed. R. Civ. P. 8(a)(2).

2002).  For example, in *Montgomery,* the programmer corrected problems with the source code for a program, increased the number of file formats that users could view, increased the speed at which the program could decipher graphics, and configured the program to work with additional graphics computer chips and cards.  168 F.3d at 1291.  The court upheld the district court's finding that these modifications were sufficient to support a copyright in the program as a derivative work.  *Id.*

The State's allegations that a portion of the Source Code was created and customized for the State under the contract and that the State has all right title and interest in any copyrightable material created under the contract, Complaint ¶¶ 12, 39, 41, are sufficient to satisfy the liberal notice pleading standards of the Federal Rules of Civil Procedure.  This is especially true in light of the fact that CMI is the only party that has knowledge of what portion of the Source Code was created for the State under the contract.  *See Forasté v. Brown University*, 248 F. Supp. 2d 71, 78 (D.R.I. 2003) (stating "it would be wholly inequitable to require that [plaintiff], prior to proceeding with this action, register a copyright in images to which Brown presently denies him access.")

**B.     The State Has Properly Plead Infringement.**

CMI next argues that the State's copyright infringement claim must be dismissed because the State has not alleged any infringing conduct.  CMI Memorandum at 23-25. Typically, in order to prove infringement, a plaintiff must prove unauthorized copying. *See, e.g., Feist Publications,* 499 U.S. at 361.  Under the unique facts of this case, however, the plain language of the Copyright Act supports the State's claim that

infringing conduct includes violation of exclusive rights to reproduce and distribute any portion of the Source Code for which the State owns a copyright.

The language of the Copyright Act should be liberally construed to uphold a copyright holder's rights in the work. *See King Features Syndicate v. Fleischer*, 299 F. 533, 536 (2d Cir. 1924) (stating "it is the intendment of the law of copyrights that they shall have a liberal construction in order to give effect to what may be considered as an inherent right of the author in his work."); *Loew's Inc. v. Columbia Broad. Sys.*, 131 F. Supp. 165, 173-74 (S.D. Cal. 1955). The owner of a copyright "has the *exclusive rights* to do and to authorize" the reproduction of the copyrighted work and to distribute copies of the copyrighted work to the public. 17 USC § 106 (emphasis added). "*Anyone who violates any of the exclusive rights* of the copyright owner . . . *is an infringer* of the copyright." 17 USC § 501 (emphasis added).

CMI has agreed to transfer to the State "all right title and interest in all copyrightable material . . . along with ownership of any and all copyrights" arising out of the contract, Gratz Aff. ¶ 4, Ex. A. at BCA081 ¶ 29. Thus, to the extent the State has a copyright interest in portions of the Source Code, CMI has violated the exclusive rights of the State to reproduce and distribute the portion of the code for which the State is determined to hold a copyright.[6]

---

[6] The State has not identified any case law that discusses whether a copyright holder may bring an action for equitable relief where the infringing conduct consists of preventing the copyright holder from exercising its exclusive rights to reproduce or distribute the work. The dearth of case law highlights the unique nature of a case like this in which the

(Footnote continued on next page.)

**V.** **SUMMARY JUDGMENT SHOULD BE DENIED ON CMI'S TRADE SECRET COUNTERCLAIM BECAUSE THERE IS NO CASE OR CONTROVERSY, AND IN ANY EVENT, CMI'S TRADE SECRET CLAIM IS NOT APPROPRIATE FOR SUMMARY JUDGMENT.**

No case or controversy exists with regard to CMI's trade secret argument. Even if there is a case or controversy, the question of whether the Source Code may be a trade secret cannot be resolved until it is determined whether the State has a copyright in a portion of the Source Code and CMI produces pertinent discovery.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In determining whether a case or controversy exists the question "'is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

---

putative copyright holder does not know the precise nature of the work or even possess the work. If the State proves that it owns copyrightable material and that CMI is interfering with the State's ownership by refusing to provide the material to the State, the State is entitled to equitable relief. *See Olan Mills, Inc. v. Linn Photo Co.*, 22 F.3d 1345, 1349 (8th Cir. 1994) (discussing a court's broad power to issue injunctions in copyright cases). Equitable relief is the only remedy sought by the State for its infringement claim. Compl. ¶¶ 5, 43

There is no such controversy between the State and CMI as to whether the Source Code is a trade secret. The remedy the State is seeking is disclosure of the Source Code as required by the contract pursuant to the confidentiality agreement and affidavit that are part of the contract. *See* State's Memorandum of April 17, 2009 at 10-16. Moreover, the State has not objected, and does not now object, to a state court judge issuing a protective order as part of CMI's production of the Source Code. *See* Gratz. Aff. ¶ 7 Exs. J and K. Thus, CMI's trade secret claim requests an advisory opinion from the Court.

