UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>        Plaintiff,<br><br>   and<br><br>Robert J. Bergstrom, Craig A. Zenobian, Shame M. Steffensen, and Christopher D. Jacobsen,<br><br>        Plaintiff- Intervenors,<br><br>   vs.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>        Defendant. | Civil Case No. 08-603 (DWF/AJB)<br><br>**STATE OF MINNESOTA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND AN ORDER FOR SPECIFIC PERFORMANCE OR PERMANENT INJUNCTION, OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION** |

## INTRODUCTION

CMI's response memorandum ignores many of the State's arguments and attempts to obfuscate the issues and the fact that Special Condition 12 unambiguously requires CMI to produce information ordered by a court.

## ARGUMENT

### 1. CMI Ignores The Obvious Purpose Of The Contract Which Is Critical To The Proper Interpretation Of The Agreement.

CMI refers to its contract with the State as a simple "requirements" contract as though it involves the purchase of pencils or some similar commodity. That is not how CMI referred to the contract when it induced the State to enter into the agreement with

CMI. Rather, when it sought the contract from the State, it referred to the "partnership" between the State and CMI in which CMI could be "counted on for support" and is "highly motivated to help make the State of Minnesota's alcohol testing program the <u>best it can be</u>!" Gratz Aff. ¶ 4, Exhibit C at BCA008.

As discussed in the State's Memorandum of April 17, 2009 at 11-12, the contract was intended to ensure the admissibility, and defend the reliability, of Intoxilyzer breath test results in order to enforce the State's drunk driving laws. This obvious purpose of the contract, which CMI now ignores, is critical to a proper interpretation of the contract. See *id.*

>     **2.    CMI Ignores The Legal Consequence Of Its Express Agreement To Comply With All Terms and Conditions Of The Contract Without Qualification.**

The contract could not be more clear that CMI explicitly agreed to abide by Special Condition 12 without qualification. Gratz Aff. ¶ 4, Exhibit C at BCA009. The consequence of this unequivocal statement is that CMI is obligated as a matter of law to comply with this provision. See State's Memorandum of April 17 at 13-14. CMI ignores its contractual commitment.

>     **3.    CMI Ignores The Plain Language Of Special Condition 12 That Requires CMI To Produce Court-Ordered Information In Both DWI And Implied Consent Cases.**

As discussed in the State's Memorandum of April 17, 2009 at 18, Special Condition 12 literally applies in both DWI and implied consent proceedings. However, CMI failed to address this critical point. The clear purpose of the contract and

*Underdahl I*, which are also ignored by CMI, similarly mandate this conclusion. *Id.* at 11-12, 18-19.

Furthermore, to the extent CMI's form cover letter is given any effect, it is easily reconciled with the rest of the contract documents and the purpose of the contract. *See Cement, Sand & Gravel Co. v. Agric. Ins Co. of Watertown, N.Y.,* 30 N.W.2d 341, 345 (Minn. 1947) (stating the language of a contract is to be "given a meaning in accordance with the obvious purpose of the . . . contract as a whole"). The letter is merely a sample cover letter, with no substantive effect. This interpretation is consistent with the plain language of Special Condition 12, CMI's acceptance of the condition without qualification and the confidentiality agreement and affidavit attached to the letter which broadly refers to other documents.

### 4. CMI Ignores The Broad Definition Of "Document" In Discovery Matters.

CMI argues that until 2007 the Source Code was not a document within the meaning of its confidentiality agreement and affidavit. CMI Memo in Opp. at 10. However, the plain and ordinary meaning of the term "document" in the context of a discovery request or order of production by a court is broadly defined to include electronic as well as various other forms of documentary evidence. Indeed, CMI's definition of "document" for purposes of discovery in this case includes, for example, "electronic matter of any kind," "computer records and data," and "data stored or contained in computers." Abelson Aff. Ex. A at 3; *see, e.g., Nat'l Union Elec. Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1257, 1261-62 (E.D. Pa. 1980) ("[T]he 1970

amendments to Rule 34 . . . made it clear that computerized records are subject to requests for production."). The plain language of CMI's confidentiality agreement and affidavit includes a document in the form of the Source Code.

