UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>　　　　　　Defendant,<br><br>　And<br><br>Robert J. Bergstrom, Craig A. Zenobian,<br>Shane M. Steffensen, and Christopher D.<br>Jacobsen,<br><br>　　　　　　Plaintiff-Intervenors. | File No. 08-CV-603 (DWF/AJB)<br><br>**DEFENDANT'S REPLY<br>MEMORANDUM OF LAW IN<br>SUPPORT OF MOTION FOR<br>JUDGMENT ON THE PLEADINGS,<br>OR, IN THE ALTERNATIVE, FOR<br>PARTIAL SUMMARY JUDGMENT** |

Defendant CMI of Kentucky, Inc. ("CMI") respectfully submits this Reply Memorandum of Law in Support of Motion for Judgment on the Pleadings, or, in the Alternative, for Partial Summary Judgment.

## **INTRODUCTION**

This is a dispute about a contract ("Contract") between the State of Minnesota ("State") and CMI. The State and Plaintiff-Intervenors ("Intervenors") attempt to conflate this contractual dispute with state court proceedings in which CMI is not a party. Those issues are not before this Court.

Counts II, III and IV of the Complaint and Count I of Complaint-in-Intervention are ripe for judgment on the pleadings or summary judgment because these claims fail as a matter of law. CMI is entitled to summary judgment on its trade secret counterclaim because it has presented sufficient evidence of each element of the claim.

## DISCUSSION

### I. PLAINTIFF AND INTERVENORS ERRONEOUSLY ATTEMPT TO INTRODUCE EXTRINSIC AND IRRELEVANT MATERIALS.

The State's and Intervenors' briefs are replete with matters that cannot be considered on CMI's motion. When reviewing an unambiguous contract or rendering judgment on the pleadings, the Court need only look to the pleadings and the plain language of the Contract. The State and Intervenors improperly rely on the Workman affidavit, state court proceedings, and other extrinsic materials. The Court should not consider this improper and irrelevant information.

#### A. The Workman Affidavit Is Not Supported By Personal Knowledge Or Specialized Expertise.

Affidavits may be considered in the context of a summary judgment motion only when "made on personal knowledge" and setting forth "such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). Intervenors improperly rely on the Second Affidavit of Thomas E. Workman in opposing CMI's motion. Mr. Workman, an attorney, has been retained by Intervenors as an "expert" in this case.

Mr. Workman's affidavit is inappropriate and inadmissible because it is replete with argument and statements lacking personal knowledge. Indeed, many of the alleged averments are made only "upon information and belief." (Workman Aff. ¶¶ 9, 12.)

Others are phrased in hypothetical form. (*Id.* ¶¶ 7, 8, 11.) These statements are not based on personal knowledge, and cannot be considered on this motion.

Further, the Workman Affidavit is not admissible as expert opinion under Rule 702 of the Federal Rules of Evidence, because it is not "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Fed. R. Evid. 702. The majority of Mr. Workman's allegations consist of legal opinions that are simply not evidence. Mr. Workman opines about the law—a role properly belonging to the Court. (Workman Aff. ¶¶ 4, 5, 6, 9, 12-14, 16, 17, 19-24.) Legal argument does not belong in an affidavit.

Moreover, Defendant's motion raises questions of law, not issues of fact. There is no fact finder to benefit from Mr. Workman's specialized knowledge, if his knowledge is, in fact, specialized—a point CMI does not concede. Mr. Workman's affidavit is inadmissible and irrelevant and should not be considered on this motion.

### B. State Court Rulings, The Due Process Clause, And The Confrontation Clause Issues Are Not Before This Court.

Intervenors and the State devote portions of their arguments to the constitutional rights of criminal defendants and the impact this case has had on Minnesota's court system. CMI takes no position on those issues, as they are not relevant to the contract dispute before this Court, and should not be considered in connection with this motion.

## II. THE SOURCE CODE IS NOT "INFORMATION" UNDER THE CONTRACT, AND INTERVENORS ARE NOT THIRD-PARTY BENEFICIARIES.

While in effect, the Contract between the State and CMI required CMI to provide a copy of the Operation Manual for the Intoxilyzer 5000EN to criminal defendants who obtained an order from the state district court. The State and Intervenors now claim that the Contract also required—and continues to require—CMI to provide the source code to Minnesota litigants. These arguments cannot prevail.

### A. The Intervenors' Arguments Fail As A Matter Of Law.

In opposing CMI's motion, Intervenors advance many of the arguments set forth by the State in support of its Motion for Partial Summary Judgment. CMI incorporates its Response in Opposition to the State's motion by reference, and will not repeat those arguments here. (Def.'s Mem. L. Opp'n Pl.'s Mot. at 3-13.)

The Intervenors also argue that the source code was included in the definition of "information" because CMI assigned all of the source code to the State under the Contract. Even the State itself does not claim ownership of the entire source code. The Contract could not have assigned the entire source code to the State, as discussed below, and this argument must fail. *See infra* at 10.

