UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, by Michael Campion, its Commissioner of Public Safety, | Civil Case No. 08-cv-00603 DWF/AJB |
| Plaintiff, | |
| and | |
| Robert J. Bergstrom, Craig A. Zenobian, Shane M. Steffensen, and Christopher D. Jacobsen, | **AFFIDAVIT OF ROBERT MOONEY** |
| Plaintiff–Intervenors, | |
| vs. | |
| CMI of Kentucky, Inc., a Kentucky corporation, | |
| Defendant. | |

COUNTY OF RAMSEY    )
                    )ss.
STATE OF MINNESOTA  )

I, Robert Mooney, being first duly sworn, depose and say:

1. I was a Forensic Scientist with the Minnesota Bureau of Criminal Apprehension ("BCA") from 1974 to 1999. I am now semi-retired. I continue to perform consulting work.

2. On July 16, 1996, I prepared a draft Request for Proposal ("draft RFP") for replacement of the State of Minnesota's breath alcohol test instruments. A copy of this

draft RFP is attached hereto as Exhibit A. The draft RFP considered input from all members of the breath alcohol section staff at that time.

3. The reasons that the State of Minnesota needed to replace its breath alcohol test instruments in 1996 are stated on page 2 of the draft RFP: (1) "increased maintenance needs of [existing] instruments," (2) "development of more advanced features by manufacturers of breath alcohol testing instruments," and (3) need to respond to claims in court in DWI and implied consent cases by subjects of tests that the tests are inaccurate. The draft RFP stated that the BCA "has investigated many such claims and while staff members believe that most of these claims have no basis in fact, the perception of some Minnesota courts is that these claims are sufficiently believable to make test results unacceptable." Exh. A at 2-3. Thus, a key motive for replacing the State's fleet of test instruments was to obtain increased assurance that courts would accept test results.

4. In the section of the draft RFP entitled "GOAL THIS CONTRACT IS TO ACCOMPLISH," paragraph H) stated:

> H) a provision for making available directly from the manufacturer to attorneys defending individuals charged with crimes where evidence includes a test on the selected instrument *information such as manufacturer instrument operation manuals and such other information as might be requested in disclosure requests,* this to be activated upon the order of the court with the jurisdiction over the case.

Exh. A at 4 (emphasis added). As the italicized language indicates, the BCA contemplated that the manufacturer would provide not only "instrument operation manuals" but also "such other information as might be requested in disclosure requests." Exh. A at 4. The BCA did not attempt to speculate on the types of information that a

2

court might order the manufacturer to produce, nor did the BCA wish to provide a guide for defense attorneys to use when formulating their requests for information.

5. In the section of the draft RFP entitled "MAJOR TASKS TO BE COMPLETED," paragraph F) states:

> F) provide for a mechanism *by which attorneys representing individuals tested with the selected instrument in court cases* shall be able to obtain copies of docuemtns [sic] related to the operation of the instrument from the manufacturer with suitable conditions regarding non-disclosure agreements, unauthorized copying control and the like handled directly by the instrument manufacturer.

6. In 1996, the operator's manual was the most common example of information requested by defense attorneys that was not readily available to them. The BCA received requests for other types of information as well. In 1996, when the BCA contemplated purchasing a new fleet of breath test instruments, the BCA wanted the manufacturer to include in the eventual contract a provision for responding to court orders for disclosure of any information created and maintained by the manufacturer.

7. Although the operator's manual was the most common example at the time of information that the BCA wanted the manufacturer to produce directly to defense attorneys, the BCA had no intent to limit the scope of information the manufacturer might need to supply to the manufacturer's operator's manual. The point of the provision in the RFP for the manufacturer to produce information was to provide a mechanism by which attorneys representing individuals in DWI or implied consent cases would obtain information created and maintained by the manufacturer directly from the manufacturer. The substance of the version of the language I drafted, with an additional provision relating to publicly funded defenses, became special condition 12 of the RFP that the

3

State issued. The manufacturer's "source code" is within the scope of the information under special condition 12 that the vendor is required to provide if ordered by a court.

