UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>    By Michael Campion<br>    Commissioner of Public Safety,<br><br>    Plaintiff,<br><br>vs.<br><br>CMI of Kentucky, Inc.<br>    A Kentucky Corporation,<br><br>    Defendant,<br><br>And<br><br>Robert J. Bergstrom, Craif A. Zonobian,<br>Shane F. Steffenson, and<br>Christopher D. Jacobsen,<br><br>    Plainiff-Intervenors. | Civil No.: 08-603 (DWF/AJB)<br><br>AMICUS BRIEF OF THE MINNESOTA COUNTY ATTORNEYS ASSOCIATION IN SUPPORT OF THE PROPOSED SETTLEMENT AGREEMENT |

**COMES NOW** the Minnesota County Attorneys Association (hereinafter referred to as MCAA), pursuant to the Court's Order dated June 3, 2009, to participate by *Amicus Curiae* in support of the proposed settlement agreement between the State of Minnesota and CMI of Kentucky, Inc. MCAA participated by *Amicus Curiae* at the previous settlement hearing held on January 14, 2009.

As noted at the January 14, 2009 hearing, the undersigned is the Traffic Safety Resource Prosecutor (hereinafter referred to as TSRP) for the State of Minnesota, which is a position created by the United States Department of Transportation, National Highway Traffic Safety Administration. As such, the undersigned serves as a staff attorney at the MCAA working in the area of traffic safety.

MCAA supports the proposed settlement making the source code for the Intoxilyzer 5000EN available for inspection and analysis. The proposed settlement appears to address the concerns raised at the hearing on January 14, 2009, and in the Court's order dated February 9, 2009. It represents a significant improvement from the prior proposed settlement. This settlement agreement provides the "unfettered access" to the source code in the electronic format requested by the Plaintiff-Intervenors and Minnesota Society for Criminal Justice at the January 14, 2009 hearing. In addition, criminal defense attorneys would be provided with the source code in the State of Minnesota in printed form. This alleviates the two concerns raised by the Plaintiff-Intervenors and Minnesota Society for Criminal Justice about the previous settlement agreement: (1.) it did not provide the source code in full electronic format and; (2.) it did not make source code available in Minnesota.

The fact that the Plaintiff-Intervenors oppose this settlement after their primary concerns have been addressed and, particularly after they are presented with the opportunity to examine and analyze the source code in the very format that they previously requested, raises great doubt about whether they really want the source code and are willing to make a good faith effort at resolving the issue.

In any event, the settlement provides a meaningful opportunity for discovery and satisfies Rule 9 of the Minnesota Rules of Criminal Procedure. Under Rule 9.01, subd. 2(3), a state district court *can* order discovery, after the Defendant makes the necessary showing, to "require the prosecuting attorney to disclose to defense counsel and to permit the inspection, reproduction or testing

of any relevant material and information" not subject to automatic discovery under Rule 9.  Under the terms of the new settlement agreement, the prosecuting authority would be able to disclose to defense counsel a printed copy of the source code and defense counsel would be permitted "unfettered access" to analyze the source code in the electronic format that they've previously requested and that their own expert (Mr. Thomas Workman) indicates is sufficient to verify the accuracy and reliability of the Intoxilyzer 5000EN.

In its *Amicus* Brief in support of the first settlement agreement, MCAA raised concerns about whether making the source code available in Kentucky would be sufficient.  MCAA's concern has been alleviated under the terms of this new settlement agreement, which clearly provides sufficient discovery under the Minnesota Rules of Criminal Procedure.  Even if the Plaintiff-Intervenors or the Minnesota Society for Criminal Justice disagree, this is an issue properly addressed in criminal cases in state district courts.  There is nothing in this Settlement Agreement preventing criminal defense attorneys from making those arguments in that forum.  Furthermore, the cost of an expert to analyze the source code dwarfs the cost of sending an expert to Kentucky, particularly when that expert is from outside the State of Minnesota to begin with.  In addition, this would only have to be done once and would not have to be done on every single case.  Any inconvenience of going to the State of Kentucky would be a small, one time inconvenience.  Some defense attorneys have conceded this point.  For example, when defense attorney Sam McCloud recently debated Ramsey County Attorney Susan Gaertner about the source code issue on Public

Television, he said, "We only need it (source code) once."[1] Obviously, the source code doesn't change from case to case.

Consequently, the most cost effective way to analyze the source code is to analyze it one time and use that analysis of the source code on numerous cases, essentially spreading the high expert witness costs among numerous defendants as provided for in this settlement agreement.

