UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

State of Minnesota, by Michael Campion,
its Commissioner of Public Safety,

                                          Court File No. 0:08-cv-00603-DWF-AJB

                Plaintiff,

v.                                         **PLAINTIFFS-INTERVENORS'
OBJECTION AND MEMORANDUM
IN OPPOSITION TO PROPOSED
CONSENT JUDGMENT**

CMI of Kentucky, Inc.,
A Kentucky Corporation,

                Defendant

Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen and Christopher D.
Jacobsen,

                Plaintiffs-Intervenors
_____

      Pursuant to the Court's June 3, 2009 Order, Plaintiffs-Intervenors' submit this objection and memorandum in opposition to the second proposed settlement and Consent Judgment filed with the Court just 11 days ago on June 1, 2009.

      Plaintiffs-Intervenors agree with the Minnesota Society for Criminal Justice's ("MSCJ") opposition to the proposed Consent Judgment. Plaintiffs do not agree with the Minnesota County Attorney's Association ("MCAA"). Not surprisingly, MCAA

supports this second proposed Consent Judgment, just like it supported the first one, while citicizing Plaintiffs-Intervenors before it has even heard their objections.[1]

The State and CMI alone negotiated a second proposed Consent Judgment. This second proposed Consent Judgment, like the first, fails to provide access to the Source Code needed for meaningful analysis of the Source Code. This second proposal seeks findings and conclusions that undercut the decisions of the Minnesota appellate courts which require disclosure of the Source Code. This second proposal unnecessarily entwines this Court in ongoing discovery matters in underlying Minnesota cases. This proposed Consent Judgment should be denied.

## **ANALYSIS**

The State purportedly brought this action to obtain access to the Source Code. However, the State has taken positions regarding access to the Source Code in Minnesota State Court proceedings inconsistent with its claim of trying to obtain it in this action. In this action, the State has actually taken positions that inhibit Source Code access. The State negotiated the first proposed Consent Judgment which failed to provide the Source Code at a place and in a format that would permit meaningful analysis for those accused by the Intoxilyzer machine. [Doc. # 95].

In this case, the State took the erroneous position that it only owned the small pieces of the Source Code customized for Minnesota, despite authority to the contrary. [Doc. #158, pp. 23-25]. *See also Underdahl II*, *State v. Underdahl* ___ N.W.2d ____,

---

[1] Without knowing Plaintiffs-Intervenors' objections, MCAA fails to properly address them.

2

2009 WL 1150093, *8 & n.6 (Minn. 2009); *State v. Crane*, __ N.W.2d ___, 2009 WL 1515264, *2.

Because of the State's inherent conflict with obtaining the Source Code for those it is prosecuting, Plaintiffs-Intervenors intervened in this action. Plaintiffs-Intervenors need to perform a meaningful analysis of the Source Code in order to defend themselves against the State in their underlying Minnesota cases.

Plaintiffs-Intervenors seek ready and reasonable availability of the complete Source Code not only for themselves, but for others similarly situated, in order to do a meaningful analysis of it. Minnesota's appellate courts have insisted upon production of the Source Code to the Intoxilyzer 5000 so those accused by the machine can do a meaningful analysis to demonstrate the machine's unreliability. *Underdahl II*, *State v. Underdahl* ___ N.W.2d ____, 2009 WL 1150093, (Minn. 2009); *Lund v. Commissioner of Public Safety*, 2009 WL 1587135 (Minn. App. June 9, 2009) (Unpublished); *Thompson v. Commissioner of Public Safety,* 2009 WL 1444133 (Minn. App. May 26, 2009.) (Unpublished); *Bowen v. Commissioner of Public Safety*, 2009 WL 1312130 (Minn. App. May 12, 2009) (Unpublished).

