UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota,<br>by Michael Campion, its<br>Commissioner of Public Safety,<br><br>　　　　Plaintiff,<br><br>　　and<br><br>Robert J. Bergstrom, Craig A. Zenobian, Shame M. Steffensen, and Christopher D. Jacobsen,<br><br>　　　　Plaintiff- Intervenors,<br><br>　　vs.<br><br>CMI of Kentucky, Inc.,<br>a Kentucky corporation,<br><br>　　　　Defendant. | Civil Case No. 08-603 (DWF/AJB)<br><br><br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ENTRY OF THE CONSENT JUDGMENT AND PERMANENT INJUNCTION** |

## INTRODUCTION

The terms of the proposed Consent Judgment and Permanent Injunction are fair, reasonable, and adequate. Accordingly, the Court should execute and enter the Consent Judgment and Permanent Injunction.

## ARGUMENT

### I.　THE CONSENT JUDGMENT AND PERMANENT INJUNCTION PROVIDES FOR MORE THAN REASONABLE ACCESS TO THE SOURCE CODE.

The Consent Judgment and Permanent Injunction provides for two means by which a litigant may access the Source Code. First, CMI will make the entire Source Code available at its headquarters in Kentucky in native electronic format along with all

of CMI's own processes needed to convert the Source Code from its native electronic format to an EPROM format readable by the Intoxilyzer 5000EN. *See* Permanent Injunction at 6-7 ¶ 1(a). CMI will not charge litigants for this access. *Id*. Second, litigants may receive access to a printed, hardbound copy of the Source Code in Minnesota at the price specified in the contract, no more than $250, or $125 for a publicly funded defense. *Id*. at 8 ¶ 1(b).

Access to the native electronic format of the Source Code, and CMI's related processes, is precisely the form of access sought by Intervenors' own expert. In an article authored in 2007, *Source Code Primer: The Inside Scoop on All Breath Test Instrument Computers and Electronics*, Thomas Workman, Jr., discusses what form of access to a breath test instrument's source code is preferred to conduct a meaningful review. *See* Third Gratz Affidavit ("Third Gratz Aff.") Ex. A at 19. In addition to access to an "electronic version" of the source code, Workman states that access should be provided to compilers or assemblers used to convert the source code into machine code, the library of software routines employed, and the version and type of operating system used to deliver the source code. *Id.* at 20-21.

Workman believes that access to all of these items will give any expert "a chance to duplicate the environment at the breath test company's software house, so that theoretically [the] expert can recreate the machine code delivered in firmware in your state's machine." *Id.* at 20. In this case, all the items suggested by Workman are available to any expert wanting to review the Source Code. *See* Permanent Injunction ¶ 1(a). Moreover, instead of attempting to replicate the breath test company's software

house as Workman suggests, under the proposed Consent Judgment and Permanent Injunction an expert receives access to CMI's hardware and software environment. *See id*.

The source code access in *State v. Chun,* 943 A.2d 114, 123 (N.J. 2008) supports the reasonableness of the access provided by the Consent Judgment and Permanent Injunction. In that case, the reliability of New Jersey's breath test instrument, the Alcotest 7110, was challenged because its source code was allegedly defective. The New Jersey Supreme Court ordered that one proceeding be held to determine the reliability of the source code for the Alcotest 7110. *See id*. at 121-22. The group of defendants involved in the litigation chose an expert to conduct an analysis of the source code. *See id*. at 123. To complete their analysis, defendants' expert was given access to the native electronic source code for the Alcotest 7110 as well as related processes of the manufacturer. *See* Third Gratz Aff. Ex. C at 11. Based on such access, defendants' expert was able to provide a detailed report and analysis. *See id*.

Pursuant to the Consent Judgment and Permanent Injunction, experts will receive similar access to the "native electronic" version of the Source Code, as well as access to various related CMI processes. *See* Permanent Injunction at 6-8 ¶ 1(a). Therefore, based on *Chun,* the access provided by the Consent Judgment and Permanent Injunction is sufficient to allow a meaningful review.

