<u>AFFIDAVIT</u>

COMMONWEALTH OF KENTUCKY　)
　　　　　　　　　　　　　　) ss.
COUNTY OF DAVIESS　　　　　)

　　　Comes the Affiant Toby Hall, and being first duly sworn, states as follows:

<u>BACKGROUND</u>

　　　1.　　I am the President of CMI, Inc., d/b/a CMI of Kentucky, Inc. ("CMI"), located at 316 East 9th Street, Owensboro, Kentucky. I have held that position since April 2007. I began my career with CMI as an engineer in 1990.

　　　2.　　I hold a Bachelor of Science degree in Electrical Engineering and have over seventeen years' experience in instrumentation and software design, including substantial involvement in the design and manufacture of the Intoxilyzer 5000EN breath-alcohol testing instrument ("I-5000EN").

　　　3.　　CMI manufactures and sells, among other things, the I-5000EN. The I-5000EN operates using embedded software.

　　　4.　　The Source Code is, in layperson's terms, the computer software for the I-5000EN, written in "human readable" form. The instrument does not operate from nor contain the Source Code directly. The Source Code must first be "assembled" or "compiled." A "make" file is used to assemble or compile the Source Code by running through the file list. The make file needs to know the location of all parts of the Source Code so it can assemble or compile the appropriate files. The assembled and compiled files are then linked, creating HEX files which are "computer readable" files that are

loaded onto two Erasable Programmable Read-Only Memory ("EPROM") chips installed in each instrument. One EPROM generally controls the user interface functions, while the other controls the instrument's analytical functions.

5. In connection with the Settlement Agreement between CMI and the State of Minnesota dated June 1, 2009 ("Settlement Agreement"), CMI has agreed to submit to a Consent Judgment and Permanent Injunction that allows Authorized Minnesota litigants, their counsel, or their experts, to have access to the Source Code. Access is subject to entry of an appropriate protective order, execution of a specified non-disclosure agreement, and other terms and conditions set forth in the Consent Judgment and Permanent Injunction.

6. Authorized Minnesota litigants, as defined in paragraph 3 of the Permanent Injunction, will have access to the complete Source Code, in its native, electronic format, at CMI's corporate headquarters in Owensboro, Kentucky. They also have access to a bound, printed copy of the Source Code in Minnesota.

7. CMI has agreed to make the Source Code files for the current version of the I-5000EN available, along with all libraries and files used to assemble or compile and link the Source Code, all make files and scripts used to assemble or compile and link the Source Code, the assembler and linker for the Z-80 processor and the compiler and linker for the 8051 processor, a computer capable of compiling and linking the code, assembled or compiled and linked "HEX files" and EPROMs with the HEX files loaded, and a Minnesota-configured I-5000EN for testing.

8. In addition, CMI has agreed to cooperate, assist, and take reasonably necessary measures to ensure a meaningful review of the Source Code.

9. By providing Authorized Minnesota litigants with the foregoing, CMI is facilitating testing of the live Source Code in its native development environment, which will considerably enhance the integrity of the Source Code review.

10. Previous revisions of the Source Code are not necessary to analyze the current revisions of the Source Code for the I-5000EN.

11. Providing the Source Code alone would not be as valuable to Authorized Minnesota litigants, because each litigant's expert could only attempt to recreate the environment under which the Source Code is developed, assembled or compiled, and linked. It would be necessary for the expert to attempt to replicate CMI's assembler, compiler, and linker—which would mean identifying each system's manufacturer, version, software package, and all patches and revisions of the software—and maintain all files in the test computer in the same manner in which they are maintained by CMI so that they may be properly located by the "make" file.

12. CMI cannot transmit its assembler, compiler, and linker to experts engaged in Source Code review, because CMI uses its assembler, compiler, and linker pursuant to the terms of a license agreement.

13. If even a single file was stored in the wrong place, or any part of the software did not match the CMI systems, the resulting analysis would likely be inaccurate. Indeed, there are literally hundreds of things that could go wrong in this kind of theoretical development environment.

14. Rather than giving Authorized Minnesota litigants a mere "theoretical chance" at testing the Source Code in a theoretical environment, CMI is offering access to the real, native development environment.

15. To the best of my knowledge, Minnesota litigants have never requested, and the State of Minnesota has never been ordered by any court to produce, the native development environment, CMI's assembler, compiler, or linker, or any information about the Source Code development environment. Nonetheless, CMI has agreed to make each of these, and other aspects of the software development and installation process available to Authorized Minnesota litigants to ensure the most meaningful Source Code review.

16. Providing the native development environment for testing the Source Code is consistent with CMI's intent to support the State of Minnesota's breath-alcohol testing program, as well as Minnesota's law enforcement professionals, and the safety of Minnesota's roadways.

