UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

State of Minnesota,                                    Civil No. 08-603 (DWF/AJB)
by Michael Campion, its
Commissioner of Public Safety,

               Plaintiff,

and                                                              **MEMORANDUM**
                                                        **OPINION AND ORDER**
Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen, and Christopher D.
Jacobsen,

               Plaintiff-Intervenors,

v.

CMI of Kentucky, Inc.,

               Defendant.

---

Emerald A. Gratz, Daniel L. Abelson, and Thomas C. Vasaly, Assistant Attorneys General, and Alan I. Gilbert, Solicitor General, Minnesota Attorney General's Office, counsel for Plaintiff.

Charles A. Ramsey, Esq., and Daniel J. Koewler, Esq., Charles A. Ramsey & Associates, PLLC; and John J. Gores, Esq., Gores Law Office, counsel for Plaintiff-Intervenors.

David M. Aafedt, Esq., Jessica Slattery Karich, Esq., Erin A. Oglesbay, Esq., and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendant.

---

**INTRODUCTION**

      This matter is before the Court upon a motion to dismiss brought by Defendant

CMI of Kentucky, Inc. ("CMI") which seeks dismissal of the complaint of

Plaintiff-Intervenor Christopher D. Jacobsen ("Jacobsen"). Jacobsen opposes the motion.

Plaintiff State of Minnesota, by Michael Campion, its Commissioner of Public Safety (the "State") did not submit a brief, but appeared at the hearing held in this matter in support of Jacobsen.[1] For the reasons set forth below, the Court grants CMI's motion.

**BACKGROUND**

CMI manufactures and sells the Intoxilyzer 5000EN (the "Intoxilyzer"), a breath-testing device used to measure a driver's alcohol consumption. The results of testing performed utilizing the Intoxilyzer are used in criminal prosecutions for drunken driving offenses in Minnesota, as well as in civil driver's license revocation actions. Some criminal defendants and civil revocation petitioners have asserted a right to examine the Intoxilyzer's source code ("Source Code") which is the computer program that runs the device. A number of defendants and petitioners have obtained court orders from Minnesota state courts ordering the production of the Source Code.[2] The State, for

---

[1] Though the State did not submit a brief and had an opportunity to be heard at the hearing, the Court received a request from the State after the hearing asking that the Court delay its decision on CMI's motion until other motions filed by the State and CMI could be heard. Generally, this Court issues orders within 30 days after a hearing. The Court agreed to delay its ruling in this matter, however, because of the concern that the issues raised by the other motions could bear on the Court's consideration of CMI's motion. The State and CMI subsequently entered into a settlement agreement and the additional motions were not heard, but the settlement agreement did not resolve the issues presented by this motion. Therefore, the Court now issues this order to dispose of the remaining issues.

[2] Robert J. Bergstrom, Craig A. Zenobian, Shane M. Steffensen, and Jacobsen (the "Plaintiff-Intervenors") are litigants who have obtained such a court order. The Court permitted their intervention in this matter because it determined that the State was unable to represent their interests adequately, given that the State had taken the position in numerous cases that such parties are not entitled to examine the Source Code and that the Source Code has no relevance to their cases. (Doc. No. 58.)

the most part, has asserted that it is unable to provide the Source Code to these litigants, and CMI has refused to provide the Source Code in the majority of cases. This conflict has resulted in the dismissal of a number of cases and has caused disruption in the state court system.

Unable to resolve these issues in state court litigation, the State sued CMI to obtain access to the Source Code for litigants in Minnesota. The State asserted claims against CMI for access to the Source Code pursuant to the contract between the Minnesota Department of Public Safety and CMI, under which the Intoxilyzers were sold to the State. At issue is a provision in the contract requiring CMI to provide "information to attorneys supplied directly from the manufacturer . . . to be used by attorneys representing individuals charged with crimes in which a test with the [Intoxilyzer] is part of the evidence." (Aff. of William A. McNab in Supp. of Def.'s Mtn. to Dismiss the Compl. in Intervention of Pl.-Intervenor Christopher D. Jacobsen ("McNab Aff.") ¶ 7, Ex. 6 at ¶ 12.) This is the provision upon which the Plaintiff-Intervenors, as third-party beneficiaries, rest their right to the Source Code. CMI contends that the term "information" in the contract does not include the Source Code.[3]

