# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

State of Minnesota,
by Michael Campion, its
Commissioner of Public Safety,

Civil No. 08-603 (DWF/AJB)

        Plaintiff,

and

**ORDER APPROVING CONSENT
JUDGMENT AND PERMANENT
INJUNCTION AND MEMORANDUM**

Robert J. Bergstrom, Craig A. Zenobian,
Shane M. Steffensen, and Christopher D.
Jacobsen,

        Plaintiff-Intervenors,

v.

CMI of Kentucky, Inc.,

        Defendant.

---

Emerald A. Gratz, Daniel L. Abelson, and Thomas C. Vasaly**,** Assistant Attorneys General, and Alan I. Gilbert, Solicitor General, Minnesota Attorney General's Office, counsel for Plaintiff.

Charles A. Ramsey, Esq., and Daniel J. Koewler, Esq., Charles A. Ramsey & Associates, PLLC; and John J. Gores, Esq., Gores Law Office, counsel for Plaintiff-Intervenors.

David M. Aafedt, Esq., Jessica Slattery Karich, Esq., Erin A. Oglesbay, Esq., and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendant.

Marsh J. Halberg, Esq., Halberg Criminal Defense, and Jeffrey S. Sheridan, Esq., Strandemo, Sheridan & Dulas, P.A., counsel for *amicus curiae* Minnesota Society for Criminal Justice.

Josh P. Graham, Esq., Merchant & Gould PC, counsel for *amicus curiae* Minnesota DWI Taskforce.

William A. Lemons, Esq., Minnesota County Attorneys Association, counsel for *amicus curiae* Minnesota County Attorneys Association.

Mark J. Schneider, Chestnut & Cambronne, P.A., counsel for *amicus curiae* Suburban Hennepin County Prosecutors Association.

---

## INTRODUCTION

This matter is before the Court upon the Joint Motion for Entry of Consent Judgment and Permanent Injunction (the "Joint Motion") filed by the Plaintiff State of Minnesota, by Michael Campion, its Commissioner of Public Safety (the "State") and Defendant CMI of Kentucky, Inc. ("CMI") and upon CMI's Motion for Additional Findings of Fact and Conclusions of Law. The Court permitted appearances by *amicus curiae* in this matter and the Minnesota County Attorneys Association and the Suburban Hennepin Prosecutors Association appeared in support of the Joint Motion. The Plaintiff-Intervenors Robert J. Bergstrom, Craig A. Zenobian, Shane M. Steffensen, and Christopher D. Jacobsen (the "Plaintiff-Intervenors") oppose the Joint Motion. Also appearing in opposition to the Joint Motion was the Minnesota Society for Criminal Justice.

For the reasons explained below in the Court's attached Memorandum, the Court grants the relief requested in the Joint Motion, and issues this order approving the Consent Judgment, as modified, and entering a permanent injunction. The Court denies CMI's Motion for Additional Findings of Fact and Conclusions of Law.

# CONSENT JUDGMENT AND PERMANENT INJUNCTION

**WHEREAS,** by a contract awarded in January 1997, the State bought a fleet of Intoxilyzer 5000EN breath-alcohol testing instruments from CMI. The Intoxilyzer 5000EN instruments are used to test the breath-alcohol concentration of persons who may be charged with violations of Minnesota's driving while impaired ("DWI") and implied consent laws; and

**WHEREAS,** litigation has arisen between the State, CMI, and Plaintiff-Intervenors regarding access to and ownership of the source code ("Source Code") for the version of the Intoxilyzer 5000EN, sold to the State; and

**WHEREAS,** the State and CMI have filed and served dispositive motions addressing the majority of the pending claims in the case; and

**WHEREAS,** the State and CMI, wishing to avoid the cost, risk, uncertainty, and delay of further protracted and expensive litigation, including likely appeal, have entered into a conditional Settlement Agreement ("Settlement Agreement"), which is contingent upon the entry of this Consent Judgment and Permanent Injunction ("Consent Judgment") and incorporated herein by reference; and

**WHEREAS**, in furtherance of and in conjunction with the Settlement Agreement, the State and CMI have consented to the entry of this Consent Judgment; and

