

# WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

November 18, 2009

William A. McNab
Direct Dial: (612) 604-6652
Direct Fax: (612) 604-6852
wmcnab@winthrop.com

The Honorable Donovan W. Frank
U.S. District Court
724 Federal Building
316 North Robert Street
St. Paul, Minnesota 55101

**VIA MESSENGER**

RE:  *State of Minnesota v. CMI of Kentucky, Inc.*
     No. 08-CV-603

Dear Judge Frank:

As you know, this firm represents CMI of Kentucky, Inc. in the above-referenced matter. I write in response to a letter submitted to the Court by Marsh Halberg, counsel for the recently formed Source Code Coalition ("Coalition") and in anticipation of a Status Conference scheduled before the Court on November 19, 2009. For reasons discussed below, CMI believes the Status Conference may be premature.

As an initial matter, Mr. Halberg agreed to provide to me a draft of any correspondence to the Court on behalf of the parties. He did not do so, and I disagree with his characterization of the unresolved "issues."

The first issue, which he describes to the Court as "a request by the Source Code Coalition to transfer small amounts of the source code from a computer located at the CMI facility onto two laptops for access by our experts," in fact involves the Coalition's request that its reviewers be permitted to freely transfer data from the analytic computer containing CMI's entire, unredacted source code, to at least two other laptop computers and an undefined "backup system" with absolutely no oversight or limitation. This is expressly prohibited by the Court's Permanent Injunction.

Mr. Halberg benignly refers to the second issue as "photography and disassembly" of the instrument. However, Mr. Halberg has informed me that, "Destruction of the device may result from the testing...." This presents several significant problems, not the least of which is preventing CMI from making the instrument available to other source code reviewers as required by the Permanent Injunction.

So that the Court may fully understand these issues and the discussions that have taken place between CMI and the Coalition, I enclose the recent email exchange on these issues.

CAPELLA TOWER | Suite 3500 | 225 South Sixth Street | Minneapolis, MN 55402-4629 | MAIN: (612) 604-6400 | FAX: (612) 604-6800 | www.winthrop.com | *A Professional Association*

Dockets.Justia.com

Hon. Donovan W. Frank
November 18, 2009
Page 2

As noted above, we believe that the conference with the Court may be premature. In its Settlement with the State, CMI agreed that if an Authorized Minnesota litigant sought access beyond that which is permitted by the Court's Order, CMI would "attempt in good faith to resolve the issue." In my November 12 correspondence to Mr. Halberg, I told him that CMI would work in good faith toward resolving the issues.

To that end, CMI has considered the Coalition's requests and, earlier today, proposed completely workable resolutions that allow for complete compliance with the existing Permanent Injunction, reasonable and meaningful source code review, and continued protection of CMI's proprietary source code. A copy of CMI's letter to Mr. Halberg containing its proposals is attached for the Court's review.

CMI hopes that the Coalition will adopt its proposals and that a conference with the Court will not be necessary. However, if the Court's involvement is required, please let me know if additional information would assist the Court in its consideration of these issues.

Finally, if the Status Conference is necessary and the Coalition seeks to provide input to the Court from its "experts," CMI respectfully asks that one of its technical specialists be permitted to participate telephonically. I will separately direct this request to the Court's staff, as well. Thank you, Your Honor, for your consideration of this matter.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

William A. McNab
WAM/lm
Encl.

cc:   Marsh Halberg, Esq.
      Emerald Gratz, Esq.
      Mr. Toby Hall
      Mr. Steve Christie
      Allen Holbrook, Esq.
      David Aafedt Esq.
      (All via email)

4870516v1



WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

November 18, 2009

William A. McNab
Direct Dial: (612) 604-6652
Direct Fax: (612) 604-6852
wmcnab@winthrop.com

Marsh Halberg
HALBERG CRIMINAL DEFENSE
Northland Plaza
3800 American Boulevard West Ste. 1590
Bloomington, Minnesota 55431

**VIA EMAIL & FIRST CLASS MAIL**

RE:   *Source Code Review Issues*

Dear Mr. Halberg:

We were surprised by your decision to cancel your source code reviewers' visit to CMI this week, in light of your November 12 email stating that the reviewers would begin their work on November 16 notwithstanding two unresolved access issues. A copy of your email is enclosed.