Even if the trade secret claim is justiciable, CMI's motion must be denied. A party asserting a trade secret must own the material which it seeks to have declared a trade secret. *See Jostens Inc. v. Nat'l Computer Sys., Inc.*, 318 N.W.2d 691, 698 (Minn. 1982) (stating a trade secret "must be gained at the expense of the plaintiff-owner" and the plaintiff-owner must intend to keep it confidential.); Minn. Stat. § 325C.01, subd. 5 (2008) (providing the existence of a trade secret is not negated if someone acquires the trade secret without notice that it is a trade secret if the acquiring individual "knows or has reason to know that the *owner* intends" to keep this type of information secret) (emphasis added).

In its counterclaim, CMI seeks to have the entire Source Code for the Intoxilyzer 5000EN declared a trade secret. Answer and Counterclaim For Declaratory Judgment ¶¶ 102-106 at Docket No. 3. CMI has not established that it owns the entire Source Code. CMI acknowledges that portions of the Source Code were created for the State under the contract. See Affidavit of Toby Hall ¶¶ 16-18 at Docket No. 136; Gratz Aff. II Ex. N at 4-5. CMI has failed to demonstrate, however, that the State does not have a

copyright interest as a derivative work in the portion of the Source Code created for the State under the contract. Accordingly, CMI has not met its burden to establish that it owns the entire Source Code it seeks to have declared a trade secret.

Finally, the State does not have sufficient information to take a position on whether the Source Code is a trade secret because CMI has refused, at least at the present time, to provide even the most basic of information in discovery relating to its trade secret counterclaim. For example, CMI has refused to provide information about its corporate structure and revenues. Gratz Aff. II Ex. H at 12 #10 and Ex. I at 4. This information is relevant to, or at least is likely to lead to relevant evidence, regarding CMI's claim relating to the alleged significant economic harm to it if the Source Code became generally known. See Minn. Stat. § 325C.01, subd. 6. Therefore, pursuant to Fed. R. Civ. P. 56(f)(2), any decision on the merits of CMI's trade secret claim should be deferred until the necessary discovery is produced by CMI.

## CONCLUSION

The State respectfully requests that the Court deny CMI's motion. Instead, the Court should grant the relief requested in the State's Memorandum of April 17, 2009 at 31.[7]

Dated: May 15, 2009

Respectfully submitted,

LORI SWANSON
Attorney General
State of Minnesota

s/ **Alan I. Gilbert**

Alan I. Gilbert
Solicitor General
Atty. Reg. No. 0034678
al.gilbert@state.mn.us

Emerald Gratz
Assistant Attorney General
Atty. Reg. No. 0345829
emerald.gratz@state.mn.us

Daniel L. Abelson
Assistant Attorney General
Atty. Reg. No. 0327554
daniel.abelson@state.mn.us

---

[7] The State has modified its proposed orders to clarify consistent with the contract that the Source Code be provided directly by CMI to the litigant's attorney at a location designated by the state court, i.e., the attorney's office, the office of the attorney's expert, or at CMI, and to reflect the lower fee ($125) required by the contract for production of the Source Code to individuals represented by a public defender. *See* Gratz. Aff. Ex. D at BCA109. The revised proposed orders will be emailed to the court and the parties as provided by the local rules.

Thomas C. Vasaly
Assistant Attorney General
Atty. Reg. No. 0112501
thomas.vasaly@state.mn.us

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
Telephone: (651) 296-9717
Fax: (651) 282-5832

ATTORNEYS FOR PLAINTIFF STATE OF MINNESOTA

AG: #2427488-v1