> 5. **CMI Ignores The State's Accrued And/Or Vested Right In Special Condition 12 And The Law Applicable To A Condition Precedent.**

As explained in the State's April 17, 2009 Memorandum at 19-24, the State's rights under Special Condition 12 accrued and/or vested when the State performed its obligation under the contract by paying for the Intoxilyzers. Despite acknowledging in its Reply Memorandum of Law in Support of its Motion to Dismiss Intervenor Jacobsen's Complaint at 10 (Docket No. 96) that a vested or accrued right survives the expiration of an agreement, CMI fails to address the State's vested and/or accrued rights under its contract with CMI. These rights of the State impose an obligation on CMI to perform under Special Condition 12 of the contract while the Intoxilyzer is in use in Minnesota. This conclusion is also consistent with the purpose of the contract. *See* State's Memorandum of April 17, 2009 at 11-12.

CMI summarily asserts that Special Condition 12 is a "condition precedent." CMI Memo in Opp. at 24. This argument is also without merit.

Typically, a condition precedent is a condition to be performed before an entire agreement becomes effective. *See, e.g., Nat'l Union Fire Ins. v. Schwing America Inc.*, 446 N.W.2d 410, 412 (Minn. Ct. App. 1989) ("When a contract contains a condition precedent, a party to the contract does not acquire any rights under the contract unless the condition occurs."). Conditions precedent are disfavored. *See Mrozik Constr. Inc. v.*

*Lovering Assocs., Inc.*, 461 N.W.2d 49, 51-52 (Minn. Ct. App. 1990); *United States v. Gerth*, 991 F.2d 1428, 1434 (8th Cir. 1993) ("[C]ontracts should be construed with a preference for finding mutual promises rather than conditions."); *Restatement (Second) of Contracts* § 227 & cmt. c. "[C]onditions precedent are especially disfavored when the obligee has no control over the occurrence of the event in question." *Mrozik Constr.*, 461 N.W.2d at 52.

Special Condition 12 is a promise, not a condition precedent, because the assurance by CMI that it would perform in the future by providing information was an essential part of the consideration for the State's payment to CMI. See State's Memorandum of April 17, 2009 at 23-24; *see also Gerth,* 991 F.2d at 1428 (A promise "is an assurance from one party that performance will be rendered in the future, given in a manner that the other party could rely on it."). In addition, Special Condition 12 is a promise because the State does not control whether a court orders production. *See Mrozik Constr.*, 461 N.W.2d at 52 ("[A]bsent unequivocal, unambiguous language" condition precedent did not exist because subcontractor had no control over owner's payments to contractor.).

In light of the strong presumption against conditions precedent, the preference for mutual promises, and that a condition precedent typically relates to when an entire agreement becomes effective, Special Condition 12 is not a condition precedent. Rather, the language in Special Condition 12 which states that the provision "is to be activated with an order of the court with jurisdiction of the case," merely acknowledges that CMI

5

must comply with the court order irrespective of whether the order was directed to the State or CMI or whether CMI was a party to the underlying case.[1]

### 6. The State's Interpretation Of The Contract Is Reasonable.

Although CMI agreed without qualification to abide by the State's interpretation of the contract, it now summarily claims that this contractual provision is somehow invalid. CMI Reply Memo. at 8-9. The cases CMI cites, however, merely stand for the proposition that the State's interpretation must be reasonable. The State's interpretation is reasonable as demonstrated by the language and purpose of the contract and applicable legal principles. See State's Memorandum of April 17 at 10-24.