### B. The State Is Not Exempt From The Doctrine Of Waiver.

The State argues it cannot have waived any objection to CMI's definition of "information" because waiver is an equitable doctrine, and may only be applied against the State in "egregious circumstances." (Pl.'s Mem. L. in Opp'n at 7.) This position is not supported by the Contract or controlling case law.

As an initial matter, waiver is not only an equitable doctrine here—it is a contract right the State expressly reserved in the RFP. The RFP states, "[t]he State reserves the right to *accept or reject* any or all proposals or parts of proposals *and to waive* informalities therein." (McNab Aff. Ex. 12, emphasis added; *see also id.* Exs. 8, 13, 14.)[1] The State *did not* reject CMI's Proposal. There are two inferences to be drawn from the State's decision: either the State did not deem CMI's definition of "information" to be a material deviation, or it chose to waive that deviation as a matter of contract. (*Id*. Exs. 8, 12-14.)

In addition to the State's contractual waiver, it has equitably waived any objection by the passage of time. *Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co.*, 152 N.W. 651, 651-52 (Minn. 1915). The State wrongly implies that it is only subject to a waiver defense in "egregious circumstances." Where, as here, State actors worked within their authority, and the State acted in its proprietary capacity, the Court must weigh the circumstances and apply equitable relief as justice requires. *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 291-92 (Minn. 1980); *In re McGuire*, 756 N.W.2d 517, 519-20 (Minn. Ct. App. 2008). The doctrine of waiver applies in this case, because CMI relied on the State's acceptance of its Proposal offering the Operations Manual to criminal defendants.

**C. The State's Position On The Relevance Of The Source Code In State Court Proceedings Is Relevant.**

The State has repeatedly argued in Minnesota state courts that the source code is not relevant or discoverable. If the Court finds the Contract is ambiguous, this position

---

[1] All citations to the affidavits of William A. McNab, Toby Hall, and Glenn Hardin refer to affidavits filed on April 17, 2009 in support of this motion.

should inform the Court's reading of the Contract because it reflects the State's understanding of the meaning of the Contract. A contract is formed by the mutual assent of the parties. *Field-Martin Co. v. Fruen Milling Co.*, 298 N.W.2d 574, 575 (Minn. 1941).

### D. The Intervenors Are Not Third-Party Beneficiaries Under The Contract.

The plain language of the Contract indicates that only criminal defendants are entitled to "information." (Def.'s Mem. L. Supp. at 17-19.) The State and Intervenors attempt to sidestep the plain language with two arguments: 1) the "purpose" of the Contract implicitly requires that information be provided to civil litigants, and 2) implied consent proceedings are "similar" to criminal DWI cases, and thus the Contract should cover those cases. Neither argument is persuasive.

First, contrary to the State's and Intervenors' suggestion, the purpose of the Contract was to establish a five year requirements contract, not to ensure the admissibility of evidence. (*See* Def.'s Mem. L. Opp'n State's Mot. at 5-6.)

Second, Intervenors and the State rely on the Gratz Affidavit for the proposition that civil Implied Consent proceedings are like criminal DWI proceedings. This is inadmissible parol evidence. Moreover, the similarity does not change the primary distinction—that one is civil and one is criminal. Nor does it change the plain language of the Contract.

The State and Intervenors also maintain that CMI's obligation to produce "information" to criminal defendants continues after the Contract expired. There is

simply no support for this notion in the Contract. (*See* Def.'s Mem. L. Opp'n Pl.'s Mot. at 21-24.)

## III. MINNESOTA LAW DOES NOT SUPPORT THE STATE'S GOOD FAITH AND FAIR DEALING CLAIM.

The State's claim of breach of the covenant of good faith and fair dealing is based on the allegation that CMI has not provided the source code to the State and to "Minnesota litigants." This is nothing more than a reiteration of the State's flawed breach of contract claim. Minnesota law does not recognize a claim for breach of the covenant on these facts, and the State's claim must be dismissed.

Relying on *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995), the State argues that Minnesota common law implies a covenant of good faith and fair dealing in all contracts, including sales contracts. But *Hennepin County* contains only the blanket statement that "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing. . . ." *Id.* It does not involve application of the common law to a contract governed by the Uniform Commercial Code. In fact, *cases cited by the State* confirm that *Hennepin County* applies only to non-sales contracts. "Minnesota law does, however, impose an implied covenant of good faith and fair dealing into every **non-sales** contract. . . ." *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) (citing *Hennepin County*, 540 N.W.2d at 502) (emphasis added).

Even if the covenant did apply, *Hennepin County* recognizes that the implied duty is limited. "Under Minnesota law, every contract includes an implied covenant of good

7

faith and fair dealing *requiring that one party not 'unjustifiably hinder' the other party's performance of the contract.*" *Hennepin County*, 540 N.W.2d at 502 (citing *Zobel & Dahl Contr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984)) (emphasis added). Cases cited by the State alluding to a broader application do not apply to the facts of this case. *See White Stone Partners, LP v. Piper Jaffray Cos.*, 978 F. Supp. 878, 882 (D. Minn. 1997) (discussing application of the covenant where bad faith would render the contract illusory).