8.  The BCA did not intend that the information requirement be limited to DWI cases. This would have made no sense because typically the implied consent hearing and DWI hearing require more or less the same information. The BCA receives many requests for information in implied consent cases as well as DWI cases. Due to the interrelationship between DWI cases and implied consent cases, a person charged with DWI would also be subject to an implied consent matter. Therefore, the person charged with DWI could also obtain information in the related implied consent proceeding, and Special Condition 12 so provides.

9.  After a number of edits and revisions, the RFP was finalized and issued. Only two companies responded to the RFP, Draeger and CMI. The team that evaluated the responses included BCA Laboratory Director Lowell Van Berkom, BCA Forensic Scientist III Eldon Ukestad, and me, with input from all members of the breath alcohol section staff at that time.

10.  Responders to the RFP were required to generally agree to the terms and conditions of the RFP and to include a statement "addressing" each of the requirements of the RFP, but responders were not required to agree to each term of the RFP on a line by line basis. For example, special condition 1 of the RFP contained a number of requirements, the last of which was, "Two year warranty on parts and labor included." CMI's response to special condition 1, a copy of which is attached as Exhibit B, did not contain any reference to the warranty nor did the response state that CMI was agreeable

to all the requirements of special condition 1. Nevertheless, in evaluating CMI's response, Mr. Van Berkom, Mr. Ukestad, and I necessarily determined that CMI had agreed to this term by virtue of its general statement of agreement to the terms of the RFP. Otherwise, CMI would not have been eligible for the contract.

11. CMI and Draeger both submitted written questions in response to the RFP. None of the questions concerned special provision 12. I also attended a negotiating meeting with CMI on December 13, 1996. I have retained my notes of the meeting and have attached copies of the notes as Exhibit C. My notes of the meeting do not reflect any questions or concern by CMI as to the scope or interpretation of special provision 12, nor do I recall CMI at any time expressing any such questions or concern.

12. When CMI submitted its response to the RFP, CMI included the form cover letter it used in responding to defense requests for the operators manual, together with a form affidavit and confidentiality agreement. CMI's response to the RFP did not indicate that it intended the form letter, affidavit, and confidentiality agreement to alter the terms of the RFP. A vendor's agreement to all the terms of the RFP was mandatory. CMI's transmittal letter with its response to the RFP stated:

> CMI hereby accepts the terms and conditions as stated in the state of Minnesota's Request for Proposal for Evidentiary Breath Alcohol Test Instruments without qualification. CMI understands that the terms and conditions as stated in the subject RFP shall become part of the contract between CMI and the state of Minnesota should CMI be the successful vendor in the award of contract.

A copy of this page of CMI's transmittal letter is attached as Exhibit D. Mr. Van Berkom, Mr. Ukestad, and I determined that CMI had accepted all the terms of the contract, including special condition 12 without qualification. If CMI had attempted to

5

qualify its agreement to special condition 12, CMI would not have been in compliance with the RFP and would not have been eligible for the contract.

13. I have been provided with the summary of the evaluation of Draeger's and CMI's responses to the RFP and which are included in Exhibit 14 to the May 15, 2009 affidavit of William McNab. These notes are reproduced as Exhibit E hereto. I do not know who prepared these notes. However, the notes accurately reflect Mr. Van Berkom's, Mr. Ukestad's, and my evaluation of the RFP responses. The references to "Comply" in the document regarding the individual terms and conditions reflect the statements of both vendors that they would comply with each and every term and condition of the RFP. The notes under the term "Comply" just list some of the vendor's response, and are not intended to be exhaustive in stating the entirety of how the vendor would comply with the special condition.

                                              s/ Robert Mooney
                                              ROBERT MOONEY

Subscribed and sworn to before me
this 20th day of May, 2009.

s/ Barbara J. Fehrman
Notary Public

AG: #2445343-v1