In its February 9, 2009 order rejecting the first settlement, the Court expressed concern about indigent clients of the State Public Defender Office. This was a concern that was only raised and addressed by MCAA in its *Amicus* Brief and arguments at the January 14, 2009 hearing. In fact, the State Public Defenders Office did not participate at the hearing. In any event, the settlement agreement provides meaningful discovery to these defendants because a printed copy of the source could be sent to them in Minnesota for $250.00. Furthermore, the costs of the expert witness would be covered by the state Public Defender budget or, as noted in MCAA's previous *Amicus* Brief, potentially shifted to county governments by order of the court. MCAA opposes any shifting of these costs, however, because these are costs that, either way, will be borne by the taxpayers of Minnesota, it is not a burden on the indigent defendant. Furthermore, the State Public Defenders unquestionably provide representation in more criminal DWI cases than any other single law office in the state and are, therefore, in the best position to distribute the costs among a large number of criminal defendants as described above.

---

[1] *Almanac*: <u>DWI Ruling</u> (Twin Cities Public Television, Inc., May 1, 2009) (available at: <u>http://www.tpt.org/almanac</u>).

While addressing the concerns about the previous settlement agreement and providing meaningful discovery of the source code, the new settlement agreement also protects the proprietary interests of CMI, which is a legitimate concern.

In addition, the settlement agreement provides immediate access to the entire source code. As explained by the DWI Taskforce at the January 14, 2009 hearing, it is unlikely that this federal litigation between Minnesota and CMI would lead to discovery of the entire source code, which is essential to resolving this procedural discovery issue.

The immediacy of disclosing the source code is vitally important because time is of the essence. This is more the case today than it was previously. The Minnesota Supreme Court recently issued its decision in the Underdahl and Brunner cases.[2] The Court reversed the Court of Appeals and ordered the State to disclose the source code in the Brunner case. As recently as June 2, 2009, the Court of Appeals issued a published decision reversing a district court and holding that the State has possession of the source code.[3] In the wake of these decisions, most and probably all law enforcement agencies in the state are no longer using the Intoxilyzer 5000EN until the source code is available for disclosure to criminal defense attorneys. The entire State is essentially unplugging the Intoxilyzer until this issue gets resolved. Without exaggeration, Minnesota's breath test program is effectively shut down and Minnesota is now the only state in the country that does not utilize breath testing technology.

---

[2] State v. Underdahl and Brunner, ___ N.W.2d ____ (Minn. May 1, 2009).
[3] State v. Crane, ____ N.W.2d ____ (Minn. Ct. App. June 2, 2009).

This is a serious public safety concern as blood and urine tests will delay license revocation and criminal prosecution, allowing drunk drivers to continue driving. According to numerous studies done over the last three decades, this will increase both the number of alcohol related traffic fatalities and the recidivism rate for drunk driving.[4] One report states that license suspension "remains the most effective way to protect the public" from drunk driving, but the effectiveness is substantially diminished the longer the license suspension is delayed beyond the time of arrest.[5] Consequently, forty states have enacted *Administrative License Suspension* laws to provide immediate drivers license sanctions. A similar study of Minnesota's administrative license plate impoundment law showed that the State saw a 50% reduction in recidivism when it began administratively confiscating license plates of repeat DWI offenders at the time of arrest.[6] Based upon the studies done to date, the immediacy of the sanction has a greater deterrent impact than the severity. For this reason, the source code issue severely damages the deterrent impact of the State's impaired driving laws. Consequently, simply switching to blood and urine tests in every case is not a

---

[4] *Traffic Safety Facts*, National Highway Traffic Safety Administration (January 2008) (available at: http://www.nhtsa.dot.gov/staticfiles/DOT/NHTSA/Communication%20&%20Consumer%20Information/Articles/Associated%20Files/810878.pdf);
McKnight, A.J. & Voas, R.B. (1991); The Effectiveness of License Suspension on DWI Recidivism; *Alcohol, Drugs, and Driving*, 7(1), 43- 54.
Ross H. & Gonzalez, P. (1988); The Effect of License Revocation on Drunk Driving Offenders; *Accident Analysis & Prevention* 20(5), 379-91.
[5] *Effectiveness of the Ohio Vehicle Action and Administrative License Suspension Laws*, National Highway Traffic Safety Administration (available at: http://www.nhtsa.dot.gov/people/injury/research/ohio/index.html).
[6] Rodgers, A. (1994); Effect of Minnesota's License Plate Impoundment Law on Recidivism of Multiple DWI Violators; *Alcohol, Drugs and Driving*, 10(2).

viable option to protect the public. Nor does this address the thousands of pending criminal and implied consent cases involving the Intoxilyzer 5000EN.

## CONCLUSION

The proposed settlement agreement satisfies the criminal discovery rules, provides defendants with meaningful and immediate discovery of the entire source code, and protects CMI's propriatery interests. In addition, the delay and uncertainty of litigation of this case is a very serious public safety concern. In the interests of justice and public safety, the MCAA supports the proposed settlement agreement to provide the source code.

Dated: June 4, 2009                          s/ William A. Lemons_____
                                             William A. Lemons (#0295425)
                                             Traffic Safety Resource Prosecutor
                                             Minnesota County Attorneys Association
                                             100 Empire Drive, Suite 200
                                             St. Paul, MN 55103
                                             651/641-1600