This Court, when granting Plaintiffs-Intervenors' motion to Intervene as parties in this action held that the State "cannot adequately represent the Applicants' interests." [Doc. #58, p.3]. In so holding, this Court stated:

> The Plaintiff has prosecuted the Applicants and those similarly situated in state court criminal cases. In connection with these prosecutions, the Plaintiff has taken a position directly in opposition to the Applicants with respect to whether the source code could be obtained and should be provided to defendants in cases under Minnesota's statutes criminalizing driving while impaired. For instance, *In*

re Commissioner of Public Safety (*Underdahl I*), 735 N.W.2d 706 (Minn. 2007), Plaintiff sought a writ of prohibition to prevent a state district court from enforcing a discovery order providing defendant with access to the source code. In that case, Plaintiff claimed that it had no ownership of the source code nor any right to claim access to it and that a lawsuit against the Defendant seeking the source code would be frivolous. Plaintiff has also argued that the source code is not relevant to defendants' cases and that due process does not require its production. *State v. Underdahl (Underdahl II)*, 749 N.W.2d 117 (Minn. Ct. App. 2008). <u>Now Plaintiff seeks access to the source code, in the very case it previously argued would be frivolous,</u> **and has proposed a settlement with the Defendant which purports to determine the right of the Applicants and other DWI defendants to the source code and the terms under which it will be provided**.

[Doc. #58, pp. 3-4].

That the State does not adequately represent Plaintiffs-Intevenors' interests is borne out by this Court's rejection of the first proposed Consent Judgment. The State and CMI alone negotiated the terms of the first proposed Consent Judgment. This Court denied the joint motion brought by the State and CMI to approve the first proposed Consent Judgment. [Doc. #95].

When denying the motion to approve the first Consent Judgment, the Court identified two compelling concerns with the proposed settlement. First, the Court concluded going to a Kentucky location was unreasonable for Source Code review, stating:

> [I]t is likely Minnesota State Courts would use this Court's order as a model. Given that, the Court cannot approve a settlement that would require Minnesota litigants, some undoubtedly eligible for public defender services, to travel to Kentucky to obtain discovery regarding the Source Code. The Court declines to find, at this time, that such access would make the Source Code reasonably and readily available to Minnesota Litigants. The Court respectfully suggests that the parties attempt to determine the method by which the Source Code could be made available, subject to appropriate protective orders and conditions on inspection, at the Minnesota Department of Public Safety or the Minnesota Bureau of Criminal Apprehension.

4

[Doc. #95, p. 7].

Second, the Court expressed concern that the proposed format of the Source Code subject to review may be insufficient, stating "it is clear that there is some dispute over whether the proposed format, including a bound hardcopy and a redacted electronic version provides sufficient basis for analysis." [Id.]. Accordingly the Court denied the motion to approve the Consent Judgment. [2]

Now, just four months after the denial of the first proposed Consent Judgment, the State and CMI bring to the Court a second Consent Judgment that they, again, have negotiated by themselves. [Doc. #177-2 & Doc. #177-3]. Like the first proposal, this second proposal "purports to determine the rights of [Plaintiffs-Intervenors] and other DWI defendants to the source code and terms under which it will be provided."

This second proposal, like the first, does little to advance a meaningful analysis of the Source Code. Like the first proposal, it fails to provide the Source Code at a reasonable location and fails to provide it in a format sufficient necessary for meaningful

---

[2] The Court declined to approve requested Finding No. 8 "that providing the Source Code in printed, hardbound book format, with stitched bindings, marked "Do Not Copy' on each page, and in the digital format described in paragraph 3 of Permanent Injunction [review in Kentucky] will provide reasonable access…." [Doc. #95, p. 5, n. 1]. The Court also declined to adopt Conclusion of Law No. 6 – the "proposed mechanism for permitting access to the Source Code serves the public interest and makes the Source Code 'readily and reasonably available.'" [Id. at 6]. Finally, the Court declined to adopt the following Conclusions of Law:  No.1 - ownership and assignment of the Source Code; No. 2 - that the terms under which the Source Code would be produced "are materially no different … than if the State had prevailed" on the information clause issue; Nos. 4 & 5 – that the Source Code is a trade secret requiring a Permanent Injunction "questioning whether these paragraphs are necessary to the settlement, if the purpose of the settlement is to provide the Source Code to Minnesota litigants." [Doc. #95, pp. 5-6].

analysis. This second proposal also attempts to do an end run around the Minnesota appellate court's decisions requiring disclosure that would allow meaningful review. So, with this second proposed Consent Judgment, we have come full circle.