Intervenors sole objection to the form of production in Kentucky is that they also want access to all previous versions of the Source Code installed on the instrument.[1] *See* Intervenors Mem. at 9. Intervenors, however, have cited no legal authority for the proposition that in addition to having a right to the Source Code that was used in the subject test, a litigant has a legal right to previous versions of the Source Code.[2] Intervenors' own expert has not previously indicated that such information is necessary for a proper review of the reliability of the instrument that administered the breath test.

In any event, the Consent Judgment and Permanent Injunction provides that if a particular litigant needs additional information to meaningfully review the Source Code, CMI and the litigant will in good faith attempt to resolve the issue. If the matter cannot be worked out by the parties, then this Court would decide the issue. Permanent Injunction at 8-9 ¶ 1(c)

---

[1] In support of their argument that all previous versions of the Source Code are necessary for a meaningful analysis, Intervenors cite to the Third Declaration of Thomas Workman, Jr., which is attached to Intervenors' memorandum. Workman relies, in part, on information regarding the source code analysis conducted in the *State v. Chun* litigation in New Jersey. *See* Third Workman Declaration ¶¶ 5-8. Workman's involvement in the *Chun* litigation was limited based on his refusal to sign the non-disclosure agreement allowing access to the native electronic source code. *See* Third Gratz Aff. Ex. B at 50. Despite the fact that he never saw the complete source code, Workman opined that the source code "was too complex to test," and "would require all of mankind for the rest of time to test all of the paths in Alcotest's source code." *See id.* at 51-52.

[2] Amicus Minnesota Society for Criminal Justice ("MSCJ") argues that access to the Source Code is unreasonable because the Consent Judgment and Permanent Injunction does not provide access to future versions of the source code. MSCJ Br. at 10 (Docket No. 193). This concern is unfounded. The contract between the State and CMI has expired and there is no reason to believe that a new version of the Source Code will be created for Minnesota. Furthermore, if a new version of the source code was created and CMI were to deny access, the litigant could ask the Court for access to that version of the code. *See* Permanent Injunction at 8-9 ¶ 1(c).

The form of the proposed production in Minnesota is also reasonable. Although Intervenors summarily argue that they need the passcodes and security features as part of the printed Source Code, they have provided no evidence that the security features and passcodes impact test results. Redaction of the security features and passcodes is necessary to protect the integrity and the security of the State's networked systems of Intoxilyzer 5000ENs and does not impact the reliability of the test instrument. *See* Affidavit of Toby Hall ¶¶ 26-31 (Docket No. 49). Again, if a litigant truly believes it is necessary to have access to the Source Code security features and passcodes, such access can be obtained in Kentucky or be a subject of a motion to the Court. Permanent Injunction at 8-9 ¶ 1(c)

Finally, contrary to Intervenors' assertion, *see* Intervenors Mem. at 8, the printed version of the Source Code is not intended to be a substitute for electronic review of the Source Code. It is simply another means to review the Source Code. If a litigant believes that review of the printed version is inadequate, the litigant is free to review the code in its native format in Kentucky.

## II. IT IS REASONABLE TO PROVIDE ACCESS TO THE NATIVE ELECTRONIC VERSION OF THE SOURCE CODE, AND CMI'S RELATED PROCESSES, IN KENTUCKY.

Intervenors and Amicus Minnesota Society for Criminal Justice ("MSCJ") object to the cost of reviewing the native electronic version of the Source Code, and CMI's related processes, in Kentucky. However, regardless of where the Source Code is made available, it will be necessary for a litigant to retain an expert to review the Source Code. Therefore, any additional cost of traveling to and lodging in Kentucky is minimal. Such

cost will be more than offset by the significant benefit recognized by Workman that the experts will have access to CMI's related processes at CMI's facility. *See* Third Gratz Aff. Ex. A at 20. The expert will not need to expend time and money replicating CMI's hardware and software environment at the expert's facility.