17. The Source Code is complex, technical, proprietary information that is highly valuable to CMI. It represents a substantial commitment of assets and resources and is the culmination of many years of research, development, and software engineering. For that same reason, the Source Code would also be highly valuable to current or future competitors. This is because it is possible to obtain one of CMI's instruments and reverse engineer the physical components. However, it is not possible to remove the software from the EPROMs and accurately reverse engineer it back to usable Source Code. This fact, together with CMI's carefully controlled access to the Source Code, constitutes

4

CMI's principal protections against potential and actual competitors. This is particularly the case in various foreign markets where CMI has invested substantial resources in marketing and business development. Thus, the Source Code derives particular value from the fact that it is secret and not generally known or publicly available. CMI considers the Source Code to be one of its most valuable assets.

18. CMI carefully guards its proprietary Source Code. It has never been made available to the general public or to CMI's customers. In the very limited circumstances where CMI has expressed a willingness to make the Source Code available to litigants, it has conditioned such offers upon the entry and execution of the strictest possible Protective Order and Non-disclosure Agreement.

19. Within CMI, only a very select number of personnel with the "need to know" have access to the Source Code. Even I, the President of the Company, do not have direct or uncontrolled access to the Source Code. Those persons who do have access to the Source Code are required to execute a confidentiality agreement as a condition of employment.

20. To further protect the Source Code, it is in a secured location within CMI's facility, which is itself secured by a controlled access security system.

21. As further evidence of CMI's commitment to protecting its Source Code, it has litigated the ownership and control issue in Minnesota and elsewhere, in this case even litigating (with much regret) against the State, a valued customer.

22. CMI cannot begin to calculate the harm it would suffer if the Source Code fell into the hands of a competitor or an unscrupulous individual or enterprise. As noted

above, with the Source Code, CMI's device could be duplicated or "knocked off" with minimal effort and CMI would lose its unique place in the market. Moreover, a competitor that was not required to make the investment in design and software engineering that CMI has made would have a tremendous, unfair competitive advantage. For these reasons, the harm CMI would suffer from disclosure of the Source Code would be irreparable.

23. To protect the confidentiality of the Source Code, it is necessary that access to the Source Code be carefully controlled. Based on my professional experience and training in instrument and software design, I am aware that information in an electronic form is highly "transferrable" and extremely difficult to secure and control. In most operating systems, once information is loaded onto a computer's hard drive, it becomes almost impossible to completely erase or remove that data without physically destroying the hard drive. This is because "deleting" data from a hard drive typically does not remove the data from the hard drive, but instead, it simply deletes certain "locators" that allow the data to be easily retrieved. However, the data can often still be retrieved by a person with even limited computer forensic skills, using restoration programs that are readily available commercially or over the internet.

24. Additionally, due to the internet, e-mail, digital wireless communications, and other technological advances, information in electronic form can be moved around the globe and copied hundreds or even thousands of times in just fractions of a second.

25. Accordingly, in order to maintain the integrity and security of CMI's valuable, proprietary, trade secret Source Code, it is necessary that it be produced only as

6

described in the conditional Settlement Agreement and the proposed Consent Judgment and Permanent Injunction. This will prevent unauthorized reproduction, transmission, or removal of the Source Code.

26. Based on my professional experience and training and my knowledge of the Source Code, I believe that a qualified expert in the field of software and source code design can fully and appropriately inspect, review, and analyze the Source Code in the written and digital formats set forth in the proposed Consent Judgment and Permanent Injunction.

27. The Source Code contains passcodes and secure communication protocols for instrument operation. The State required CMI to put these passcodes in place to prevent unauthorized access to control and menu functions on the instrument that are used by authorized technicians to calibrate, test, and maintain the instruments in accordance with the State's needs.

28. Were these passcodes and secured functions to become public, unauthorized persons could gain access and change configurations or otherwise tamper with or disable the instruments and the integrity of the State's testing program would be seriously compromised.

29. The I-5000EN is capable of communicating with a personal computer via modem (phone line) or direct cable connection. These communication protocols are also passcode protected, and those passcodes are also in the Source Code.

30. Unauthorized persons in possession of the passcodes and secured functions could also tamper with or disable the instruments remotely, and the integrity of the State's testing program would be seriously or fatally compromised.

31. These passcodes and communication protocols do not control or affect the manner in which the I-5000EN instrument analyzes a test subject's breath alcohol content.

32. Accordingly, these passcodes and security protocols will be redacted from the printed, hardbound copy of the Source Code available to Authorized Minnesota litigants.

33. The information in this affidavit is true and accurate to the best of my knowledge and belief.

Further your affiant says naught.

This __16__ day of June, 2009.

_____
Toby S. Hall
President, CMI, Inc.

COMMONWEALTH OF KENTUCKY )
                                                )
COUNTY OF _Daviess_ )

Subscribed and sworn to before me by Toby S. Hall, President of CMI, Inc., on the __16__ day of June, 2009.

_____
Donna Parks
Notary Public, State at Large
My commission expires: __5/20/10__

4535103v3

8