---

[3] CMI's motion also argued that that it has no obligation to provide any information to Jacobsen because he did not obtain a court order for production of the Source Code until after the contract expired on January 31, 2008. The Court concludes that this issue is now moot, because CMI has agreed to provide the Source Code to litigants regardless of the date upon which they obtained an order allowing access. By an order issued contemporaneously herewith, the Court has approved the settlement agreement containing this obligation and entered a consent judgment requiring such access. The Court notes, however, that this result is consistent with the terms of the contract regarding the provision of information. The contract's purpose was to permit the State of

(Footnote Continued on Next Page)

3

# DISCUSSION

## I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss

---

(Footnote Continued From Previous Page)
Minnesota to acquire Intoxilyzers at a specific price for the duration of the contract. CMI could have received an order for new units the day before the contract expired. In such a circumstance, CMI would have been obligated to deliver the units after the contract expired. Such units would also have been under a warranty for two years after expiration of the contract. According to the contract interpretation CMI urged the Court to adopt, CMI would have had no obligation to provide information to defendants who could be convicted as a result of testing using such devices. This Court cannot agree that the contract could be so interpreted. The term of the contract triggering CMI's obligation to provide information does not contain any specific time limitation, but is broadly written to include any individual who was charged with a crime using testing achieved with the device and who obtained a court order. Further, CMI's interpretation would require the Court to conclude that the State contracted for a certain due process right for one group of defendants, but no such due process right for other defendants. This would be an unreasonable construction and it is not supported by the record.

under Rule 12(b)(6).[4] *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

## II. Whether "Information" Includes the Source Code

This case turns upon the definition of the contractual term "information," and whether that term includes the Source Code. The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn. 1979). Contract language "must be given its plain and ordinary meaning and will be enforced by the courts even if the results are harsh." *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky,* 674 N.W.2d 176, 179 (Minn. 2004) (quoting *Denelsbeck v. Wells Fargo & Co.,* 666 N.W.2d 339, 346-47 (Minn. 2003) (quotation omitted)). The meaning of terms is determined within the context of the document as a whole and not in isolation. *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.,* 279

---

[4] The Court has considered the allegations in the Complaint, along with contractual provisions contemplated by those allegations. Therefore, the Court considers this motion as a motion to dismiss, rather than as a motion for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d). Notwithstanding that, the Court determines that even if this motion were treated as a Rule 56 summary judgment motion, the outcome would not change.

5

N.W.2d 349, 354 (Minn. 1979). Accordingly, courts are required to harmonize all provisions if possible and to avoid a construction that would render one or more provisions meaningless. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.,* 530 N.W.2d 539, 543 (Minn. 1995).

The construction and effect of a contract presents a question of law, unless an ambiguity exists. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn. 1998). A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Id.* Generally, courts may resort to extrinsic evidence of intent to construe a contract only if an ambiguity exists. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982).

In this case, however, the contract provides that it is "governed by the Uniform Commercial Code (UCC) as adopted by the State of Minnesota." (Decl. of Daniel J. Koewler in Supp. of Intervenor's Resp. to Def.'s Mot. to Dismiss ("Koewler Decl.") ¶ 2, Ex. 1 at ¶ 31.) In contracts governed by the UCC, a court may consider certain extrinsic evidence without first finding that a contract is ambiguous; under the UCC a final contract may be "explained or supplemented" by evidence regarding course of performance, course of dealing, or usage of trade. Minn. Stat. § 336.2-202[5]; *Am. Mach. and Tool Co., Inc. v. Strite-Anderson Mfg. Co.*, 353 N.W.2d 592, 597 (Minn. Ct. App.

---

[5] The UCC Comment to this section states that the section "definitely rejects . . . [t]he requirement that a condition precedent to the admissibility of [course of dealing, course of performance and usage of trade evidence] is an original determination by the court that the language used is ambiguous." Minn. Stat. § 336.2-202 cmt. 1(c).

1984). Such evidence is admissible if it is relevant to prove a meaning to which the language of the contract is reasonably susceptible. *Am. Machine and Tool Co.*, 353 N.W.2d at 597; Minn. Stat. § 336.1-303(d) (course of dealing, course or performance and usage of trade evidence "is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement"). Such evidence, however, may not contradict the terms of the agreement. Minn. Stat. § 336.2-202.

In this case, the contract is not a single document. The State issued a request for proposals ("RFP") stating that: "[t]he contents of this RFP and the response of the successful vendor will become contractual obligations, along with the final contract." (McNab Aff. ¶ 2, Ex. 1 at ¶ 32.) Therefore, the contract consists of the RFP, CMI's proposal in response, and the State's Notification of Award. When multiple writings are executed as part of the same transaction, the documents will be construed together. *Wm. Lindeke Land Co. v. Kalman*, 252 N.W. 650, 652-53 (Minn. 1934).