**WHEREAS**, this Consent Judgment and Permanent Injunction is not binding on Minnesota state courts; and

**WHEREAS**, the Court has carefully considered the validity and reasonableness of this Consent Judgment; and

**WHEREAS**, the State brought claims under the U.S. Copyright Act, 28 U.S.C. §§ 101, *et seq*., and under the common law of Minnesota. Accordingly, this Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to the action occurred in this judicial district; and

**WHEREAS**, the State and CMI mutually desire to make the Source Code readily and reasonably available to defendants in criminal DWI cases and petitioners in implied consent cases. Such reasonable access exists under circumstances and conditions that adequately recognize and protect the State's interest in the security features and passcode-protected functions of the State's fleet of instruments and CMI's interest in its intellectual property. The State and CMI have entered into a Settlement Agreement that is expressly contingent upon the Court's entry of this Consent Judgment. The Settlement Agreement is fully incorporated herein by reference.

**NOW, THEREFORE,** the Court issues the following Findings of Fact Conclusions of Law, Permanent Injunction, and Order:

## FINDINGS OF FACT

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, and based on the record of all proceedings in this case, the Court finds the following:

1. In January 1997, the State and CMI entered into a contract through a Request for Proposal ("RFP") issued by the State, a Proposal submitted by CMI, a Request for Clarification from the State, a Response to Request for Clarification from CMI, and a Notification of Contract Award by the State (collectively, the "Contract").

Pursuant to the Contract, CMI sold Intoxilyzer 5000EN breath-alcohol testing instruments configured for the State's specifications to the Minnesota Department of Public Safety and other Minnesota law enforcement agencies. There are approximately 264 Intoxilyzer 5000EN instruments currently being used by law enforcement agencies throughout Minnesota.

2. Under the Contract, CMI assigned to the State all copyrightable material that CMI conceived or originated and which arose out of the performance of the Contract. The Court finds that CMI conceived and originated part of the Source Code before the State and CMI entered into the Contract in January 1997. Therefore, this part of the Source Code did not arise under the Contract. In the Settlement Agreement, CMI agrees to assign and deliver to the State, free and clear, all portions of the Source Code that were conceived and originated and arose under the Contract (subject to the State's independent verification), irrespective of its copyrightability. The Court finds that this fairly and reasonably resolves the issues of ownership of the Source Code and alleged copyright infringement.

3. The Parties dispute whether Special Condition 12 of the Contract required CMI to provide "information" that included the Source Code to Minnesota DWI defendants or petitioners in civil implied consent cases, and whether CMI had a duty to provide any information following the expiration of the Contract. Under the Settlement Agreement, CMI agrees, *inter alia*, to make the complete Source Code, as well its process of compiling or assembling, linking, and installing the Source Code in computer readable form in its Intoxilyzer 5000EN instruments, available at its corporate

headquarters in Owensboro, Kentucky.  CMI also agrees to make printed, hardbound copies of the complete Source Code (subject to the redaction of security and passcode features described herein) available in Minnesota.  CMI agrees to make the complete Source Code available as long as criminal DWI and/or civil implied consent cases involving Intoxilyzer 5000EN test results are pending in Minnesota courts.  CMI agrees to make the complete Source Code available to both defendants in criminal cases and petitioners in civil implied consent proceedings.

4. Based on the record before the Court, the Court finds that the manner and extent of access to the Source Code provided for under the Settlement Agreement and this Consent Judgment and Permanent Injunction constitutes a fair and reasonable resolution of the State and CMI's dispute over access to the Source Code for Minnesota litigants.  The Court further finds that this resolution provides Minnesota litigants with reasonable access to review the Source Code.

5. The Intoxilyzer 5000EN instruments in the State's system are networked and have menu-driven features and functions that can be directly or remotely changed, which requires these features and functions to be passcode protected.  The Court finds that the unauthorized disclosure of the Intoxilyzer 5000EN network security features and passcode-protected functions could compromise the security of the State's networked system of Intoxilyzer 5000EN breath-alcohol testing instruments.

## CONCLUSION OF LAW

The Court concludes that the entry of this Consent Judgment and Permanent Injunction serves the public interest and the interests of justice by providing reasonable

access to the Source Code for Minnesota litigants in a manner that protects the State's interest in security features and passcode-protected functions, and CMI's interest in its intellectual property.