In your email, you described the two outstanding issues as "Copying small portions of the Source Code," and "Disassembling Intoxilyzer." As an initial matter, we disagree that the first issue is about "copying small portions of the source code"; rather, it is about daily downloading of data (including source code) from the computer containing the entire unredacted source code to two other computers and, additionally, downloading data from each of those computers to yet another backup system. I responded the immediately to make sure that CMI's concerns about this were clear. A copy of my response is enclosed.

In my response, I promised to share our discussion with CMI and, as I assured you then, CMI has continued to work in good faith to resolve differences regarding the level and manner of access to CMI's source code. That is why we were surprised when, the very next day, you announced that you were cancelling your reviewers' visit.

After CMI's software professionals and management discussed these two issues, they have come up with proposed solutions that we believe give your reviewers the level of access they need for meaningful source code review while still protecting CMI's proprietary source code.

1. **Copying, Downloading, and Backing Up Systems Containing the Unredacted Source Code**

As you know, CMI, the State, and Judges Frank and Boylan fashioned the Consent Judgment and Permanent Injunction to allow sufficient access for meaningful review while still protecting CMI's source code. Thus, while it makes the complete, unredacted source code available in its

native electronic format, the Consent Judgment and Permanent Injunction also expressly requires that:

> If Authorized Minnesota litigants, their counsel, or experts, load the Source Code onto their own computers for analysis with commercial programs such as LINT or Understand, or for any other purpose, such computers may not have communications capabilities, including wi-fi/wireless, Ethernet, or modem capability, or such capabilities must be completely disabled. Further, such computers must have any external drives, USB ports, and other data transfer capabilities disabled. If any portion of the Source Code is loaded onto a reviewer's computer, the reviewer must agree to destroy the hard drive at CMI in the presence of CMI's representative, or leave the computer's hard drive at CMI at the conclusion of the review.

The kind of unlimited transfer of data from the analytical computer containing the complete unredacted source code to your reviewer's laptops and other backup systems that you have proposed is expressly prohibited by the Consent Judgment and Permanent Injunction.

However, we recognize that Judge Frank's Order does allow for limited verbatim copying of the source code where "necessary for meaningful expert review." We do not dispute that your reviewers may, in proper circumstances, copy and retain limited lines of source code where necessary for meaningful review. They are simply prohibited from the kind of unlimited transfer of data from the analytical computer containing the entire unredacted source code to other computers that you have proposed. Moreover, because Judge Frank's Order allows verbatim copying "only where necessary for meaningful expert review," and because the source code remains at all times CMI's property, CMI is entitled to know what lines, if any, are being copied verbatim by your reviewers.

Thus, to balance CMI's need for protection with your reviewers' need for analytical data, CMI proposes that hardcopy reports be printed from the analytical system, rather than electronically transferred to unrestricted computers and backup systems. With the exception of any verbatim lines of source code, the printed reports will be your reviewers' work product. We require only that CMI be shown any page or pages containing verbatim source code. The non-source code portion of any such page or pages may be redacted to protect your reviewers' work product. Under this proposal, your reviewers are free to perform unlimited analysis of the source code on the analytical computer, they may run as many reports as they wish, and they may print whatever output they feel is necessary to their review, subject only to CMI's review of any actual verbatim source code included is such reports. To the extent your reviewers wish to subsequently place that information on other computers, there are various technologies available to move the printed analytical reports onto other systems without exposing CMI's entire unredacted proprietary source code to uncontrolled electronic transfer processes.

Marsh Halberg
November 18, 2009
Page 3

## 2. Disassembly of the Intoxilyzer 5000EN

You have indicated your intent to have Dr. Myler disassemble, test, and photograph the instrument that CMI has made available in the source code review facility pursuant to the Consent Judgment and Permanent Injunction. You have also indicated that the instrument may be damaged or destroyed in that process.

As an initial matter, it is unclear to CMI what this could possibly have to do with source code review; indeed, as I have reminded you, the source code (as source code) does not even reside in the instrument. Rather, it is first assembled, compiled, and linked, and then loaded as "machine code" into the EPROMs, which are, in turn, installed in the instrument. Per the Consent Judgment and Permanent Injunction, CMI is making the source code, the compiler, assembler, and linker available to reviewers, along with EPROMs, related equipment, and a fully functional Minnesota-configured Intoxilyzer 5000EN available to Authorized Minnesota litigants. There is simply no reason to tear down the instrument.