CMI also argues that the State's right to interpret the contract only applies to contract disputes that arise before the contract was executed by the parties. CMI Reply Memo at 8. The literal language of the contract, however, does not limit the State's interpretive right to disputes arising before the contact is effective. Gratz Aff. ¶ 4, Exh. A at BCA081, ¶ 32 ("The State is solely responsible for rendering decisions in matters of interpretation on all terms and conditions."). Just as importantly, by definition, the terms and conditions of the contract were not effective until the agreement was executed. Therefore, there were no contractual rights to interpret prior to execution of the contract.

### 7. Parol Evidence Cannot Be Considered.

CMI attempts to offer extrinsic evidence to limit the scope of the term "information" in Special Condition 12 to its operation manual. Parol evidence should not

---

[1] CMI also fails to acknowledge that its argument regarding the contract period is irrelevant to CMI's breaches of the contract which occurred before its expiration.

be considered by the Court for several reasons.

First, a party to an integrated contract cannot offer extrinsic evidence to vary the terms of the contract. *See, e.g., Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn. 1982) (stating if a contract is integrated, parol evidence is not admissible to contradict, vary or add to the terms of the contract). An integrated contract is a writing that was intended to be the complete expression of the parties. *Bussard v. College of St. Thomas, Inc.*, 200 N.W.2d 155, 161 (Minn. 1972).

The contract documents in this case plainly demonstrate that the contract embodies the entire agreement between the State and CMI. *Bussard*, 200 N.W.2d at 161 ("A determination of whether" a contract is integrated is made by inspecting the writing itself and by reading the writing "in light of the situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances."). The contract award defines the contract as the RFP, the Award and any subsequent purchase orders or amendments, and CMI's Proposal and response to the State's letter requesting clarification. Gratz Aff. ¶ 4, Exhibit D at BCA104. *See also* Minn. Stat. § 16B.01, subd. 4 (2008) (State contracts must be in writing); *Morris v. Perpich*, 421 N.W.2d 333, 339 (Minn. Ct. App. 1998).

CMI accepted all terms and conditions of the RFP "without qualification." Gratz. Aff. ¶ 4, Exhibit C at BCA009. Thus, as a matter of law, CMI agreed to abide by all terms and conditions as written in the RFP including Special Condition 12. CMI cannot now utilize extrinsic evidence to add to or vary the terms of this integrated contract.

Second, CMI agreed to comply with the State's interpretation of the contract,

7

Gratz. Aff. ¶ 4, Exhibit C at BCA009, which does not limit the term "information" to the operation manual. CMI must abide by the State's interpretation and therefore CMI's use of extrinsic evidence is irrelevant.

Third, the contract is unambiguous with respect to the term "information" in Special Condition 12. The plain meaning of the term encompasses all information ordered to be produced by a court, including the Source Code. See State's Memorandum of April 17, 2009 at 12-13. To the extent CMI's form cover letter is given any effect to reconcile the document with Special Condition 12 (as well as CMI's attached confidentiality agreement and affidavit), it merely constitutes a sample cover letter previously used by CMI. *See supra* at 3. Since the term "information" in Special Condition 12 is unambiguous, extrinsic evidence cannot be introduced to purportedly interpret the term. *See Material Movers,* 316 N.W.2d at17.

**8. If The Contact Is Deemed Ambiguous, It Must Be Construed To Effectuate The Public Interest.**

CMI argues that because the State drafted Special Condition 12 of the RFP, any ambiguities should be construed against the State as the drafter. CMI Memo in Opp. at 17-19. This argument is without merit for at least two reasons. First, the parties explicitly agreed that the State's interpretation of the contract would control. Second, the agreement must be construed to protect the public interest.

As discussed above, the parties agreed that "[t]he State is solely responsible for rendering decisions in matters of interpretation on all terms and conditions" of the contract. Gratz Aff. ¶ 4, Exh. A at BCA081, ¶ 32. Accordingly, contrary to construing

the contract against the drafter, the parties agreed that the State's interpretation of the contract was binding on CMI.