In the end, the State claims merely that CMI breached the Contract in bad faith. But CMI's protection of its valuable trade secrets and intellectual property does not constitute bad faith.[2] *See* Minn. Stat. 325C.01. Even if true, and it is not, where a contract term is express, no implied terms are necessary.

## IV. THE STATE FAILS TO ALLEGE THE ELEMENTS OF COPYRIGHT INFRINGEMENT.

The State's Complaint fails to allege that copyrightable material arose under the Contract, giving the State a protectable interest. In its Response, the State cannot point to any factual allegation stating that it has a protectable copyright interest.

Nor has the State alleged any infringing conduct. The State urges the Court to liberally construe the Copyright Act to find a violation under the "unique facts" of this case. (Pl.'s Mem. L. Opp'n at 17.) The Court cannot create a statutory cause of action where one does not exist. Count II of the Complaint must be dismissed.

---

[2] Additionally, CMI's efforts to protect the source code also benefit the State. (Hall Aff. ¶¶ 26-29.)

8

## V. CMI IS ENTITLED TO PROTECTION FOR ITS TRADE SECRET INFORMATION.

CMI's trade secret information is entitled to protection because it is not generally known or readily accessible, and it derives value from not being generally known.

The State argues that CMI's claim should be dismissed because there is no "case or controversy" regarding the trade secret status of CMI's source code. The State's current position is directly contrary to its Reply to CMI's Counterclaim. Paragraph 99 of CMI's Counterclaim alleges "[a] current, ripe, and justiciable dispute and controversy exists between and among the parties and is fully susceptible to judicial resolution." (Countercl. ¶ 99.) The State agreed, stating "[t]he allegations set forth in paragraph 99 are legal conclusions to which no responsive pleading is required. *The State nonetheless agrees with CMI on this point*." (Reply to Countercl. ¶ 38 (emphasis added).) Nothing has occurred since the State filed its Reply that could reasonably change the State's position.

A case or controversy exists regarding the trade secret status of CMI's source code. (Reply to Countercl. ¶ 38.) *See also MedImmune Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007). The immediacy of the issue is clear, because CMI is subject to requests for its source code from Minnesota litigants, before courts with varied willingness to enter appropriate protective orders. CMI's request for declaratory judgment is justiciable.

Intervenors argue that CMI does not have an ownership interest in the source code because the entire source code was assigned to the State under the Contract. This

position is contrary to the Contract's plain language, and in fact is not a position advanced by the State itself. (*See* Pl.'s Mem. L. Opp'n at 17; Hardin Aff. Nov. 16, 2007 ¶ 5.) Intervenors again rely on the Workman affidavit, which, as discussed above, is inadmissible. CMI owns the source code and the source code is entitled to trade secret protection. (Hall Aff. ¶ 19.)

CMI has gone to great lengths to maintain the confidentiality of the source code. (Def.'s Mem. L. Supp. at 32.) Intervenors argue that the source code has been disclosed through patent proceedings, but that argument is flat wrong. Intervenors misrepresent testimony by Toby Hall to suggest that the source code for the Intoxilyzer 5000EN has been disclosed. (Intervenors' Mem. L. Opp'n at 6.) The testimony cited relates to the Intoxilyzer 8000, and is irrelevant to the Intoxilyzer 5000EN at issue here.

Moreover, Intervenors argue that, because the Intoxilyzer 5000EN is patented, its source code must have been disclosed as part of that process and is therefore not entitled to protection. As discussed in previous briefing, the patent did not cover the Intoxilyzer 5000EN instrument as a whole; rather, it covered a single feature in an earlier version of the instrument. (Def.'s Resp. to Amici Curiae, Doc. No. 78, at 20-21.) The source code was not disclosed.

Finally, the State claims it needs discovery regarding CMI's corporate structure to determine whether CMI's source code derives value from not being generally known. This information is irrelevant. CMI has amply demonstrated the competitive value of keeping its source code secret. (Hall. Aff. ¶¶ 10-14, 21-24.) The State's argument is nothing more than a delay tactic designed to avoid a judgment on this issue.

## **CONCLUSION**

CMI respectfully requests that the Court grant its motion.

Respectfully Submitted,

Dated: May 29, 2009

s/William A. McNab
David M. Aafedt, #27561X
William A. McNab, #320924
Erin A. Oglesbay, #343092

WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Ste. 3500
Minneapolis, Minnesota 55402-4629
Tel: (612) 604-6400
Fax: (612) 604-6800
daafedt@winthrop.com
wmcnab@winthrop.com
eoglesbay@winthrop.com

ATTORNEYS FOR DEFENDANT
CMI OF KENTUCKY, INC.

4522697v1