To divert the Court's attention from the shortcomings of this second proposed Consent Judgment, the State and MCAA create a questionable sense of urgency by crying the Minnesota decisions since *Underdahl II* have created a crisis for prosecutions, so the Court should act quickly and just sign off on the settlement now. We have already started down that road with an expedited hearing in this matter.

However, as the MSCJ points out, there is no real crisis. [Doc. # 193, pp. 12-16]. A DWI conviction under Minn. Stat. § 169A.20 can be obtained with or without a chemical test. A DWI conviction may be obtained by 1) having an alcohol concentration of .08 or more under Minn. Stat. §169A.20, subd. 1 (5) or 2) just by being "under the influence of alcohol" under Minn. Stat. § 169A.20, subd. 1(1). The state may use **blood, urine or breath** for the former. **No chemical test of any sort** is needed for the latter. The State gets to decide what type of test is used. Nonetheless, the BCA has already planned for an increase in blood and urine testing. [Doc. #193-2].

Moreover, there are Minnesota counties, such as Aitkin and Carver, that ceased using the Intoxilyzer machine and are still prosecuting DWI offenses without any crisis. The existence of immediate reinstatement policies and other procedures in the area of license suspension, which predate this claimed crisis, further make the State's and MCAA's cries ring hollow.

To act with haste and sign off on this proposed Consent Judgment will only throw the baby out with the bath water. The current proposed Consent Judgment only creates the appearance of giving Minnesota litigants the Source Code, when in reality it fails to do so in any meaningful way.

This proposal is nothing than a public relations victory for the State, which claims to be "very pleased that we have given the defense attorneys everything they need to analyze the Source Code." [Doc. #193-3]. Unfortunately, the proposed Consent Judgment fails to do just that. It fails to provide what is needed for proper Source Code review.

### A. **The Proposed Consent Judgment Fails To Provide The Source Code In A Format That Permits Meaningful Analysis**.

The proposed Consent Judgment proposes to make the Source Code available 1) in a "printed hardbook format" in Minnesota and 2) in an electronic form in Owensboro, Kentucky between the hours of 8:00 a.m. and 4:00 p.m. when CMI is open. [Doc. # 177-3, pp. 5-6]. Moreover, Minnesota will have the small pieces of the Source Code customized specifically for Minnesota. None of these proposed formats permit meaningful analysis.

A hardbound paper copy of the Source Code, wherever it is located, is virtually useless for meaningful Source Code analysis. [Workman First Declaration, Doc. #55, ¶'s 55-65]. Printed paper copy of Source Code is not Source Code. [Workman Third Declaration, ¶ 3]. Rather, Source Code is electronic, digital computer software programming that tells the machine how to operate. [Doc. #55, ¶'s 14 & 19].

A hardbound paper copy of the Source Code is nothing more than a photograph of it. Meaningful analysis, however, requires forensic testing and analysis of the Source Code. Forensic analysis of a photograph of the Source Code would be like trying to do forensic testing on a gun by only being given a photograph of it and then being told the photograph is good enough. [Workman Third Declaration ¶ 4]. Minn. R. Crim P. 9.01, subd. 2(3) does not contemplate such unworkable "inspection, reproduction, or testing."

It is not industry standard to do Source Code review from a printed paper copy of the Source Code. [Workman Third Declaration, ¶ 8]. Opinions derived from a paper review may then not be admissible before a finder of fact under the Minnesota Rules of Evidence, rendering the review useless.