Furthermore, the Consent Judgment and Permanent Injunction allows an expert who reviews the Source Code to share his report and testify on behalf of other Minnesota litigants. *See* Permanent Injunction at 10-11 ¶ 5(b). Similarly, an attorney who retains an expert and has obtained a report may share the report with other clients or prospective clients and offer testimony of the expert in different DWI or implied consent proceedings. *See id.* at 11 ¶ 5(c). Defense attorneys may therefore pool[3] their resources to hire a single expert.

Intervenors also claim that an eight-hour workday inhibits proper review because an "expert is prevented from performing automated processing which require more than 8 hour contiguous blocks of time to perform." Intervenors Mem. at 10. This is not an accurate reading of the terms of the settlement. While the expert can only be in CMI's facility between 8 a.m. and 4 p.m., there is nothing in the settlement that prohibits an expert from starting an automated process between 8 a.m. and 4 p.m. and letting the process run at CMI's facility overnight.

---

[3] The MSCJ, for example, is a group of fifty of the "top [criminal]defense attorneys in Minnesota." *See http://www.mscj.org/* (last visited June 15, 2009). If it so desired, the MSCJ could ask its members and other defense attorneys litigating DWI and implied consent cases to pool their resources to hire an expert.

6

Intervenors and MSCJ assert that review in Kentucky is unreasonable because CMI will be able to examine the work product of any defense expert. Intervenors Mem. at 10-11. However, nothing in the Consent Judgment and Permanent Injunction gives CMI the authority to examine the defense expert's work product.

### III. THE CONDITIONS TO GAIN ACCESS TO THE SOURCE CODE ARE REASONABLE.

In order to gain access to the Source Code a defendant/petitioner must satisfy three very reasonable prerequisites. First the defendant/petitioner must obtain a state district court order either requiring production of the Source Code or finding the Source Code relevant or material to the reliability of the Intoxilyzer 5000EN test result at issue in the proceeding. *See* Permanent Injunction at 9 ¶ 3(a). This is consistent with Special Condition 12 of the State/CMI contract which states that CMI must provide information when ordered by "the court with jurisdiction of the case." *See* First Affidavit of Emerald Gratz ("First Gratz Aff.") Ex. A. at BCA096 ¶ 12 (Docket No. 141).

Second, the state district court must issue a protective order designating the Source Code as confidential and protecting the Source Code from being disclosed to anyone outside the litigation. Permanent Injunction at 9-10 ¶ 3(b). A recommended Protective Order for state district court judges is attached to the Consent Judgment and Permanent Injunction as Exhibit 1. The recommended Protective Order is similar to the federal court form protective order. State district court judges are not required to use this recommended Protective Order. Permanent Injunction at 9-10 ¶ 3(b). Judges are free to create their own protective order pursuant to the Consent Judgment and Permanent Injunction. *Id*.

Third, any individual involved in the criminal DWI or civil implied consent case who will receive access to the Source Code must execute a straightforward Non-Disclosure Agreement attached to the Consent Judgment and Permanent Injunction as Exhibit 2. Permanent Injunction at 10 ¶ 3(c). This is consistent with the contract which requires the execution of a non-disclosure agreement. First Gratz Aff. ¶ 4, Exhibit C at BCA070 (Docket No. 141).

Amicus MSCJ argues that the protective order does not specifically allow for "information to be disclosed as evidence in jury trials." MSCJ Br. at 10. Nothing in the suggested protective order, however, prohibits the expert from testifying about his findings concerning the reliability of the Intoxilyzer, including defects in the Source Code. *See* Consent Judgment Ex. 1 ¶ 7.

The conditions for obtaining access to the Source Code are reasonable and very common in cases involving information that is claimed to be proprietary.