The RFP contains a requirement that responsive proposals include a "provision for information to attorneys supplied directly from [the] manufacturer." (McNab Aff. ¶ 7, Ex. 6 at ¶ 12.) CMI asserts that the definition of the term "information" is supplied by its proposal, which included a form letter to be sent by CMI to attorneys containing the following paragraph:

> In response to your request of [sic] to obtain information, specifically the Operation and Maintenance Manuals for the [Intoxilyzer]. The Operation Manual for the [Intoxilyzer] is the only manual that would be available to you.

7

(McNab Aff. ¶ 11, Ex. 10.) CMI contends that the State did not object to this definition of information and subsequently awarded the contract to CMI. (McNab Aff. ¶ 12, Ex. 11.) Therefore, CMI argues that the contract defines information to include only the Operation Manual for the Intoxilyzer and that there is no contractual requirement that it provide the Source Code to Minnesota litigants.

Jacobsen asserts that the RFP defines the term information. Jacobsen contends that the term means any information that a court orders be produced, including the Source Code. According to Jacobsen, CMI's limitation of the scope of the term information to include only the Operation Manual was a material deviation from the terms of the RFP, and that CMI did not alert the State to the deviation, but instead unequivocally accepted the RFP's terms including its definition of information. Further, Jacobsen argues that CMI knew that the term included the Source Code because CMI agreed to provide the State with copies of its Operation Manual and Service Manual for only $25, while the cost of the information supplied to attorneys was listed on CMI's pricing sheet at $250, suggesting that something other than the manuals was to be provided. Jacobsen asserts that CMI's confidentiality agreement also contemplated that documents or materials other than the Operations Manual would be provided because it contained a term requiring the recipient not to disclose any pamphlets, manuals or any other documents containing information on the Intoxilyzer. Jacobsen argues the inclusion of other types of writings suggests the provision of information other than the Operation Manual.

The Court concludes that the term information does not include the Source Code. The RFP does not define the term information or require that any particular type of

information be provided. Rather, the definition is provided by CMI's proposal, which is a part of the contract, and which expressly refers to a request for information by stating that "the Operation Manual is the only manual that would be available to you." (McNab Aff. ¶ 11, Ex. 10.) This statement is unambiguous.[6] Further, contrary to Jacobsen's arguments, this document does not simply describe the procedure for obtaining information, it also substantively defines the information that CMI will provide.

In addition, none of the documents comprising the contract indicate that the parties contemplated that the Source Code for the Intoxilyzer would be provided to Minnesota litigants. Jacobsen's assertion that the RFP defined information to include any information whatsoever that a court might order be produced is unsupported by the language of the contract. Jacobsen further argues that the RFP indicates an intention for the Source Code to be provided because Minnesota litigants have a right to the Source Code under the Fifth and Sixth Amendments to the Constitution of the United States and under Minnesota Statute section 169A.53, subd. 3(b)(10).[7] This argument is unavailing.

---

[6] The Court recognizes that some of the language of the contract is artless and somewhat inarticulate, a result that stems in part from the contracting method used, which results in multiple documents drafted independently rather than one integrated whole. Notwithstanding that, the proposal's language providing that the Operation Manual is the only manual available directly after a specific reference to a request for information is not reasonably susceptible to an interpretation that includes the Source Code.

[7] The question of whether criminal defendants have a constitutional or statutory right to access to the Source Code is an issue not before this Court. It certainly may be that these rights exist, though they are not contractual rights, and the Court's decision today that Jacobsen lacks a contractual right to the Source Code is not determinative of the question of whether Jacobsen and similarly situated litigants have a right to access to

(Footnote Continued on Next Page)

The State could have defined the term information in the RFP, and perhaps should have, but it did not do so. The existence of any constitutional or statutory rights operate independently of the contract and do not, without any reference to such rights, supply a definition for this undefined term.