**PERMANENT INJUNCTION**

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 65 of the Federal Rules of Civil Procedure, the Court orders that CMI shall make the Source Code available for inspection and review by Authorized Minnesota litigants (as defined in Paragraph 3, below), their counsel, or their experts, subject to the following terms and conditions:

1. Pursuant to the Settlement Agreement and the Consent Judgment, not later than fourteen (14) days after the entry of this Consent Judgment, and subject to the terms and conditions set forth herein, CMI shall make the Source Code available to Authorized Minnesota litigants, their counsel, or their experts, for inspection and review as set forth in Paragraph 1(a) below. Not later than thirty (30) days after the entry of this Consent Judgment, and subject to the terms and conditions set forth herein, CMI shall make the Source Code available to Authorized Minnesota litigants, their counsel, or their experts, for inspection and review as set forth in Paragraph 1(b) below.

    a. **At CMI's corporate headquarters in Owensboro, Kentucky**. CMI shall make the Source Code available to Authorized Minnesota litigants, their counsel, or experts, during regular business hours between 8:00 a.m. and 4:00 p.m., excluding weekends, holidays, and any days when CMI is not open for regular business purposes. CMI shall provide access to the following:

7

      i.      All Source Code files for the current version of Intoxilyzer 5000EN software (1408.62 and 7502.40 [a.k.a. 75_0240]) in native electronic format, capable of review and analysis by commercial source code review software such as LINT or Understand.

      ii.      All libraries and files used to assemble or compile and link the Source Code.

      iii.      All make files and script files used to assemble or compile and link the Source Code.

      iv.      The assembler and linker for the Z-80 processor and the compiler and linker for the 8051 processor.

      v.      A computer capable of assembling or compiling and linking the Source Code. CMI will also provide a printer for printing sections of material for ease of review on site; however, all printouts including or comprising any portion of the Source Code will be retained by CMI at the end of the evaluation.

      vi.      Completely assembled or compiled and linked "HEX files" for both the Z-80 and 8051 systems, and EPROMs with the HEX files loaded for both the Z-80 and 8051 systems.

      vii.      A printout of actual data obtained as a result of calibration.

      viii.      A COBRA system as used by the State of Minnesota to download data from instruments and the cables required to link to a test instrument.

      ix.      A Minnesota-configured Intoxilyzer 5000EN for testing, loaded with the EPROMs mentioned in item vi. CMI will also make available wet bath simulators and solution for instrument testing.

CMI shall not charge Authorized Minnesota litigants, their counsel, or their experts any fee or cost for the access described above. No part of

the Source Code in its native electronic format shall be copied, transmitted, or removed from CMI's corporate headquarters in Kentucky.  No portion of the Source Code shall be copied verbatim except as necessary for meaningful expert review.  Any notes, summaries, reports, or other documents that contain a verbatim recitation of any portion of the Source Code shall not be publicly disclosed unless all verbatim recitations of the Source Code have been completely redacted, and if filed with a court of law, shall be filed under seal.  If Authorized Minnesota litigants, their counsel, or experts, load the Source Code onto their own computers for analysis with commercial programs such as LINT or Understand, or for any other purpose, such computers may not have communications capabilities, including wi-fi/wireless, Ethernet, or modem capability, or such capabilities must be completely disabled.  Further, such computers must have any external drives, USB ports, and other data transfer capabilities disabled.  If any portion of the Source Code is loaded onto a reviewer's computer, the reviewer must agree to destroy the computer's hard drive at CMI in the presence of CMI's representative, or to leave the computer's hard drive at CMI at the conclusion of the review.  CMI shall cooperate, assist, and take reasonably necessary measures to ensure a meaningful review of the Source Code and to protect the integrity of all aspects of the Source Code review.

      b.      **<u>In printed, hardbound book form</u>**. CMI shall also make the Source Code available to Authorized Minnesota litigants in Minnesota in a printed, hardbound book format, subject to the following:

           i.      The printed, hardbound Source Code shall be full and complete in all respects except that Source Code language controlling or constituting the instrument's network security features and menu passcodes shall be redacted.

           ii.      CMI shall charge Authorized Minnesota litigants no more than $250 (or $125 for publicly funded defenses) to obtain a copy of the printed, hardbound Source Code.

           iii.      The printed, hardbound Source Code shall not leave the State of Minnesota except to be returned directly to CMI at the conclusion of the case in which it was made available.

      c.      If an Authorized Minnesota litigant, or his or her attorney or expert, believes that access beyond what is set forth herein is reasonably necessary to perform a meaningful Source Code review, then the Authorized Minnesota litigant and CMI shall attempt in good faith to resolve the issue. If the issue cannot be resolved between the Authorized Minnesota litigant and CMI, the Authorized Minnesota litigant may petition this Court by motion, upon proper notice to the State and CMI, for an order granting such additional access. Reasonable costs and attorney fees may be awarded to the prevailing party in any such motion.

   2.      The Source Code, except for the portion assigned and provided to the State pursuant to Paragraph 8 of the Settlement Agreement, or which may be provided to the

State pursuant to Paragraph 16 of the Settlement Agreement, shall remain the exclusive property of CMI.

3. A petitioner in an implied consent case, the Commissioner of Public Safety, a defendant in a criminal DWI case, or the State, county, or local prosecuting authority, shall be an Authorized Minnesota litigant if all three of the following requirements are fulfilled:

    a. the state district court judge presiding over the criminal DWI or civil implied consent case has ordered production of the Source Code or has made an express finding that the Source Code is relevant or material to the admissibility or reliability of a breath-alcohol test result at issue in the case;

    b. the state district court judge has issued a Protective Order in the criminal DWI or civil implied consent case that designates the Source Code (except the portion assigned and provided to the State in Paragraph 8 of the Settlement Agreement) and any document or testimony containing the Source Code or any part thereof, as Confidential, and protects such Confidential information from disclosure to persons or entities outside the litigation. A recommended form Protective Order is attached hereto as Exhibit 1; and

    c. any person receiving access to the Source Code pursuant to this Permanent Injunction has executed a Non-Disclosure Agreement in the form attached hereto as Exhibit 2. The provision of access to the Source

Code under this Permanent Injunction shall not confer upon any person any other right, title, license, or interest in the Source Code.

4. CMI shall not be required to provide access to the Source Code to any person who is, or has been, employed by (as an employee, agent, or consultant) any manufacturer of breath alcohol testing equipment within the preceding twenty-four (24) months.

5. Permitted uses of access to the Source Code:

a. Authorized Minnesota litigants shall be granted access to the Source Code under this Permanent Injunction solely for the purpose of defending or prosecuting criminal DWI and civil implied consent cases in Minnesota involving the results of a test administered using the Intoxilyzer 5000EN breath alcohol testing instrument as evidence in the case.

b. Any expert who has prepared a written report and/or provided opinion testimony in a Minnesota DWI or implied consent proceeding in which he or she originally obtained access to the Source Code under this Permanent Injunction may share such report and/or provide testimony on behalf of other Authorized Minnesota litigants in other DWI or implied consent proceedings if all the requirements of Paragraph 3 of this Permanent Injunction have been satisfied with respect to the subsequent proceeding(s).

c. Any attorney who has retained an expert in a DWI or implied consent proceeding and has obtained a report from the expert regarding

review of the Source Code, may share the report with a client or prospective client, and use the report and offer testimony of the expert, in a different DWI or implied consent proceeding if the requirements of Paragraph 3 of this Permanent Injunction have been satisfied with respect to the subsequent client and proceeding.

       d.     No written report or testimony regarding the Source Code based on access obtained pursuant to this Permanent Injunction shall be presented in any proceeding or offered into evidence in any forum or jurisdiction other than courts in Minnesota.

This Injunction is Permanent in nature. It shall continue in full force and effect until criminal DWI and/or civil implied consent cases involving Intoxilyzer 5000EN test results are no longer pending in Minnesota courts. This Court shall maintain continuing jurisdiction to enforce the terms of the Consent Judgment and Permanent Injunction and the provisions of the Settlement Agreement incorporated herein. Though the Court denies CMI's Motion for Additional Findings of Fact and Conclusions of Law, the Court reserves jurisdiction to revisit the relief requested therein upon a motion brought by CMI in the event that a determination of the issues presented in that motion are necessary to effectuate the Consent Judgment and Permanent Injunction. This Consent Judgment and Permanent Injunction are governed by federal law and may be modified only in accordance with the Federal Rules of Civil Procedure as the Court deems appropriate.

**ORDER**

1. The Joint Motion for Entry of Consent Judgment and Permanent Injunction (Doc. No. 178) is **GRANTED.**

2. CMI's Motion for Additional Findings of Fact and Conclusions of Law (Doc. No. 184) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 16, 2009          s/Donovan W. Frank
                              DONOVAN W. FRANK
                              United States District Judge

**MEMORANDUM**

The case now before the Court presents, on its face, issues of contract and copyright law. Underlying these issues, however, are concerns about the rights of criminal defendants and petitioners in implied consent drivers' license revocation matters to access the workings of a machine used to convict them or deny them driving privileges. Today the Court approves the Consent Judgment and Permanent Injunction based on the State and CMI's Settlement Agreement. As a result, the State may move forward with prosecution of DWI offenses and revocation proceedings using the Intoxilyzer in order to protect the safety of the public, and Minnesota litigants will have reasonable and, in fact, unprecedented access to the Source Code for the Intoxilyzer, while CMI's intellectual property rights will be protected.

The Court is persuaded that the consent judgment and permanent injunction it enters today are in the public interest, as well as in the interests of justice. In an order

also issued today, the Court concludes that the contract between the State and CMI under which the Intoxilyzers were sold and put into use in Minnesota does not afford litigants the right to review the Source Code. (Doc. No. 205.) In reality, the absence of a contractual right is of no moment in determining whether litigants have a right to access to the Source Code. If the State chooses to use the Intoxilyzer's results to convict its citizens and deny them driving privileges, it has some obligation to provide them with the means to analyze and challenge those results. The Plaintiff-Intervenors in this case argued that analysis of the Source Code is essential to mounting a proper defense. This may or may not be true, but it was clear to this Court that access to the Source Code, whatever its ultimate substantive bearing on these cases, was essential to resolution of that question.

This was the second attempt by the State and CMI to obtain a consent judgment. The Court denied a previous joint motion for a consent judgment and permanent injunction. (Doc. No. 95.) The Court concludes, however, that the present circumstances differ substantially from that first attempt. First, the State and CMI have addressed the Court's concerns regarding the inclusion of factual findings and conclusions of law that were unnecessary or extraneous, or that were unsupported by the record, by excising such provisions from their current Settlement Agreement, Consent Judgment and Permanent Injunction. Second, the current agreement grants extensive access to the Source Code in its native, electronic format, which is the format the Plaintiff-Intervenors sought for their review. Third, the current agreement delivers to the State the portion of the Source Code

in which the State has a copyright interest, vindicating the State's rights under the Contract.

The Court is also satisfied that requiring Minnesota litigants to conduct their Source Code review at CMI's headquarters in Kentucky is not an undue burden. When the Court declined to approve the first attempt at settlement and a consent judgment, it did so partially based on concerns about whether Source Code review in Kentucky provided meaningful access. The record, however, is more fully developed at this time and the Court no longer considers this location a bar to meaningful review. First, experts on whom the parties may rely to conduct a review of the Source Code are not located in Minnesota, and if the Court were to require production of the electronic version of the Source Code in Minnesota, these experts would be required to travel to conduct their analysis. Second, the Plaintiff-Intervenors argued that they had a right to "unfettered access" to the Source Code and that their experts should be entitled to analyze the Source Code in their own labs, wherever they might be located. This type of access, however, would not sufficiently protect CMI's interest in safeguarding the Source Code, which is confidential, proprietary information. Third, through this agreement, CMI will not only make the Source Code available, but also will provide analysts with access to the same testing systems and computer programs CMI uses. This access necessitates that the review be conducted in Kentucky.

The Court notes that CMI will be required to deliver to the State several copies of the Source Code in printed, hardbound form. The Plaintiff-Intervenors object to this provision, arguing that it unnecessarily limits their access to the Source Code because

16

their experts will be unable to review this printed version in their own labs or at CMI's facility in Kentucky. Previously, the Plaintiff-Intervenors contended that a printed version of the Source Code was essentially worthless because review of the native, electronic format provided the only meaningful way to analyze the Source Code. It is, therefore, difficult for the Court to reconcile the Plaintiff-Intervenors' concern that additional access to a document they considered worthless is now absolutely necessary. Nevertheless, the Court notes that the Permanent Injunction contains a provision requiring good faith negotiations in the event that a Minnesota litigant believes that greater or different access is required, and that should the parties be unable to resolve their disputes, they may seek an order for additional access from this Court. If review of the printed version of the Source Code in locations other than Minnesota ultimately is necessary, the Court anticipates that the parties would resolve this problem or that it would be subject to further review by this Court upon an appropriate motion. The same is true for any concerns about the limitation of the hours of the review to CMI's standard business hours and for concerns about access to future versions of the Source Code in the event CMI updates the Source Code presently in use. The Court is willing, under its retained jurisdiction, to assist the parties in resolving unforeseen issues, or to decide such issues as they are presented, in the best interests of the parties and in the interests of justice.

The Plaintiff-Intervenors also raise an objection to CMI's provision of funds for the State to defend the Source Code in subsequent litigation, suggesting that the State is somehow placed in a conflicted position as a result of this payment. The Court is not

17

troubled by this provision.  The State and CMI have an identity of interest in their shared desire to ensure the proper functioning of the Intoxilyzer and its effective utilization in policing Minnesota's roads.  The Court considers this provision to be similar to an indemnification provision, which is a standard commercial contract term.

In the next breath, the Plaintiff-Intervenors raise concerns about the cost they will bear to analyze the Source Code.  As the Plaintiff-Intervenors produced no specific evidence of the amount that such a review will cost, the Court must consider their estimates to be speculative.  Nonetheless, the Court will assume that a Source Code review will be fairly expensive.  This is not dissimilar, however, from the costs associated with expert review of complex subject matter in other litigation, or from the analysis performed upon the advent of new technologies in the criminal context, such as DNA analysis.  Further, once the Source Code has been analyzed in one case, information about that review may be made public via court testimony, information may be shared by similarly situated parties, and efficiencies in conducting the analysis may be found and utilized.  The Court cannot conclude that the cost of the review is a reason for it to deny approval of a settlement providing access to exactly the version of the Source Code Plaintiff-Intervenors sought to see.  Further, this Court does not have the authority to order the State or any other person to provide funding to Minnesota litigants to undertake this review.  Minnesota litigants who wish to seek such funding from the State or another source may do so in their state court cases.

The Court also notes that the order it issues today approves a proposed protective order, attached as Exhibit 1 hereto, to be offered as a model in litigation in Minnesota

courts, though entry of this protective order is not a binding condition for Minnesota courts to follow. The Court is aware, based on the record in this case, that some Minnesota courts have ordered access to the Source Code without issuing a protective order. Doing so, however, does not allow CMI to protect its legitimate interest in safeguarding its proprietary, intellectual property. CMI developed the Source Code internally and independently, and public disclosure of the Source Code could place CMI at a competitive disadvantage in the marketplace. Such disclosure is not necessary for an analysis of the Source Code to occur. Entry of a protective order will strike the proper balance between the right of a Minnesota litigant to obtain reasonable access to the Source Code to test the workings of the Intoxilyzer and challenge its results, while protecting CMI's confidential, proprietary intellectual property. Though the Court declines today to make an express finding that the Source Code is a trade secret, the Court's continuing, retained jurisdiction over the consent judgment and permanent injunction will permit the Court to revisit this issue should such a finding become necessary.

The Court further notes that its order does not infringe on the Minnesota state courts' authority to conduct subsequent litigation and does not mandate that a state court follow the process set forth in this order. The order also does not, as the Plaintiff-Intervenors point out with concern, provide for additional subpoena authority beyond that already available to Minnesota litigants in their state court cases. Ultimate determinations regarding the analysis and reliability of the Source Code remain to be made in litigation in Minnesota state courts according to their authority to hear DWI

prosecutions and license revocation proceedings, and this Court's order does not operate to alter their process in any way. Rather, this Court's order provides a means for reasonable access to the Source Code should Minnesota courts choose to follow it.

D.W.F.