Second, the Consent Judgment and Permanent Injunction expressly requires that CMI make available for all Authorized Minnesota litigants, their attorneys, and their experts:

> A Minnesota-configured Intoxilyzer 5000EN for testing, loaded with the EPROMs mentioned in item vi. CMI will also make available wet bath simulators and solution for instrument testing.

If Dr. Myler disassembles, damages, or destroys the instrument, CMI will be unable to make the instrument available for other reviewers and will be out of compliance with the Permanent Injunction. CMI has only one Minnesota-configured instrument and because CMI is no longer building Intoxilyzer 5000EN instruments for Minnesota, it would be extremely costly to build another one.

Finally, because CMI and its co-located parent company, MPD, Inc. are certified government and military contractors, the use of photographic equipment on the facilities is prohibited. Further, under no circumstance would CMI permit the use of photographic equipment in the source code review room, where the entire unredacted source code is available.

However, there is a simple way around these issues. Dr. Myler or the Source Code Coalition can obtain an instrument from the State. At least two Minnesota attorneys have done so in the past, either by purchase or by lease. That way, Dr. Myler's examination of the instrument will not interfere with other reviewers' ability to access the working instrument at CMI or CMI's ability to comply with Judge Frank's Order, and he can photograph the instrument without conflicting with CMI's and MPD's governmental requirements.

Marsh Halberg
November 18, 2009
Page 4

### 3. Conclusion

CMI brings these proposals in an attempt to work with you and your reviewers, to ensure meaningful source code review that does not expose CMI's proprietary source code to uncontrolled access, reproduction, and transmittal. These are workable, commonsense solutions that will allow your reviewers to perform a meaningful source code review while still allowing CMI to protect its valuable intellectual property.

Please consider these proposals and get back to me at your earliest convenience. Thank you.


Very truly yours,

WINTHROP & WEINSTINE, P.A.


William A. McNab
WAM/lm
Encl.

cc:   Mr. Toby Hall
      Mr. Steve Christie
      Allen Holbrook, Esq.
      David Aafedt Esq.

4867442v3

### McNab, William

**From:** McNab, William [WMcNab@winthrop.com]
**Sent:** Thursday, November 12, 2009 3:41 PM
**To:** Marsh Halberg
**Cc:** Mark Lanterman; Matt Willis; Lee Orwig; Aafedt, David; 13956.2.imanage@file.winthrop.com
**Subject:** RE: follow up to today's phone call regarding issues in Kentucky

Marsh,

Thank you for summarizing our discussion. I agree generally with your summary but want to make sure we're clear about CMI's concerns.

With respect to the verbatim copying of source code, Judge Frank's order limits such copying to circumstances where it is *necessary* for meaningful source code review. Moreover, the source code is CMI's highly sensitive, proprietary intellectual property. For these reasons, CMI is entitled under the Permanent Injunction to know which lines, if any, CFS intends to copy verbatim and, when appropriate, to bring objections to Judge Frank. Otherwise, the limitations the Court put in the Order would be meaningless.

As I understand it, CFS anticipates that some verbatim lines of code are likely to become intertwined in the results of the analytical processing. Further, CFS wishes to download the results of the analytical processing directly from the computer that contains CMI's native, unredacted source code, onto at least two laptops that have communications and internet capabilities, as well as USB and other ports. After that, CFS would like to back-up the results of its work from all three computers, potentially including verbatim, unredacted source code, onto yet another system. Finally, you insist that CMI will not have access to the contents of any of those computers--even though any of them could, and likely will, contain some or all of CMI's proprietary source code.

This raises major concerns for CMI. In the Consent Judgment, CMI agreed to make the native, unredacted source code available on a completely isolated system. In initial discussions with CFS, that appeared possible, as CMI is willing to load the source code via readable CD/ROM onto CFS's analytical computer provided that it has no communication or linking capabilities, and provided that CFS would destroy and leave the hard drive behind. It appeared the CFS agreed to those terms. Now, however, it appears that CFS wishes to link the analytical computer (with the entire source code on it) directly to other computers, copy, verbatim, undisclosed portions of the source code onto those computers, and then backup those computers onto yet other systems, and to do all of those transfers of the source code under the secret shroud of "work product." Under that scenario, destroying the analytical hard drive at the end of the review would be closing the barn door long after the cows have left the barn. There is simply no way for CMI to protect its intellectual property under that plan.

With respect to Mr. Myler's review, CMI is, frankly, taken aback at your proposal. For three-plus years the DUI defense bar has sought, and in some cases obtained, orders for the State to produce *the source code* on the theory that it might have bugs in it. Judge Frank's order, as well, contemplates a *source code review*, not a physical tear down of CMI's instrument. CMI agreed to make an instrument, the compiler, assembler, linker and loaded EPROMs available primarily to demonstrate that the source code provided is the source code actually in use in the instrument, not so that it can be torn to pieces. Remember, once the source code is assembled, compiled, linked and loaded in the EPROMs, it is no longer source code--it is machine code. There is no source code in the instrument and tearing an instrument apart is not source code review.

As I agreed during our call, I will share our conversation with CMI and I can assure you that CMI is committed to complying with Judge Frank's order and working in good faith toward resolving differences of opinion. However, we need the same commitment from the Source Code Coalition and CFS. We will simply have find ways to get CFS what it truly needs (not merely wants) without exposing CMI's source code to duplication and transmission that are beyond CMI's control. Thank you.

Bill


William A. McNab
WINTHROP & WEINSTINE P.A.

11/18/2009

Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Direct: 612-604-6652
Fax: 612-604-6852

NOTICE - CONFIDENTIAL INFORMATION
The information in this communication is privileged and strictly confidential. It is intended solely for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, any dissemination, distribution, copying or other use of the information contained in this communication is strictly prohibited. If you have received this communication in error, please first notify the sender immediately and then delete this communication from all data storage devices and destroy all hard copies.

---

**From:** Marsh Halberg [mailto:MHalberg@halbergdefense.com]
**Sent:** Thursday, November 12, 2009 1:58 PM
**To:** McNab, William
**Cc:** Mark Lanterman; Matt Willis; Lee Orwig
**Subject:** follow up to today's phone call regarding issues in Kentucky

Dear Mr McNab

Thank you for taking time today to talk with our office and Mr. Willis and Mr. Lanterman. I believe we have clarified many issues as were set out in our recent emails/correspondence. It sounds like two of the remaining issues to be clarified involve 1) copying small portions of the Source Code and 2) the disassembling/photographing of an Intoxilyzer unit.

**Copying small portions of the Source Code,**

Our experts require the use of automated tools and manual annotations that may require the inclusion of small portions of code. We believe the output and annotations, along with the portions of code that they reference, are work product. Our experts require that due care is taken for their work product and should be allowed to backup their data on an ongoing basis. This backup will result in the copying of portions of the Source Code that is intertwined with the experts' work product. Additionally, they expect that portions of the Source Code will be required for inclusion in the report culminating from this analysis. As such, we believe that the experts should be entrusted to copy and securely maintain on an uninterrupted, ongoing basis, the portions of the Source Code that they may require for meaningful analysis. The experts represent that all backup data will PGP encrypted.

**Disassembling Intoxilzer**

With respect to the analysis work of Dr. Harley Myler, our experts state that the Intoxilyzer 5000EN is an embedded device (a device that closely marries hardware and software) and that it is impossible to perform a thorough source code software review without expert knowledge of the hardware that gives it meaning.   An example impact of the hardware on the software

11/18/2009

might be a portion of code that reads and performs a calculation on a value obtained from a sensor. Is that sensor a thermometer or a mechanical valve? What does it normally give as a value? How could it fail and does the software account for that failure?

As such, Dr. Myler must be allowed to physically disassemble, photograph, and annotate the hardware components that interface with the software for use in our source code review. While performing this work, disassembling any device may lead to the unintentional destruction of the device, an outcome that our experts will take reasonable measures to avoid.

**Motion before Judge Frank**

We have agreed to get our experts on site to start working next Monday with the mutual goal of resolving these issues between us. I will draft correspondence for your review to Judge Frank asking that his staff look at the Court calendar in the event we need to clarify matters with him.


Marsh J. Halberg

Halberg Criminal Defense
3800 American Boulevard West
Suite 1590
Bloomington, MN 55431
Phone:  612-DEFENSE
        (612) 333-3673
Direct: (952) 844-3334
Fax:    (952) 224-4840
www.halbergdefense.com

ation contained in this e-mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the re: not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or cop; tion is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (952) 224-4848 and return the original message ess via the U.S. Postal Service. We will see that you are reimbursed for your postage. Thank you.

11/18/2009