In addition, except for one case, CMI ignores the authorities cited by the State which provide that a government contract such as this must be construed to effectuate the public interest underlying the contract. See State's Memorandum of April 17, 2009 at 17. CMI misconstrues the case it does address, *Correct Piping v. City of Elkins*, 308 F. Supp. 431 (N.D. W. Va. 1970). CMI Memo in Opp. at 17. There is nothing in *Correct Piping* that indicates the ruling is based on a construction of the contract against the City as the drafter. *See id*. at 435-36. Instead, the decision is based on general principles of law concerning interest payments. *Id*. *Correct Piping* does, however, emphasize that "agreements affecting the public . . . are construed in favor of the public." *Id*. at 433.

As the authorities previously cited by the State establish, when a government contract implicates the public interest, the public interest is paramount in construing the contract. See State's Memorandum of April 17, 2009 at 17. Moreover, Exhibit E to CMI's response to the State's RFP, including CMI's form letter, must be construed against CMI as the drafter. *See Cherne Indus., Inc. v. Grounds & Assocs.,* 278 N.W.2d 81, 89 (Minn. 1979) (When a contract has multiple drafters a provision may be construed against the drafter of that particular provision).

### 9. Even If The Extrinsic Evidence Referred To By CMI To Interpret The Term "Information" In Special Condition 12 Is Considered, It Does Not Create a Genuine Dispute of Material Fact.

As discussed, *supra* at 7-8, extrinsic evidence should not be considered in interpreting the contract. In any event, the extrinsic evidence offered by CMI to limit the term "information"[2] in Special Condition 12 to the operation manual does not create a genuine dispute of material fact. McNab Ex. 14 at 003247 merely acknowledges that both CMI and the other bidder for the contract agreed to comply with each of the terms and conditions of the RFP, including Special Condition 12. The notes under the term "comply" simply list some of the vendors' responses. Similarly, the cryptic handwritten notes relied on by CMI, see McNab Aff. Ex. 165 at 003621, do not provide credible evidence that, contrary to CMI's express acceptance of Special Condition 12 without qualification and the purpose of the contract, the term "information" in Special Condition 12 was limited to the operation manual.[3]

For the record, the State disputes CMI's allegations with the Affidavits of Bob Mooney, a former BCA employee, and Gloria Sonnen, a Minnesota Department of

---

[2] CMI does not raise disputed fact issues as to any other aspect of Special Condition 12 or the State's claims regarding CMI's breach of the implied covenant of good faith and fair dealing.

[3] CMI also submits an affidavit of Toby Hall, CMI's President, summarily stating that CMI intended only to provide the operation manual pursuant to Special Condition 12. Hall Aff. ¶12. He offers no contemporaneous extrinsic evidence to support this self-serving statement. In any event, the interpretive issue for the court involves the language and purpose of the contract, not Mr. Hall's subjective intent. See State's Memorandum of April 17, 2009 at 11; *see also Barry v. Barry*, 172 F.3d 1011, 1015 (8th Cir. 1999) ("The parties to a contract are bound by the objective meaning of the words they use; their private, unexpressed thoughts cannot alter the meaning of the words they uttered or actions they took.").

Administration employee, who were very involved in the RFP process and evaluation of bids. These affidavits establish that the term "information" in Special Condition 12 was not limited to the operation manual.

As Mr. Mooney states in his affidavit, a July 16, 1996 draft of the RFP prepared by Mr. Mooney (a copy of which was produced to CMI in discovery) explains the need for, and purpose of, the contract and Special Condition 12. For example, the document provides in the section entitled "GOAL THIS CONTRACT IS TO ACCOMPLISH" that the contract must contain:

> [A] provision for making available directly from the manufacturer to attorneys defending individuals charged with crimes where evidence includes a test on the selected instrument [sic] information such as manufacturer instrument operation manuals *and such other information as might be requested in disclosure requests*, this to be activated upon the order of the court with jurisdiction over the case.

Mooney Aff. Ex. A. ¶ 3(E) at 4 (emphasis added). In the section entitled "MAJOR TASKS TO BE COMPLETED" the document similarly states:

> Provide for a mechanism by which attorneys representing individuals tested with the selected instrument in *court cases* shall be able to obtain copies of *docuemtns [sic] related to the operation of the instrument from the manufacturer* with suitable conditions regarding non-disclosure agreements, unauthorized copying control.

*Id*. ¶ 4(F) at 5 (emphasis added). In addition, Mr. Mooney explains in detail in his affidavit, consistent with the purpose of the contract, that Special Condition 12 required production of any information ordered by the court and CMI agreed to the provision without qualification. Mooney Aff. ¶¶ 4, 6-7, 12

Ms. Sonnen's affidavit also refers to Mr. Mooney's July 16, 1996 draft of the RFP and states that Special Condition 12 was intended to provide litigants with whatever information a court orders be produced. Sonnen Aff. ¶ 3. Ms. Sonnen further states that CMI agreed to comply with the provision without qualification. *Id.* ¶¶ 3, 6.

### 10. CMI Breached The Implied Covenant Of Good Faith And Fair Dealing.

CMI fails to respond to any of the State's factual allegations, which are based on undisputed evidence, that CMI violated the implied covenant of good faith and fair dealing. See State's Memorandum of April 17, 2009 at 25-26. Instead, CMI erroneously argues that the State improperly plead a breach of the implied covenant of good faith and fair dealing. The State refers the Court to the State's Memorandum of Law in Opposition to CMI's Motion for Judgment on the Pleadings, dated May 15, 2009, at 9-14, which addresses these legal arguments in detail.

Both the law and the undisputed facts support the State's position. The State is therefore also entitled to summary judgment based on CMI's breach of the implied warranty of good faith and fair dealing.

### 11. The Court's Ruling Should Not Be Delayed To Allow CMI To Conduct Additional Discovery.

Although CMI brought its own motion for summary judgment on Counts III and IV of the State's Complaint, it now requests that the Court delay consideration of the State's motion so that it can conduct additional discovery. CMI Memo. in Opp. at 29. CMI, however, failed to submit the affidavit required by Fed. R. Civ. P. 56(f) specifying why it cannot present facts essential to justify its opposition to the State's motion.

Furthermore, additional discovery will not serve a meaningful purpose. Despite extensive discovery that has already taken place, including the production of 15,000 pages of documents by the State and CMI collectively, Abelson Aff. ¶ 3, the only purported factual dispute identified by CMI is allegedly based on two documents relating to the scope of the term "information" in Special Condition 12. CMI Memo in Opp. at 13-17. As discussed *supra* at 7-8, consideration of extrinsic evidence is not appropriate, and the documents relied on by CMI do not raise a genuine dispute of material fact.

CMI has had ample opportunity to conduct any necessary discovery. The State reiterates its request to expedite consideration of its motion, a need made even more urgent by *Underdahl II*.[4]

---

[4] A recent letter from the Minneapolis City Attorney, Susan Segal, highlights the urgency of this situation. Abelson Aff. Ex. B.

## CONCLUSION

Based on the State's Memoranda of April 17 and May 15, 2009, and this Reply Memorandum, the State respectfully requests that the Court grant its motion and deny CMI's motion.

Dated: May 29, 2009

Respectfully submitted,

LORI SWANSON
Attorney General
State of Minnesota

s/ **Alan I. Gilbert**

Alan I. Gilbert
Solicitor General
Atty. Reg. No. 0034678
al.gilbert@state.mn.us

Emerald Gratz
Assistant Attorney General
Atty. Reg. No. 0345829
emerald.gratz@state.mn.us

Daniel L. Abelson
Assistant Attorney General
Atty. Reg. No. 0327554
daniel.abelson@state.mn.us

Thomas C. Vasaly
Assistant Attorney General
Atty. Reg. No. 0112501
thomas.vasaly@state.mn.us

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
Telephone: (651) 296-9717
Fax: (651) 282-5832

ATTORNEYS FOR PLAINTIFF STATE OF MINNESOTA

AG: #2447520-v2