Thus, as a practical matter, a paper copy of the Source Code actually inhibits the required Source Code analysis the Minnesota appellate courts expect to be done. A paper copy is simply not a substitute.

A review of just the small pieces of the Source Code granted to the State by this proposal does nothing for a meaningful and proper Source Code review. The Intoxilyzer machine does not function based on the small pieces customized for Minnesota. [Doc. #159, ¶18]. A review of just the customized pieces of Source Code for Minnesota also is not meaningful, since these customized pieces cannot be processed by a compiler or an assembler. [Workman Third Dec. ¶ 2].

The electronic format in Kentucky proposed by the Consent Judgment, similarly inhibits the meaningful Source Code analysis expected by the Minnesota Courts. The proposed electronic format is limited to just the current version of the Source Code and

does not include previous versions. All previous versions of the Source Code installed on the subject machine are needed for a meaningful analysis. Previously installed versions will show new defects created from improper installation. [Workman Third Declaration, ¶'s 15-18].

Simply put, none of the proposed formats, alone or combined permit proper, meaningful Source Code analysis. However, CMI's recent willingness, subject to a protective order, to put hardbound paper copies of the complete Source Code in Minnesota demonstrates there is no reason for refusing to put a complete copy of the electronic digital version on disc and send it to Minnesota litigants or their experts for a meaningful analysis subject to the same protective order.

### B. The Proposed Consent Judgment Unreasonably Requires Review Of The Electronic Format In Kentucky Which Prevents Meaningful Analysis By Minnesota Litigants.

This second proposed Consent Judgment fails to address the Court's concern about forcing Minnesota litigants to Kentucky to do Source Code review. CMI and the State point to no other case where Source Code analysis has been required to be done at the manufacturer's facility, subject to unnecessary restrictive conditions. In *State v. Chun*, 943 A.2d 114 (N.J. 2008), Source Code Review was done in each examining expert's laboratory, not the manufacturer's facility.

The Kentucky location only needlessly increases the costs of defendants while at the same time giving the State an unfair tactical advantage in the underlying Minnesota cases.

The Kentucky location compounded with the onerous onsite constraints make meaningfully Source Code analysis unreasonably expensive for Minnesota Litigants. The State and CMI's executed mutual settlement release demonstrates this to be the case, since CMI is going to pay the State $50,000.00 for its experts to "analyze and defend CMI's Source Code" in the underlying Minnesota cases. [Doc. #177-2, p. 6].

The State and CMI acknowledge $50,000.00 is needed simply to perform a lesser involved analysis to rebut what experts for the accused must first discover. The $50,000.00 cost of just a rebuttal expert pales in comparison to the cost to of individual's to first find and explain the defect.

In addition to added travel and lodging costs for review in Kentucky, there are increased costs with the expert having to repeatedly travel back and forth from his or her laboratory to Kentucky because they do not have their resource tools available to them. [Workman Third Declaration, ¶'s 8A-D & 8K). These added expenses will be insurmountable for individuals charged with the machine to conduct the review. [Id.].

As a practical matter, the 8 hour work day inhibits proper review. The expert is prevented from performing automated processing which require more than 8 hour contiguous blocks of time to perform. [Workman Third Declaration, ¶8E-F].

The Kentucky location also gives the State of Minnesota an improper tactical advantage in the underlying Minnesota cases. Work done and witnessed in Kentucky can be shared with the State of Minnesota to be used in the underlying Minnesota cases. [Workman Third Declaration, ¶8G]. Finally, the constraints of the proposed Kentucky

review limits the experts who can do the review for individuals. [Workman Third Declaration ¶. 8H-K].

### C. The Proposed Consent Judgment Requires Improper Findings and Conclusions of Law And Will Still Entangle The Federal Court In Minnesota State Court Discovery Disputes.

This Court in the previous proposed Consent Judgment noted that it would likely become the model for use by the Minnesota State Courts. Nothing in this proposed Consent Judgment changes this situation.

Rather, Finding No. 3 requires the Court to find the Consent Judgment provides Minnesota litigants with reasonable access to the Source Code, when it does not. [Doc. #177-3, pp. 4-5, No. 3]. The Consent Judgment's Conclusion of Law at ¶ IV requires the Court to conclude the "Consent Judgment and Permanent Injunction serves the public interest by providing reasonable access to the Source Code for Minnesota litigants…." [Doc. #177-3, p. 5]. If approved, Minnesota Court's will likely follow this Judgment.

However, just like the prior proposed Consent Judgment required the Court to make findings to be used against Minnesota litigants who sought Minnesota State Court orders for the production of the Source Code, this second proposal does more of the same.

The Consent Judgment requires the Court to find that:

CMI conceived and originated part of the Source Code before the State and CMI entered into the Contract in January 1997. Therefore, this part of the Source Code did not arise under the Contract. In the Settlement Agreement, CMI agrees to assign and deliver to the State, free and clear, all Source Code that was conceived and originated and arose under the Contract (subject to the State's independent verification), irrespective of its copyrightability. The Court finds that this fairly and reasonably resolves the issues of ownership of the Source Code and alleged copyright infringement.

11

[Doc #177-3, p. 4, No. 2].

As discussed above, this is inconsistent with the Minnesota appellate courts' construction of the RFP, as well as other authorities. This finding is obviously intended to stem the issuance of Minnesota Court orders requiring production of the Source Code by doing an end run around the Minnesota appellate court decisions. It is also intended to defeat Plaintiffs-Intervenors claims in their Complaints-in-Intervention that the State owns the full Source Code and must produce it to Plaintiffs-Intervenors.

In addition, what Findings will be included in the proposed Consent Judgment has become a moving target. CMI has brought a motion requesting Defendant "that the Court consider and determine the proprietary and confidential nature of the source code for the Intoxilyzer 5000EN." [Doc. # 184]. Whatever these unspecified proposed findings are, they do not appear to have been have not been agreed to in the Consent Judgment.

This Consent Judgment will, just like the previous proposed Consent Judgment entwine the Court in Minnesota State Court discovery matters, resulting in needless duplicitous judicial efforts.

## **CONCLUSION**

Unfortunately, Plaintiffs-Intervenors, have been cast as villains because they seek the Source Code in a format and at a location that will permit meaningful analysis. Cynical comments to the effect that Plaintiffs-Intevenors do not really want the Source Code have oft been heard. Plaintiffs-Intervenors are concerned that such comments have created an environment where Plaintiffs-Intervenors concerns do not matter.

Plaintiffs-Intervenors, just like the defense interests in *State v. Chun*, 943 A.2d 114 (N.J. 2008) want the Source Code so that it can be meaningfully analyzed. Just like the defense interest in *Chun*, Plaintiffs-Intervenors intend to conduct a "meaningful analysis" of the Source Code. That is why Plaintiffs-Intervenors have actively fought for the terms under which that analysis can be done. The proposed Consent Judgment thwarts a meaningful analysis that should be on a level playing field.. Plaintiffs-Intervenors respectfully request that the proposed Consent Judgment be denied.

                              RAMSAY & ASSOCIATES, P.L.L.C.

Dated: June 12, 2009        /s/ Charles A. Ramsay
                                  Charles A. Ramsay  ID No. 260277
                                  2780 Snelling Avenue North, #330
                                  Roseville, Minnesota 55113
                                  651-604-0000

Dated: June 12, 2009        /s/ Daniel J. Koewler
                                  Daniel J. Koewler   ID No. 388460
                                  2780 Snelling Avenue North, #330
                                  Roseville, Minnesota 55113
                                  651-604-0000

                                  GORES LAW OFFICE

Dated: June 12, 2009        /s/ John J. Gores
                                  John J. Gores     ID No. 228928
                                  7091 Highway 65 NE, Suite 201
                                  Fridley, Minnesota 55432
                                  763-571-4777

                                  *Attorneys for Plaintiffs-Intervenors*