**IV.  INTERVENORS AND MSCJ MISCONSTRUE STATE COURT APPELLATE DECISIONS ADDRESSING THE SOURCE CODE.**

Intervenors argue that Minnesota appellate courts have concluded that the entire Source Code was conceived and originated by CMI before the State and CMI entered into the contract in 1997. *See* Intervenors Br. at 11-12. To the contrary, Minnesota appellate courts have never held that the State owns the Source Code, or any portion thereof, under the contract. *See Underdahl v. Comm'r of Public Safety*, 735 N.W.2d 706, 712 (Minn. 2007) ("*Underdahl I*") (declining to decide the parties' copyright ownership arguments); *State v. Underdahl*, ___ N.W.2d ___ . 2009 WL 1150093 *8 (Minn. 2009) ("*Underdahl*

*II*") (holding district courts did not abuse their discretion in finding the State had possession or control of the Source Code but not addressing the issue of ownership of the code); *Abbott v. Commissioner of Public Safety,* 760 N.W.2d 920 (Minn. Ct. App. 2009) (holding that district court did not abuse its discretion in finding that the State did not have possession or control of the Source Code but did not address the issue of ownership).

Amicus MSCJ argues that the Court should not approve the Consent Judgment and Permanent Injunction because in *Underdahl II* and *State v. Crane*, ___ N.W.2d ___, 2009 WL 1515264 (Minn. Ct. App. 2009) the courts ordered production of the code without a protective order. MSCJ Br. at 12. In *Crane*, the district court denied the defendant's motion to produce the Source Code by finding that the State was not in possession of the Source Code. *See Crane*, 2009 WL 1515264 at *2-3. Thus, in *Crane* the question of whether a protective order was necessary was not in front of the district court. *Underdahl II* does not address the question of a protective order.

### V. THIS COURT SHOULD NOT DELAY APPROVAL OF THE CONSENT JUDGMENT

Intervenor and Amicus MSCJ both ask this court to ignore the reality that the DWI system is in crisis. There is compelling evidence in the record demonstrating the urgency of the situation. *See, e.g.*, First Gratz Aff. ¶¶ 8-10 (Docket No. 141); Second Affidavit of Emerald Gratz ¶¶ 2-4 (Docket No. 156); Lemons Affidavit ¶ 6 (Docket No. 132). Even if the entire State were to stop using the Intoxilyzer 5000EN for future DWI tests, there are still thousands of pending cases with Intoxilyzer 5000EN test results. After extensive litigation and discovery, the State and CMI have come to a settlement that provides

9

litigants with reasonable access to not only the Source Code but the entire process of taking the Source Code from human readable format into the format on the EPROM chips in the Intoxilyzer 5000EN.[4] There is no reason to delay entry of the Consent Judgment and Permanent Injunction.

---

[4] Amicus MSCJ's statement that no discovery has been conducted in this case is false. *See* MSCJ Br. at 10. Extensive discovery has been conducted. *See* Affidavit of Daniel L. Abelson ¶ 3 (Docket No. 166). Intervenors simply have elected not to serve any discovery of their own.

# CONCLUSION

Based upon the foregoing, the State respectfully requests that the Court execute and enter the Consent Judgment and Permanent Injunction in this matter.

Dated:  June 16, 2009

Respectfully submitted,

LORI SWANSON
Attorney General
State of Minnesota

s/ **Alan I. Gilbert**

Alan I. Gilbert
Solicitor General
Atty. Reg. No. 0034678
al.gilbert@state.mn.us

Emerald Gratz
Assistant Attorney General
Atty. Reg. No. 0345829
emerald.gratz@state.mn.us

Daniel L. Abelson
Assistant Attorney General
Atty. Reg. No. 0327554
daniel.abelson@state.mn.us

Thomas C. Vasaly
Assistant Attorney General
Atty. Reg. No. 0112501
thomas.vasaly@state.mn.us

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
Telephone:  (651) 296-9717
Fax:  (651) 282-5832

ATTORNEYS FOR PLAINTIFF STATE OF MINNESOTA

AG: #2459621-v1