Jacobsen's argument that CMI's definition of information constituted a material deviation does not bear on the interpretation of the contract. The RFP merely required that proposals include a provision for information to attorneys of criminal defendants; it did not impose any particular requirements on what that information might include. Therefore, CMI's limitation of the information to be provided to the Operation Manual was not a material deviation from the terms of the RFP. CMI's proposal, which is a part of the contract, supplied a contract term that was previously undefined. Further, the absence of a provision for obtaining a protective order in the contract suggests that the parties never intended for the Source Code to be considered information. The Source Code is CMI's confidential, proprietary intellectual property, disclosure of which would

---

(Footnote Continued From Previous Page)
the Source Code. The Court's decision on the issue before it also is not inconsistent with the decisions of Minnesota appellate courts, some of which have allowed litigants access to the Source Code without answering squarely the question of whether the right to the Source Code arises from a contract, or a constitutional or statutory provision. In any event, in a separate order issued today, the Court has entered a Consent Judgment and permanent injunction that requires CMI to make the Source Code available, an outcome that the Court finds to be in the public interest as well as in the interests of justice, in part because when the State decides to use the Intoxilyzer results as evidence against its citizens, it owes those citizens some disclosure regarding the workings and reliability of this instrument. Beyond this, however, the Court will not engage in an inquiry regarding the scope of Minnesota litigants' substantive, constitutional and statutory rights because such an inquiry is best left to be developed in the Minnesota state courts.

be detrimental to CMI's position in the marketplace. Unlike the Operation Manual, which is reasonably protected by a confidentiality and non-disclosure agreement, the Source Code is the type of intellectual property for which a party would ordinarily seek or require execution of a protective order.

Jacobsen's other arguments fail to show that the contract requires CMI to provide the Source Code. Jacobsen asserts that CMI's pricing indicates its knowledge that the Source Code was included in information because CMI charged the State substantially less for manuals than it would charge Minnesota litigants. CMI contends that it merely gave preferred pricing to its contract partner. Whatever the reason for the pricing differential, the Court cannot conclude from a mere variation in pricing that the State and CMI intended for the Source Code to be included in the term information. The same is true for the term in CMI's confidentiality agreement requiring that a recipient not disclose pamphlets, manuals, or other documents. Even if the Court were to construe this as creating an ambiguity, there is simply no evidence that the parties contemplated that the Source Code was included in this term.

Further, the course of performance between the parties does not support an interpretation that would include the Source Code within the definition of information. Course of performance refers to the actions of the parties during the performance of the contract. Minn. Stat. § 336.1-303(a); *Cut Price Super Markets v. Kingpin Foods, Inc.,* 98 N.W.2d 257, 268 (Minn. 1959). "[T]he course of actual performance by the parties is considered the best indication of what they intended the writing to mean." Minn. Stat. § 336.2-202 cmt. 2. In this case, the parties entered into the contract in January of 1997,

and the contract was extended by amendment several times until its ultimate expiration on January 31, 2008. It is clear that the course of performance between the parties to this contract did not include access to the Source Code for Minnesota litigants.[8] In fact, CMI's near-absolute refusal to make the Source Code available, and its insistence on the entry of a protective order before it would provide the Source Code, have been hallmarks of CMI's performance under the contract and led to the present suit.[9]

Based on the foregoing, the Court concludes that the contract term requiring the provision of information by CMI does not include the Source Code. Therefore, Jacobsen does not have a contractual right to production of the Source Code and his Complaint must be dismissed.[10] As a result of this decision, the Court must also conclude that the other Plaintiff-Intervenors also lack a contractual right to obtain the Source Code. The Court anticipates that, in light of this decision, the parties will reach some agreement

---

[8] Indeed, the controversy relating to the Source Code is one of recent vintage. The record in this case suggests that for many years, the parties operated under the contract without giving any thought to the Source Code, which undercuts Jacobsen's assertion that the parties intended that the Source Code would be provided. To the contrary, it appears more likely that issues regarding the Source Code were not contemplated by the parties at the time they entered into the contract and it did not become an issue until litigants began requesting Source Code access within the last few years.

[9] The record contains evidence that CMI provided the Source Code to one litigant. The Court concludes that this one variation from CMI's practice is not sufficiently probative to alter the otherwise consistent course of performance.

[10] The Court again notes that this order does not determine whether Jacobsen and similarly situated litigants have a right to access the Source Code. Instead, it only concludes that the State's contract with CMI does not provide such a right. Notwithstanding that, the Court's order approving the Consent Judgment and permanent injunction, also issued today, requires CMI to provide Source Code access to Minnesota litigants.

regarding dismissal of the other Plaintiff-Intervenors from this action or will make a request for such relief from this Court.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Defendant's Motion to Dismiss Complaint in Intervention of Plaintiff-Intervenor Christopher D. Jacobsen (Doc. No. 62) is **GRANTED**.

2. The claims of Defendant Christopher D. Jacobsen are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 16, 2009
s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge